```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                       SAN JOSE DIVISION.

 4


 5
      GILEAD SCIENCES, INC.,          )  CV-13-4057-BLF
 6                                    )
                     PLAINTIFF,       )  SAN JOSE, CALIFORNIA
 7                                    )
               VS.                    )  APRIL 3, 2015
 8                                    )
      MERCK & CO, INC., ET AL,        )  PAGES 1-96
 9                                    )
                     DEFENDANT.       )
10                                    )

11

12                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE BETH LABSON FREEMAN
13                 UNITED STATES DISTRICT JUDGE

14

15    A P P E A R A N C E S:

16    FOR THE PLAINTIFF:      FISH & RICHARDSON PC
                              BY:  DOUGLAS MCCANN
17                                 ELIZABETH FLANAGAN
                              222 DELAWARE AVE, 17TH FL
18                            WILMINGTON, DE 19801

19    FOR THE DEFENDANT:      HUGHES HUBBARD & REED, LLP
                              BY:  STEPHEN RABINOWITZ
20                                 WANDA FRENCH BROWN
                                   LAURA MILLER
21                            ONE BATTERY PARK PLAZA
                              NEW YORK, NY 10004
22
                   APPEARANCES CONTINUED ON THE NEXT PAGE
23
      OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
24                                 CERTIFICATE NUMBER 13185

25         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1      FOR THE PLAINTIFF:        FISH & RICHARDSON, PC
                                  BY:  JOHN FARRELL
 2                                     RACHEL SANCHEZ
                                  500 ARGUELLO STREET, STE 500
 3                                REDWOOD CITY, CA 94063

 4      ALSO PRESENT:             JAMIE LYNCH
        GILEAD                    KATHERINE RICE
 5

 6      ALSO PREASENT:            GERARD DEVLIN
        MERCK
 7

 8      ALSO PRESENT:             CLIFF FORD
        ISIS                      JEFFREY TUNG
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                    APRIL 3, 2015
 2                      P R O C E E D I N G S
 3        (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS
 4    WERE HELD:)
 5               THE COURT:  ALL RIGHT.  LET'S CALL OUR CASE.
 6               THE CLERK:  CALLING CASE 13-4057.  GILEAD SCIENCES
 7    VERSUS MERCK, ET AL.
 8            COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.
 9            MR. MCCANN:  GOOD MORNING, YOUR HONOR.
10        FOR THE PLAINTIFF, DOUG MCCANN FROM FISH RICHARDSON.
11            WITH ME AT COUNSEL TABLE IS ELIZABETH FLANAGAN, AND YOU
12    MET LAST WEEK MS. SANCHEZ AND MR. FARRELL.
13            AND YOUR HONOR, I HAVE QUITE A GALLERY HERE IN THE BACK.
14               THE COURT:  I CAN SEE THAT.
15            MR. MCCANN:  I DID WANT TO SPECIFICALLY INTRODUCE
16    LORIE ANN MORGAN WHO IS THE VICE PRESIDENT OF INTELLECTUAL
17    PROPERTY.  YOU ALSO MET MS. LYNCH AND MS. RICE, ALSO FROM THE
18    GILEAD LEGAL DEPARTMENT.
19               THE COURT:  YES.  GOOD MORNING.
20            MR. MCCANN:  MY OTHER COLLEAGUES, YOUR HONOR, ARE
21    PATENT PROSECUTORS FROM GILEAD WHO HAVE NEVER SEEN A MARKMAN
22    HEARING BEFORE.  SO THEY THOUGHT THEY WOULD COME THIS MORNING
23    AND SEE HOW I DO AND ALSO WHAT A MARKMAN HEARING IS ALL ABOUT.
24               THE COURT:  THEY SEE WHAT HAPPENS TO THEIR FINE
25    PRODUCT WHEN THEY TURN IT OVER TO YOU.
```

1          MR. MCCANN:  WE WILL FIND OUT, YOUR HONOR.

2          THE COURT:  ALL RIGHT.  THANK YOU.

3       GO AHEAD.

4          MR. RABINOWITZ:  GOOD MORNING, YOUR HONOR.

5       STEPHEN RABINOWITZ FROM HUGHES HUBBARD & REED FOR THE

6    DEFENDANTS MERCK AND ISIS PHARMACEUTICALS.

7          THE COURT:  GOOD MORNING, MR. RABINOWITZ.

8          MR. RABINOWITZ:  WITH ME AT COUNSEL TABLE ARE LAURA

9    MILLER AND WANDA FRENCH-BROWN.

10          THE COURT:  GOOD MORNING.

11       AND I'M GOING TO STOP AGAIN, I'M NOT GETTING

12    ANY REALTIME.

13       (OFF THE RECORD DISCUSSION.)

14          THE COURT:  ALL RIGHT.

15          MR. RABINOWITZ:  YOUR HONOR, I JUST WANTED TO MENTION

16    THAT WE ARE ACCOMPANIED HERE BY GERARD DEVLIN FROM MERCK, AND

17    BY CLIFF FORD AND JEFFREY TUNG FROM ISIS.

18          THE COURT:  GOOD MORNING.  ALL RIGHT.  I DO

19    APPRECIATE EVERYONE BEING HERE.

20       TODAY WE ARE GOING TO FOCUS ON THE ONE TERM

21    "ADMINISTERING."  AND IN MERCK'S VIEW IT'S SIMPLE, IT'S DEFINED

22    IN THE PATENT AND WE SHOULD BE DONE, AND WE HAVE ABOUT A

23    FIVE-MINUTE HEARING.

24       AND SO BEFORE YOU START YOUR PRESENTATIONS, AND I'M SURE

25    YOU ARE PLANNING TO COVER THIS, I WANTED TO IDENTIFY SOME

1   CONCERNS ON MY MIND SO THAT WE DON'T HAVE TO GO BACK OVER THESE

2   THINGS.

3        AND I'M GOING -- I'M PRESUMING THAT THESE ARE WELL

4   EMBEDDED INTO YOUR PRESENTATIONS, BUT IN THE -- I JUST WANTED

5   TO HIGHLIGHT IT SO YOU KNOW IT'S MY CONCERN.

6        IT FEELS TO ME A LITTLE BIT LIKE THIS IS KABUKI THEATRE

7   THAT WE ARE TALKING ABOUT ONE WORD BUT WE ARE REALLY TALKING

8   ABOUT SOMETHING ENTIRELY DIFFERENT.

9        AND IT DOES APPEAR THAT IT IS NOT THE TERM

10  "ADMINISTERING" THAT ANYONE IS AT ALL CONCERNED WITH.  THE

11  CONCERN IS THE DEFINITION OF A PRODRUG OF A COMPOUND OF THE

12  INVENTION.  AND IT IS IN BOTH OF YOUR BRIEFS, IT'S NOT THAT YOU

13  DIDN'T ADDRESS IT HEAD ON, BUT IN THE MANY PAGES OF BRIEFING,

14  IT IS A FEW LINES IN EACH OF YOUR BRIEFS.

15       GILEAD DIRECTLY STATES THAT THE COURT HAS THE AUTHORITY

16  TO CONSTRUE WHAT THE COURT HAS CALLED DERIVATIVE TERMS.  AND

17  MERCK IN ITS CLOSING BRIEF DEFINES PRODRUG OF A COMPOUND OF THE

18  INVENTION BY DIRECTLY SAYING THAT THIS TERM MEANS AND GIVING A

19  DEFINITION.

20       AND FRANKLY, I THINK THAT'S WHAT THIS ENTIRE HEARING IS

21  ABOUT, OR AT LEAST THAT.  AND I DON'T KNOW WHETHER THIS IS THE

22  TIME AND PLACE TO BE ADDRESSING THAT ISSUE.  BUT AT THE END --

23  BY THE END OF THE HEARING I DO WANT EACH OF YOU TO BE ABLE TO

24  ANSWER THE QUESTION FOR ME THAT IF I WERE TO ACCEPT MERCK'S

25  CONSTRUCTION, WOULD THAT PRECLUDE FURTHER ARGUMENT AND

1    DETERMINATION OF THE PHRASES THAT GILEAD HAS ADDED TO THE

2    DEFINITION IN ITS CONSTRUCTION.

3         AND YOU KNOW, I KNOW THAT GILEAD SUGGESTS IN ITS PAPERS

4    THAT THE BROAD CONSTRUCTION ARGUED BY MERCK COULD INVITE THE

5    INVALIDITY ARGUMENT, THAT'S NOT BEFORE ME TODAY.  I DON'T PLAN

6    TO TAKE THAT ON, BUT I'M JUST REALLY CONCERNED THAT YOU'RE

7    TALKING ABOUT ONE THING AND REALLY WANTING A DECISION ON

8    SOMETHING ELSE.

9         SO THAT BEING SAID, I'M READY NOW TO LEAVE IT IN YOUR

10   HANDS TO INFORM ME OF THE VARIOUS FACTORS I SHOULD CONSIDER IN

11   CONSTRUING THE TERM ADMINISTERING.

12        SO MR. RABINOWITZ, I GUESS YOU GET TO GO FIRST, YOUR

13   COMPANY OWNS THIS PATENT.

14            MR. RABINOWITZ:  THANK YOU, YOUR HONOR.

15        SO YOUR HONOR, PERHAPS I CAN ALLUDE TO WHY I THINK THE

16   ARGUMENT IS COMING UP IN THE GUISE OF CONSTRUING THE TERM

17   ADMINISTERING.

18        AND THAT IS BECAUSE THERE'S A STRONG PRINCIPLE

19   ESTABLISHED IN THE FEDERAL CIRCUIT PRECEDENT THAT ONE MAY NOT

20   IMPORT EXTRANEOUS LIMITATIONS INTO A CLAIM BY WAY OF

21   CONSTRUCTION.  THE ONLY LEGITIMATE WAY OF DETERMINING THE SCOPE

22   OF A CLAIM IS TO DETERMINE THE MEANING OF WORDS THAT ARE

23   ACTUALLY PRESENT IN THE CLAIM.  THERE HAS TO BE A HOOK FOR A

24   CLAIM CONSTRUCTION EXERCISE.

25        AND THE ONLY POSSIBLE WORD IN CLAIM ONE OF THE '499

1    PATENT THAT COULD BE CONSTRUED IN THE WAY THAT GILEAD WOULD

2    LIKE IT CONSTRUED TO ADD THOSE LIMITATIONS TO THE CLAIM IS

3    ADMINISTERING.  AND IF THOSE LIMITATIONS DON'T FIT AS A

4    CONSTRUCTION OF THAT WORD, THEY ARE EXTRANEOUS AND MAY NOT BE

5    INCLUDED INTO THE CLAIMS.

6              THE COURT:  AND SO YOU ARGUE IN YOUR BRIEF THAT THE

7    PATENTEE DEFINED THIS TERM AND THAT UNDER PHILLIPS I SHOULD

8    SIMPLY ACCEPT THIS DEFINITION.  AND IF I WERE TO DO THAT, IN MY

9    VIEW, IF I HAVE A DEFINITION, THE WORD "ADMINISTERING"

10   ESSENTIALLY IS A PLACEHOLDER FOR THE MULTI-WORD PHRASE.

11             AND SO I WOULD IMPORT THAT PHRASE OR SENTENCE OR TWO

12   SENTENCES INTO THE CLAIM, AND THEN I WOULD CONSTRUE ALL OF

13   THOSE WORDS.

14             SO THAT'S WHERE I HAVE TROUBLE.

15             MR. RABINOWITZ:  YES.

16             WELL, I THINK THAT THE CONSTRUCTION OF "ADMINISTERING"

17   DOES RAISE THE ISSUE THAT GILEAD WANTS TO BRING BEFORE THE

18   COURT.

19             AND WE THINK THE COURT SHOULD REJECT THE LIMITATIONS THAT

20   GILEAD WOULD SEEK TO IMPORT FOR THE REASON THAT THEY ARE NOT A

21   PROPER CONSTRUCTION OF THE WORD "ADMINISTERING", UNLESS THERE

22   ARE A PROPER BYPRODUCT OF CONSTRUING THE WORD "ADMINISTERING",

23   THEY MAY NOT BE IMPORTED INTO THE CLAIM UNDER THE PRINCIPLE

24   THAT EXTRANEOUS LIMITATIONS MAY NOT BE IMPORTED BY

25   CONSTRUCTION.

1      THE COURT:  SO YOU AGREED WITH ME A MINUTE AGO AND

2  NOW YOU'RE NOT AGREEING WITH ME.

3      MR. RABINOWITZ:  I'M AGREEING PROCEDURALLY THAT THE

4  COURT HAS THE AUTHORITY TO MAKE THAT DECISION, AND I'M SAYING

5  SUBSTANTIVELY THE COURT SHOULD REJECT THE LIMITATIONS THAT

6  GILEAD ARE PROPOSING TO BE IMPORTED INTO THE CLAIMS.

7      THE COURT:  I APPRECIATE THAT.

8      MR. RABINOWITZ:  BECAUSE THEY DO NOT FIT AS A

9  DEFINITION OF "ADMINISTERING", THE WAY THE SPECIFICATION

10  DEFINES ADMINISTERING.  AND I'M GOING TO EXPLAIN WHY.

11      IT REQUIRES SOME BACKGROUND KNOWLEDGE OF SCIENTIFIC

12  PRINCIPLES AND CONSIDERATION OF WHAT THE PATENT SAYS AND WHAT

13  THE INVENTION IS AND SO FORTH.

14      THE COURT:  NOW I SAID I WAS GOING TO LISTEN AND THEN

15  I DIDN'T, SO I'M SORRY.  I NOW WANT TO HEAR YOUR PRESENTATION

16  AND THEN I'M PROBABLY GOING TO COME BACK TO THIS.  BUT MAYBE I

17  WILL HOPEFULLY BE BETTER EDUCATED AT THE BACK END OF YOUR

18  PRESENTATION AND BE ABLE TO HAVE A MORE PRODUCTIVE SET OF

19  QUESTIONS FOR YOU.

20      MR. RABINOWITZ:  YOUR HONOR, I'M DELIGHTED TO ANSWER

21  YOUR HONOR'S QUESTIONS AT ANY TIME, AND I WELCOME THEM DURING

22  THE COURSE OF THE PRESENTATION, IT WON'T PUT ME OFF.

23      THE COURT:  THANK YOU SO MUCH.

24      ALL RIGHT.  GO AHEAD.

25      MR. RABINOWITZ:  SO YOUR HONOR, I WANTED TO FOCUS ON

1    SOME CLAIM TERMS THAT ARE NOT IN DISPUTE BUT ARE NEVERTHELESS

2    RELEVANT TO OUR DISCUSSION.

3         AND THESE ARE THE TERMS COMPOUND, WHICH WAS ORIGINALLY

4    DISPUTED BUT WHICH GILEAD NOW AGREES MEANS A SUBSTANCE THAT

5    CONSISTS OF TWO OR MORE CHEMICAL ELEMENTS IN UNION.

6         AND I THINK THIS IS RELEVANT BECAUSE THE ARGUMENTS THAT

7    WERE MADE IN SUPPORT OF THE NOW DISCARDED NARROWING

8    CONSTRUCTION OF COMPOUND ARE SIMILAR, THEY BEAR A RESEMBLANCE

9    TO THE ARGUMENTS THAT ARE BEING MADE IN FAVOR OF THE ADDITIONAL

10   LIMITATIONS THAT ARE BEING URGED BY GILEAD FOR ADMINISTERING.

11        AND "IN COMBINATION WITH", AND THIS RELATES TO ONE OF THE

12   ARGUMENTS THAT GILEAD IS MAKING, BUT THE TERM "IN COMBINATION

13   WITH" DOESN'T HAVE ITS ORDINARY MEANING IN THE PATENT, THERE'S

14   A SPECIAL DEFINITION IN THE SPECIFICATION AND WE BROTH AGREE

15   WITH IT.

16        SO "IN COMBINATION WITH" IS SPECIFICALLY DEFINED IN THE

17   SPECIFICATION AND IT'S STIPULATED TO MEAN, "TOGETHER WITH."

18   THIS IS CLAIM 2 OF THE '499 PATENT WHICH SAYS THAT THE COMPOUND

19   OF STRUCTURAL FORMULA 3 OR PHARMACEUTICALLY ACCEPTABLE SALT OR

20   ESTER DERIVATIVES THEREOF IS IN COMBINATION WITH, THE

21   THERAPEUTIC ADVANCE OF ANOTHER AGENT, AND THEN IT SPECIFIES A

22   LIST FROM WHICH THE OTHER AGENT CAN BE DERIVED.

23        AND IN COMBINATION WITH DOESN'T MEAN WHAT YOU MIGHT THINK

24   IT MEANS IF YOU SIMPLY READ THAT LANGUAGE, IT SPECIFICALLY

25   MEANS TOGETHER WITH, WHETHER GIVEN SEPARATELY AT DIFFERENT

```
 1      TIMES DURING THE COURSE OF THERAPY.

 2           IN OTHER WORDS, THE PATIENT HAS HEPATITIS C, AS YOU HEARD

 3      FROM GILEAD'S COUNSEL LAST WEEK, THE COURSE OF THERAPY LASTS

 4      FOR MONTHS.  AND THE PATIENT IS CONCURRENTLY BEING TREATED WITH

 5      TWO AGENTS, GIVEN SEPARATE -- IN THE FIRST PART OF THAT

 6      DEFINITION, GIVEN SEPARATELY AT DIFFERENT TIMES.  OR

 7      CONCURRENTLY, AND THEN IT CAN BE IN DIVIDE DOSES.  IN OTHER

 8      WORDS, ONE PILL IN ANOTHER PILL OR ONE PILL IN AN INJECTION OR

 9      IN SINGLE COMBINATION FORMS.

10           THE COURT:  SO AT ANY TIME DURING THE COURSE OF THE

11      TREATMENT.

12           MR. RABINOWITZ:  THAT'S RIGHT.

13           THE PATIENT IS BEING TREATED WITH TWO AGENTS, MAYBE ONE

14      IN THE MORNING, ONE AT NIGHT, OR MAYBE BOTH IN THE MORNING IN

15      SEPARATE MEDICATIONS OR PERHAPS A SINGLE, A FIXED DOSE

16      MEDICATION.

17           THE COURT:  IT COULD BE IN ONE WEEK VERSUS ANOTHER

18      WEEK TOO.

19           MR. RABINOWITZ:  YES.  DURING THE COURSE OF THERAPY.

20      AND THIS IS A COURSE OF THERAPY THAT LASTS MONTHS LONG.

21           THE COURT:  YES, OKAY.

22           MR. RABINOWITZ:  SO THE TERM THAT IS IN DISPUTE IS

23      "ADMINISTERING."  AND HERE ARE THE TWO PROPOSED DEFINITIONS:

24           MERCK'S PROPOSED DEFINITION IS SIMPLY WHAT THE

25      SPECIFICATION SAYS, "PROVIDING A COMPOUND OF THE INVENTION OR A
```

```
 1    PRODRUG OF A COMPOUND OF THE INVENTION TO THE INDIVIDUAL IN

 2    NEED."

 3            THE COURT:  WHICH IS NOT IN DISPUTE.  BOTH OF YOU

 4    AGREE THAT SHOULD BE PART OF THE CONSTRUCTION.

 5            MR. RABINOWITZ:  YES.

 6       GILEAD'S PROPOSED CONSTRUCTION CONTAINS THOSE WORDS BUT

 7    THEN IT HAS ADDITIONAL LANGUAGE WHICH I'VE REFLECTED THERE ON

 8    THE SLIDE, SETTING THEM SIDE BY SIDE.

 9            AND I WOULD LIKE TO JUST SET THE CONTEXT THEN GO INTO

10    MORE DETAIL TO IDENTIFY WHAT IT IS ABOUT GILEAD'S PROPOSED

11    CONSTRUCTION THAT WE THINK IS INCORRECT.

12            THE COURT:  WELL, I GUESS, YOU KNOW, THIS IS WHERE MY

13    FIRST QUESTION IS.

14       IF I WERE TO ACCEPT YOUR DEFINITION, AND ITS SIMPLICITY

15    IS VERY APPEALING UNDER THE LAW AND THE DIRECT ROUTE TO

16    OBTAINING IT IS VERY APPEALING, BUT IT DOESN'T SEEM TO ADDRESS

17    OR RESOLVE THE ISSUES THAT GILEAD FEELS ARE IMPORTANT IN THIS

18    CASE, WHICH IS FINE BECAUSE CLAIMS CONSTRUCTION IS NOT THE

19    BEGINNING AND THE END OF ALL DISPUTES IN PATENT LITIGATION.

20            MR. RABINOWITZ:  I THINK YOUR HONOR, THAT IN THE

21    COURSE OF ADOPTING THAT PROPOSED CONSTRUCTION, VERBATIM FROM

22    THE SPECIFICATION, COURTS OFTEN ISSUE REASONED OPINIONS ON

23    CLAIM CONSTRUCTION EXPLAINING WHY CERTAIN PROPOSALS ARE

24    REJECTED AND WOULD MAKE IT CRYSTAL CLEAR AND PROVIDE THE JURY

25    WITH A SIMPLE DEFINITION THAT THEY COULD USE TO TEST.
```

1        BECAUSE THE ISSUE OF INFRINGEMENT IS A QUESTION OF FACT

2    FOR THE JURY, AND THIS IS ALL ABOUT PROVIDING THE JURY

3    INSTRUCTION SO THAT THE JURY CAN EVALUATE WHETHER THE EVIDENCE

4    OF INFRINGEMENT TENDERED SATISFIES THE REQUIREMENTS OF THE

5    CLAIM.

6        THE COURT:  SO YOU'RE REALLY SUGGESTING THAT BECAUSE

7    THE WORDS "IN COMBINATION WITH" IS THIS LONG CONTINUUM OF

8    ACTIVITY, IF YOU WILL, DURING THE COURSE OF TREATMENT, THAT

9    "ADMINISTERING" HAS THAT SAME HIGHWAY OF ACTIVITY.

10        MR. RABINOWITZ:  WELL, IN COMBINATION WITH IS TALKING

11    ABOUT GIVING THINGS AT SEPARATE TIMES.  ADMINISTERING DEALS

12    WITH ANOTHER ISSUE, IT'S AN EXPRESSLY DEFINED TERM AND IT SAYS

13    YOU CAN PROVIDE A COMPOUND OF THE INVENTION.

14        AND THE TERM COMPOUND OF THE INVENTION IS PATENT EASE FOR

15    CLAIMS COMPOUND, IT MEANS COMPOUND DEFINED BY THE CLAIM.

16        THE COURT:  AND I PRESUME THAT THE TRIPHOSPHATE IS A

17    COMPOUND OF THE INVENTION.

18        MR. RABINOWITZ:  IT IS.

19        THE COURT:  THAT IS WITHOUT DISPUTE.

20        MR. RABINOWITZ:  IT IS.

21        THE COURT:  AND SO THIS WHOLE CASE COMES DOWN TO

22    WHETHER EVERY CONCEIVABLE PRODRUG, WHETHER KNOWN OR TO BE KNOWN

23    IN THE FUTURE, IS -- THAT BECOMES TRIPHOSPHATE THROUGH ANY

24    MEANS IS PATENTED BY MERCK.

25        MR. RABINOWITZ:  WELL, I WOULD DISAGREE WITH THAT,

1    YOUR HONOR, BECAUSE CLAIM 1, AND IT'S IMPORTANT TO, IN FACT I

2    HAVE THE TEXT OF CLAIM 1, NEXT, CLAIM 1 IS DIRECTED TO A METHOD

3    OF TREATMENT.  IT'S A PROCESS CLAIM, IT'S NOT -- THE OTHER

4    PATENT IS DIRECTED TO COMPOSITION OF MATTER CLAIMS, COMPOUNDS

5    AS SUCH.  BUT CLAIM 1 OF THE '499 PATENT IS DIRECTED TO A

6    METHOD OF TREATING.

7         AND THERE'S AN IMPORTANT DIFFERENCE IN THAT, FOR EXAMPLE,

8    YOU CAN HAVE A PATENT ON A NEW METHOD OF USING AN OLD COMPOUND,

9    IF YOU DISCOVER WHAT IT CAN BE USED FOR.

10         THE COURT:  SO METHOD BEING THE USE OF A PRODRUG THAT

11    TRANSFORMS -- WELL, BY DEFINITION A PRODRUG TRANSFORMS IN VIVO.

12         MR. RABINOWITZ:  SO THERE'S A FUNDAMENTAL DISCOVERY

13    MADE BY THE MERCK AND ISIS SCIENTISTS.  THEY DISCOVERED BY

14    PUTTING CERTAIN CHEMICAL GROUPS ONTO A CLASS OF COMPOUNDS

15    CALLED NUCLEOSIDE ANALOGS, IT'S THE KIND OF STRUCTURES THAT

16    GILEAD SHOWED YOU LAST WEEK, THEY OBTAINED A COMPOUND THAT

17    INHIBITS AN IMPORTANT ENZYME OF HEPATITIS C VIRUS, AND THAT

18    PROVIDES A METHOD OF TREATING HEPATITIS C VIRUS INFECTION.

19         SO WHAT THEY DISCLOSED IN THEIR SPECIFICATION AND ARE

20    CLAIMING IN THIS PATENT IS A METHOD OF TREATING HEPATITIS C

21    VIRUS INFECTION BY PROVIDING A COMPOUND WITH, THEY SET OUT THE

22    SALIENT FEATURES OF THE COMPOUND IN THE STRUCTURAL FORMULA, AND

23    THE SPECIFICATION MAKES IT CLEAR, OUR DISCOVERY IS THAT THESE

24    COMPOUNDS HAVING THESE FEATURES WILL BE BENEFICIAL AGAINST THE

25    VIRUS.  YOU PROVIDE THEM, YOU CAN PROVIDE THEM THE COMPOUNDS

1      THEMSELVES OR YOU CAN USE WHAT'S CALLED A PRODRUG STRATEGY.

2              THE COURT:  BUT THIS CASE IS NOT THE PRODRUG

3      STRATEGY.

4              MR. RABINOWITZ:  WELL, IT'S ABOUT WHETHER THIS CLAIM

5      INCLUDES THIS METHOD OF TREATMENT WHEN PERFORMED BY

6      ADMINISTERING A PRODRUG THAT CONVERTS INTO A COMPOUND OF THE

7      INVENTION LIKE THE TRIPHOSPHATE.

8              SO THE INFRINGEMENT ISSUE, OUR THEORY OF INFRINGEMENT IS

9      WHEN SOFOSBUVIR IS PROVIDED, IT IS A PRODRUG THAT CONVERTS

10     AFTER IT'S SWALLOWED INTO THE MONOPHOSPHATE, THE DIPHOSPHATE,

11     AND THE TRIPHOSPHATE.  THE MONOPHOSPHATE AND THE DIPHOSPHATE

12     ARE COMPOUNDS OF THE INVENTION ALSO BUT ARE NOT THEMSELVES

13     ACTIVE DRUGS.  THEY ARE, IN FACT, PRODRUGS THAT CONVERT TO THE

14     TRIPHOSPHATE WHICH IS ACTIVE.

15             AND SO WE WOULD VIEW THIS AS LITERALLY PERFORMING THIS

16     CLAIMED METHOD BY PROVIDING A PRODRUG, SOFOSBUVIR, OF A

17     COMPOUND OF THE INVENTION.  IT'S, IN FACT, A PRODRUG OF THREE

18     COMPOUNDS OF THE INVENTION, THE MONOPHOSPHATE, THE DIPHOSPHATE

19     AND THE TRIPHOSPHATE

20             THE COURT:  IN THE BRIEFING THERE WAS QUITE A

21     DISCUSSION, INCLUDING MERCK'S OWN HANDBOOK, AS TO WHETHER THE

22     ACT OF ADMINISTERING ENDS AT THE ENTRY POINT TO THE HUMAN BODY.

23             MR. RABINOWITZ:  THAT'S A COMPLETE RED HERRING,

24     YOUR HONOR, LET ME EXPLAIN WHY.

25             LET'S IMAGINE THE PATIENT SWALLOWS A PILL AT MIDNIGHT.

1    WE WANT TO KNOW WHETHER, LET'S SAY, TO MAKE IT CLEAR, THAT THE

2    NURSE GIVES THE -- PROVIDES THE PATIENT WITH A PILL AT MIDNIGHT

3    WHICH THE PATIENT SWALLOWS IMMEDIATELY.

4         WE WANT TO KNOW WHETHER PROVIDING THAT PILL WITH

5    SOFOSBUVIR WAS AN ACT OF INFRINGEMENT AT MIDNIGHT.  WE NEED TO

6    ANSWER THAT QUESTION -- TO ANSWER THAT QUESTION, WE NEED TO

7    KNOW WHETHER SOFOSBUVIR IS A PRODRUG OF THE COMPOUND OF THE

8    INVENTION.  IF IT WAS, PROVIDING IT WAS AN ACT OF INFRINGEMENT.

9         SO IT'S NOT A MATTER OF WHEN THE ACT OF INFRINGEMENT

10   OCCURS, IT'S A MATTER OF WHAT CONSTITUTES AN ACT OF

11   INFRINGEMENT.

12        THE COURT:  BECAUSE THE KNOWN CONSEQUENCE OF THE

13   ADMINISTRATION OF IT IS THE INFRINGEMENT.

14        MR. RABINOWITZ:  AS PROFESSOR WUEST EXPLAINED TO YOU

15   LAST WEEK, THE VERY PHRASE "PRODRUG OF A COMPOUND" MEANS ONLY

16   ONE THING, IT MEANS ONE COMPOUND, THE PRODRUG THAT IS

17   TRANSFORMED OR CONVERTED BY METABOLISM INTO ANOTHER.

18        IT'S LIKE SAYING YOU CAN'T INTERPRET THE PHRASE "PARENT

19   OF THE CHILD" WITHOUT REGARD TO THE DESCENDANTS OF THE PERSON

20   IN QUESTION.  IT'S NOT A MATTER OF WHEN THEY HAVE CHILDREN,

21   IT'S A MATTER OF WHETHER THEY HAVE CHILDREN.

22        SO THIS IS NOT A MATTER OF WHEN THE PRODRUG CONVERTS TO

23   THE COMPOUND OF THE INVENTION, IT'S A MATTER OF WHETHER IT

24   DOES.

25        THE COURT:  OKAY.  GO AHEAD.

1          MR. RABINOWITZ:  SO HAVING SET THE CONTEXT OF THE

2     TERM, IT IS AS WE POINT OUT, AND I DON'T THINK THIS IS DENIED,

3     EXPRESSLY DEFINED IN THE SPECIFICATION.

4          AND IT'S DEFINED SO THAT IT'S CLEAR IT CAN BE, THAT

5     ADMINISTERING CAN BE ACCOMPLISHED IN TWO WAYS.

6          SO ADMINISTERING A COMPOUND SHOULD BE UNDERSTOOD TO MEAN,

7     AND THE FIRST WAY IS PROVIDING A COMPOUND OF THE INVENTION, OR

8     A PRODRUG OF A COMPOUND OF THE INVENTION TO THE INDIVIDUAL IN

9     NEED.

10          THE COURT:  AND SO THAT WOULD BE THE ENTIRE UNIVERSE

11     OF PRODRUGS THAT TRANSFORM INTO COMPOUNDS OF THE INVENTION.

12          MR. RABINOWITZ:  AGAIN, IT WOULDN'T COVER THE

13     PRODRUGS THEMSELVES.

14          SO IF YOU USED A PRODRUG FOR TREATING HEPATITIS B, IT

15     WOULD NOT FALL WITHIN THE SCOPE OF THIS CLAIM.  REMEMBER THE

16     CLAIM IS DIRECTED TO A METHOD OF TREATING HEPATITIS C VIRUS.

17          THE COURT:  OH, I SEE.

18          SO IF IT WERE DETERMINED AT SOME FUTURE DATE THAT

19     TRIPHOSPHATE ALSO TREATS SOME DIFFERENT DISEASE, YOU WOULDN'T

20     SAY THAT THIS IS NOT INFRINGEMENT.

21          MR. RABINOWITZ:  THAT'S EXACTLY RIGHT.

22          THERE ARE MANY INSTANCES LIKE THAT, THE MINOXIDIL, THE

23     HAIR RESTORER, WAS ACTUALLY BEING TESTED AS I THINK AN

24     ANTIHYPERTENSIVE AGENT.

25          IT'S OFTEN THE CASE THAT DRUGS MAY HAVE MULTIPLE AND

1    PERHAPS UNEXPECTED EFFECTS, BENEFICIAL EFFECTS OR SIDE EFFECTS.

2         AND SO IF YOU DISCOVER A NEW USE FOR AN OLD COMPOUND,

3    THAT'S ACTUALLY IN THE STATUTE, A NEW USE FOR AN OLD PRODUCT,

4    THAT LEADS TO A METHOD OF TREATMENT CLAIM.

5         AND SO THAT'S WHY IT'S IMPORTANT, THIS SAYS NOTHING ABOUT

6    ANY OTHER USE THAT MAY BE MADE OF A PRODRUG OR INDEED A

7    COMPOUND.

8              THE COURT:  OKAY.

9              MR. RABINOWITZ:  IT'S A METHOD OF TREATMENT CLAIM.

10        SO -- AND SO THIS METHOD OF TREATMENT CAN BE CARRIED OUT

11   AS CLAIMED IN TWO WAYS, EITHER BY PROVIDING TO THE PATIENT,

12   HAVING A HEPATITIS C VIRUS INFECTION, A COMPOUND OF THE

13   INVENTION, OR A PRODRUG OF A COMPOUND OF THE INVENTION.

14        SO LET'S JUST LOOK AT SOME BASIC FUNDAMENTAL CLAIM

15   CONSTRUCTION TO SEE WHAT THE IMPLICATION OF THIS IS.  THIS

16   IS -- SPECIFICATIONS CAN DEFINE TERMS IMPLICITLY, BUT THIS IS

17   AN EXPRESS DEFINITION.

18        AND THERE'S A HIERARCHY OF TOOLS FOR PERFORMING CLAIM

19   CONSTRUCTION THAT THE FEDERAL CIRCUIT HAS DEFINED.  INTRINSIC

20   EVIDENCE OUTWEIGHS EXTRINSIC EVIDENCE, IT TRUMPS IT.  AND IN

21   THE HIERARCHY, THE SPECIFICATION IS AT THE TOP.

22        AND THE LEADING CASE WHICH IS THE EN BANC OPINION IN

23   PHILLIPS V. AWH CORP, THE FEDERAL CIRCUIT SAID THE

24   SPECIFICATION IS ALWAYS HIGHLY RELEVANT TO THE CLAIM

25   CONSTRUCTION ANALYSIS, USUALLY IT IS DISPOSITIVE, IT IS THE

1    SINGLE BEST GUIDE TO THE MEANING OF A DISPUTED TERM.  AND

2    THAT'S WITHOUT EVEN CONFINING THAT PRINCIPLE TO SPECIFICATIONS

3    THAT HAVE EXPRESSED DEFINITIONS.

4         THE NEXT QUOTE FROM PHILLIPS, AND I APOLOGIZE IT'S

5    ACTUALLY AT 1316, NOT PAGE 1315, IS DEFINES, IT'S A HUMPTY

6    DUMPTY WORLD.  IF YOU REMEMBER ALICE THROUGH THE LOOKING GLASS,

7    HUMPTY DUMPTY SAID TO ALICE, WHEN I USE A WORD, IT MEANS

8    WHATEVER I SAY IT MEANS.

9         WELL, THE FEDERAL CIRCUIT HAS SAID THAT AN INVENTOR COULD

10   BE HIS OWN LEXICOGRAPHER AND NARRATE, AND THIS IS AN

11   ENFORCEMENT OF THAT PRINCIPLE.

12        AND THE FEDERAL CIRCUIT SAID, OUR CASES RECOGNIZE THAT

13   THE SPECIFICATION MAY REVEAL A SPECIAL DEFINITION GIVEN TO THE

14   CLAIM TERM BY THE PATENTEE THAT DIFFERS FROM THE MEANING IT

15   WOULD OTHERWISE POSSESS; IN SUCH CASES, THE INVENTOR'S

16   LEXICOGRAPHY GOVERNS.

17        AND THAT'S WHY IT'S IRRELEVANT WHAT THE MERCK MANUAL SAYS

18   "ADMINISTERING" NORMALLY MEANS.  THE MERCK MANUAL IS AN

19   EXCELLENT SOURCE PUBLISHED BY MERCK.

20             THE COURT:  WELL, MERCK ISN'T THE PATENTEE.

21             MR. RABINOWITZ:  IT IS.

22             THE COURT:  THIS ISN'T ONE YOU BOUGHT, THIS IS ONE

23   THAT YOU ACTUALLY DEVELOPED?

24             MR. RABINOWITZ:  THIS WAS THE RESULT OF A JOINT

25   RESEARCH PROGRAM THAT WE SPENT YEARS AT MERCK AND ISIS AND WAS

1    AN EXTREMELY IMPORTANT COLLABORATION BETWEEN THEM.

2         SO THE MERCK MANUAL, I WOULD SAY IT'S AN UNIMPEACHABLE

3    SOURCE GIVEN WHERE ITS PROVINCE IS, BUT IT DOESN'T ADDRESS THE

4    MEANING OF "ADMINISTERING," IN A PATENT WHICH HAS A SPECIAL

5    DEFINITION WHICH UNDER PHILLIPS DISPLACES THE ORDINARY MEANING.

6         THE COURT:  WELL, I WOULD ABSOLUTELY AGREE WITH THAT.

7    THE MERCK MANUAL HAS BEEN UTILIZED AND DEFINED BY THE FEDERAL

8    CIRCUIT, BUT I WOULD AGREE CERTAINLY IN THIS PATENT MERCK WAS

9    FREE OR THE PATENTEE WAS FREE TO DEPART FROM A MORE GENERIC OR

10   EVEN COMMON UNDERSTANDING OF A TERM.

11         MR. RABINOWITZ:  YES.

12         AND WHAT YOUR HONOR IS REFERRING TO, THERE'S A PRINCIPLE

13   THAT TERMS ARE PRESUMED TO HAVE THEIR ORDINARY MEANING IN THE

14   FIELD, AND YOU LOOK AT RELIABLE SOURCES IN THE RELEVANT FIELD

15   OF ENDEAVOR, UNLESS THE SPECIFICATION EITHER IMPLICITLY OR

16   EXPRESSLY GIVES THEM DIFFERENT MEANING.  AND HERE THIS IS

17   EXPRESSLY DONE.

18         SO THE ORDINARY MEANING IS IRRELEVANT, AND I WOULD SAY IS

19   NOT REALLY A FIT SUBJECT FOR INQUIRY IN THE CONTEXT OF THIS

20   PATENT BECAUSE THERE IS AN EXPRESS DEFINITION IN THE

21   SPECIFICATION.

22         THE COURT:  YEAH.  OKAY.

23         MR. RABINOWITZ:  AND THE OTHER THING THAT IS

24   IMPORTANT, ALSO IN PHILLIPS, IS THAT, AND I KNOW THIS IS THE

25   DIFFICULTY WITH CLAIM CONSTRUCTION IN TECHNICAL PATENTS, THE

1    COURT MUST UNDERSTAND WHAT THE SPECIFICATION SAYS FOR WHAT IT

2    CONVEYS TO A PERSON OF SKILL IN THAT RELEVANT FIELD.

3         AND SO THIS REALLY, THERE'S REALLY THREE QUOTES FROM THE

4    SAME PLACE IN THE PHILLIPS CASE, THE THIRD IS THE MOST

5    IMPORTANT.

6         THE FEDERAL CIRCUIT HAS EXPLAINED IT IS THE PERSON OF

7    ORDINARY SKILL IN THE FIELD OF THE INVENTION THROUGH WHOSE EYES

8    THE CLAIMS ARE CONSTRUED.  SUCH A PERSON IS DEEMED TO READ THE

9    WORDS USED IN THE PATENT DOCUMENTS WITH AN UNDERSTANDING OF

10   THEIR MEANING IN THE FIELD, AND TO HAVE KNOWLEDGE OF ANY

11   SPECIAL MEANING AND USAGE IN THE FIELD.

12        AND THIS RELATES REALLY TO THE WORD "PRODRUG" WHICH IS

13   PART OF THE DEFINITION.

14        THE COURT:  WELL, I DON'T THINK ANYONE DISAGREES WITH

15   WHAT A PRODRUG IS.

16        MR. RABINOWITZ:  BUT IT'S IMPORTANT, AND THIS IS THE

17   CASE LAW PRECEDENT THAT EMPHASIZES THE COURT, IN CONSTRUING THE

18   DEFINITION, MUST UNDERSTAND WHAT A PRODRUG OF A COMPOUND MEANS

19   AS A PERSON OF SKILL IN THE FIELD OF MEDICINAL CHEMISTRY WOULD

20   UNDERSTAND THAT PHRASE.

21        THE COURT:  WELL, AND DO I HAVE A DECLARATION FROM

22   YOUR EXPERT THAT SETS THIS OUT.

23        MR. RABINOWITZ:  NOT A DECLARATION, YOU HAVE AN

24   EXPLANATION.  AND YOU HAVE -- WE SUBMITTED WITH OUR OPENING

25   BRIEF, AND I WILL COME TO THAT IN A SECOND, A REVIEW ARTICLE BY

```
 1       PROFESSOR STELLAR, THE DEFINITION PROVIDED BY DR. WUEST IS
 2       PERHAPS MORE ACCESSIBLE.
 3              THE COURT:  BUT WHAT DR. WUEST TOLD ME LAST WEEK IS
 4       NOT EVIDENCE FOR CLAIMS CONSTRUCTION, LET'S NOT CONFUSE THAT.
 5              MR. RABINOWITZ:  IT WASN'T EVIDENCE, BUT YOU HAVE
 6       DOCUMENTARY EVIDENCE IN THE RECORD ABOUT WHAT THE ORDINARY
 7       MEANING OF PRODRUG IS IN THE FORM OF PROFESSOR STELLAR'S REVIEW
 8       ARTICLE WHICH WE SUBMITTED WITH OUR OPENING BRIEF.
 9              THAT, I THINK, IS NOT BEING DENIED OR DISPUTED WITH
10       GILEAD.  THEY TOOK NO ISSUE WITH THAT IN THEIR OPPOSING BRIEF.
11              AND SO THIS IS WHAT I THINK GOVERNS HERE, THE THIRD
12       QUOTE, THE INVENTOR'S WORDS, THEY ARE USED TO DESCRIBE THE
13       INVENTION, THE INVENTOR'S LEXICOGRAPHER MUST BE UNDERSTOOD AND
14       INTERPRETED BY THE COURT AS THEY WOULD BE UNDERSTOOD AND
15       INTERPRETED BY A PERSON IN THAT FIELD OF TECHNOLOGY.
16              SO THAT'S WHAT'S GOING ON IN THE DEFINITION OF PRODRUG.
17       AND I WILL COME TO THAT IN A FEW SLIDES IF YOU WILL PERMIT.
18              SO LET ME JUST AGAIN EMPHASIZE THAT MERCK'S PROPOSED
19       DEFINITION IS, TAKEN VERBATIM FROM THE SPECIFICATION.  GILEAD'S
20       PROPOSED DEFINITION IS NOT, AND IT INCLUDES TWO ADDITIONAL
21       PHRASES, AND I WANT TO DISCUSS THEM SEPARATELY.  THEY REALLY
22       ARE TWO ADDITIONAL LIMITATIONS.
23              THE FIRST LIMITATION IS THAT SOMEHOW THE DEFINITION WHICH
24       INCLUDES THE PHRASE "PRODRUG OF A COMPOUND," MUST BE UNDERSTOOD
25       WITHOUT REFERENCE TO IN VIVO TRANSFORMATION OF THOSE COMPOUNDS
```

1    OR PRODRUGS.  AND THAT'S WHAT I WILL DISCUSS FIRST, THEN I WILL

2    DEAL WITH THE SECOND LIMITATION AFTER.

3        SO LET'S JUST TALK ABOUT THE FIRST ONE, WITHOUT REFERENCE

4    TO IN VIVO TRANSFORMATION OF THOSE COMPOUNDS OR PRODRUGS.

5        WE SUBMIT THAT IS INCONSISTENT WITH THE VERY NATURE OF A

6    PRODRUG.  AND HERE'S THE EXPLANATION GIVEN BY PROFESSOR WUEST

7    WHICH WAS NOT EVIDENCE, TOGETHER WITH IN THE SECOND BULLET

8    POINT, THE DEFINITION GIVEN BY THE REVIEW ARTICLE BY PROFESSOR

9    STELLAR THAT WE SUBMITTED.  AND THEY BOTH SAY THE SAME THING,

10   "A PRODRUG IS A MEDICATION ADMINISTERED IN A PHARMACOLOGICALLY

11   INACTIVE FORM WHICH IS THEN CONVERTED INTO ACTIVE FORM BY A

12   NORMAL METABOLIC PROCESS."

13       THE COURT:  I DON'T THINK THAT'S DISPUTED.  I DON'T

14   THINK IT IS AT ALL.

15       AND I THINK I UNDERSTOOD IT, MAYBE ONE OF THE FEW THINGS

16   I CAN SAY WITH CONFIDENCE I DID UNDERSTAND IN THE SCIENCE, BUT

17   I GET THAT.

18       MR. RABINOWITZ:  SO YOU KNOW, SO WE ARE RELYING, IF

19   YOU LIKE, AND PROFESSOR STELLAR'S QUOTE ADDRESSES IT EVEN MORE

20   DIRECTLY BECAUSE HE SAID PRODRUGS MUST UNDERGO CHEMICAL

21   TRANSFORMATION WITHIN THE BODY PRIOR TO EXERTING THEIR

22   PHARMACOLOGICAL OR THERAPEUTIC ACTION.

23       SO WHEN THE SPECIFICATION SAYS TO A PERSON OF SKILL IN

24   THIS FIELD, YOU CAN ACCOMPLISH THE METHOD OF ADMINISTERING BY

25   PROVIDING TO THE PATIENT A PRODRUG OF A COMPOUND OF THE

1    INVENTION, THIS MEANS A PRODRUG WHICH MUST UNDERGO CHEMICAL

2    TRANSFORMATION.

3           THE COURT:  IT SEEMS TO ME IT MUST, OTHERWISE IT'S

4    JUST A DRUG.

5           MR. RABINOWITZ:  OTHERWISE IT'S JUST A DRUG, EXACTLY.

6        SO THAT'S WHY WE BELIEVE THAT ADDING A LIMITATION TO THAT

7    DEFINITION THAT SAYS, WITHOUT REFERENCE TO IN VIVO

8    TRANSFORMATION, IS ANTITHETICAL TO THE VERY IDEA OF A PRODRUG.

9           THE COURT:  SO HERE YOUR NUMBER 2, THE SECOND ISSUE,

10   THE INTERESTING THING TO ME IS CERTAINLY IT'S TRUE THAT GILEAD

11   IS INTRODUCING A CONCEPT HERE THAT IS BEYOND THE

12   SPECIFICATION'S DEFINITION.

13       BUT WHAT I WAS INTERESTED IN IN YOUR OWN BRIEF IS THAT

14   YOU, ON PAGE 10 OF YOUR REPLY BRIEF, TOLD ME WHAT THE PHRASE,

15   PRODRUG OF A COMPOUND OF THE INVENTION MEANS.

16       AND THAT'S AT THE -- AT LINES 18 AND 19, ON PAGE 10.

17          MR. RABINOWITZ:  AND THAT IS EXACTLY.  THAT APPLIES

18   THE ORDINARY MEANING OF PRODRUG TO THE PHRASE --

19          THE COURT:  SO HERE'S MY QUESTION, AND I'M SOUNDING

20   LIKE A BROKEN RECORD ON IT, I GUESS, UNTIL I FEEL LIKE I HAVE

21   AN ANSWER, I WILL KEEP ASKING.

22       GILEAD IS GIVING ME A DEFINITION OF PRODRUG OF A COMPOUND

23   AND YOU ARE TOO, AND YET YOU ARE TELLING ME THAT YOU DON'T WANT

24   ME TO CONSTRUE THAT TERM.

25          AND YET WHEN YOU STAND BEFORE THE JURY WITH YOUR

1    DEFINITION, IF I ADOPT THAT AS THE CONSTRUCTION OF

2    ADMINISTERING, THE TERM PRODRUG OF A COMPOUND OF THE INVENTION

3    IS EMBEDDED IN YOUR DEFINITION.  AND I WILL HAVE NOT GIVEN THE

4    JURY ANY DEFINITION OF THAT TERM PRODRUG OF A COMPOUND OF THE

5    INVENTION.

6          AND SO I GET BACK TO THIS, WILL EACH OF YOU THEN BE FREE

7    TO ARGUE YOUR OWN DEFINITION OF THAT TERM TO THE JURY?

8                MR. RABINOWITZ:  NO, YOUR HONOR.

9          WE THINK THAT THE COURT SHOULD RESOLVE THAT ISSUE BY

10   ISSUING A MARKMAN OPINION REJECTING GILEAD'S PROPOSED

11   LIMITATION.

12         AND IF THE COURT WISHES TO CLARIFY THE CONSTRUCTION FOR

13   THE BENEFIT OF THE JURY, OR ONCE THE COURT HAS ISSUED A RULING,

14   WE WILL PROPOSE JURY INSTRUCTIONS TO THE JURY WHICH MAKES IT

15   CLEAR THAT THE COURT WILL HAVE RESOLVED THAT ISSUE AS A RESULT

16   OF THIS PROCEEDING.

17               THE COURT:  AND SO IN FACT YOU ARE BOTH ASKING ME TO

18   CONSTRUE THAT TERM.  YOU ARE BOTH ASKING THAT BECAUSE BY

19   REJECTING GILEAD'S, I MUST ACCEPT YOUR DEFINITION OF THAT TERM.

20               MR. RABINOWITZ:  WE HAVE NO OBJECTION IF THE COURT

21   ISSUES AN OPINION SAYING "PRODRUG OF A COMPOUND OF THE

22   INVENTION MEANS, THEN TAKES IT'S ORDINARY MEANING FROM OUR

23   BRIEF OR PROFESSOR STELLAR ARTICLE.

24               THE COURT:  HERE'S MY CONCERN.  IF YOU ARE BOTH

25   ACTUALLY ASKING ME TO CONSTRUE THAT TERM, I WOULD CONSTRUE THAT

1    TERM SEPARATELY FROM THE TERM ADMINISTERING, BECAUSE TO ME

2    ADMINISTERING IS AN ACT THAT, AS YOU SAY, IS INFORMED BY ITS

3    CONSEQUENCES.

4         BUT YOU ARE REALLY TALKING ABOUT ADMINISTERING, GIVING

5    THAT TABLET TO THE PATIENT TO SWALLOW IS AN ACT OF

6    INFRINGEMENT, BECAUSE WE KNOW THE CONSEQUENCE OF SWALLOWING THE

7    PILL IS TO SET IN MOTION THE IN VIVO TRANSFORMATION THAT

8    BECOMES THE COMPOUND OF THE INVENTION

9         MR. RABINOWITZ:  YOUR HONOR, I WOULD DISAGREE

10   SLIGHTLY BECAUSE THE PHRASE IN THE PATENT IS "ADMINISTERING A

11   COMPOUND."  IN THE CLAIM.  THE WORD -- THAT'S WHY I GAVE YOU

12   THE CONTEXT OF ADMINISTERING TO A MAMMAL IN NEED THEREOF, A

13   THERAPEUTICALLY EFFECTIVE AMOUNT OF A COMPOUND.

14        AND SO THAT'S WHY THE SPECIFICATION SPEAKS TO WHAT IT

15   MEANS TO ADMINISTER A COMPOUND.

16        THE COURT:  SO A PRODRUG IS A COMPOUND.

17        MR. RABINOWITZ:  YES.

18        SO IT SAYS A COMPOUND OF STRUCTURAL FORMULA III, THAT

19   DEFINES WHAT A COMPOUND OF THE INVENTION IS.

20        THE COURT:  SO THAT'S A LIMITATION.

21        MR. RABINOWITZ:  SO CERTAIN COMPOUNDS DEFINED BY THE

22   STRUCTURAL FORMULA ARE COMPOUNDS OF THE INVENTION FOR PURPOSES

23   OF THIS CLAIM.  EACH CLAIM DEFINES THE INVENTION BEING

24   PROTECTED BY THAT CLAIM.

25        THE COURT:  AND THAT'S AN EXPRESS LIMITATION OF THE

```
1    WORD COMPOUND.

2              MR. RABINOWITZ:  YES.  THAT DEFINES A COMPOUND OF THE

3    INVENTION.

4         THEN ADMINISTERING SAYS YOU CAN ACCOMPLISH THIS EITHER BY

5    PROVIDING THAT COMPOUND OF THE INVENTION OR A PRODRUG OF THE

6    COMPOUND OF THE INVENTION.

7         AND SO THE DEFINITION OF ADMINISTERING DESCRIBES THE --

8    WHAT IS IT THAT SATISFIES THE CLAIMS REQUIREMENT THAT YOU

9    ADMINISTER A COMPOUND OF THE INVENTION.

10        AND THE SPECIFICATION SAYS YOU CAN DO IT BY PROVIDING

11   THAT COMPOUND OR PROVIDING A PRODRUG OF THAT COMPOUND.

12             THE COURT:  SO IF ONE ADMINISTERS COUGH SYRUP, THAT'S

13   NOT, IT DOESN'T MATTER, THAT'S NOT ADMINISTERING IN THE TERMS

14   OF THIS.

15             MR. RABINOWITZ:  IT'S NOT ADMINISTERING THE COMPOUND

16   OF THE INVENTION BECAUSE IT NEITHER CONTAINS SUCH A COMPOUND

17   NOR DOES IT CONTAIN A PRODRUG.

18             THE COURT:  AND IS IT DOESN'T TREAT THIS ILLNESS.

19             MR. RABINOWITZ:  IT WOULDN'T BE THERAPEUTICALLY

20   EFFECTIVE EITHER.

21             THE COURT:  OKAY.  ALL RIGHT.

22             MR. RABINOWITZ:  SO I DO THINK THE COURT HAS TO

23   RESOLVE THIS ISSUE.

24             THE COURT:  I THINK SO TOO.

25             AND -- BECAUSE AT A SUPERFICIAL LEVEL IT APPEARS THAT I
```

1    COULD SIMPLY, IF I GO YOUR WAY, ADOPT YOUR CONSTRUCTION, CITE

2    PHILLIPS, CITE THE SPECIFICATION AND DO NOTHING MORE.

3              MR. RABINOWITZ:  WE WOULD LIKE YOU TO EXPLAIN THAT

4    THE PROPOSED LIMITATIONS, IT NEEDN'T BE IN THE FORMAL PHRASE

5    WHICH CONSTRUES THE CLAIMS, BUT THE MARKMAN ORDER WOULD

6    CONSIDER AND REJECT THOSE PROPOSED LIMITATIONS TO SAY THAT THE

7    PHRASE, THE CLAIM DOES NOT INCLUDE THOSE LIMITATIONS, AND THAT

8    WOULD GIVE US GUIDANCE FOR PROPOSING JURY INSTRUCTIONS THAT ARE

9    CONSISTENT WITH YOUR HONOR'S RULING.

10        THAT'S THE BENEFIT OF DOING MARKMAN IN ADVANCE,

11   OTHERWISE, THERE'S NO REQUIREMENT MARKMAN CAN BE DONE AT THE

12   THRESHOLD, ONE CAN DO IT IN THE COURSE OF ADOPTING JURY

13   INSTRUCTIONS, THEN OF COURSE ONE PLAIN SIMPLE INSTRUCTION THAT

14   ARE SUITABLE TO GIVE TO THE JURY.

15             THE COURT:  THE ENORMITY OF THAT TASK AND THE BURDEN

16   ON COUNSEL TO PREPARE YOUR CASE TO THE JURY AT THE LAST MINUTE

17   WOULD BE EXTRAORDINARY.

18             MR. RABINOWITZ:  IT IS SOMETIMES MUCH MORE CONVENIENT

19   TO DO IT THIS WAY ESPECIALLY BECAUSE, YOU KNOW, IN ADVANCE OF

20   THE EXPERT REPORTS, WHAT THE CLAIMS MEAN FOR PURPOSES OF THE

21   CASE.

22             THE COURT:  SURE.

23             MR. RABINOWITZ:  SO I THINK IT WOULD BE HELPFUL --

24             THE COURT:  AND SO YOU ARE ASKING ME TO REJECT IT

25   BECAUSE IT'S OUTSIDE THE DEFINITION ITSELF.

1          MR. RABINOWITZ:  IT'S INCOMPATIBLE WITH THE

2     DEFINITION ITSELF, NOT JUST THAT IT'S EXTRANEOUS, IT'S

3     INCONSISTENT WITH, CANNOT BE SQUARED WITH THE DEFINITION.

4          AND THE FIRST LIMITATION IS ANTITHETICAL TO THE VERY

5     NOTION OF A PRODRUG.  I SUBMIT YOU CANNOT POSSIBLY UNDERSTAND

6     WHAT A COMPOUND OF A PRODRUG IS WITHOUT TAKING INTO ACCOUNT HOW

7     THE PRODRUG IS TRANSFORMED TO SEE WHETHER IT IS A PRODRUG OF A

8     COMPOUND.

9          IF YOU SIMPLY IGNORE AND ERASE FROM YOUR CONSCIENCE WHAT

10    HAPPENS TO THE PRODRUG AFTER IT'S ABSORBED INTO THE BODY, YOU

11    CANNOT POSSIBLY TELL WHETHER IT'S A PRODRUG OF A PARTICULAR

12    COMPOUND OR NOT.  YOU ONLY KNOW BY KNOWING WHETHER IT GETS

13    CONVERTED.

14          THE COURT:  I GUESS I'M FEELING THAT, I COULD BE

15    WRONG, I KNOW I'M JUMPING AHEAD, THAT IF I ADOPT YOUR

16    DEFINITION AND GO THE NEXT STEP OF REJECTING, ESPECIALLY THE

17    SECOND PORTION OF GILEAD'S, THIS CASE IS ESSENTIALLY OVER.

18          MR. RABINOWITZ:  WE THINK THAT THERE WILL -- WE DO

19    NOT KNOW HOW THERE COULD BE DISPUTED FACTS TO CONTRADICT THE

20    PROPOSITION THAT PATIENTS WHO USE SOFOSBUVIR DIRECTLY INFRINGE

21    THE CLAIMS OF THE COMPOSITION PATENT, WHICH NOW WE JUST DON'T

22    ACCEPT A DEFINITION OF COMPOUND, THEY ARE LITERALLY MAKING IN

23    THEIR BODIES AND USING COMPOUNDS THAT ARE CLAIMED.

24          AND WE THINK THE SAME WOULD BE TRUE FOR DIRECT

25    INFRINGEMENT WITH THIS CLAIM UNDER OUR CONSTRUCTION.

```
 1              THE COURT:  WELL, IT --
 2              MR. RABINOWITZ:  WHICH IS, OF COURSE, WHY GILEAD HAS
 3      AN INCENTIVE TO SEEK TO IMPORT LIMITATIONS.
 4              THE COURT:  AND IT PUTS IN SHARP RELIEF THE
 5      IMPORTANCE OF THIS CONSTRUCTION BECAUSE IT DOES SEEM PIVOTAL IN
 6      THE CASE.  ALTHOUGH, OF COURSE I HAVEN'T REALLY SEEN YOUR
 7      INFRINGEMENT ARGUMENTS HERE, BUT IT SEEMS LIKE THIS IS THE KEY
 8      POINT.
 9              MR. RABINOWITZ:  WELL, I THINK THAT FROM THE CONTEXT
10      THAT WE'VE PROVIDED, ESPECIALLY GILEAD, IT SHOULD BE READILY
11      APPARENT THAT UNDER THE -- IF EFFECT IS GIVEN TO THE DEFINITION
12      IN THE SPECIFICATION, IT CERTAINLY DESCRIBES TREATING THE
13      PATIENT BY PROVIDING A PRODRUG OF THE TRIPHOSPHATE METABOLITE.
14              THE COURT:  SO ANYTHING THAT BECOMES TRIPHOSPHATE IS
15      YOURS, ANYTHING THROUGH A PRODRUG?
16              MR. RABINOWITZ:  NO, NO, ONLY TRIPHOSPHATE HAVING THE
17      PARTICULAR STRUCTURE THAT THE MERCK SCIENTISTS FOUND WILL MAKE
18      AN INHIBITOR.
19          LOTS OF THINGS ARE TRIPHOSPHATE OUTSIDE THE SCOPE OF
20      THESE CLAIMS.  THESE ARE TRIPHOSPHATE OF A PARTICULAR TYPE.
21              THE COURT:  OKAY.  GO AHEAD.
22              MR. RABINOWITZ:  SO -- AND JUST TO REMIND YOU, THIS
23      IS WHY WE THINK THAT THE NOTION OF NOT LOOKING AT
24      TRANSFORMATION IS ANTITHETICAL TO THE IDEA OF A PRODRUG.
25              ASPIRIN IS A PRODRUG OF SALICYLIC ACID.  IF YOU HAD TO BE
```

1    BLIND TO WHAT HAPPENS AFTER YOU SWALLOW ASPIRIN, YOU COULDN'T

2    POSSIBLY TELL WHETHER IT'S A PRODRUG OF SALICYLIC ACID OR NOT.

3         THE WHOLE NOTION OF A PRODRUG REQUIRES ONE TO AVERT TO

4    WHETHER IT'S TRANSFORMED --

5              THE COURT:  SO IT EXPLAINS WHY ONE IS TAKING THE

6    ASPIRIN IS BECAUSE ONE WANTS THE REMEDY THAT SALICYLIC ACID IS

7    GOING TO GIVE.

8              MR. RABINOWITZ:  YES.

9              THE COURT:  WELL, THAT'S RIGHT.  YOU DON'T TAKE A

10   PRODRUG, IT DOES NOTHING ITSELF.

11             MR. RABINOWITZ:  BY DEFINITION.

12        I MEAN, IF SOFOSBUVIR DIDN'T CONVERT TO THE TRIPHOSPHATE,

13   IT WOULD BE USELESS.

14             THE COURT:  YES.

15             MR. RABINOWITZ:  SO THE SECOND PART IS THAT GILEAD IS

16   TRYING TO REWRITE THE SECOND PART OF THE DEFINITION SO IT MEANS

17   EXACTLY THE SAME AS THE FIRST.

18        SO THEIR PROPOSED CONSTRUCTION SAYS THE PHRASE "PRODRUG

19   OF A COMPOUND MEANS THOSE PRODRUGS THAT ARE EXPRESSLY CLAIMED."

20        AND SO THEY ARE TRYING TO TURN "PRODRUG OF A COMPOUND OF

21   THE INVENTION" TO "PRODRUG THAT IS A COMPOUND OF THE

22   INVENTION."

23             THE COURT:  AND SO LET'S TALK ABOUT THIS.

24        THIS KIND OF PATENT IS PARTICULARLY INACCESSIBLE TO

25   SOMEONE WITH MY EDUCATION AND TRAINING BECAUSE THERE ARE VERY

1    FEW ENGLISH WORDS IN IT, AND I CAN ONLY READ ENGLISH WORDS.

2         SO I JUST, I DO NOT KNOW HOW ELSE TO SAY IT, BUT AS HARD

3    AS A SOFTWARE PATENT MIGHT BE OR A PATENT OF A DEVICE, IT'S

4    WRITTEN IN ENGLISH, AND I CAN STUDY THE WORDS.  I CANNOT READ

5    THIS PATENT.  IT'S NOT ACCESSIBLE TO ME.

6         AND SO WHEN I LOOK AT THIS, I DON'T KNOW WHETHER ANY

7    PRODRUGS ARE EXPRESSLY CLAIMED IN THIS PATENT.  AND I CAN ONLY

8    EVALUATE THAT GENERALLY A PATENT IS GOING TO GIVE EXAMPLES

9    WHICH ARE NOT LIMITATIONS.  I MEAN, I KNOW THE GENERAL LAW,

10   BUT -- SO HELP ME THROUGH THIS.

11        YOUR ARGUMENT IS THAT THERE IS NOTHING IN THIS PATENT

12   THAT LIMITS THE PRODRUGS THAT ARE ELIGIBLE TO BE COVERED UNDER

13   THIS PATENT IF THEY FULFILL THE REMAINDER OF THE REQUIREMENTS

14   OF THE PATENT.

15        MR. RABINOWITZ:  WITH ONE SLIGHT MODIFICATION.

16        THE METHOD OF TREATMENT CAN BE CARRIED OUT BY PROVIDING

17   ANY PRODRUG THAT CONVERTS TO A COMPOUND OF THE INVENTION.

18        AGAIN, THIS CLAIM DOESN'T COVER PRODRUGS THEMSELVES.  SO

19   THIS IS NOT AN INVENTION WHICH SAYS WE HAVE FOUND ALL THESE

20   PRODRUGS AND WE ARE PATENTING THEM.

21        THIS PATENT SAYS WE'VE FOUND THE STRUCTURAL FEATURES THAT

22   DISTINGUISH CERTAIN COMPOUNDS THAT ARE USEFUL FOR TREATING

23   HEPATITIS C VIRUS INFECTION, AND WE ARE NOW TEACHING THE WORLD

24   AND CLAIMING, A METHOD OF TREATING HEPATITIS C VIRUS INFECTIONS

25   BY PROVIDING COMPOUNDS WITH THOSE FEATURES, AND YOU CAN CARRY

1    THAT OUT EITHER BY PROVIDING THE COMPOUNDS THEMSELVES OR BY

2    USING A PRODRUG STRATEGY.

3          AND PRODRUGS WERE WELL KNOWN AT THE TIME.  THERE ARE

4    REFERENCES INCORPORATED IN THE PATENT, AND THE LAW IS ANYTHING

5    INCORPORATED BY REFERENCE IN THE SPECIFICATION IS AS GOOD AS

6    STATED EXPRESSLY THERE, BUT TO AVOID A HUNDRED OR THOUSAND PAGE

7    SPECIFICATION, WE RELY ON INCORPORATION.

8          AND IN FACT, THE TYPES OF -- THE PARTICULAR TYPES OF

9    PRODRUG, THAT SOFOSBUVIR IS ALSO WELL KNOWN.  SO PEOPLE KNEW

10   HOW TO DO THIS.

11         I THINK THAT GILEAD WILL, AND HAS IN THE CONTENTIONS THAT

12   THEY HAVE SERVED ON US, RAISED ISSUES OF ENABLEMENT AND SO ON,

13   THOSE ARE VALIDITY QUESTIONS THAT EVENTUALLY WILL HAVE TO BE

14   DECIDED BY THE JURY.

15              THE COURT:  YES.

16              MR. RABINOWITZ:  BECAUSE THEY WILL BE DISPUTED.

17         THIS IS NOT SOMETHING THAT THE COURT SHOULD NOW OR NEED

18   EVER DECIDE, I'M HAPPY TO SAY.

19              THE COURT:  WELL, I HOPE YOU REMEMBER THAT WHEN IT

20   COMES TIME FOR SUMMARY JUDGEMENT, AND WHEN FILING FIVE BOXES OF

21   MATERIALS ON A USELESS MOTION.

22              MR. RABINOWITZ:  THAT'S WHY I EXPRESSLY USE THE WORD

23   DECIDE.

24         I THINK THE COURT MAY NEED TO RECOGNIZE THAT THERE'S A

25   DISPUTE AND THAT THE DISPUTE IS A FACTUAL DISPUTE.

1           THE COURT:  WELL, IT'S A TANGENT, NEVERMIND.  YOU

2    DON'T NEED MY RANT ON THAT TODAY.

3           MR. RABINOWITZ:  BUT IN TERMS -- SO I DON'T THINK THE

4    COURT NEEDS TO UNDERSTAND ANY INTRICACIES OF CHEMISTRY EXCEPT

5    OF NOTION OF A PRODRUG OF A COMPOUND.

6           SO IF THE CLAIM SAYS YOU CAN CARRY THIS METHOD OUT BY

7    PROVIDING A PRODRUG THAT CONVERTS TO A COMPOUND OF THE

8    INVENTION, IF THE PRODRUGS OF A COMPOUND IS LIMITED TO PRODRUGS

9    WHICH ARE COMPOUNDS OF THE INVENTION, IT COLLAPSES THOSE TWO

10   IDEAS.

11          THE COURT:  I SEE.

12          MR. RABINOWITZ:  AND THAT'S WHAT THEY ARE TRYING TO

13   DO.  THEY ARE TRYING TO SAY PROVIDING A PRODRUG THAT IS A

14   COMPOUND OF THE INVENTION, IN OTHER WORDS, A CLAIMED COMPOUND.

15          AND IF YOU LIMIT IT TO PRODRUGS THAT ARE COMPOUNDS OF THE

16   INVENTION, THEN THAT'S THE FIRST PART OF THE DEFINITION.

17   THAT'S ALREADY COVERED AND WOULD MAKE THE SECOND PART

18   EXTRANEOUS.

19          THE COURT:  WELL, THAT'S NOT EXACTLY WHAT THIS SAYS.

20          MR. MCCANN WILL HELP ME ON THIS, BUT WHAT GILEAD IS

21   WRITING IS THAT PRODRUG OF A COMPOUND MEANS THOSE PRODRUGS THAT

22   ARE EXPRESSLY CLAIMED.

23          AND WHAT HE ARGUES IS THAT THERE IS A DEFINED CATEGORY OR

24   GROUP OF PRODRUGS THAT HAVE BEEN EXPRESSLY CLAIMED IN THIS

25   PATENT AND IT IS NOT THE ENTIRE UNIVERSE OF PRODRUGS THAT CAN

1    BE TRANSFORMED INTO A COMPOUND OF THE INVENTION.

2         SO I THINK HE'S, WHAT HE'S SUGGESTING IS THAT YOU HAVE IN

3    THIS PATENT, ONLY PROTECTED A SUBSET OF PRODRUGS.

4         MR. RABINOWITZ:  SO I THINK WE NEED TO DISTINGUISH

5    SHARPLY BETWEEN DISCLOSED AND CLAIMED.

6         THE COURT:  YES.

7         MR. RABINOWITZ:  THERE ARE CERTAIN EXAMPLES IN THE

8    PATENT OF THINGS THAT ARE PRODRUGS.  AND THE STRUCTURAL FORMULA

9    IN CLAIM 1 OF THE '499 PATENT DOES INCLUDE SOME THINGS WHICH

10   ARE PRODRUGS, BUT THOSE ARE COMPOUNDS OF THE INVENTION.

11        IN OTHER WORDS, COMPOUNDS IS USED AS CLAIMED.  IF YOU

12   SIMPLY ELIMINATED THE SECOND PART OF THE DEFINITION IN THE

13   SPECIFICATION AND READ IS IT AS, ADMINISTERING A COMPOUND

14   SHOULD BE UNDERSTOOD TO MEAN PROVIDING A COMPOUND OF THE

15   INVENTION, THAT WOULD COVER THOSE CLAIMED, THOSE PRODRUGS WHICH

16   ARE IN THE FORMULA.  THE SECOND PART HAS TO ADD SOMETHING MORE

17   OR IT'S REDUNDANT.

18        AND THAT'S A STRONG PRINCIPLE THE INVENTORS SATISFIED THE

19   SECOND WAY OF SATISFYING ADMINISTERING TO INCLUDE SOMETHING

20   MORE, OTHERWISE WE ARE STRIKING THAT OUT OF THE CLAIM BY

21   READING IT TO BE COTERMINOUS WITH PROVIDING A COMPOUND OF THE

22   INVENTION.

23        THE COURT:  BECAUSE YOU ARE SAYING NO PRODRUGS ARE

24   EXPRESSLY CLAIMED?

25        MR. RABINOWITZ:  NO, I'M SAYING SOME COMPOUNDS OF THE

1    INVENTION ARE PRODRUGS.

2          THE COURT:  SOME COMPOUNDS OF THE INVENTION ARE

3    PRODRUGS?

4          MR. RABINOWITZ:  STRUCTURAL FORMULA THAT APPEARS IN

5    CLAIM 1 INCLUDES SOME COMPOUNDS THAT ARE PRODRUGS.

6          THE COURT:  AND THOSE ARE BY EXAMPLE ONLY IN YOUR --

7          MR. RABINOWITZ:  NO, THEY ARE WITHIN THE STRUCTURAL

8    FORMULA IN THE CLAIM, AND THEREFORE THEY ARE COMPOUNDS THE OF

9    THE INVENTION IN THIS DEFINITION.

10          THE COURT:  BUT IT IS NOT EXCLUSIVE.

11          MR. RABINOWITZ:  SO WHAT I'M SAYING IS THAT THIS

12    DEFINITION HAS TWO PARTS.

13          NUMBER ONE, YOU CAN PROVIDE A COMPOUND OF THE INVENTION.

14          THE COURT:  AND THAT COMPOUND CAN BE A PRODRUG OR A

15    DRUG.

16          MR. RABINOWITZ:  YES.

17          THE COURT:  I SEE.

18          MR. RABINOWITZ:  AND YOU CAN HAVE A PRODRUG OF A

19    PRODRUG.

20          IN FACT, THE DIAGRAM I WILL SHOW YOU IN A SECOND SHOWS

21    THAT SOFOSBUVIR ITSELF CONVERTS INTO A MONOPHOSPHATE WHICH IS

22    INACTIVE, THEN A DIPHOSPHATE WHICH ISN'T ACTIVE, THEN A

23    TRIPHOSPHATE WHICH ISN'T ACTIVE, WHICH IS THE ACTIVE PART.

24          SO THERE'S --

25          THE COURT:  THAT'S SOMETHING I HADN'T THOUGHT OF, THE

1    MONO AND DI AS BEING PRODRUGS THEMSELVES.

2              MR. RABINOWITZ:  THEY ARE COMPOUNDS.  IF YOU LOOK AT

3    THE DEFINITIONS, THEY ARE COMPOUNDS THAT HAVE TO BE CONVERTED

4    TO SOMETHING ELSE TO MAKE, TO EXERT THEIR PHARMACOLOGICAL

5    ACTION.

6              THE COURT:  OKAY.

7              MR. RABINOWITZ:  AND YOU CAN HAVE MORE COMPLICATED

8    PRODRUGS, YOU CAN PUT IN, ADD VARIOUS MOIETIES, VARIOUS

9    CHEMICAL GROUPS.

10             THE COURT:  SO YOU ARE TELLING ME THAT COMPOUND OF

11   THE INVENTION IS NOT SYNONYMOUS WITH THE DRUG OF THE INVENTION.

12             MR. RABINOWITZ:  I'M SAYING -- THAT'S RIGHT.

13   BECAUSE --

14             THE COURT:  DRUG MEANING SOMETHING THAT'S ACTIVE.

15             MR. RABINOWITZ:  BECAUSE THERE ARE SOME COMPOUNDS OF

16   THE INVENTION WHICH ARE PRODRUGS AND NEED CONVERSION TO EXERT

17   THEIR ACTIVITY.

18         AND IN FACT, THAT FORMULA INCLUDES MONO AND DIPHOSPHATE

19   COMPOUNDS WHICH ARE NOT PHARMACOLOGICALLY ACTIVE UNTIL THEY

20   HAVE BEEN CONVERTED INTO TRIPHOSPHATES.

21             THE COURT:  ALL RIGHT.  LET ME JUST BE SURE.

22         WELL, IF COMPOUND OF THE INVENTION IS BROAD ENOUGH TO

23   INCORPORATE BOTH ACTIVE DRUGS AND PRODRUGS --

24             MR. RABINOWITZ:  COMPOUNDS OF THE INVENTION MEANS

25   COMPOUNDS WHOSE STRUCTURE FITS WITHIN THE FORMULA IN CLAIM 1.

1        SO YOUR HONOR, I'M NOT SURE IF YOU HAVE A COPY OF THE

2   PATENT AVAILABLE TO YOU, WE CAN PROVIDE ONE.

3        THE COURT:  I HAVE IT RIGHT HERE.

4        MR. RABINOWITZ:  OKAY.  IF WE GO TO COLUMN 137.

5        THE COURT:  HOLD ON, LET ME JUST CATCH UP WITH YOU.

6        MR. RABINOWITZ:  SO IT HAS THAT STRUCTURAL FORMULA

7   III.

8        I DON'T THINK WE NEED TO GET INTO THE DETAILS, BUT THE

9   PRINCIPLES OF IT IS AS PROFESSOR WUEST SHOWED YOU LAST WEEK, IT

10  PREDICTS THE ARRANGEMENTS AND HOW ATOMS ARE CONNECTED TO EACH

11  OTHER.  IT HAS OPTIONS, SOMETHING WHICH MR. MCCANN EXPLAINED

12  LAST WEEK AS WELL.  THAT DEFINES A CLASS OF COMPOUNDS, SOME OF

13  WHICH ARE PRODRUGS AND MOST OF WHICH ARE NOT.

14        THOSE ARE THE COMPOUNDS OF THE INVENTION FOR PURPOSES OF

15  CLAIM 1.

16        THE COURT:  SO A COMPOUND OF THE INVENTION HAS SOME

17  DRUGS AND SOME PRODRUGS.

18        MR. RABINOWITZ:  ACTUALLY, IT HAS -- IT INCLUDES

19  THINGS WHICH ARE TRIPHOSPHATES AND THINGS WHICH ARE NOT.  SO IT

20  HAS SOME THINGS WHICH ARE --

21        THE COURT:  WOULD YOU RATHER SAY ACTIVE AND INACTIVE?

22        MR. RABINOWITZ:  YEAH.

23        IT'S NOT USUAL IN PATENT CLAIMS TO DISTINGUISH BETWEEN

24  THINGS WHICH ARE THEMSELVES ACTIVE DRUGS OR NOT AS LONG AS THEY

25  ARE USEFUL --

```
 1                THE COURT:  BECAUSE PRODRUG WE KNOW IS INACTIVE.

 2                MR. RABINOWITZ:  YES.

 3                THE COURT:  SO THAT'S WHY I'M TRYING TO, A PRODRUG

 4     OF --

 5                MR. RABINOWITZ:  SO I WOULD AGREE WITH YOU.

 6           THIS INCLUDES COMPOUNDS WHICH ARE THEMSELVES DIRECTLY

 7     ACTIVE AND OTHER COMPOUNDS WHICH CONVERT TO ACTIVE COMPOUNDS.

 8                THE COURT:  BECAUSE BY THAT DEFINITION, THE SECOND

 9     PHRASE OF YOUR DEFINITION IS SUPERFLUOUS BECAUSE THE FIRST ONE

10     IS BROAD ENOUGH TO INCLUDE BOTH, SO I'M JUST CONFUSED.

11           IF A COMPOUND OF THE INVENTION INCLUDES BOTH PRODRUGS AND

12     DRUGS THAT ARE ACTIVE AND INACTIVE OR A PRODRUG OF --

13                MR. RABINOWITZ:  SO LET ME GIVE YOU A CONCRETE

14     EXAMPLE TO TRY TO CLARIFY THAT.

15           LET'S IMAGINE WE WERE TALKING ABOUT SALICYLIC ACID.

16     LET'S IMAGINE THAT THIS FORMULA INCLUDED ASPIRIN AND SALICYLIC

17     ACID BUT NOT OTHER PRODRUGS OF SALICYLIC ACID.

18           PROVIDING A COMPOUND OF THE INVENTION WOULD COVER

19     PROVIDING SALICYLIC ACID OR PROVIDING ASPIRIN EVEN

20     THOUGH ASPIRIN IS A --

21                THE COURT:  EXPRESSLY.

22                MR. RABINOWITZ:  YES.

23                THE COURT:  OKAY.

24                MR. RABINOWITZ:  BUT IF IT SAYS OR PROVIDING A

25     PRODRUG OF A COMPOUND OF THE INVENTION, THAT INCLUDES OTHER
```

```
1        PRODRUGS OF SALICYLIC ACID.

2                 THE COURT:  OTHER THAN ASPIRIN.

3                 MR. RABINOWITZ:  OTHER THAN ASPIRIN.

4                 THE COURT:  OH, I SEE.

5                 MR. RABINOWITZ:  AND SO BY SAYING THE ONLY PRODRUGS

6        OF THE COMPOUNDS ARE THOSE THAT ARE EXPRESSLY CLAIMED, THEY ARE

7        COLLAPSING THOSE TWO THINGS INTO ONE.

8                 THE COURT:  I UNDERSTAND.  I THINK IT'S VERY BROAD.

9        I DON'T KNOW HOW THAT HOLDS UP LATER, BUT THAT'S NOT MY CONCERN

10       TODAY.

11                MR. RABINOWITZ:  THAT'S EXACTLY RIGHT, YOUR HONOR.

12                THE COURT:  IT WILL BE MY CONCERN, I RECOGNIZE.

13       OKAY.  ALL RIGHT.

14                MR. RABINOWITZ:  SO THAT'S WHY WE SAY IT'S

15       EFFECTIVELY A REWRITE THAT EVISCERATES THE SECOND PART OF THE

16       DEFINITION OF "ADMINISTERING" BY MAKING "PRODRUG OF A COMPOUND

17       OF THE INVENTION" SYNONYMOUS WITH COMPOUNDS OF THE INVENTION

18       THAT HAPPEN TO BE PRODRUGS.

19            THEN THIS IS REALLY TO SET IT IN CONTEXT, BUT I THINK

20       FROM YOUR HONOR'S QUESTIONS YOU HAVE IT IN MIND.

21            THE CENTRAL PORTION OF THIS DIAGRAM IS TAKEN FROM

22       GILEAD'S OWN BRIEF.  SOME OF THE STEPS ARE OMITTED, THERE ARE

23       MORE STEPS OVER HERE, AND IT ACTUALLY DOESN'T MATTER HOW MANY

24       STEPS THE PRODRUG HAS TO GO THROUGH TO BECOME THE ACTIVE DRUG,

25       THE BODY DOES THAT.  BUT IT GOES THROUGH SOME STEPS BEFORE IT
```

1    BECOMES THE MONOPHOSPHATE THEN THE DIPHOSPHATE, EACH OF WHICH

2    IS INACTIVE BUT THEY ARE COMPOUNDS OF THE INVENTION.

3              THE COURT:  IT SEEMS LIKE EACH OF THOSE STEPS IN

4    ITSELF IS A PRODRUG.  EACH TRANSFORMATION YOU COULD HAVE

5    VIRTUALLY AN INFINITE NUMBER OF PRODRUGS.

6              MR. RABINOWITZ:  HAPPENS ALL THE TIME.  THINGS GET

7    METABOLIZED IN MULTIPLE STEPS UNTIL THEY BECOME ACTIVE AGENTS.

8         AND WHAT ONE DOES IN THE PRODRUG STRATEGY IS YOU USE THE

9    BODY'S EXISTING MACHINERY TO CONVERT THE PRODRUG INTO THE

10   ACTIVE AGENT.  AND THIS IS PREDICTABLE, IT'S KNOWN, THESE TYPES

11   OF PHOSPHOROUS PRODRUGS WERE PUBLISHED --

12             THE COURT:  WHAT YOU ARE REALLY SAYING IS THAT ANY

13   PRODRUG THAT LIGHTS UP THE ROUTE TO THE TRIPHOSPHATE THAT IS

14   THE COMPOUND OF THIS INVENTION IS PATENTED.

15             MR. RABINOWITZ:  NO.

16        THE PRODRUG ISN'T PATENTED BUT THE METHOD OF TREATMENT

17   THAT IS PATENTED CAN BE PERFORMED BY ADMINISTERING A PRODRUG.

18             THE COURT:  OKAY.

19             MR. RABINOWITZ:  AGAIN, IF THE PRODRUG TREATS CANCER,

20   YOU KNOW, IT'S DIFFERENT.

21        SO THERE'S A BIG DIFFERENCE BETWEEN PATENTING A PRODRUG

22   AND PATENTING A METHOD OF TREATMENT THAT CAN BE CARRIED OUT

23   USING A PRODRUG STRATEGY.  THE PRODRUG IN THE METHOD OF

24   TREATMENT IS REALLY A DELIVERY DEVICE.

25             THE COURT:  ALL RIGHT.

1       SO THEN, SO THAT I UNDERSTAND THIS, ANY PRODRUG THAT

2   LIGHTS UP THIS ROUTE TO TRIPHOSPHATE, FOR THE PURPOSE OF

3   TREATING HEPATITIS C, IS COVERED.

4       MR. RABINOWITZ:  IF A PATIENT IS TREATED BY

5   ADMINISTERING SOME PRODRUG THAT CONVERTS TO A TRIPHOSPHATE OF

6   THE COMPOUNDS OF THIS CLASS, DEFINED BY THE FORMULA, THEN THAT

7   WILL BE A PERFORMANCE OF THE METHOD CARRYING OUT OF THIS

8   CLAIMED METHOD, YES.

9       THE COURT:  WELL, I GUESS WE WILL GET TO PREEMPTION

10  ISSUES LATER.

11      OKAY.

12      MR. RABINOWITZ:  SO I JUST WANT TO ADDRESS SOME OF

13  THE ARGUMENTS THAT GILEAD RAISED IN ITS OPPOSITION BRIEF,

14  AGAIN, TO OUR PROPOSED CONSTRUCTION.

15      ONE IS "IN COMBINATION WITH," WE SPOKE ABOUT THAT

16  ALREADY.

17      THE COURT:  YES.

18      MR. RABINOWITZ:  AS LONG AS THE PATIENT RECEIVES TWO

19  THERAPEUTIC AGENTS DURING THE COURSE OF THERAPY.

20      WE ACTUALLY, I DON'T UNDERSTAND HOW THAT IN ANY WAY

21  CONSTRAINS WHETHER YOU PERFORM THE SOFOSBUVIR PART BY GIVING,

22  YOU KNOW, THE TRIPHOSPHATE OR GIVING THE PRODRUG, IT HAS NO

23  BEARING WHETHER YOU GIVE A SECOND AGENT OR NOT.

24      AND THIS IS THE LABEL FOR SOFOSBUVIR, THIS IS GIVEN BY

25  GILEAD IN SUPPORT OF THEIR OPPOSITION.

1           YOU CAN SEE THAT SOVALDI, WHICH IS THE FIRST DRUG THAT

2    CONTAINS SOFOSBUVIR, IS USED IN COMBINATION WITH RIBAVIRIN.

3    THAT'S ANOTHER TABLET, DOESN'T SAY WHETHER YOU HAVE TO SWALLOW

4    IT AT THE SAME TIME OR SEPARATELY, OR PEGYLATED INTERFERON

5    WHICH IS ACTUALLY A DRUG GIVEN BY INJECTION.

6           THE COURT:  WHICH IS THE TRADITIONAL THERAPY.

7           MR. RABINOWITZ:  YES.  IT'S PART OF THE -- AND IN

8    FACT, USED WITH SOVALDI AS WELL FOR CERTAIN TYPES OF HEP C

9    INFECTIONS.

10          THE COURT:  I REALIZE THAT WAS STILL PART OF THE

11   TREATMENT, THAT'S UNFORTUNATE.

12          MR. RABINOWITZ:  YOU KNOW, IT'S A TOUGH DISEASE TO

13   TREAT AND SOME OF THE GENOTYPES ARE MORE RESISTANT THAN OTHERS

14   TO THERAPY.

15          AND YOU KNOW, MERCK AND OTHERS ARE WORKING TO DEVELOP

16   IMPROVED COMBINATION THERAPIES THAT MAY ELIMINATE THAT.

17          THE EXTRINSIC EVIDENCE ARGUMENT I THINK WE HAVE

18   ADDRESSED, THE MERCK MANUAL IS AN EXCELLENT SOURCE, BUT IT'S

19   NOT INCORPORATED BY REFERENCE.

20          THE COURT:  NO, IT'S NOT, BUT IT'S INTERESTING.

21          MR. RABINOWITZ:  AND INCIDENTALLY, THE MERCK MANUAL

22   EVEN IF IT WERE CONSIDERED, SUPPORT THE PROPOSITION THAT YOU

23   CAN IGNORE METABOLISM BECAUSE IT EXPRESSLY SAYS YOU HAVE TO

24   TAKE IT.

25          THE COURT:  IF I ACCEPT THIS AS A DEFINITION, AND HAD

1    THAT NOT BEEN THERE THEN THE MERCK MANUAL WOULD HAVE BEEN

2    VALUABLE.

3              MR. RABINOWITZ:  THEN WE WOULD HAVE ARGUED WHETHER

4    IT'S SUPPORTED IN THE DEFINITION OR NOT.

5              THE COURT:  SURE.

6              MR. RABINOWITZ:  AND THEN WE GET TO THE PROSECUTION

7    HISTORY ARGUMENT.

8              THE COURT:  YEAH.

9              MR. RABINOWITZ:  BECAUSE I THINK IT'S IMPORTANT TO

10   UNDERSTAND IN ORDER TO DISMISS IT.

11        SO I JUST WANT TO DISTINGUISH FOR THE COURT, GILEAD WAS

12   QUITE CORRECT IN CALLING IT A PROSECUTION DISCLAIMER.  THERE'S

13   ANOTHER DOCTRINE WHICH HAS A SIMILAR NAME CALLED PROSECUTION

14   HISTORY ESTOPPEL.  THAT'S NOT WHAT WE ARE TALKING ABOUT.

15             PROSECUTION HISTORY ESTOPPEL IS EASILY TRIGGERED BY ANY

16   NARROWING AMENDMENT TO THE CLAIMS OR EVEN ARGUMENTS MADE IN

17   SUPPORT OF PATENTABILITY, BUT IT DOESN'T AFFECT THE LITERAL

18   SCOPE OF THE CLAIM.  IT ONLY LIMITS THE EXTENT TO WHICH YOU CAN

19   EXPAND THE LITERAL SCOPE OF THE CLAIM BY REFERENCE TO THE

20   DOCTRINE OF EQUIVALENT.  WE ARE NOT TALKING ABOUT THAT HERE.

21             THE COURT:  AND YOU BOTH AGREE, SO THAT'S JUST A GOOD

22   DISTINCTION.

23             MR. RABINOWITZ:  YES.

24        WHAT WE ARE TALKING ABOUT IS ANOTHER DOCTRINE CALLED

25   PROSECUTION DISCLAIMER.  AND THE RARELY HAPPENS, THE

1    REQUIREMENTS ARE EXTREMELY EXACTING.  AND WHAT IT DOES IS IT

2    NARROWS THE LITERAL SCOPE OF THE CLAIM.

3            THE COURT:  I SEE.

4            MR. RABINOWITZ:  AND THAT'S THE DOCTRINE THAT GILEAD

5    IS ADVERTING TO NOW.

6        AND SO THE OMEGA ENGINEERING CASE ACTUALLY EXPLAINS HOW

7    DIFFICULT, IT MUST BE UNAMBIGUOUS, IT MUST BE A CLEAR

8    UNAMBIGUOUS DISCLAIMER.  IF THERE'S ANY AMBIGUITY, IF THERE ARE

9    DIFFERENT LEGITIMATE WAYS OF INTERPRETING THE EXCHANGE BETWEEN

10   THE APPLICANT AND THE EXAMINER, IT DOES NOT, IT CANNOT WORK TO

11   EFFECT A DISAVOW OF CLAIM SCOPE.

12       AND THOSE ARE THE QUOTATIONS FROM OMEGA ENGINEERING THAT

13   WE HAVE PROVIDED.

14           THE COURT:  YES.

15           MR. RABINOWITZ:  AND SO LET'S LOOK AT THE ENTIRETY OF

16   THE EXCHANGE ON THIS POINT BETWEEN THE EXAMINER AND THE

17   APPLICANT.

18       AND SO THIS IS TAKEN FROM THE SUBMISSION THAT GILEAD

19   PROVIDED IN SUPPORT OF ITS OPPOSITION, THE RESPONSIVE BRIEF.

20       THIS WAS, AT THE TIME, NEW CLAIM 53 WHICH BECAME AN

21   AMENDED FORM CLAIM 1 OF THE '499 PATENT.  AND AT THAT TIME IT

22   HAD THE SAME WORDS EXCEPT THAT IT SAID "OR A PHARMACEUTICALLY

23   ACCEPTABLE SALT OR ESTER PRODRUG THEREOF."  AND THIS WAS

24   CHANGED IN WHAT'S CALLED AN EXAMINER'S AMENDMENT, USUALLY

25   AMENDMENTS ARE MADE BY THE APPLICANTS SUBMITTED TO THE EXAMINER

```
1       AND THE EXAMINER ENTERS THEM OR NOT.

2            AN EXAMINER'S AMENDMENT IS THE LAST THING THAT HAPPENS

3       WHEN THE EXAMINER SAYS, I'M PREPARED TO ALLOW THE CLAIM IF YOU

4       WILL AUTHORIZE ME, THE EXAMINER, TO MAKE THE AMENDMENT.

5            SO THIS WAS DONE CONCURRENTLY.  AND NORMALLY IF THE

6       EXAMINER SAYS I'M REJECTING YOUR CLAIM FOR THIS REASON, YOU

7       KNOW WHY, AND THE APPLICANT THEN HAS 3 TO 6 MONTHS, DEPENDING

8       ON THE EXTENSIONS, TO RESPOND, EXPLAIN WHY IT'S BEING AMENDED,

9       WHAT'S BEING DONE WITH THE AMENDMENTS, SO YOU HAVE A RECORD.

10           BECAUSE IT WAS DONE IN THE EXAMINER'S AMENDMENT, THERE'S

11      NO RECORD OF WHY THE AMENDMENT WAS AS CORRECTED BY THE EXAMINER

12      OR AGREED TO BY THE APPLICANT.

13           AND I WILL SUBMIT THAT THERE'S AN EXCELLENT REASON WHY

14      THE EXAMINER SHOULD HAVE REQUIRED THIS AMENDMENT, AND THAT IS

15      BECAUSE THE WORD "ADMINISTERING" IN THE CLAIM ALREADY INCLUDES

16      PRODRUGS THAT CONVERT TO THE COMPOUNDS OF THE INVENTION.  AND

17      TO SAY, OR ESTER PRODRUG THEREOF, IS REDUNDANT AND CONFUSING.

18           AND SO AS WE SUBMITTED IN OUR REPLY BRIEF, WHAT WE THINK

19      WENT ON IS THAT THE EXAMINER ELIMINATED THE CONFUSION BY MAKING

20      THE EXAMINER'S AMENDMENT TO THE CLAIM WITH THE APPROVAL OF THE

21      APPLICANT'S ATTORNEY.

22              THE COURT:  BUT HE SUBSTITUTED ACYL DERIVATIVES.

23              MR. RABINOWITZ:  YES.  ACYL DERIVATIVES IS NOT

24      REDUNDANT BECAUSE ACYL DERIVATIVES ARE NOT SYNONYMOUS WITH THE

25      SUBCLASS OF PRODRUGS.
```

1    THE COURT:  BUT IT MUST HAVE HAD SOME RELATIONSHIP TO

2    ESTER PRODRUG.

3    MR. RABINOWITZ:  NO.

4    THE SUBSTITUTED PHRASE HAD NO RELATIONSHIP TO THE PHRASE

5    AT ALL.  AND SO THERE IS NO, AS OMEGA ENGINEERING SAID, THIS

6    SPARSE HISTORY PROVIDES NO BASIS FOR PROSECUTION DISCLAIMER.

7    THIS IS ABOUT AS AMBIGUOUS AS IT GETS.  IT CERTAINLY IS

8    NOT THE UNEQUIVOCAL DISAVOWAL OF CLAIM SCOPE, PARTICULARLY NOT

9    DISAVOWAL OF PRODRUGS THAT ARE PART OF THE DEFINITION THAT

10   WOULD BE REQUIRED TO INVOKE THE DOCTRINE OF PROSECUTION

11   DISCLAIMER.

12   AND THEN FINALLY, AND I THINK YOUR HONOR IS THERE, WE

13   SUBMIT THAT GILEAD'S INVALIDITY ARGUMENTS OUGHT NOT TO PLAY ANY

14   PART IN THIS.  WE REGARD THEM AS MERITLESS.

15   JUST TO PUT IT BLUNTLY, GILEAD IS NO FRIEND OF THESE

16   CLAIMS IN THE SUMMARY JUDGEMENT ACTION.

17   MR. MCCANN:  WE WILL STIPULATE TO THAT, YOUR HONOR.

18   THE COURT:  THAT WAS ONE OF THOSE ARGUMENTS IN THE

19   BRIEF I WAS PROBABLY GOING TO IGNORE AND NOT EVEN ADDRESS.

20   I JUST -- WE WILL GET TO THAT.  AND SO BE IT, IF WHAT YOU

21   WANT NOW CAUSES INVALIDITY LATER, THEN THAT'S THE WAY IT GOES.

22   MR. RABINOWITZ:  WE WILL DEAL WITH THAT BEFORE THE

23   RIGHTS FINDER OF FACTS FOR ANY ARGUMENTS WHICH ARE ADVANCED.

24   WE HAVE THE PRESUMPTION OF VALIDITY, WE HAVE CLEAR AND

25   CONVINCING BURDEN OF EVIDENCE, WE HAVE THE JURY WHICH IS THE

1    FINDER OF ANY FACTS WHICH ARE NECESSARY, WE HAVE HERE ZERO

2    EVIDENCE BEFORE THIS COURT NOW OF INVALIDITY AND AN ALLEGATION

3    OF INVALIDITY.

4              THE COURT:  YES.

5          AND IF YOUR REQUESTED CONSTRUCTION CAUSES YOU TO LOSE IN

6    THAT NEXT PROCEEDING BEFORE THE JURY, THEN SO BE IT.

7              MR. RABINOWITZ:  WE WILL VIGOROUSLY DENY AND DISPUTE

8    THAT THE CLAIMS ARE ALLEGEDLY INVALID, BUT TO CARVE OUT WHAT IS

9    WITHIN THE DEFINITION IN THE SPECIFICATION FOR FEAR THAT THERE

10   MIGHT BE INVALIDITY IS TO --

11             THE COURT:  NO, THAT'S NOT MY CONCERN.

12             MR. RABINOWITZ:  -- IS TO DO AN END RUN AROUND THE

13   PRESUMPTION AND INVALIDITY OF PROOF.

14             THE COURT:  ALL RIGHT.  WE CAN MOVE ON FROM THIS

15   ARGUMENT.

16             MR. RABINOWITZ:  THEN YOUR HONOR, I JUST WANTED TO

17   SAY A FEW WORDS ABOUT THE PATENT SYSTEM BECAUSE IT RELATES TO

18   THE POLICY ARGUMENTS WE HEARD IN THE PRESENTATION LAST WEEK AND

19   I SUSPECT ARE GOING TO BE ADVANCED AGAIN WHEN I SIT DOWN.

20         AND THE PATENT SYSTEM, OUR PATENT SYSTEM STIMULATES

21   INNOVATION TWO WAYS.

22         THE FIRST IS OBVIOUS, IT ENCOURAGES PEOPLE TO MAKE

23   INVENTIONS AND DISCLOSE THEM TO THE PUBLIC.  IN EXCHANGE FOR A

24   PATENT WHICH GIVES THE INVENTORS THE RIGHT TO EXCLUDE OTHERS

25   FROM PRACTICING THEIR INVENTION DURING THE LIFE OF THE PATENT,

1    WHICH BY STATUTE NOW IS 20 YEARS FROM APPLICATION.  SO MOST

2    PEOPLE KNOW THAT.

3         THERE'S A SECOND WAY IN WHICH THE PATENT SYSTEM

4    ENCOURAGES INNOVATION, AND THAT IS DISCLOSURE OF INVENTIONS IN

5    PATENTS OR PATENT APPLICATIONS.  AND THE PATENT OFFICE NOW

6    PUBLISHES PATENT APPLICATIONS AFTER 18 MONTHS FOR THIS REASON,

7    THIS POLICY REASON, IT WAS WRITTEN IN THE STATUTE.  IT

8    ENCOURAGES PEOPLE TO MAKE FOLLOW-ON INVENTIONS.

9         AGAIN, FOR WHICH THEY CAN RECEIVE A PATENT WHICH HAS ITS

10   OWN 20-YEAR TERM WHICH STARTS LATER AND ENDS LATER.

11        AFTER THE PATENTS EXPIRE, THE PATENT SUBJECT MATTER

12   BECOMES -- GOES INTO THE PUBLIC DOMAIN AND CAN BE USED WITHOUT

13   TRIBUTE.

14        AND TYPICALLY THE FIRST PATENT IS BROADER, IT'S OFTEN THE

15   FUNDAMENTAL INVENTION.  THE SECOND, THE FOLLOW-ON INVENTION, IS

16   OFTEN A SELECTION THAT SOMEONE HAS FOUND THE BEST WAY OF

17   CARRYING OUT THE FOUNDATIONAL INVENTION OR AN IMPROVEMENT.

18   THEY HAVE FOUND A BETTER WAY OF CARRYING OUT THE FOUNDATION

19   INVENTION.

20        SO IF I INVENT THE BICYCLE AND YOU PUT A MOTOR ON IT AND

21   MAKE IT A MOTOR BIKE, WHILE MY BICYCLE PATENT IS ENFORCED, YOU

22   CAN'T COMMERCIALIZE MAKING USE WITH MOTOR BIKES WITHOUT A

23   LICENSE FROM ME BECAUSE IT'S AN IMPROVEMENT ON THE BICYCLE.

24        BUT ONCE THE BICYCLE PATENT EXPIRES AND THE BICYCLES ARE

25   IN THE PUBLIC DOMAIN, THEN THERE'S ONLY THE MOTOR BIKE PATENT

1    UNTIL IT EXPIRES, THEN THE PUBLIC HAS ALL OF IT FREE OF CHARGE.

2         AND THESE ARE OFTEN CALLED DOMINANT AND SUBSERVIENT

3    PATENTS BECAUSE THE EARLIER ISSUED PATENT IS OFTEN BROADER AND

4    DOMINATES THE USE OF THE IMPROVEMENT UNTIL IT EXPIRES.

5         THE COURT:  SO THE IMPROVEMENT ITSELF GETS A PATENT

6    BUT IT REQUIRES A RESIDENCE LICENSE TO USE ITS PLATFORM.

7         MR. RABINOWITZ:  EXACTLY.

8         THE COURT:  SO THAT'S WHAT YOU WOULD CONSIDER THIS

9    SITUATION?

10        MR. RABINOWITZ:  THAT'S EXACTLY WHAT WE HAVE HERE.

11        THE MERCK AND ISIS SCIENTISTS MADE A FUNDAMENTAL

12   DISCOVERY.  THEY DISCOVERED THAT BY ATTACHING CERTAIN CHEMICAL

13   GROUPS TO THESE COMPOUNDS CALLED NUCLEOSIDE ANALOGS, THEY

14   OBTAIN COMPOUNDS THAT INHIBIT AN IMPORTANT ENZYME OF THE

15   HEPATITIS C VIRUS WHICH PROVIDES A METHOD FOR TREATING

16   HEPATITIS C VIRUS INFECTIONS.

17        SOFOSBUVIR IS AN APPLICATION OF THIS FUNDAMENTAL WORK

18   INVENTION.  THE REASON WHY SOFOSBUVIR INHIBITS THAT ENZYME OF

19   THE VIRUS, THE REASON WHY SOFOSBUVIR WORKS TO TREAT HEPATITIS C

20   VIRUS INFECTION IS BECAUSE IT CONTAINS A CHEMICAL GROUP CALLED

21   A METHYL GROUP, AT A CERTAIN POSITION OF THE COMPOUND CALLED

22   THE TWO PRIME CARBON.  AND THAT'S SOMETHING YOU DID HEAR ABOUT

23   LAST WEEK.

24        WITHOUT THE METHYL GROUP AT THE TWO PRIME CARBON,

25   SOFOSBUVIR WOULDN'T WORK, IT WOULD DO NO GOOD AT ALL.  IT WAS

1    MERCK AND ISIS THAT DISCOVERED THAT ATTACHING A METHYL GROUP AT

2    THE TWO PRIME CARBON CREATES A COMPOUND THAT INHIBITS THAT

3    ENZYME.  AND THAT ENABLED THEM TO GET CLAIMS TO COMPOUNDS AND

4    METHODS OF TREATING HEPATITIS C VIRUS INFECTION WHICH ARE AT

5    ISSUE IN THIS CASE.

6         AND NO ONE DENIES THAT SOFOSBUVIR IS A USEFUL AND HIGHLY

7    SUCCESSFUL DRUG.  THIS COURT DOESN'T HAVE TO DECIDE WHETHER

8    SOFOSBUVIR DESERVES ITS OWN PATENTS OR INDEED WHO IS ENTITLED

9    TO OWN THE PATENTS ON SOFOSBUVIR, THAT QUESTION IS THE SUBJECT

10   OF LITIGATION NOW IN THE DISTRICT OF DELAWARE.

11        WHAT IS AT ISSUE HERE IS WHETHER THE USE OF SOFOSBUVIR

12   USES THE INVENTION WHICH IS PATENTED IN THE PATENTS IN SUIT

13   ASSERTED HERE BY MERCK.

14        THE COURT:  IT SEEMS TO UNLOCK THE DOOR TO THIS

15   TREATMENT.

16        MR. RABINOWITZ:  THAT'S EXACTLY OUR SUBMISSION.

17        IT WAS A FUNDAMENTAL DISCOVERY AND SOFOSBUVIR WAS AN

18   APPLICATION, PERHAPS AN IMPROVEMENT OF IT.  SOFOSBUVIR MAY WELL

19   BE ENTITLED TO ITS OWN PATENTS, WE WOULD DISAGREE WITH GILEAD,

20   RESPECTFULLY, ON WHO OWNS THOSE PATENTS, BUT THAT'S NOT THE

21   SUBJECT OF THIS PROCEEDING.

22        THE COURT:  NO.

23        MR. RABINOWITZ:  BUT THAT IS IRRELEVANT TO THE

24   QUESTION OF WHETHER THE USE OF SOFOSBUVIR CARRIES OUT THE

25   INVENTION PROTECTED BY THESE MERCK PATENTS IN SUIT HERE.

1          TO ANSWER THAT QUESTION ACCURATELY, WE SUBMIT THE COURT

2     SHOULD GIVE THE TERM ADMINISTERING THE SCOPE THAT IS DEFINED

3     FOR IT IN THE SPECIFICATION OF THESE PATENTS.

4          AND WE BELIEVE THAT MERCK'S CONSTRUCTION IS PROPER, IT'S

5     IDENTICAL TO THE DEFINITION IN THE SPECIFICATION, IT DOES NOT

6     DELETE WORDS EXPRESSLY OR IMPLICITLY FROM THE DEFINITION, IT

7     DOESN'T ADD NEW LIMITATIONS TO THE DEFINITION FOUND IN THE

8     SPECIFICATION, AND IT'S CONSISTENT WITH BASIC SCIENTIFIC

9     PRINCIPLES OF A PRODRUGS THAT WERE EXPLAINED BY DR. WUEST AND

10    THAT ARE UNCONTROVERTED AND ESTABLISHED BY THE ARTICLE OF

11    PROFESSOR STELLAR.

12          THE COURT:  THANK YOU, MR. RABINOWITZ.

13          MR. MCCANN, I THINK IT WOULD PROBABLY BE A GOOD IDEA TO

14    TAKE A TEN-MINUTE BREAK SO THAT I DON'T HAVE TO TAKE A BREAK IN

15    THE MIDDLE OF YOUR PRESENTATION.

16          MR. MCCANN:  THAT'S FINE, YOUR HONOR.

17          THE COURT:  GOOD.  THANK YOU.  LET'S DO THAT.

18     (WHEREUPON A RECESS WAS TAKEN.)

19          THE COURT:  ALL RIGHT.  THANK YOU.  YOU MAY BE

20    SEATED.  ALL RIGHT, MR. MCCANN, WE WILL BE ABLE TO GIVE YOU AN

21    UNINTERRUPTED PRESENTATION AS WELL.

22          MR. MCCANN:  THANK YOU, YOUR HONOR.

23     MAY I PROCEED?

24          THE COURT:  YES, PLEASE.

25          MR. MCCANN:  YOUR HONOR, I THOUGHT I WOULD BEGIN

1    WHERE MR. RABINOWITZ LEFT OFF AND JUST PUT A LITTLE CONTEXT

2    AROUND TODAY'S HEARING.

3         AND MR. RABINOWITZ MADE THE POINT THAT THERE ARE A LOT OF

4    PATENTS THAT ARE FOUNDATIONAL, AND THEY ARE, AS HE PUT IT, ARE

5    OPEN DOORS TO NEW AREAS OF DEVELOPMENT.  AND HE SAID THAT MERCK

6    HAD DONE INNOVATIVE WORK IN THIS KIND OF MOLECULE, SPECIFICALLY

7    WITH THAT METHYL AT THE TWO PRIME POSITION.

8         AND WHAT I WOULD LIKE YOUR HONOR TO KEEP IN MIND, I

9    SUPPOSE IS, DO THE CLAIMS THAT MERCK HAS IN ITS PATENT COVER

10   MORE THAN WHAT MERCK INVENTED?  IS IT BROADER THAN THE

11   DISCLOSURE OF THAT PATENT?

12        YOUR HONOR RECALLS, I HOPE FROM THE TECH TUTORIAL, THAT

13   SOFOSBUVIR, I HAD BROKEN IT INTO THREE PARTS.  I AM NOW

14   REFERRING TO SLIDE 37 FROM THE TECH TUTORIAL.

15        THE COURT:  LET ME JUST OPEN THAT UP BECAUSE I HAVE

16   IT RIGHT HERE.  YEAH.

17        MR. MCCANN:  MR. RABINOWITZ WAS REFERRING YOU TO THE

18   CENTER PIECE WHICH IS CALLED THE SUGAR RING, AND IT HAS THE TWO

19   METHYL UP, AND HE WAS TELLING YOU THIS IS MERCK'S FOUNDATIONAL

20   CONTRIBUTION.

21        BUT MERCK'S PATENT WHICH HAS 154 EXAMPLES OF COMPOUNDS,

22   ALL OF THEM FAILED, NONE OF THEM EVER CAME TO MARKET.  MERCK,

23   TO THIS DAY, DOES NOT SELL A DRUG THAT PRACTICES THE '499

24   PATENT.

25        AND WHAT GILEAD DID AND ITS PREDECESSOR PHARMASSET, IT'S

1    NOT JUST A METHYL UP, IT'S ALSO THE FLUORINE DOWN AT THAT SAME

2    POSITION.  AND IT'S ALSO THE USE OF THAT PHOSPHORAMIDATES

3    PRODRUG.

4         TODAY WE ARE GOING TO BE FOCUSED ON WHETHER THEIR CLAIM

5    COVERS THIS PRODRUG.  BUT MY POINT IS --

6         THE COURT:  SO THEY SAY THAT THEIR CLAIM DOESN'T

7    COVER ANY PRODRUGS, PER SE.

8         MR. MCCANN:  IT DOES.  I'M GOING TO SHOW YOU THAT,

9    YOUR HONOR.

10        YOU ALSO MADE THE POINT THAT THIS PATENT IS QUITE

11   INACCESSIBLE AND NOT MUCH OF IT IS WRITTEN IN ENGLISH.  AND I

12   SHOULD TELL YOUR HONOR THAT I WAS A HISTORY MAJOR IN COLLEGE.

13   I WENT TO THE NAVAL ACADEMY AND THAT DID FORCE A FAIR BIT OF

14   SCIENCE DOWN MY THROAT, BUT IT WAS AGAINST MY WILL.  BUT THERE

15   IS ENGLISH IN THIS PATENT.

16        AND ONE THING THAT I THINK MERCK DID NOT DO IN THEIR

17   PRESENTATION IS WALK YOU THROUGH THE PERTINENT PORTIONS OF THE

18   PATENT THAT RELATE TO CLAIM CONSTRUCTION HERE.

19        SO I'M GOING TO DO THAT AS WELL, AND I THINK YOUR HONOR

20   IS GOING TO SEE QUITE A BIT OF IT IS IN ENGLISH AND IT DOES

21   CLEARLY STATE, AS MR. RABINOWITZ CLEARLY CONCEDED, THAT THERE

22   ARE PRODRUGS IN THIS CLAIM, BECAUSE THE POINT I WILL BE MAKING

23   IS THAT MY PRODRUG ISN'T ONE OF THEM.

24        THE COURT:  WELL, BUT I DON'T THINK MR. RABINOWITZ

25   SAID THERE WERE NO PRODRUGS IN THE CLAIM, HE SAID THAT THEY

1    WERE EXAMPLES.

2            MR. MCCANN:  THE CLAIM IS WHAT COVERS, IS WHAT

3    IDENTIFIES WHAT YOU OWN AS THE PATENT HOLDER.  AND WE DO HERE

4    HAVE TO CONSTRUE THAT CLAIM AND DETERMINE WHAT ARE THE LIMITS,

5    WHAT ARE THE BOUNDARIES OF THAT CLAIM.

6        SO AS I'M GOING TO SHOW YOU YOUR HONOR, THE FACT THAT

7    THEY HAVE PRODRUGS IN THE CLAIM -- IN FACT, WHY DON'T I INSTEAD

8    OF TALKING IN ABSTRACTS, WHY DON'T WE GO TO IT.

9        AND THERE ARE TWO ISSUES THAT GILEAD THINKS, TWO SETS OF

10   LANGUAGE THAT GILEAD THINKS SHOULD BE INCLUDED IN THE

11   DEFINITION HERE.

12       THE FIRST, WITHOUT REFERENCE TO IN VIVO TRANSFORMATION.

13   AND THE SECOND, THAT THE PRODRUGS ARE LIMITED TO THOSE CLAIMED.

14       I'M GOING TO TAKE THEM ONE AT A TIME IN REVERSE ORDER, SO

15   I'M GOING TO BEGIN WITH, THE PRODRUGS ARE LIMITED TO THOSE THAT

16   ARE CLAIMED.

17       AND I'M NOW SHOWING YOUR HONOR ON SLIDE 3 FROM THE PATENT

18   AT COLUMN 32, LINES 5 TO 8, THIS DEFINITION WHICH IS THE HEART

19   OF OUR DISCUSSION TODAY.  AND AS YOUR HONOR NOTED, WE ARE NOT

20   DISPUTING, WE ARE FINE WITH THE LANGUAGE AS FAR AS IT GOES,

21   ADMINISTERING SHOULD BE UNDERSTOOD TO MEAN PROVIDING A COMPOUND

22   OF THE INVENTION OR A PRODRUG OF THE COMPOUND OF THE INVENTION,

23   THAT'S FINE.

24       THE PROBLEM IS, WHAT PRODRUG?  ANY PRODRUG?  ANY

25   POSSIBILITY?

1          AND YOUR HONOR WAS FOCUSED ON THAT IN YOUR COMMENTS TO

2     MR. RABINOWITZ, FOR ONLY THOSE PRODRUGS EXPRESSLY CLAIMED.

3          AND THEN THE SECOND ISSUE IS GOING TO RELATE TO

4     COMPOUNDS, WHAT COMPOUNDS?  THE COMPOUNDS THAT THE DOCTOR

5     PROVIDES OR THE COMPOUNDS THE BODY PROVIDES TOO?

6          YOUR HONOR, WHEN YOU WERE SPEAKING TO MR. RABINOWITZ YOU

7     WERE ASKING ABOUT THE DEFINITION, AND SHOULD THE COURT JUST

8     APPLY THE DEFINITION BECAUSE IT CERTAINLY IS SIMPLE AND, YOU

9     KNOW, I GUESS EASILY APPLIED, THERE IT IS.

10         AND I THINK THERE'S THIS QUESTION OF, DOES THE COURT HAVE

11    THE AUTHORITY TO CHANGE THE DEFINITION AT ALL OR TO FURTHER

12    EXPLAIN WHAT IT MEANS IS PROBABLY A BETTER WAY OF SAYING IT.

13         AND THE ANSWER TO THAT QUESTION IS YES.  AS YOUR HONOR

14    KNOWS, IN THE MARKMAN PROCESS YOU DON'T JUST LOOK AT THE

15    LANGUAGE IN THE SPECIFICATION, YOU HAVE TO CONSIDER THE WHOLE

16    PATENT IN CONSTRUING THE TERM.  YOU HAVE TO LOOK AT THE CLAIM,

17    YOU HAVE TO LOOK AT THE SPECIFICATION, YOU HAVE TO LOOK AT THE

18    FILE WRAPPER, AND ALTHOUGH IT'S LESS IMPORTANT, YOU ALSO HAVE

19    TO LOOK AT EXTRINSIC EVIDENCE.

20         WHEN YOU ARE DEALING WITH A SPECIFIC DEFINITION IN A

21    PATENT, YOU DON'T JUST HAVE TO ACCEPT IT AS WRITTEN.  I THINK A

22    REALLY IMPORTANT CASE ON THIS IS ALLERGAN V. APOTEX CASE.  I

23    LOVE IT FOR TWO REASONS, ONE IT HELPS ME MAKE MY POINT, AND THE

24    OTHER ONE IS IT'S MY CASE.

25              THE COURT:  TWO GOOD REASONS.

1              MR. MCCANN:  YES.

2         THIS CASE, IT DEALT WITH A PATENT, YOUR HONOR, ABOUT HAIR

3    GROWTH, SPECIFICALLY EYELASHES.  AND THAT'S WHAT THE DRUG DID,

4    IT MADE YOUR EYE LASHES LONGER AND THICKER AND DARKER.  AND

5    THERE WAS A DEFINITION IN THE SPECIFICATION, AND I HAVE IT HERE

6    ON THE SCREEN, AND IT SAID, OKAY, IN THIS CLAIM, TREATING HAIR

7    LOSS, THAT MEANS, ARRESTING HAIR LOSS, REVERSING HAIR LOSS OR

8    BOTH, AND PROMOTING HAIR GROWTH.

9         AND WHEN I FIRST READ THAT DEFINITION I THOUGHT THE SAME

10   THING THAT THE DEFENDANTS WERE THINKING WHICH IS, MY CLIENT

11   ALLERGAN HAS A BIG PROBLEM HERE BECAUSE THE DRUG FROM THEIR

12   PERSPECTIVE ONLY PROMOTED HAIR GROWTH.

13        AND WHEN YOU READ THAT DEFINITION IT SAYS, NO, IT MEANS

14   ARRESTING HAIR LOSS OR REVERSING HAIR LOSS.  SO THAT'S SORT OF

15   A AND B, BUT YOU ALSO HAVE TO DO C, PROMOTING HAIR GROWTH.  YOU

16   HAVE TO HAVE A AND B AND C.

17        AND THAT CASE WE ARGUED TO THE DISTRICT COURT AND IT WENT

18   TO THE FEDERAL CIRCUIT.  AND THE FEDERAL CIRCUIT SAID, EVEN

19   THOUGH THAT WORD SAYS AND, TREATING HAIR LOSS MEANS ARRESTING

20   HAIR LOSS, REVERSING HAIR LOSS OR BOTH, AND PROMOTING HAIR

21   GROWTH, IT REALLY IS OR.

22        AND ONLY IN THE PATENT WORLD COULD AND MEAN OR.  BUT THE

23   REASON THE FEDERAL CIRCUIT SAID IS WHEN YOU LOOK AT THE ENTIRE

24   PATENT, NOT JUST THE DEFINITION BUT THE WHOLE PATENT, YOU CAN

25   SEE THAT THERE ARE MANY EXAMPLES OF THE DRUG BEING USED WHERE

1      THE DISCLOSURE SAYS IT'S JUST PROMOTING HAIR GROWTH.

2          SO THE FEDERAL CIRCUIT SAID YOU HAVE TO READ THIS

3      DEFINITION IN CONTEXT OF THAT INFORMATION.  AND WITH THAT IN

4      MIND, THIS CLAIM WILL COVER A DRUG THAT ONLY PROMOTES HAIR

5      GROWTH, DESPITE THAT "AND."

6          AND THAT IS THE SAME AS YOU HAVE HERE, YOUR HONOR.  YOU

7      HAVE A DEFINITION, BUT THERE'S SOME CLARIFICATION REQUIRED.

8      AND THE CLARIFICATION REQUIRED HERE IS WHAT IS THE WORLD OF

9      PRODRUGS THAT WE ARE TALKING ABOUT.  IS IT ALL OF THEM THAT CAN

10     BE USED TO TREAT HCV THAT METABOLIZES TO ONE OF THE STRUCTURES

11     IN THE CLAIM, OR IS IT JUST THE ONES THAT MERCK PUT INTO THE

12     CLAIM?

13         SO WHAT I DID, YOUR HONOR, TO TRY TO HELP MAKE MY POINT

14     IS I TOOK THE CLAIM, HERE CLAIM 1, THIS IS ON SLIDE 6 NOW, AND

15     I REPLACED THE WORD ADMINISTERING WITH THE DEFINITION THAT

16     MERCK IS PROPOSING.  SO I'M GOING TO DO THAT IN THE NEXT SLIDE.

17         AND YOUR HONOR HAD ACTUALLY SAID IN YOUR COMMENTS

18     EARLIER, AREN'T YOU REALLY ASKING ME TO REPLACE THESE WORDS?

19     AND I FELT REALLY GOOD ABOUT MYSELF RIGHT THEN BECAUSE I

20     THOUGHT, WELL GOOD, I THOUGHT AHEAD ENOUGH THIS TIME.

21         THE COURT:  BECAUSE THAT WOULD THEN GIVE ME THE EASY

22     ABILITY TO CONSTRUE THESE OTHER TERMS.

23         AND IN FACT MR. RABINOWITZ EFFECTIVELY WANTS ME TO DO

24     THAT AS WELL BY EXPRESSLY REJECTING YOURS, BUT YOU'RE ADDING

25     CONSTRUCTION BY SUPPORTING HIS.

1          MR. MCCANN:  YES.

2      SO WHAT I'M GOING TO SHOW YOU, YOUR HONOR, THERE HAS BEEN

3   SOME DISCUSSION TOO ABOUT REDUNDANCY.  AND I THINK THAT YOU

4   CAN, I THINK THAT THIS WILL MAKE CLEAR MY FUNDAMENTAL POINT,

5   THIS SLIDE AND THE NEXT ONE.

6      SO WHEN YOU REPLACE ADMINISTERING WITH MERCK'S PROPOSED

7   DEFINITION, NOW IT SAYS, A METHOD OF TREATING HCV COMPRISING

8   PROVIDING TO THE INDIVIDUAL IN NEED, AN EFFECTIVE AMOUNT OF A

9   COMPOUND OF THE INVENTION OR A PRODRUG OF A COMPOUND OF THE

10  INVENTION.

11     MR. RABINOWITZ AGREED, I THINK EVERYONE AGREES THAT

12  FIRST, THE COMPOUND OF THE INVENTION, THAT IS DEFINED BY WHAT

13  WE TOLD YOU IN THE TECH TUTORIAL IS CALLED THE MARKUSH GROUP,

14  AND THE SPECIFIC CHEMISTRY YOU CAN APPLY TO EACH OF THE

15  VARIABLES.  NO ONE IS SAYING OTHERWISE, WE ALL AGREE.

16     SO IN OTHER WORDS, SALICYLIC ACID WHICH IS WHAT ASPIRIN

17  CONVERTS TO, THAT'S NOT HERE.  SO NO ONE IS GOING TO SAY THAT A

18  COMPOUND OF THE INVENTION WOULD INCLUDE SALICYLIC ACID.  BUT

19  WHAT ABOUT ASPIRIN?  THAT'S NOT IN HERE EITHER.  THE PRODRUG.

20     IN OTHER WORDS, COMPOUND OF THE INVENTION IS DESCRIBED BY

21  THE SCOPE OF THE CLAIM AND SO IS PRODRUG OF A COMPOUND OF THE

22  INVENTION.

23     I'M GOING TO SHOW YOU IN A MOMENT, YOUR HONOR SAID I

24  REALLY DON'T KNOW WHICH OF THESE THINGS ARE PRODRUGS AND WHICH

25  ARE NOT.  I'M GOING TO FOCUS ON THE TWO THAT ARE HIGHLIGHTED.

1    ACYL DERIVATIVES IN YELLOW, THEN SOMETHING CALLED SATE IN BLUE,

2    BECAUSE THE PATENT IN THE SPECIFICATION TELLS YOU THAT THOSE

3    ARE PRODRUGS.

4         BUT I THINK AS YOUR HONOR OBSERVED, EVERYTHING IN THIS

5    CLAIM EXCEPT FOR THE -- THIS ONE, THE TRIPHOSPHATE, EVERYTHING

6    CONVERTS TO SOMETHING ELSE IN ORDER TO WORK.

7         SO WHEN YOU LOOK AT THE Y POSITION --

8              THE COURT:  SO, OKAY.  THIS IS --

9              MR. MCCANN:  THE FUN PART.

10             THE COURT:  WELL, I NEED YOU TO BACK UP BECAUSE MY, I

11   MEAN, I MIGHT FOLLOW YOU NOW, AND THE MINUTE I GET OUT THE

12   DOOR, I WON'T.

13             MR. MCCANN:  UNDERSTOOD.

14             THE COURT:  IT DOES NO GOOD FOR ME TO PRETEND LIKE

15   THIS IS MAKING SENSE.  I NEED YOU TO KNOW HOW BASIC YOU HAVE TO

16   BE.

17        AND YOU HAVE TO TELL ME HOW MUCH OF THIS IS IMPORTANT FOR

18   ME TO BE ABLE TO CONSTRUE THESE TERMS.

19             MR. MCCANN:  OKAY.  I UNDERSTAND, YOUR HONOR.

20        SO WHAT I WANT TO DO IS FIRST FOCUS YOU ON Y.  DO YOU

21   REMEMBER FROM THE TECH TUTORIAL, THAT'S THE PART OF THE DRUG

22   THAT CHANGES THROUGH METABOLISM.

23        SO YOU BEGIN WITH THAT PRODRUG MOIETY AND THAT COMES OFF,

24   AND EVENTUALLY THE FIRST PHOSPHATE AND THEN THE SECOND

25   PHOSPHATE AND THE THIRD PHOSPHATE ALL GET ADDED THERE AT Y.

1          AND THEN THAT IS WHAT THE ACTIVE DRUG THAT CAN LINK IN

2     AND BREAK THE CHAIN, BREAK THE ZIPPER LIKE WE TALKED ABOUT LAST

3     WEEK.

4               THE COURT:  YES.

5               MR. MCCANN:  LOOK AT Y IN THE CLAIM, AND I KNOW

6     YOUR HONOR IS NOT A CHEMIST AND NEITHER AM I, BUT A DEEP

7     KNOWLEDGE OF CHEMISTRY IS NOT REALLY REQUIRED TO UNDERSTAND

8     THIS.

9          SO Y CAN BE A SERIES OF THINGS, ONE OF THEM AS THE THREE

10    PHOSPHATES.

11              THE COURT:  AND THAT'S THE P3 --

12              MR. MCCANN:  P309H4.

13         THE OTHERS ARE ALL SOMETHING ELSE.  SO THEY ARE ALL

14    THINGS THAT CHANGE IN THE BODY FROM HOW THEY STARTED TO BE P3.

15         THIS PATENT --

16              THE COURT:  SO THOSE ARE OTHER PRODRUGS IN A SENSE.

17              MR. MCCANN:  YOU COULD THINK OF IT THAT WAY.

18         ACTUALLY, YOUR HONOR, I HAVE TO TELL YOU, I THINK A

19    PRODRUG EXPERT WOULD TELL YOU THAT THE ONE I HAVE IN BLUE AND

20    THE ONE I HAVE IN YELLOW, THOSE ARE WHAT A SCIENTIST WHO IS AN

21    EXPERT IN PRODRUGS WOULD CALL A PRODRUG.

22              THE COURT:  SO THE ACT OF TRANSFORMATION, IN YOUR

23    VIEW, DOESN'T CREATE ADDITIONAL PRODRUGS.

24              MR. MCCANN:  NO.  AND THIS IS A BIT OF AN ASIDE

25    BECAUSE I DON'T THINK IT MATTERS TO THE ARGUMENT, BUT IT'S -- A

1    PRODRUG IS A DESIGNED THING, IT'S COMPLICATED.

2         SO FOR EXAMPLE, TAKING SOFOSBUVIR, AS I WAS EXPLAINING

3    LAST WEEK, THE TRICK WAS TO MAKE A PRODRUG OF THAT FIRST P, THE

4    MONOPHOSPHATE, IF YOU COULD DO THAT, THEN IT SEEMED TO WORK.

5         IF YOU DID A PRODRUG OF SOME OTHER RESULT, TWO P'S OR OH

6    FOR EXAMPLE, IT WOULD BREAK DOWN FOR SOME REASON.

7         SO NOT ALL THESE THINGS I THINK AN EXPERT WOULD CONSIDER

8    TO BE A PRODRUG.  IT DOESN'T MATTER, EITHER WAY THERE ARE

9    PRODRUGS THAT THIS PATENT CALLS PRODRUGS IN THIS CLAIM, AND

10   MR. RABINOWITZ AGREES THAT THEY ARE THERE.

11        SO THE ONES I'M GOING TO FOCUS ON ARE GOING TO BE ACYL

12   DERIVATIVES, THEN AT THE BOTTOM YOU SEE IN BLUE R9 AND R10, AND

13   THEN IT GIVES YOU THIS OCH2 CH2 SC (==O) T+BUTYL.  THAT'S

14   SOMETHING CALLED SATE, S-A-T-E, AND THAT IS A PRODRUG.  AND

15   THAT IS ONE OF THE PRODRUGS THAT MERCK CLAIMS IN THIS PATENT

16   AND THE OTHER ACYL DERIVATIVES.

17        SO YOUR HONOR, IF YOU STEP BACK AND YOU THINK ABOUT THE

18   DEFINITION, IT SAYS A COMPOUND OF THE INVENTION OR A PRODRUG OF

19   THE COMPOUND OF THE INVENTION.  THAT'S LIKE A CONCEPT, WHAT CAN

20   YOU GIVE THE PATIENT.  I CAN GIVE A COMPOUND OR I CAN GIVE A

21   PRODRUG.

22        IN VERY SIMPLISTIC, AND I DON'T MEAN TO BE TOO

23   SIMPLISTIC, BUT IN VERY SIMPLE TERMS THAT'S LIKE SAYING YOU CAN

24   GIVE A FRUIT OR A VEGETABLE.  BUT WHERE DO YOU FIND OUT WHICH

25   FRUIT AND WHERE DO YOU FIND OUT WHICH VEGETABLE?  IT'S IN THE

1    CLAIMS AND IT'S IN THE WHOLE DISCLOSURE OF THE PATENT, AND IT'S

2    NOT EVERY FRUIT AND IT'S NOT EVERY VEGETABLE.

3         OKAY.  I THINK YOUR HONOR FULLY UNDERSTANDS THIS POINT,

4    BUT JUST FOR CLARITY ON SLIDE 8, NO ONE DISPUTES THAT THE

5    PRODRUGS IN THIS CLAIM ARE NOT THE PHOSPHORAMIDATES OF

6    SOFOSBUVIR, IT'S NOT IN THERE.  AND SO THE QUESTION IS CAN YOU

7    TAKE THAT WORD PRODRUG FROM THE SPECIFICATION AND EXPAND THE

8    UNIVERSE OF PRODRUGS BEYOND WHAT'S IN THE CLAIM TO GET ALL OF

9    THEM.

10        YOUR HONOR MENTIONED A NUMBER OF TIMES THAT THIS IS NOT

11   THE PROCEEDING FOR INVALIDITY, AND I'M NOT GOING TO TALK ABOUT

12   INVALIDITY, THAT WOULD BE A PROBLEM.

13        WE NEVER NEED TO GET THERE ON THIS PARTICULAR ISSUE

14   THOUGH BECAUSE WHEN YOU PROPERLY CONSTRUE THIS CLAIM, THERE'S

15   NO REASON IN THE RECORD FOR YOU TO GO BEYOND WHAT MERCK SAID

16   WAS THEIR INVENTION WHICH IS WHAT THEY DESCRIBED IN THE CLAIM,

17   AND IT'S NOT SOFOSBUVIR.

18        IF YOU ACCEPT MR. RABINOWITZ'S ARGUMENT THAT PRODRUG

19   EXPANDS AND COVERS ALL OF THEM, WHAT'S ACYL DERIVATIVE DOING IN

20   THE CLAIM?  THIS IS NOW SLIDE 9.  AND WHAT IS SATE DOING IN THE

21   CLAIM?

22        SO IF PRODRUGS COVERS ALL OF THEM, THOSE LIMITATIONS HAVE

23   NO MEANING.  YOU WOULDN'T HAVE TO HAVE THAT THERE.  WHAT YOU

24   WOULD HAVE IS MY COMPOUNDS OF THE INVENTION, FRANKLY THIS CLAIM

25   WOULD SAY P309H4 AND THEN THE REST OF THE CHEMISTRY THAT

1     DESCRIBES WHAT YOU DO NOT JUST AT Y BUT AT THE SUGAR RING AND

2     THE BASE.

3          YOU WOULDN'T NEED TO HAVE ANYTHING AT Y EXCEPT THE ACTIVE

4     METABOLITE.  IF PRODRUG IS AS BROAD AS MR. RABINOWITZ SAYS, IT

5     IS A CANNON OF CLAIM CONSTRUCTION THAT YOU HAVE TO GIVE EFFECT

6     TO ALL LIMITATIONS OF THE CLAIM.

7          IF YOU INTERPRET PRODRUG TO HAVE NO BOUNDARY, THEN THAT

8     LANGUAGE, ACYL DERIVATIVES, MIGHT AS WELL BE STRUCK OUT AND

9     THAT LANGUAGE ABOUT SATE.

10          THE COURT:  SO JUST TO BE CLEAR, IT'S UNDISPUTED THAT

11     SOFOSBUVIR IS NOT AN ACYL DERIVATIVE OR A SATE.

12          MR. MCCANN:  IT IS NOT.

13          SO THAT'S THE CLAIM.  AND AGAIN, THERE'S A HIERARCHY IN

14     ANALYZING CLAIM CONSTRUCTION, YOU DO BEGIN WITH THE CLAIM.  AND

15     I THINK THE CLAIM ITSELF IS THE MOST POWERFUL EVIDENCE THAT

16     PRODRUG IS NOT UNBOUNDED HERE.

17          BUT LET'S GO THROUGH THE SPECIFICATION, AND THIS IS ALSO

18     THE POINT YOUR HONOR WHERE I WILL TIE THINGS UP AND SHOW YOU

19     FOR THE RECORD THAT ACYL DERIVATIVES AND SATE ARE PRODRUGS.

20          AGAIN, I DON'T THINK MERCK IS DISPUTING THIS.

21          OKAY.  SO TO BEGIN WITH, HERE'S SATE.  THIS IS EXAMPLE

22     72, IT'S AT, IT'S SLIDE 11, AND IT'S COLUMN 77 OF THE PATENT,

23     LINE 57 TO 67.  AND SATE IS EXPRESSLY DESCRIBED HERE.

24          MR. RABINOWITZ WHEN HE WAS SPEAKING, HE SAID, YOU KNOW,

25     ONE OF THE THINGS THAT GILEAD IS TRYING TO DO IS IMPORT A

1    LIMITATION FROM THE SPECIFICATION INTO THE CLAIM, AND THAT'S

2    TOTALLY IMPROPER.  AND HE'S ABSOLUTELY RIGHT THAT THAT IS

3    IMPROPER, YOU ARE NOT SUPPOSED TO DO THAT IN CLAIM

4    CONSTRUCTION.

5         I AM NOT IMPORTING SATE FROM EXAMPLE 72 INTO THE CLAIM.

6    IT'S IN THE CLAIM.

7              THE COURT:  I'M LOOKING AT THE CLAIM.  WHEN YOU SAY

8    IT'S IN THE CLAIM, LET'S BE CONCRETE.

9              MR. MCCANN:  I WILL GO TO THE NON CROSSED OUT VERSION

10   IT'S OCH2CH2SC (==O)T+BUTYL.

11             THE COURT:  I DON'T KNOW, I'M SORRY, I DO NOT KNOW

12   WHERE YOU ARE.

13             MR. MCCANN:  THIS IS SLIDE 9 LOOKING AT CLAIM 1 OF

14   THE PATENT.  AND THE VARIABLE R9 AND R10 BEING DEFINED AS THE

15   COMPOUND OR THE STRUCTURE OCH2 CH2 SC, THAT IS SATE.

16             THE COURT:  ALL RIGHT.  THAT'S LINE 14 AND 15 OF

17   COLUMN 138?

18             MR. MCCANN:  YES.

19             THE COURT:  THAT'S SATE.  OKAY.

20             MR. MCCANN:  ALSO JUST BRIEFLY, SATE, IS A MORE CLEAR

21   EXAMPLE OF A PRODRUG IN THE CLAIM.

22        AGAIN, MR. RABINOWITZ AGREES THEY ARE THERE BUT I JUST

23   WANT TO TOUCH ON ACYL DERIVATIVES.  THIS IS IN THE PATENT,

24   COLUMN 38, LINES 11 TO 19.

25             THE COURT:  COLUMN 138?

1          MR. MCCANN:  COLUMN 38.

2          THE COURT:  OH, 38.

3          MR. MCCANN:  AND I DID FOR THE COURT'S BENEFIT, EVERY

4    PLACE I CITE THE PATENT IN THE PRESENTATION I PUT THE PINPOINT

5    CITATION.  SO I KNOW THE COURT IS LOOKING NOW, BUT IT'S ALSO

6    GOING TO BE THERE FOR YOUR REFERENCE LATER.

7          SO AT COLUMN 38, LINES 11 TO 19, THE PATENT DESCRIBES THE

8    OTHER KIND OF PRODRUG, SPECIFICALLY IT SAYS, ALSO IN THE CASE

9    OF CARBOXYLIC ACID OR ALCOHOL GROUP BEING PRESENT IN THE

10   COMPOUNDS OF THE PRESENT INVENTION, PHARMACEUTICALLY ACCEPTABLE

11   ESTERS OF CARBOXYLIC ACID DERIVATIVES, SUCH AS METHYL, ETHYL,

12   OR PIVALOYLOXYMETHYL, OR ACYL DERIVATIVES OF ALCOHOLS, CAN BE

13   EMPLOYED.  INCLUDED WITHIN THE CONCEPT HERE ARE THOSE ACYL

14   GROUPS KNOWN IN THE ART FOR MODIFYING THE SOLUBILITY OR

15   HYDROLYSIS CHARACTERISTICS FOR USE AS SUSTAINED-RELEASE OR

16   PRODRUG FORMULATIONS.

17         AND THAT'S NOT QUITE IN ENGLISH IT'S NOT AS CLEAR AS

18   SATE.  BUT WHAT THAT SAYS IS ACYL DERIVATIVES CAN BE USED TO

19   MAKE PRODRUGS AND THAT'S ONE OF THE CLASSES THAT MERCK CHOSE TO

20   PUT IT TO THE CLAIM.

21         NOW I WANT TO GO BACK

22         THE COURT:  SO I'M, WHEN I LOOK AT THE CLAIM ITSELF,

23   SO IT IS ADMINISTERING A COMPOUND BY STRUCTURAL FORMULA III OR

24   A PHARMACEUTICALLY ACCEPTABLE SALT OR ACYL DERIVATIVE THEREOF.

25   SO THE SALT IS THE SATE.

1          MR. MCCANN:  NO, SATE IS JUST THIS ONE IN BLUE AT THE

2    BOTTOM RIGHT.  WELL, IT'S THE R9, R10, AS I DESCRIBED BEFORE.

3          THE COURT:  NO, I KNOW THAT.  SO I HAVE TO -- BECAUSE

4    I'M TRYING TO UNDERSTAND THE CLAIM AND I APOLOGIZE.

5          MR. MCCANN:  IT'S ALL RIGHT, YOUR HONOR.

6          THE COURT:  I'VE GOT ACYL DERIVATIVE WRITTEN HERE.  I

7    SEE THAT THE R9 AND R10 ARE, AND THEN IT GOES ON.  BUT ACYL --

8          MR. MCCANN:  LET ME JUST EXPLAIN IT THIS WAY,

9    YOUR HONOR, THE ACYL DERIVATIVE, THAT'S MULTIPLE THINGS THAT

10   CAN SERVE AS A PRODRUG.  THE SATE THAT'S CLAIMED HERE, IT'S

11   JUST ONE KIND OF SATE.

12       SO SATE ITSELF, IF YOU LOOK IN THE PATENT, THERE ARE A

13   COUPLE OF DIFFERENT VARIANTS, BUT THEY CHOSE ONLY TO CLAIM ONE

14   OF THEM AND IT'S THE SPECIFIC CHEMICAL STRUCTURE THAT YOU SEE

15   THERE.

16       AND SO WHAT THAT MEANS IS THE PERSON DRAFTING THIS CLAIM

17   DIDN'T WANT TO BE LIMITED TO A PARTICULAR ACYL DERIVATIVE SO

18   THEY JUST CALLED IT ACYL DERIVATIVES.

19          THE COURT:  CLAIMING THE ENTIRE CATEGORY.

20          MR. MCCANN:  YES, WHATEVER THAT ENTAILS.

21       BUT WHEN IT CAME TO SATE, FOR THEIR OWN REASON THEY CHOSE

22   TO LIST JUST SPECIFICALLY THE EXACT CHEMICAL FORMULA YOU SEE

23   THERE.

24          AND SO IF SOMEONE IS MAKING A DIFFERENT KIND OF SATE AS A

25   PRODRUG, IT WOULDN'T BE COVERED BY THIS CLAIM.  JUST THE ONE

1      THAT MERCK CHOSE TO CLAIM.

2           I THOUGHT, YOUR HONOR, SOME OF THIS IS, YOU ASKED ME LAST

3      WEEK TON CONCRETE AND I WAS TRYING TO THINK OF WHAT IS A GOOD

4      WAY TO SHOW YOU THAT MERCK DID NOT CHOOSE TO GRAB OR TO CLAIM

5      THE WHOLE UNIVERSE OF PRODRUGS THAT MIGHT APPLY IN THIS FIELD

6      BUT JUST THESE SPECIFIC ONES.  AND THE ANSWER TO THAT IS IN THE

7      PATENT ITSELF.  THE ANSWER TO THAT QUESTION AND THE CONCRETE

8      EXAMPLE.

9           IN MERCK'S PATENT AT THE SAME PLACE, EXAMPLE 72, WE ARE

10     LOOKING AT SLIDE 13, THERE'S A REFERENCE TO THIS PAPER BY

11     SOMEONE NAMED WAGNER.  AND MERCK ACTUALLY DISCUSSED THE WAGNER

12     REFERENCE IN ITS REPLY BRIEF.  AND I THINK WAGNER IS VERY

13     INFORMATIVE OF THIS QUESTION OF, DID MERCK SORT OF COVER ALL

14     THE BASES ON PRODRUGS HERE.

15          SO WAGNER IS WRITTEN IN 2000 AS IT TELLS YOU HERE AT

16     COLUMN 77 BEGINNING AT LINE 57, PUBLISHED IN 2000, AND

17     YOUR HONOR WILL RECALL THAT MERCK'S PRIORITY DATE FOR THIS

18     PATENT IS FEBRUARY 2002.

19               THE COURT:  YEAH.

20               MR. MCCANN:  SO THIS IS IN THE TIME FRAME THAT THE

21     WORK IS BEING DONE.  AND THE MERCK INVENTORS ARE AWARE OF WHAT

22     WAGNER SAYS AND THEY INCORPORATE WHAT HE SAYS BY REFERENCE.

23     I'M SAYING HE, IT MIGHT BE A SHE, WAGNER I WILL SAY.

24          SO WAGNER WHICH IS ATTACHED TO MERCK'S REPLY BRIEF, IT'S

25     DOCKET NUMBER 99-2, EXHIBIT A TO THE REPLY BRIEF.  IT'S A GOOD

1    20 PAGES OF REALLY SMALL FONT TALKING ALL ABOUT PRODRUGS IN

2    THIS FIELD USING NUCLEOSIDES TO TREAT DISEASES LIKE HCV.

3         AND WHAT I DID HERE, YOUR HONOR, IS I TOOK THE PARAGRAPH

4    HEADINGS THROUGHOUT WAGNER AND POINTED OUT ALL THE DIFFERENT

5    PRODRUG APPROACHES THAT WAGNER IDENTIFIED AS POSSIBILITIES IN

6    2000.  AND I BLOCKED IN RED ALL OF THE DIFFERENT KINDS THAT ARE

7    NOT EXPRESSLY SET FORTH IN THE CLAIM, AND I PUT IN BLUE SATE

8    WHICH IS THE ONE THAT MERCK CHOSE TO PUT IN ITS CLAIM.

9         A COUPLE OF POINTS TO MAKE WITH IS THIS, YOUR HONOR.  THE

10   FIRST IS, AND WE HAVE THE CASE CITATIONS IN OUR BRIEF, IF

11   YOU'RE AWARE OF SOMETHING AND YOU -- OF AN IDEA AND OF A

12   CONCEPT AND YOU DISCLOSE THAT IN YOUR PATENT AND YOU CHOOSE NOT

13   TO CLAIM IT THEN THAT INFORMED OR THAT IDEA IS DEDICATED TO THE

14   PUBLIC.

15        AND THAT'S WHAT MERCK DID HERE, THEY CLAIMED SATE BUT NOT

16   ALL OF THESE OTHER POSSIBILITIES.  SO THAT'S POINT NUMBER ONE.

17        THE SECOND POINT IS, AND THIS REALLY GETS AT FAIRNESS,

18   WAGNER ON THE VERY LAST PAGE, PAGE 443, AGAIN THAT'S DOCKET

19   99-2, ON THE VERY LAST PAGE HE GOES THROUGH ALL THESE

20   POSSIBILITIES OF PRODRUGS, BUT THEN HE SORT OF FINISHES BY

21   EXPLAINING WHAT IS THE STATE OF THIS ART AT THAT TIME IN 2000.

22        AGAIN, AROUND THE SAME TIME MERCK IS DOING ITS WORK.

23        AND HE SAYS, UNFORTUNATELY THE EFFECTS OF A PRO

24   NUCLEOTIDE DESIGN, THAT'S WHAT WE ARE TALKING ABOUT HERE ARE

25   PRODRUGS OF THESE NUCLEOSIDES, ON THE MECHANISM OF NUCLEOTIDE

1    RELEASE HAVE ONLY BEEN SYSTEMICALLY STUDIED IN A FEW CASES.

2    THE IN VIVO POTENCY, HOW EFFECTIVE THE DRUG IS, THE LONG-TERM

3    TOXICITY, YOU ARE TRYING TO CURE THE CELL, NOT KILL IT, THE

4    BIOAVAILABILITY, CAN YOU GET YOUR DRUG WHERE IT NEEDS TO BE,

5    PLASMA PHARMACOKINETICS, AND TISSUE DISTRIBUTION HAVE BEEN

6    DETERMINED FOR ONLY A FEW PRO NUCLEOTIDES.  UNLIKE THE IN VITRO

7    EXPERIMENTS CONDUCTED WITH KINASE DEFICIENT CELLS, DIRECT PROOF

8    OF IN VIVO DELIVERY OF NUCLEOTIDES REMAINS ELUSIVE AND WILL

9    UNDOUBTEDLY RELY ON A PARTICULAR TECHNIQUE FOR FINDING OUT

10   WHETHER YOUR DRUG GOT TO THE RIGHT PLACE.

11        AND THAT'S ALMOST ENGLISH, YOUR HONOR, BUT WHAT IT'S

12   SAYING IS THIS IS HARD, THIS IS DIFFICULT, AND NOT ALL OF THESE

13   THINGS ARE GOING TO WORK.

14        AND I BEGAN MY PRESENTATION BY SAYING OF THE 154 IDEAS IN

15   THIS PATENT, NONE OF THEM SUCCEEDED IN GETTING TO CLINIC.

16        IT IS UNFAIR TO CLAIM SATE AND ACYL DERIVATIVE AS YOUR

17   PRODRUGS AND THEN TO COME BACK 13 YEARS LATER WHEN SOMEONE ELSE

18   USES A DIFFERENT TECHNIQUE, ONE THAT'S NOT EVEN IN WAGNER, NOT

19   EXACTLY WAGNER, USES A DIFFERENT TECHNIQUE TO COME UP WITH A

20   WAY OF GETTING A DRUG THAT DOES HAVE POTENCY, THAT DOES NOT

21   HAVE TOXICITY, THAT IS BIOAVAILABLE, THAT HAS THE RIGHT TISSUE

22   DISTRIBUTION, AND THEN SAY BECAUSE I HAVE THAT WORD PRODRUG

23   FLOATING AROUND IN MY SPECIFICATION, I HAVE THAT BASE COVERED

24   AND YOU OWE ME MONEY.  THAT IS NOT FAIR.

25        AND IT IS ALSO NOT SUPPORTED IN THE CLAIM CONSTRUCTION OF

1    THIS CLAIM TERM.

2             THE COURT:  WELL, I STARTED OUT BY HAVING THAT

3    CONCERN THAT THE TERM PRODRUG IS SUCH A GENERIC GENERAL TERM

4    THAT IT TROUBLED ME THAT ALL UNKNOWN, UNDISCOVERED, UNAPPLIED

5    PRODRUGS COULD BE UNDER THE UMBRELLA OF THIS PATENT.

6             BUT THEN I REALIZED THAT MAY BE AN INVALIDITY ISSUE HERE

7    THAT I'M NOT GOING TO ADDRESS.  SO I NEED TO BE CAREFUL TO TAKE

8    THIS ONE STEP AT A TIME AND PROPERLY CONSTRUE THE TERM AND THEN

9    LET THE CHIPS FALL WHERE THEY MAY WITH THE JURY ON THE ISSUE OF

10   INVALIDITY, BECAUSE I'M AFRAID THAT IN FACT YOU'RE INVITING THE

11   INVALIDITY ARGUMENT TO BE DRESSED UP AS A CLAIMS CONSTRUCTION.

12            MR. MCCANN:  I GUESS, YOUR HONOR, THAT WOULD BE TRUE

13   IF SATE WASN'T IN THE CLAIM.

14       SO THERE IS INVALIDITY PROBLEM IF PRODRUG IS THAT BROAD

15   AND WE ARE NOT HERE TODAY FOR THAT.  BUT IT NEVER HAS TO GET TO

16   THERE BECAUSE --

17            THE COURT:  SO WHERE DOES IT SAY IT'S ONLY SATE AND

18   ACYL DERIVATIVE?  I KNOW, I SEE IN THE CLAIM ITSELF YOU ARE

19   TELLING ME THAT SATE AND ACYL DERIVATIVES ARE CALLED OUT.

20            MR. MCCANN:  BUT THE CLAIM IS NOT AN EXAMPLE,

21   YOUR HONOR.

22       SO IN A PATENT YOU HAVE REALLY TWO BIG PARTS, CLAIM, THAT

23   IS WHAT YOU INVENTED, THAT IS WHERE YOU SAY THIS IS THE

24   PROPERTY THAT I OWN.  SOMETIMES, MANY TIMES, YOU DO NEED TO

25   LOOK AT THE SPECIFICATION TO UNDERSTAND WHERE DOES IT BEGIN AND

1    WHERE DOES IT END.

2          EVERY TIME YOU SHOULD LOOK AT THE SPECIFICATION FOR THAT

3    PURPOSE.

4          MY POINT TO YOU IS THIS, THE FACT THAT SATE AND ACYL

5    DERIVATIVES ARE IN THE CLAIM, THOSE AREN'T EXAMPLES, THAT'S

6    WHAT THEY ARE SAYING THAT THEY INVENTED HERE.

7          MAYBE IF I SAY IT THIS WAY, I CAN MAKE MYSELF MORE CLEAR.

8          LET'S SAY THAT SATE WAS NOT THERE AND ACYL DERIVATIVES

9    WAS NOT THERE AND IT JUST SAID, ADMINISTER A COMPOUND OF THE

10   INVENTION OR A PRODRUG OF THE COMPOUND OF THE INVENTION.  AND

11   SATE WAS EXAMPLE 72 IN THE SPECIFICATION, AND I WAS STANDING

12   HERE ARGUING TO YOU, JUDGE, YOU'VE GOT TO LIMIT PRODRUGS TO

13   SATE AND ACYL DERIVATIVES BECAUSE THAT'S WHAT THEY DISCLOSED

14   HERE.

15         MR. RABINOWITZ WOULD STAND UP AND HE WOULD BE POUNDING ME

16   SAYING, YOU ARE TRYING TO IMPORT A LIMITATION FROM THE

17   SPECIFICATION INTO THE CLAIM AND THAT'S IMPROPER.

18         THE COURT:  THAT'S WHAT HE SAID.

19         MR. MCCANN:  THAT'S WHAT HE SAID.  THAT IS WHEN THE

20   LIMITATION IS NOT THERE AND YOU ARE TRYING TO IMPORT IT.

21         IN THIS CLAIM OF THIS PATENT, THE LIMITATION IS IN IT.  I

22   DIDN'T PUT IT THERE.  STEPHEN S. CARROLL PUT IT THERE AND HIS

23   FELLOW INVENTORS, THEY CHOSE TO LIMIT THEIR PRODRUGS TO THE

24   ONES THAT THEY CLAIMED.

25         AND AGAIN, IT IS UNFAIR, AND I DON'T MEAN THAT JUST IN

1    THE VALIDITY CONTEXT, IT'S IMPROPER TO EXPAND PRODRUG BEYOND

2    WHAT THESE INVENTORS ACTUALLY INVENTED.

3              THE COURT:  IN ORDER FOR ME TO PROVIDE THE RULING

4    THAT WOULD INCORPORATE MORE LIMITATIONS, I WOULD NEED TO ALSO

5    DEFINE THESE DERIVATIVE TERMS.

6              MR. MCCANN:  IT'S A GOOD QUESTION, YOUR HONOR.  WHEN

7    WE DRAFTED THIS BRIEF AND MADE OUR PROPOSAL, WHAT WE PROPOSED

8    WAS THAT THE CONSTRUCTION JUST GIVE THAT DEFINITION FROM THE

9    SPECIFICATION AND THEN SAY, EXCEPT THOSE PRODRUGS EXPRESSLY

10   CLAIMED.

11         AND WE FELT THAT WAS NOT -- THAT WAS ENOUGH GUIDANCE

12   BECAUSE THEN WE COULD ARGUE TO THE JURY AND MR. RABINOWITZ

13   COULD ARGUE TO THE JURY, THIS PHOSPHORAMIDATES IN THAT CLAIM

14   ARE NOT, THEY ARE NOT.

15         SO I THINK THAT WOULD BE CLEAR ENOUGH.

16         YOU COULD, I GUESS, TAKE OUR DEFINITION AND SAY, THE

17   PRODRUGS EXPRESSLY CLAIMED WHICH ARE ACYL DERIVATIVES, AND THEN

18   THAT CHEMICAL FORMULA.  YOU KNOW, I DON'T KNOW THAT THAT'S

19   ACTUALLY NECESSARY FOR THE CLAIM CONSTRUCTION ORDER OR WHETHER

20   IF THIS CASE GETS TO A JURY THAT COULD BE HANDLED IN THE JURY

21   INSTRUCTION.

22              THE COURT:  SO ARE YOU SUGGESTING -- WELL, THEN HELP

23   ME OUT BECAUSE YOUR CONSTRUCTION -- IS THE PROPER WAY OF

24   HANDLING THIS TO ACCEPT THE DEFINITION THAT THE PATENTEE

25   INCLUDED IN THE PATENT AND LEAVE THIS OTHER ISSUE TO THE JURY?

1        MR. MCCANN:  I DON'T THINK SO BECAUSE I THINK THAT

2   THERE WILL BE A LOT OF FIGHTING AT THE TIME OF THE TRIAL AS TO

3   WHETHER THE PRODRUGS ARE LIMITED TO THOSE EXPRESSLY CLAIMED OR

4   ARE BROADER THAN THAT.

5        THE COURT:  I GUESS -- THANK YOU.

6        AND I'M STILL LOOKING FOR THE MECHANISM THAT ALLOWS ME TO

7   EITHER ACCEPT YOUR DEFINITION OR TO EXPRESSLY REJECT IT WHICH

8   MR. RABINOWITZ WANTS.  YOU BOTH WANT ME TO RESOLVE THIS ISSUE

9   NOW, THAT'S FINE, I'M STILL LOOKING FOR THE MECHANISM UNDER THE

10  LAW THAT ALLOWS ME TO DO IT.

11       AND YOU BRIEFED THAT I COULD GO OUT AND LOOK AT THE

12  DERIVATIVE CLAIMS, YOU GAVE ME A CASE THAT, THE ADVANCED FIBER

13  TECHNOLOGIES CASE, I BELIEVE.

14       MR. MCCANN:  I THINK THE CASE YOUR HONOR IS LOOKING

15  FOR SPECIFICALLY WOULD BE ALLERGAN V. APOTEX, AND TRADING

16  TECHNOLOGIES.  AND THE MECHANISM IS YOU CAN, AS THE JUDGE

17  CONSTRUING THE CLAIM, ELABORATE ON THE TERSE WORDS OF THE CLAIM

18  TO MAKE THEM MORE CLEARLY UNDERSTOOD.

19       ACTUALLY ALLERGAN AND TRADING TECHNOLOGIES, AND I SPOKE

20  ABOUT ALLERGAN BEFORE VERY BRIEFLY, IT SEEMED LIKE IT MEANT TWO

21  THINGS AND THE FEDERAL CIRCUIT SAID WHEN YOU REALLY UNDERSTAND

22  THIS PATENT IT'S ONLY ONE.

23       TRADING TECHNOLOGIES WAS SIMILAR, THERE WAS A DEFINITION,

24  I THINK IT WAS STATIC PRICE IN THE SPECIFICATION OF THAT

25  PATENT.  AND THE ARGUMENT CONCERNED WHETHER THE COURT SHOULD

1   ADD A COUPLE OF WORDS TO THE DEFINITION OF STATIC PRICE TO MAKE

2   IT, MAKE THE DEFINITION FIT WITH WHAT WAS REALLY CLAIMED AND

3   INVENTED THERE.

4        AND THE COURT OF APPEALS SAID YES THAT'S FINE, YOU CAN

5   LOOK BEYOND THE TERSE WORDS IN THE SPECIFICATION AND LOOK AT

6   THE SCOPE OF THE CLAIM AND THE SPECK AND SEE WHAT DID THEY

7   REALLY INVENT HERE AND ELABORATE.

8        THE COURT:  ALL RIGHT.  OKAY.

9        I MEAN, YOU'RE THE ONE WHO GAVE ME THIS ADVANCED FIBERS

10  TECHNOLOGY CASE THAT SAYS HOWEVER IN THOSE CASES IN WHICH THE

11  CORRECT CONSTRUCTION OF A CLAIM TERM NECESSITATES A DERIVATIVE

12  CONSTRUCTION OF A NONCLAIM TERM --

13       MR. MCCANN:  OH, I UNDERSTAND.

14       THE COURT:  -- THE COURT MAY PERFORM THE DERIVATIVE

15  CONSTRUCTION IN ORDER TO ELUCIDATE THE CLAIMS MEANING.

16       MR. MCCANN:  I'M SORRY, YOUR HONOR, I WAS ONE OFF ON

17  WHAT YOU ARE ASKING ABOUT.

18       YES.  YOU CAN -- THAT CASE SAYS AND YOU CAN CONSTRUE A

19  WORD THAT IS ACTUALLY NOT IN THE CLAIM, BUT IT'S PART OF THE

20  CONSTRUCTION.

21       SO YOU HAVE --

22       THE COURT:  THAT'S WHAT IT SEEMS LIKE YOU ARE BOTH

23  ASKING ME TO DO.

24       MR. MCCANN:  YES.

25       AND SO WHAT I'M SAYING IS, I AM PROPOSING THAT THE PART

```
1    OF THE DEFINITION OF ADMINISTERING THAT INCLUDES PRODRUG OF THE

2    COMPOUND OF THE INVENTION, BE FURTHER CLARIFIED TO SAY, AND BY

3    THAT WE MEAN THE PRODRUGS THAT THE INVENTORS CLAIMED, NOT ALL

4    OF THEM.

5            THE COURT:  ALL RIGHT.  OKAY.

6        WELL, I THINK I UNDERSTAND THE MECHANISM AND -- I'M GOING

7    TO BE DOING THIS NO MATTER WHAT FOR EACH OF YOU IN ORDER TO

8    UNDER MR. RABINOWITZ'S ARGUMENT TO REJECT YOUR DEFINITION, I'M

9    GOING TO BE DOING THE SAME THING JUST WITH A DIFFERENT OUTCOME.

10           MR. MCCANN:  UNDERSTOOD, YOUR HONOR.

11           THE COURT:  OKAY.

12           MR. MCCANN:  JUST BRIEFLY ON THE FILE HISTORY,

13   MR. RABINOWITZ I THINK HE DID ACCURATELY CHARACTERIZE WHAT

14   HAPPENED.

15       THE EXAMINER MADE A CHANGE AND THERE WAS NOT A LOT OF

16   DISCUSSION IN THE RECORD, AND WHAT I TAKE AWAY FROM IT IS THAT

17   THE LANGUAGE, AND I'M LOOKING HERE AT SLIDE 16, IT'S AN EXCERPT

18   FROM THE FILE HISTORY OF MERCK 5809.

19       IT ORIGINALLY SAID ESTER PRODRUG, AND IT WAS REPLACED

20   WITH THAT WORD ACYL DERIVATIVES.

21       AND MR. RABINOWITZ SAYS WELL, ESTER PRODRUG IS

22   DUPLICATIVE OF PRODRUGS HIGHER UP IN THE CLAIM SO THAT'S WHY IT

23   WAS TAKEN OUT.

24       AND YOU WOULD BE SURPRISED TO LEARN, YOUR HONOR, I SEE IT

25   DIFFERENTLY, AND I SEE --
```

```
1          THE COURT:  BOTH OF YOU ARE SPECULATING THOUGH AT

2    THIS POINT.

3          MR. MCCANN:  YES.

4          AND SO I ACTUALLY, YOU KNOW, IS THIS A CLEAR NON

5    MISTAKABLE DISAVOWAL -- I WILL ACTUALLY TAKE THAT BACK AND WHAT

6    I WILL SAY IS THEIR BEHAVIOR HERE IS ENTIRELY CONSISTENT WITH

7    WHAT I'M SAYING WHICH IS, IF THE ISSUE IS PRODRUG IS UP HERE

8    AND THAT'S ALL WE NEED, YOU COULD TAKE OUT ESTER PRODRUG, YOU

9    COULD NOT PUT IN ACYL DERIVATIVES AND YOU COULD KNOCK SATE OUT

10   OF THE Y GROUP IF YOU WERE TRYING, IF WHAT YOU WERE TRYING TO

11   DO IS MAKE CLEAR THAT YOU INTEND TO CLAIM ALL PRODRUGS.  AND

12   THAT'S NOT WHAT THEY DID.

13          THE COURT:  YEAH.  OKAY.

14          MR. MCCANN:  I HAVE BEEN GOING ON SOME TIME

15   YOUR HONOR, SO WHAT I'M GOING TO DO IS I'M GOING TO MOVE TO THE

16   SECOND ISSUE.

17          THE COURT:  OKAY.

18          MR. MCCANN:  THIS IS NOW SLIDE 22.

19          THE COURT:  THANK YOU.

20          MR. MCCANN:  SO THIS RELATES TO WHETHER ADMINISTERING

21   STOPS AT THE ACT OF GIVING BY THE DOCTOR OR SHOULD WE CONSTRUE

22   IT TO GO FURTHER TO SAY IT INCLUDES IN VIVO TRANSFORMATIONS.

23          AND FIRST, I AM NOT SAYING THAT PRODRUGS DON'T

24   METABOLIZE, OF COURSE THEY DO.

25          THE COURT:  THEY DO.  THAT'S THE WHOLE POINT.
```

1          MR. MCCANN:  IF THEY WERE THE QUESTION, IF THAT WERE

2     THE ONLY FACT ONE WOULD NEED TO KNOW, THEN NO COURT WOULD EVER

3     DECIDE IN THE CASE OF A CLAIM THAT COVERS ONLY WHAT YOU PUT IN

4     THE PERSON'S MOUTH, THEY WOULD NEVER DECIDE THAT IT DOESN'T

5     REACH TO WHAT HAPPENS IN THE PERSON'S BODY, BUT COURTS DO.

6          AND WE CITED TO IN OUR PAPERS HOFFAMN LA-ROCHE AND

7     SCHERING V. GLENMARK.  IN THOSE CASES COURT SAYS NO, IT DOESN'T

8     COVER WHAT HAPPENS IN THE BODY.

9          THE COURT:  BUT THERE'S NO DEFINITION IN THOSE, WE

10    ARE LOOKING OUTSIDE TO THE GENERALLY UNDERSTOOD MEANING OF THE

11    TERM ADMINISTERING.

12          MR. MCCANN:  I AGREE THAT THERE'S NO DEFINITION IN

13    THOSE.

14          BUT WHAT THE COURTS DID THERE, AND I THINK WHAT THIS

15    COURT STILL HAS TO DO, IS YOU HAVE TO GO THROUGH THE MARKMAN

16    PROCESS OF LOOK AT THE CLAIM, LOOK AT THE SPECIFICATION AND

17    DETERMINE WHETHER THE INVENTOR HERE, WITH THIS DEFINITION EVEN,

18    INTENDED TO REACH WHAT HAPPENS IN THE BODY.

19          AND I'M GOING TO START WITH MY BEST PIECE OF EVIDENCE AND

20    THEN I'M GOING TO I'M ACTUALLY NOT GOING TO START MY SLIDES

21    THAT WAY BUT I'M GOING TO START WITH THIS, TO SORT OF SET THIS

22    UP WITH YOU THEN I'M GOING TO WALK RELATIVELY QUICKLY THROUGH

23    THE POINTS.

24          MY BEST PIECE OF EVIDENCE ON THIS ISSUE IS YOUR HONOR

25    KNOWS THAT THE CRITICAL THING IN YOUR BODY IS THE FIVE PRIME

1    TRIPHOSPHATE, THE THREE P'S, AND A PRODRUG HAS TO BECOME THAT.

2         THIS PATENT TEACHES A WHOLE BUNCH OF DIFFERENT MOLECULES,

3    ONE OF THEM IS FIVE PRIME TRIPHOSPHATES.  THAT'S THE P3 WE SAW

4    IN THE CLAIM.  THIS PATENT TELLS YOU PUT THAT IN THE PILL TOO.

5         REMEMBER THIS IS IN 2002, AND IT MAY BE TODAY THAT PEOPLE

6    THINK THE ONLY WAY TO GO HERE IS A PRODRUG, BUT IN 2002 MAYBE

7    THEY FELT DIFFERENTLY.

8         ALL I KNOW IS AT EVERY POINT IN THE PATENT WHEN THEY TELL

9    YOU HOW TO ADMINISTER, THEY USE LANGUAGE, THEY USE TERMINOLOGY

10   THAT IS CONSISTENT WITH PUT THE DRUG IN THE PILL OR PUT THE

11   PRODRUG IN THE PILL BOTH AND GIVE IT TO A PATIENT.

12        THE COURT:  BOTH OF THEM TOGETHER.

13        MR. MCCANN:  WELL --

14        THE COURT:  THE DRUG AND THE PRODRUG IS THAT WHAT YOU

15   SAID.

16        MR. MCCANN:  WELL, IN OTHER WORDS, THIS PATENT

17   TEACHES YOU, YOU COULD PUT THE SATE PRODRUG IN A PILL, GIVE

18   THAT TO THE PATIENT OR YOU COULD PUT THE FIVE PRIME

19   TRIPHOSPHATE INTO A PILL.

20        SO WHAT I'M GETTING AT IS THIS, IF MR. RABINOWITZ IS

21   RIGHT, YOU WOULD HAVE EXPECTED THAT PATENT TO SAY, THIS FIVE

22   PRIME TRIPHOSPHATE, YOUR BODY MAKES THAT SO YOU SHOULD GIVE ONE

23   OF THESE COMPOUNDS OR PRODRUGS THAT'S GOING TO BECOME THAT BUT

24   IT SHOULDN'T SAY PUT THE FIVE PRIME TRIPHOSPHATE INTO A PILL.

25        EVERYTHING HERE SAYS THE ADMINISTER STOPS WITH THE

1    GIVING.  AND I SEE YOUR HONOR IS A LITTLE PUZZLED.

2           THE COURT:  WELL, I'M JUST TRYING TO LOOK BACK AT

3    THIS BECAUSE INTUITIVELY IT DOES, IT'S AN ACT OF DOING

4    SOMETHING AS OPPOSED TO THE ACT OF SETTING SOMETHING IN MOTION.

5           MR. MCCANN:  YES.

6           THE COURT:  SO, BUT I'M CAUTIOUS HERE BECAUSE OF THE

7    DEFINITION IN THE PATENT.

8           MR. MCCANN:  I HAVE -- WHEN I WAS AN AUSA,

9    YOUR HONOR, MY DRUG CASES HAD MUCH BETTER PROPS THAN THEY DO

10   THESE DAYS, BUT I BROUGHT SOME DRUGS WITH ME.  NONE OF THEM ARE

11   CONTROLLED SUBSTANCES.

12          THE COURT:  GOOD TO KNOW.

13          MR. MCCANN:  THIS MAY OR MAY NOT HELP YOU.  I'M GOING

14   TO GO THROUGH AND EXPLAIN SOME OF THE CONCEPTS THAT I THINK ARE

15   IN THIS PATENT USING MY LITTLE PILLS HERE, AND I'M GOING TO DO

16   IT WITH SOME OF THE PRESENTATION.

17       SO I THINK WE ALL AGREE THAT -- I'M NOT SURE IF WE ALL

18   AGREE.  I LOST THAT POINT, SO I'M GOING TO GO TO -- LET'S GO

19   ACTUALLY TO, I'M GOING TO START THIS WAY.  I'M GOING TO START

20   WITH IN COMBINATION WITH, YOUR HONOR.  THIS IS SLIDE 30.

21       I'M SORRY, I'M OUT OF ORDER, BUT I'M TRYING TO SORT OF

22   RESPOND TO WHAT I THINK ARE THE COURT'S CONCERNS IN THE ORDER

23   YOU ARE GIVING THEM TO ME.  SO THIS IS SLIDE 30.

24       SO WE TOOK A LOOK AT CLAIM 2, AND IT'S APPROPRIATE WHEN

25   TRYING TO UNDERSTAND A CLAIM OF THE PATENT TO LOOK AT WHAT

1    OTHER CLAIMS SAY.  AND IT SAYS, IN COMBINATION WITH.

2         AND MR. RABINOWITZ TOLD YOU BEFORE THAT WE ACTUALLY AGREE

3    ON THE DEFINITION OF WHAT THAT MEANS.  AND IT'S IN THE

4    SPECIFICATION.  WE TOOK IT RIGHT FROM THE SPECIFICATION.  AND

5    IT MEANS, IN COMBINATION WITH, TOGETHER WITH, WHETHER GIVEN

6    SEPARATELY AT DIFFERENT TIMES DURING THE COURSE OF THERAPY OR

7    CONCURRENTLY IN DIVIDED OR SINGLE COMBINATION FORMS.

8         NOW HERE'S HOW I UNDERSTAND THAT, JUDGE, YOU CAN GIVE

9    SOFOSBUVIR, AND LET'S SAY RIBAVIRIN, TOGETHER IN ONE PILL AND

10   THAT'S MY DAYQUIL HERE, LARGE GEL-FILLED CAPSULE.  OR YOU COULD

11   GIVE IT IN TWO PILLS.  AND I COULD GIVE YOU, LET'S SAY

12   SOFOSBUVIR FIRST AND RIBAVIRIN LATER.  SO THAT'S THE SEPARATELY

13   OR TOGETHER.

14              THE COURT:  SURE.

15              MR. MCCANN:  I DON'T SEE HOW THIS LANGUAGE COVERS

16   WHAT HAPPENS TO SOFOSBUVIR IN THE BODY.

17        AND WHAT I MEAN BY THAT IS THIS, SO I THINK I HAVE, I WAS

18   SHOWING YOU IN THE TECH TUTORIAL, THIS IS LOOKING AT SLIDE 40

19   FROM THE TECH TUTORIAL.

20              THE COURT:  SORRY, 40?

21              MR. MCCANN:  YES, YOUR HONOR.

22              THE COURT:  YES, I HAVE SLIDE 40.

23              MR. MCCANN:  SOFOSBUVIR, AS I WAS EXPLAINING IN THE

24   TECH TUTORIAL, IT GOES THROUGH ALL OF THESE TRANSFORMATIONS.  I

25   GUESS I'M GOING TO COUNT, 1, 2, 3, 4, JUST TO GET IT TO THE

1    MONOPHOSPHATE.  AND THEN AS YOU RECALL THAT HAS TO BECOME THE

2    DIPHOSPHATE, THAT BEING NUMBER FIVE, THEN THE TRIPHOSPHATE,

3    NUMBER SIX.

4         SO THIS THING CHANGES SIX TIMES FROM THE MOMENT YOU ARE

5    GIVEN THE DRUG TO WHEN IT'S ACTUALLY IN THE RIGHT PLACE IN YOUR

6    LIVER TO DO ITS JOB.

7         THIS LANGUAGE WITH IN CLAIM 2, THAT'S TALKING ABOUT DO I

8    GIVE THE DRUG TOGETHER IN ONE PILL OR ONE AT A TIME?

9              THE COURT:  THAT'S WHAT YOU ARE SAYING THE CLAIM

10   SAYS?

11             MR. MCCANN:  I'M SAYING THAT'S WHAT THE DEFINITION OF

12   IN COMBINATION WITH, WHAT CLAIM 2 IS REFERRING TO.

13        WHAT WE'VE SAID ON THE SLIDE HERE IT'S AN EX VIVO

14   CONCEPT, IT'S WHAT THE DOCTOR DOES.

15             THE COURT:  OKAY.  SO THE DEFINITION IS BROADER THAN

16   THE LANGUAGE HERE, I'VE GOT TO GO BACK TO.

17             MR. MCCANN:  THE DEFINITION THAT THE PARTIES AGREED

18   ON, YOUR HONOR, IS ON SLIDE 31.

19             THE COURT:  FOR "IN COMBINATION."  I GUESS I'M A

20   LITTLE AT A LOSS.

21             MR. MCCANN:  THE QUESTION IS WHEN DOES ADMINISTERING

22   STOP.  WE DISCUSSED THE ORDINARY MEANING IS YOU GIVE IT AND YOU

23   ARE DONE.

24             THE COURT:  SURE.

25             MR. MCCANN:  AND THE QUESTION IS, DOES THIS PATENT

1   EVEN THOUGH IT SAYS PRODRUG, DOES THAT GO PAST YOU GIVE IT AND

2   IT'S DONE.

3         SO MY POINTS ARE GOING TO BE, I TOLD YOU MY BEST POINT,

4   I'M ACTUALLY GOING TO HIT THE BEST POINT AGAIN.  BUT THE FIRST

5   ONE WAS THAT WHEN THIS PATENT TALKS ABOUT GIVING THE DRUG IN

6   COMBINATION WITH SOMETHING, IT'S REALLY REFERRING TO WHAT THE

7   DOCTOR IS DOING.

8         I DON'T THINK I'M MAKING A LOT OF PROGRESS WITH YOU ON

9   THAT ONE SO I'M GOING TO MOVE ON TO THE NEXT POINT, YOUR HONOR.

10  AND THAT IS, WHAT DOES THE PATENT SAY YOU DO WITH THE COMPOUNDS

11  OF THE INVENTION?

12        SO I'M LOOKING AT SLIDE 26.  THIS IS CLAIM 1, THE TOP

13  PART OF IT.  IT SAYS I HAVE A METHOD OF TREATING HEPATITIS C BY

14  ADMINISTERING AN AMOUNT OF A COMPOUND STRUCTURAL FORMULA III OR

15  A PHARMACEUTICALLY ACCEPTABLE SALT OR ACYL DERIVATIVE THEREOF.

16        MR. RABINOWITZ AND I BOTH AGREE PHARMACEUTICALLY

17  ACCEPTABLE SALT, ACYL DERIVATIVES, THESE ARE THING US MAKE IN A

18  LAB YOU PUT IN A PILL YOU GIVE TO THE PATIENT.

19        AND SO THE QUESTION IS WHAT ABOUT THE REST OF IT?  IT

20  SAYS A COMPOUND OF STRUCTURAL FORMULA III OR THE OTHER THINGS.

21  WHAT DOES THIS PATENT TELL YOU ABOUT HOW THAT COMPOUND IS

22  CREATED?  DOES IT TELL YOU THE BODY CREATED IT?  DOES IT TELL

23  YOU THE PERSON MAKING THE PILL CREATED IT?

24        AND THE ANSWER IS, IT TELLS YOU THAT THE PERSON WHO MADE

25  THE PILL CREATED IT.

1      SO HERE'S THE EVIDENCE FOR THAT.  FIRST, FORMULA III THE

2    ONE IN THE CLAIM IT'S A SUBGENUS.  AND WHAT I MEAN IS THIS

3    PATENT IS IN THREE BIG PARTS.  THERE'S GENUS ONE, VERY BROAD,

4    THOUSANDS OF MOLECULES WITHIN IT, UNDER FORMULA 1, GENUS 1,

5    THERE'S GENUS 2, GENUS 3, GENUS 3 IS THE ONE THEY ULTIMATELY

6    DECIDE TO CLAIM.

7      SO MY FIRST POINT TO YOU IS, JUST TO TIE UP THE EVIDENCE

8    FOR YOU, THAT FORMULA III FALLS WITHIN THE SCOPE OF FORMULA

9    ONE.  ALL RIGHT.

10      SECOND, THE PATENT, THIS IS AT COLUMN 34, LINES 26 TO 30,

11    SAYS THE PHARMACEUTICAL COMPOSITIONS OF THE PRESENT INVENTION,

12    THE PHARMACEUTICAL COMPOSITION IS A PILL, COMPRISE A COMPOUND

13    OF STRUCTURAL FORMULA ONE WHICH INCLUDES THREE, AS ACTIVE

14    INGREDIENT.

15      SO THEY ARE TELLING YOU HERE IN THE PATENT, JUDGE, YOU

16    TAKE ALL OF THE POSSIBLE MOLECULES THAT ARE IN THE SCOPE OF

17    FORMULA ONE AND UNDERNEATH THAT FORMULA III, AND YOU CAN PUT

18    THOSE INTO A PHARMACEUTICAL COMPOSITION, THAT MEANS A PILL.

19      AND IT SPECIFICALLY SAYS, IT GOES ON TO SHOW YOU, ONE OF

20    THE FIVE PRIME TRIPHOSPHATES.  SO THIS IS NOW SLIDE 29, WE ARE

21    LOOKING AT EXAMPLE 129.  AND THIS IS THE INVENTORS SHOWING YOU

22    HOW TO MAKE IN A LABORATORY THE TRIPHOSPHATE.

23      AND THE ONLY REASON THAT I CAN THINK OF THAT YOU WOULD

24    WANT TO MAKE THE TRIPHOSPHATE IN A LABORATORY AND NOT IN YOUR

25    LIVER IS IF YOU PLAN TO DO JUST WHAT THE PATENT SAYS, WHICH IS

1    YOU CAN PUT THOSE INTO A PILL.

2         AND AGAIN, IN 2002 WHEN THIS PATENT WAS DRAFTED, IT SEEMS

3    TO BE THAT'S WHAT PEOPLE THOUGHT WAS AN ACCEPTABLE SOLUTION.

4    TODAY, WE KNOW 13 YEARS LATER, A PRODRUG IS A MUCH BETTER WAY

5    TO DO THIS.

6         BUT MY POINT IS THIS, WHEN YOU'RE TRYING TO UNDERSTAND

7    ADMINISTERING AND YOU'RE TRYING TO DETERMINE DOES

8    ADMINISTERING, EVEN THOUGH IT SAYS PRODRUG, TALK ABOUT THE

9    SEVENTH STEP DOWN IN THE LIVER OR IS IT REALLY JUST TALKING

10   ABOUT WHAT THE PERSON PUT IN THE PILL?  WHY IS THE INVENTOR

11   HERE NOT SAYING HERE, THIS FIVE PRIME TRIPHOSPHATE, YOUR LIVER

12   IS GOING TO MAKE THAT, YOU DON'T NEED TO PUT THAT IN A PILL.

13        WHERE ANYWHERE IN THIS PATENT IS A DESCRIPTION OF WHAT

14   YOUR BODY DOES TO MAKE THE ACTIVE COMPOUND?  IT'S NOWHERE.

15   MR. RABINOWITZ, ALL HE CAN POINT TO --

16             THE COURT:  YOU CAN'T PATENT WHAT YOUR BODY DOES.

17             MR. MCCANN:  YOU CAN.  YOU CAN.  THE CASE IS SCHERING

18   ALSO VERSUS GENEVA.  AND CHIEF JUDGE RADER, FORMER CHIEF JUDGE

19   RADER SAID YOU CAN WRITE A CLAIM THAT COVERS A METABOLITE, AND

20   THEN HE SORT OF EXPLAINS YOU HOW YOU CAN DO THAT.  YOU CAN DO

21   THAT.

22        WHAT I'M TELLING YOU IS I DON'T THINK THESE INVENTORS DID

23   THAT.  AND THE REASON I'M SAYING THAT, THE EVIDENCE I'M

24   POINTING TO IS THE LANGUAGE THAT SHOWS EVEN THE FIVE PRIME

25   TRIPHOSPHATE, EVEN THE THING THAT'S ACTIVE, SOMEONE IS MAKING

1   IT HERE IN THE LABORATORY.

2        AND EARLIER IN THE SPECIFICATION THEY ARE SAYING YOU CAN

3   PUT ALL OF THESE DRUGS INTO A PILL.  WHY WOULD YOU DO THAT IF

4   THE BODY IS GOING TO TAKE CARE OF THAT, IF THAT'S WHAT YOU ARE

5   PATENTING IS WHAT THE BODY DOES?

6        THE COURT:  WELL, I MEAN, WHY WOULD YOU DO IT BECAUSE

7   YOU HAVE SOME OPTIONS.  I DON'T THINK THAT -- IT'S SORT OF A

8   QUESTION THAT ANSWERS ITSELF.  YOU ARE GOING TO COVER DIFFERENT

9   OPPORTUNITIES TO HAVE ACTIVE DRUG ATTACK THE VIRUS.

10        MR. MCCANN:  ABSOLUTELY.

11        BUT IF YOU WANT TO COVER WHAT THE BODY DOES AS WELL,

12   SHOULDN'T THERE BE SOME DESCRIPTION SOMEWHERE OF HOW ONE OF

13   YOUR PILL COMPOUNDS IS GOING TO BECOME ACTIVE COMPOUND.

14        AND I WOULD HAVE THOUGHT THAT WHEN YOU POINT HERE TO

15   MAKING THIS FIVE PRIME TRIPHOSPHATE, YOU WOULD SAY HERE.  YOUR

16   BODY IS GOING TO MAKE THIS AND THIS IS HOW AND I'M TRYING TO

17   CLAIM THAT AS WELL.

18        I GUESS WHAT I'M SAYING IS THIS, JUDGE, WHEN YOU READ THE

19   PATENT AS A WHOLE EVERYTHING IN THAT PATENTS SAYS PUT THE

20   COMPOUNDS OF THE INVENTION AND THE PRODRUGS INTO PILLS.  AND

21   I'M SAYING THAT IS THE EXTENT OF THE SCOPE OF THE CLAIM.

22        AND SO ADMINISTERING IS AN ACT THAT STOPS AT THE GIVING.

23        THE COURT:  YOU KNOW, I THINK BOTH OF YOU ARE -- I

24   THINK TO READ SO MUCH INTO THE WORD ADMINISTERING IS MAKING NO

25   SENSE WHEN REALLY WHAT YOU WANT TO DO IS TO HAVE CONSTRUED A

1    PRODRUG A COMPOUND OF THE INVENTION.

2         IT IS WHERE I STARTED AND WE ARE TRYING TO STUFF SO MUCH

3    MEANING INTO THE WORD ADMINISTERING THAT DOESN'T FIT.

4         TO ME IT'S WHERE I STARTED, I GUESS I HAVEN'T BEEN

5    PERSUADED.  WE ARE TAKING THE WORD ADMINISTERING AND IMPORTING

6    IN ITS PLACE THE DEFINITION.  THAT'S WHAT YOU ARE ASKING ME TO

7    DO, AND THEN YOU ARE ASKING ME TO CONSTRUE SOME DIFFERENT WORDS

8    IN THAT DEFINITION AS IF IT WAS IN THE CLAIM.

9         AM I WRONG ON THAT?

10         MR. MCCANN:  YOU KNOW, YOUR HONOR, I WOULD BE

11    SATISFIED IF YOU FOCUSED ON THE FIRST PART THAT A PRODRUG OF A

12    COMPOUND OF THE INVENTION IS LIMITED TO THE PRODRUG THAT MERCK

13    EXPRESSLY CLAIMED.

14         IF YOUR HONOR THINKS THIS PART DOES NOT ADD DOES NOT HELP

15    THE JURY, THE PART OF IT NOT INCLUDING THE IN VIVO METABOLISM.

16    THAT'S FINE.

17         TO ME THE KEY OTHER ISSUE IN THE CASE IS THE ONE I

18    STARTED WITH WHICH IS MERCK'S INVENTION INCLUDES PRODRUGS AND

19    THEY INCLUDED THE ONES THAT THEY INVENTED IN THEIR CLAIM AND

20    THIS CLAIM IS NO BROADER THAN THAT.

21         AND SO YOU HAVE THE MECHANISM TO CONSTRUE PRODRUG A

22    COMPOUND OF THE INVENTION, AND THAT CONSTRUCTION SHOULD BE

23    LIMITED TO THOSE PRODRUGS EXPRESSLY CLAIMED.

24         THE COURT:  WELL, IT FEELS LIKE A MORE DIRECT

25    RESOLUTION OF WHAT THE REAL ISSUE HERE IS.  THAT'S WHY I SAID

1    WHEN I STARTED, YOU HAVE ONE CLAIM, YOU ARE TAKING A WORD, IT

2    JUST GREW ON ME, BUT YOU ARE, THIS IS YOUR KEY ARGUMENT IS THIS

3    SECOND PORTION OF YOUR PROPOSED CONSTRUCTION.

4         MR. MCCANN:  TO ME, YOUR HONOR, IT'S THE HEART OF IT.

5         THE COURT:  YEP.  I SEE HOW IT IS.  IT'S VERY CLEAR.

6         MR. MCCANN:  YES.  AND YOU KNOW, I CONTINUE TO

7    BELIEVE IN THE SECOND PART AS WELL.  I UNDERSTAND THE COURT

8    THINKS, YOU KNOW, MAYBE THAT'S UNNECESSARY HERE.

9         THE COURT:  WELL, I'M THINKING IT'S UNNECESSARY.  AND

10   CLEARLY MERCK FEELS IT'S UNNECESSARY AS WELL, THEY FEEL IT

11   SHOULD BE EXCLUDED.

12        MR. MCCANN:  NO, I THINK THAT YOUR HONOR, WE ARE, TO

13   ME THE HEART OF THE ISSUE IS THAT FIRST PART.  AND I THINK

14   THAT --

15        THE COURT:  WHAT'S THE FIRST PART?

16        MR. MCCANN:  WHAT ARE THE -- WHAT PRODRUGS.

17        THE COURT:  WHICH IS YOUR SECOND PART.

18        MR. MCCANN:  YES.

19      FIRST PART, SECOND PART.  YOU KNOW, IF WE HAD LIFE TO LIVE

20   OVER, WE WOULD REORDER THESE THINGS, YOUR HONOR, WE WOULD

21   DEFINITELY DO IT DIFFERENTLY.

22        THE COURT:  WHEN I LOOK AT YOUR PROPOSED CONSTRUCTION

23   WHAT YOU ARE FOCUSSING ON IS YOUR LANGUAGE, THE PHRASE "PRODRUG

24   OF A COMPOUND" MEANS THOSE PRODRUGS THAT ARE EXPRESSLY CLAIMED,

25   THAT'S WHAT YOU ARE FOCUSSING.

1        MR. MCCANN:  AND I WOULD BE HAPPY WITH THAT

2    CONSTRUCTION, YOUR HONOR.

3        THE COURT:  OKAY.

4        MR. MCCANN:  AND I THINK GIVEN THAT, I PROBABLY

5    UNLESS YOUR HONOR HAS FURTHER QUESTIONS, I SHOULD PERHAPS YIELD

6    THE FLOOR TO MR. RABINOWITZ AFTER I CLEAN UP MY DRUG COLLECTION

7    HERE.

8        THANK YOU, YOUR HONOR.

9        THE COURT:  THANK YOU SO MUCH.

10    MR. RABINOWITZ, YOU GET THE LAST WORD.

11        MR. RABINOWITZ:  THANK YOU, YOUR HONOR.

12        SO YOUR HONOR, I HAVE A FEW POINTS I WOULD LIKE TO MAKE,

13    BUT I WOULD FIRST LIKE TO ADDRESS ANYTHING THAT YOUR HONOR

14    FEELS WOULD --

15        THE COURT:  NO, I APPRECIATE THAT.  I WOULD LIKE YOU

16    TO JUST WRAP UP WITH THE POINTS YOU WOULD LIKE ME TO

17    PARTICULARLY DISREGARD THAT MR. MCCANN JUST GAVE ME OR ONES

18    THAT YOU WOULD LIKE TO COME BACK TO YOUR OWN POINTS BEING MORE

19    SALIENT.

20        MR. RABINOWITZ:  I WOULD LIKE TO START WITH THE

21    POINT, I THINK I MADE IT RIGHT TOWARDS THE BEGINNING, I WOULD

22    LIKE TO DIRECT YOUR HONOR'S ATTENTION TO THE ACTUAL TEXT OF

23    CLAIM 1 OF THE '499 PATENT.

24        WHICH IS DIRECTED TO AS IT SAYS A METHOD OF TREATING

25    HEPATITIS C VIRUS INFECTION.  THIS CLAIM IS NOT DIRECTED TO A

1     PRODRUG, IT DOESN'T EXPRESSLY CLAIM PRODRUG, IT EXPRESSLY

2     CLAIMS A METHOD OF TREATMENT.

3         AND IT'S ALSO NOT DIRECTED TO PHARMACEUTICAL COMPOSITIONS

4     WHICH WAS AN EXAMPLE THAT MR. MCCANN DREW FROM THE

5     SPECIFICATION, THIS IS DIRECTED TO A METHOD OF TREATMENT.

6         AND SO I THINK IT RENDERS IRRELEVANT SOME OF THE

7     ARGUMENTS THAT YOU'VE JUST HEARD BASED ON WHAT THE PATENT

8     TEACHES ABOUT, YOU KNOW, CLAIMED PHARMACEUTICAL COMPOSITIONS

9     AND CLAIMED PRODRUGS.

10        SECONDLY, I THINK THAT YOUR HONOR HIT THE NAIL ON THE

11    HEAD WHEN YOU SAID WHERE DOES THE CLAIM SAY ONLY SATE AND ONLY

12    ACYL DERIVATIVES?

13        THE ANSWER IS IT DOES NOT.  IT CONTAINS THE WORD

14    ADMINISTERING WHICH IS DEFINED IN THE SPECIFICATION IN AN

15    EXPANSIVE WAY TO EXCLUDE PRODRUGS OF THE COMPOUNDS OF THE

16    INVENTION.

17        NOW -- AND THAT WOULD INCLUDE PRODRUGS OF THE SATE

18    COMPOUND IN THE INVENTION.  AND IT IS POSSIBLE TO HAVE A

19    PRODRUG OF A PRODRUG, THEY ARE CALL DOUBLE PRODRUGS.

20            THE COURT:  SURE.

21            MR. RABINOWITZ:  I WOULD JUST LIKE TO POINT YOUR

22    ATTENTION, YOUR HONOR, TO ONE STATEMENT IN THE SPECIFICATION OF

23    THE PATENT THAT WAS I THINK POINTED OUT IN OUR BRIEF BUT WE

24    HAVEN'T DISCUSSED IT TODAY.

25        TO THE EXTENT YOU ARE BEING ASKED TO RELY ON THE EXAMPLES

1    IN THE SPECIFICATION AS LIMITING, FIRSTLY THE CASE LAW SAYS

2    THAT'S NOT RIGHT.

3            THE COURT:  I UNDERSTAND.

4            MR. RABINOWITZ:  JUST FOR GOOD MEASURE, COLUMN 40,

5    LINES 34 TO 36 OF THE '499 PATENT.

6            THE COURT:  TELL ME THOSE LINE NUMBERS AGAIN.

7            MR. RABINOWITZ:  COLUMN 40, BEGINNING AT 34 AND A

8    HALF, IT SAYS THE EXAMPLES ARE NOT INTENDED TO BE LIMITATIONS

9    ON THE SCOPE OF THE INSTANT INVENTION IN ANY WAY AND THEY

10   SHOULD NOT BE SO CONSTRUED.

11           THE COURT:  YES, THAT IS IN YOUR BRIEF, I DO RECALL

12   THAT.

13           MR. RABINOWITZ:  SO I QUITE FRANKLY DON'T KNOW WHAT

14   THE ATTORNEY WHO DRAFTED THIS COULD HAVE DONE MORE THAN THEY

15   ALREADY DID TO MAKE IT CRYSTAL CLEAR --

16           THE COURT:  SO THIS ISN'T WHAT MR. MCCANN IS SAYING.

17      HE'S NOT SAYING THAT THE SPECIFICATION IMPOSES

18   LIMITATIONS HE CAME TO THE CLAIM.  AND HE ARGUED TO ME THAT IT

19   IS THE CLAIM THAT LIMITS TO ACYL DERIVATIVES AND TO SATE AND IF

20   IT WASN'T A LIMITATION THEN WHAT'S IT DOING THERE?

21           MR. RABINOWITZ:  SO IT'S BY WAY OF INCLUSION.  SO

22   THOSE ARE DEFINED AS COMPOUNDS OF THE INVENTION.  FOR PURPOSES

23   OF, WHOSE USE IS CLAIMED --

24           THE COURT:  WELL ACYL DERIVATIVES IS NOT A COMPOUND

25   OF THE INVENTION.

1          MR. RABINOWITZ:  SO I BELIEVE COMPOUNDS OF THE

2    INVENTION WOULD BE COMPOUNDS OF STRUCTURAL FORMULA III OR SALTS

3    OR ACYL DERIVATIVES THEREOF.

4          THE COURT:  OKAY.  WELL YOU DID TELL ME THE COMPOUND

5    OF THE INVENTION INCLUDED BOTH ACTIVE AND INACTIVE FORMS.

6          MR. RABINOWITZ:  THAT'S CORRECT.

7          AND SO FAR FROM LIMITING THIS CLAIMED METHOD OF TREATMENT

8    TO THE USE OF THE COMPOUNDS THAT ARE EXPRESSLY DEFINED THERE,

9    THE CLAIM IS DIRECTED TO A METHOD OF TREATMENT THAT SAYS

10   ADMINISTERING A COMPOUND OF THE INVENTION, AND THAT'S DEFINED

11   AS PROVIDING THE COMPOUND OF THE INVENTION OR PROVIDING A

12   PRODRUG OF THE COMPOUND OF THE INVENTION.

13         SO IF THE MEANING OF ADMINISTERING AS DEFINED IN THIS

14   SPECIFICATION IS GIVEN EFFECT, THE METHOD OF TREATMENT CAN BE

15   CARRIED OUT EITHER BY PROVIDING A PILL THAT CONTAINS A COMPOUND

16   OF THE INVENTION OR BY PROVIDING A PILL THAT CONTAINS A PRODRUG

17   OF A COMPOUND OF THE INVENTION.

18         AND MR. MCCANN SAID IT'S EASY, YOU CAN MAKE IT IN A LAB,

19   YOU CAN PUT IT IN A PILL, YOU CAN GIVE IT TO THE PATIENT.

20   THAT'S TRUE OF PRODRUGS OF THESE COMPOUNDS.

21         SOFOSBUVIR IS THE EXAMPLE THAT'S AT ISSUE HERE.

22   SOFOSBUVIR IS MADE IN THE LAB, IT'S GIVEN TO PUT IN A PILL IT'S

23   GIVEN TO THE PATIENT, THE PATIENT SWALLOWS THE PILL AT MIDNIGHT

24   THE ACTIVE ADMINISTRATION HAS OCCURRED, AND THE QUESTION IS NOT

25   WHEN BUT WHAT MUST BE GIVEN, WHAT MUST BE ADMINISTERED.

1      AND WE KNOW THAT SOFOSBUVIR IS A PRODRUG OF COMPOUNDS OF

2   THE INVENTION BECAUSE THAT'S HOW IT WORKS.

3      AND THEN FINALLY I JUST WANTED TO DEAL WITH A COUPLE OF

4   THE CASES THAT WERE POINTED OUT IN MR. MCCANN'S ARGUMENT.  I

5   DON'T THINK I NEED TO GO INTO THE SCHERING V. GLENMARK AND

6   HOFFMAN LA-ROCHE V. APOTEX, AS YOU POINTED OUT THEY DEALT WITH

7   ORDINARY MEANING OF ADMINISTERING, THERE WAS NO DIFFERENT

8   DEFINITION IN THE SPECIFICATION.

9      IN THE TRADING TECHNOLOGIES CASE, THE COURT APPLIED THE

10  DEFINITION IN THE SPECIFICATION BUT THE DEFINITION CROSS

11  REFERENCED OTHER PARTS OF THE SPECIFICATION.  SO THE DEFINITION

12  INCORPORATED IT.  THIS IS ON PAGE 1353 OF TRADING TECHNOLOGIES.

13     AND THE DEFINITION SAID THE VALUES IN THE PRICE COLUMNS

14  ARE STATIC, THAT IS, THEY DO NOT NORMALLY CHANGE POSITIONS

15  UNLESS A RECENTERING COMMAND IS RECEIVED DISCUSSED IN DETAIL

16  LATER.

17     SO FIRSTLY, THIS WASN'T ACTUALLY AN EXPRESS DEFINITION AS

18  USED HERE IN THE TERM X MEANS Y OR AS WE HAVE, THE TERM X

19  SHOULD BE UNDERSTOOD TO MEAN Y.  IT WAS AN IMPLICIT DEFINITION

20  AND IT EXPRESSLY CALLED FOR REFERENCE TO OTHER PARTS OF THE

21  SPECIFICATION WHICH THE COURT DID.

22     AND IN THE ALLERGAN V. APOTEX CASE, IN THE COURT'S

23  DISCUSSION IT ACTUALLY SAID THERE WAS SOME AMBIGUITY IN THE

24  DEFINITION OF THE CLAIM.

25     THIS IS ON PAGE 958, MOST COMPELLING EVEN IF THERE MAY BE

1    SOME AMBIGUITY IN HOW THE PATENTEES DEFINED THE TERM.  AND THEY

2    SAID NUMEROUS EXAMPLES IN THE PATENT WOULD BE EXCLUDED BY THE

3    DEFINITION THEY ARE REJECTED.

4         NOW IT'S ONE THING TO SAY THAT THE EXAMPLES DON'T LIMIT

5    THE CLAIM TO THE EXAMPLES, BUT THERE'S ALSO A PRINCIPLE THAT

6    SAYS THAT CLAIMS ARE PRESUMED TO COVER THE EXAMPLES BY WHICH

7    THE INVENTOR HAS EXEMPLIFIED.

8         SO IT WAS A MIXTURE OF AMBIGUITY AND THE DESIRE TO COVER

9    THE EXAMPLES THAT THE INVENTOR SAID WERE EXAMPLES OF THEIR

10   INVENTION THAT LEAD THE COURT TO ADOPT THE CONSTRUCTION IT DID.

11        I DON'T THINK EITHER OF THOSE IS APPLICABLE HERE.  I

12   DON'T THINK THERE'S AMBIGUITY.  I THINK IT'S VERY CLEARLY

13   EXPRESSED.  AND WE ARE NOT TALKING ABOUT EXPANDING A CLAIM TO

14   COVER EXAMPLES THAT THE INVENTORS USED TO DESCRIBE WHAT THE

15   INVENTION WAS.

16        IF THERE'S NOTHING FURTHER FROM YOUR HONOR, THAT'S ALL I

17   HAVE FOR YOU.

18             THE COURT:  THANK YOU.

19             MR. MCCANN:  WAS THAT TOTALLY THE LAST WORD,

20   YOUR HONOR?

21             THE COURT:  IF THERE'S SOMETHING THAT YOU THINK WOULD

22   BE OF HELP TO ME.

23             MR. MCCANN:  I JUST, REALLY ONE THING.

24        MR. RABINOWITZ, HE TWICE SAID THAT THIS IS A METHOD OF

25   TREATMENT CLAIM.  AND I JUST WANT TO SAY I DON'T SEE HOW THAT

1    MAKES THE LEAST BIT OF DIFFERENCE AS TO WHETHER YOU CLAIM

2    PARTICULAR PRODRUGS BUT THEN LATER SAY THAT I ACTUALLY MEANT

3    ALL THE OTHER ONES AS WELL.

4         I MEAN, THIS IS WHAT YOU USE THEM FOR IS TO TREAT PEOPLE

5    WITH.  SO THE FACT OF THE CLAIM THIS PARTICULAR CLAIM THE

6    STRUCTURE IS A METHOD OF TREATMENT I THINK THAT HAS NOTHING TO

7    DO WITH THE ARGUMENT I'M MAKING FOR SURE.

8         THE COURT:  WELL, I THINK THAT YOU HAVE NARROWED THE

9    ISSUE FOR ME SO THAT I CAN PROVIDE A CONSTRUCTION THAT WILL

10   MOVE US TO THE NEXT POINT.

11        REMIND ME, BECAUSE I DON'T HAVE MY ENTIRE FILE HERE, I

12   PRESUME WE HAVE NO FURTHER DATES BEYOND CLAIMS CONSTRUCTION

13   THAT HAVE BEEN STATED IN THE OR HAVE WE?

14        MR. MCCANN:  THERE'S A SUBSTANTIAL NUMBER,

15   YOUR HONOR.

16        THERE'S A TRIAL DATE AND THERE'S, I BELIEVE, A

17   DISPOSITIVE MOTION DATE.  THERE IS A FAIRLY GOOD CASE SCHEDULE

18   IN PLACE.

19        THE COURT:  IS THERE ENOUGH TIME -- SOMETIMES WE WAIT

20   UNTIL CLAIMS CONSTRUCTION TO SPELL OUT THOSE DATES.  SO IN YOUR

21   CASE, I'VE ALREADY GIVEN YOU THOSE DATES?

22        MR. MCCANN:  YES, YOUR HONOR.

23        THE COURT:  I DO IT DIFFERENTLY IN THE CASES.

24        SO IF MY, I DON'T KNOW HOW LONG THIS WILL TAKE, YOU KNOW

25   IT'S CERTAINLY NOT AS DIFFICULT AS CONSTRUING TEN CLAIMS OVER 4

1    OR 5 PATENTS BUT THIS IS A KEY ISSUE IN THE CASE.

2         SHOULD MY ORDER COME OUT AND THAT WOULD AFFECT THE REST

3    OF THE SCHEDULE, PLEASE DON'T HESITATE TO LET ME KNOW AT THE

4    EARLIEST POSSIBLE MOMENT SO THAT WE CAN LOOK AT THAT SCHEDULE

5    AND MAKE SURE THAT IT WORKS.

6         WELL, THANK YOU ALL VERY MUCH.  I GREATLY APPRECIATE THE

7    EXTRAORDINARY QUALITY OF THE PRESENTATIONS AND THE CARE IN

8    WHICH YOU'VE TAKEN IN EDUCATING THE COURT.  IT'S ALWAYS

9    APPRECIATED.

10        I THINK WE'RE DONE.

11             MR. MCCANN:  THANK YOU, YOUR HONOR.

12        (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                       **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____
     SUMMER A. FISHER, CSR, CRR
25   CERTIFICATE NUMBER 13185              DATED: 4/3/15