1                UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
2                      SAN JOSE DIVISION


3
     GILEAD SCIENCES, INC.,
4
             PLAINTIFF,              CASE NO.
5                                    CV-13-04057-BLF-PSG
        VS.
6                                    SAN JOSE, CALIFORNIA
     MERCK, & CO., INC., ET AL.,
7                                    APRIL 23, 2015
                 DEFENDANTS.
8                                    PAGES 1 - 25

9
                 TRANSCRIPT OF PROCEEDINGS
10           BEFORE THE HONORABLE PAUL S. GREWAL
           UNITED STATES DISTRICT MAGISTRATE JUDGE
11

12                 A-P-P-E-A-R-A-N-C-E-S

13
     FOR THE PLAINTIFF:   FISH & RICHARDSON
14                        BY:   DOUGLAS E. MCCANN
                                GREGORY BOOKER
15                        222 DELAWARE AVENUE, 17TH FLOOR
                          WILMINGTON, DELAWARE 19899
16

17   FOR THE DEFENDANTS:  HUGHES, HUBBARD & REED LLP
                          BY:   STEPHEN S. RABINOWITZ
18                        ONE BATTERY PARK PLAZA
                          NEW YORK, NEW YORK 10004
19

20   OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, CRR
                                CERTIFICATE NUMBER 8074
21

22      PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
     TRANSCRIPT PRODUCED WITH COMPUTER.
23

24

25

```
 1    SAN JOSE, CALIFORNIA                    APRIL 23, 2015

 2                   P R O C E E D I N G S

 3        (COURT CONVENED.)

 4            THE CLERK:  YOUR HONOR, CALLING GILEAD SCIENCES,

 5    INC., VERSUS MERCK & COMPANY, INC., ET AL.  CV-13-4057-BLF.

 6        MATTER ON FOR PLAINTIFF'S MOTION TO COMPEL.  PLEASE STATE

 7    YOUR APPEARANCES.

 8            THE COURT:  GOOD MORNING, COUNSEL.

 9            MR. BOOKER:  GOOD MORNING, YOUR HONOR.  GREG BOOKER

10    FROM FISH & RICHARDSON FROM THE DELAWARE OFFICE ON BEHALF OF

11    THE PLAINTIFF GILEAD SCIENCES.  AND I HAVE WITH ME DOUG MCCANN.

12            MR. MCCANN:  GOOD MORNING, YOUR HONOR.

13            THE COURT:  GOOD MORNING TO YOU AS WELL.

14            MR. RABINOWITZ:  GOOD MORNING, YOUR HONOR.  STEPHEN

15    RABINOWITZ FROM HUGHES, HUBBARD & REED ON BEHALF OF THE

16    DEFENDANTS.

17            THE COURT:  MR. RABINOWITZ, GOOD MORNING TO YOU,

18    SIR.  ALL RIGHT.  BEFORE ME THIS MORNING IN THIS CASE IS A

19    MOTION TO COMPEL.

20        LET ME BEGIN BY OBSERVING THAT IT SEEMS THAT SOME OF THESE

21    ISSUES MAY HAVE BEEN MOOTED OVER THE COURSE OF THE BRIEFING

22    SCHEDULE, AND PARTICULARLY I'M REFERRING TO CERTAIN DEPOSITIONS

23    THAT MAY HAVE BEEN SCHEDULED.

24        BEFORE WE TURN TO THE INDIVIDUAL ITEMS AT HAND, ARE THERE

25    ANY DEVELOPMENTS THAT YOU ALL NEED TO BRING TO MY ATTENTION OR
```

1    AUGMENT -- WELL, I'LL STOP THERE.

2        DO I STILL HAVE THE SAME SET OF ISSUES AS FAR AS YOU ARE

3    CONCERNED, MR. BOOKER?

4            MR. BOOKER:  I THINK WE HAVE RESOLVED SEVERAL

5    ISSUES, YOUR HONOR.  YOU MENTIONED THE DEPOSITIONS, AND WE WERE

6    TALKING IN THE HALLWAY BEFORE THIS HEARING.

7        THE PARTIES, I THINK, ARE NOW IN AGREEMENT THAT WE'LL

8    PROBABLY NEED TO EXTEND THE DEPOSITION PERIOD AT LEAST A FEW

9    WEEKS TO GET ALL OF THE DEPOSITIONS SCHEDULED.

10       WE DO STILL HAVE AN ISSUE AS FAR AS GETTING 30(B)(6)

11   DEPONENTS IDENTIFIED.

12           THE COURT:  OKAY.

13           MR. BOOKER:  AND MR. RABINOWITZ HAS INDICATED HE'LL

14   BE DOING THAT, BUT THAT'S STILL IN FLUX RIGHT NOW.

15           THE COURT:  MR. RABINOWITZ, GO AHEAD, SIR.

16           MR. RABINOWITZ:  YOUR HONOR, THE SPECIFIC ISSUES

17   THAT WERE RAISED IN THE MOTION TO COMPEL WERE SCHEDULED IN THE

18   30(B)(1) DEPOSITIONS.  ALL OF THOSE HAVE BEEN AGREED AND

19   SCHEDULED FOR AGREED DATES EXCEPT FOR DR. ELDRUP WHO WAS

20   NOTIFIED LAST AND SHE HAS RESIDENCE IN GERMANY.  WE ACTUALLY

21   HAVE BEEN TRYING OVER AN EXTENDED PERIOD TO BE IN CONTACT WITH

22   HER, AND WE SUCCEEDED IN DOING THAT.  AND WE'RE TRYING TO SEE

23   WHERE AND WHETHER SHE WOULD BE WILLING TO MAKE HERSELF

24   AVAILABLE FOR DEPOSITION WITHOUT ANYONE HAVING TO GO THROUGH

25   THE HAGUE CONVENTION.

1      SO THAT'S THE ONLY ONE OF THE DEPOSITIONS THAT WAS

2  MENTIONED IN THE MOTION TO COMPEL THAT HASN'T BEEN SCHEDULED

3  FOR AN AGREED DATE.

4      CERTAINLY WE -- I STAND BY WHAT I SAID TO MR. BOOKER THIS

5  MORNING, WE WILL SHORTLY PROVIDE DESIGNEES FOR THE 30(B)(6)

6  TOPICS.

7          THE COURT:  ALL RIGHT.  WELL, THANK YOU FOR THAT.

8  THANK YOU FOR THAT UPDATE.

9          MR. RABINOWITZ:  YOUR HONOR, I ALSO BELIEVE THAT

10  THERE'S -- I THOUGHT THAT FROM OUR DISCUSSION THIS MORNING THAT

11  THERE'S NO LONGER AN ISSUE ABOUT THE CATEGORIES OF

12  DOCUMENTS THAT ARE MENTIONED IN THE MOTION TO COMPEL FOR

13  PRODUCTION.

14      THERE WAS AN AGREEMENT BETWEEN THE PARTIES TO LIMIT THE

15  SCOPE IN TWO IMPORTANT RESPECTS WHICH FROM A FOOTNOTE IN THE

16  REPLY I TAKE IT, IT WAS ACKNOWLEDGED BY GILEAD.  AND I THOUGHT

17  WE WERE ACTUALLY IN AGREEMENT ABOUT THAT AS WELL.

18          MR. BOOKER:  YOUR HONOR, THERE ARE TWO CATEGORIES

19  THAT I THINK HE'S REFERRING TO.  ONE RELATES TO PRODUCTIONS OF

20  DOCUMENTS RELATED TO A CERTAIN CLASS OF COMPOUNDS THAT WE ARE

21  CALLING 2 PRIME METHYL UP AND 2 PRIME FLOURINE DOWN.  THEY HAVE

22  BEEN PRODUCED SO WE'RE WITHDRAWING THAT PART OF THE MOTION.

23      AND THE SECOND RELATES TO PRODUCTION OF DOCUMENTS RELATING

24  TO MERCK'S LEAD COMPOUND, AND THAT HAS BEEN PRODUCED AS WELL

25  AND THAT'S WHY THE MOTION IS BEING WITHDRAWN.

1        I WILL SAY, THIS KIND OF GOES TO THE DEPOSITIONS AGAIN, WE

2    ARE STILL RECEIVING DOCUMENTS FROM MERCK, 10,000 PAGES A COUPLE

3    DAYS AGO, ANOTHER 16,000 PAGES, I THINK, TWO DAYS AGO, AND THEN

4    40,000 PAGES LAST NIGHT.  AND THAT, IN OUR VIEW, IS GOING TO

5    IMPACT, DISTILL OUR ABILITY TO COMPLETE THE DEPOSITIONS THAT

6    HAVE BEEN SCHEDULED.  WE HAVE TO PUSH SOME OF THOSE BACK.

7        AND IN ADDITION TO THE DEPOSITIONS THAT WERE PART OF THE

8    ORIGINAL MOTION, WE HAVE IDENTIFIED ADDITIONAL PEOPLE TO DEPOSE

9    RECENTLY.  WE DO NOT HAVE DATES FOR THOSE PEOPLE AS OF YET.

10          THE COURT:  MR. RABINOWITZ, GO AHEAD.  THIS IS ALL

11   JUST THE INTRODUCTION.  WE HAVEN'T GOTTEN TO THE MOTION.

12          MR. RABINOWITZ:  YOUR HONOR, TO THE EXTENT THAT WE

13   CAN TAKE THINGS OFF THE TABLE FOR DISCUSSION THIS MORNING.

14          THE COURT:  SURE.

15          MR. RABINOWITZ:  WE DID RECEIVE, I THINK IT WAS ON

16   MONDAY OR TUESDAY OF THIS WEEK, A REQUEST TO DEPOSE ADDITIONAL,

17   SUBJECT TO THE PARTIES AGREEING ABOUT WHO OR WHO WOULD NOT BE

18   CALLED AT TRIAL, AND THAT THEY MAY GO AWAY.  OBVIOUSLY WE'LL DO

19   OUR BEST TO RESOLVE THE ISSUES OR OTHERWISE SCHEDULE THE

20   DEPOSITIONS, BUT CLEARLY THAT'S NOT PART OF TODAY'S MOTION.

21          THE COURT:  ALL RIGHT.  WELL, WHY DON'T WE TURN TO

22   WHAT REMAINS IN DISPUTE IN THE MOTION THAT IS BEFORE THE COURT.

23        THIS IS A MOTION BY PLAINTIFFS, AND SO I'LL BEGIN WITH

24   GILEAD.

25          MR. BOOKER, WOULD YOU LIKE TO START WITH THE ARGUMENT?

1          MR. BOOKER:  LET ME GIVE SOME BACKGROUND TO THE CASE

2     THAT I THINK KIND OF PUTS THE ISSUES IN CONTEXT.  AND THIS IS A

3     CASE ABOUT GILEAD'S DRUG, SOFOSBUVIR, WHICH TRULY IS A

4     REVOLUTIONARY TREATMENT FOR HCV, HEPATITIS C.  AND GIVE ME

5     ONE MINUTE, YOUR HONOR.

6          DO YOU HAVE OUR BRIEFING?  WE CAN ALSO PASS UP A SET IF

7     YOU DO NOT.

8          THE COURT:  I HAVE ALL OF THE BRIEFING.

9          MR. BOOKER:  OKAY.  IN OUR OPENING BRIEF AT PAGE

10    3 --

11         THE COURT:  LET ME BEGIN WITH AN ELEMENTARY

12    QUESTION.  AM I PRONOUNCING THIS CORRECTLY, SOFOSBUVIR?

13         MR. BOOKER:  SOFOSBUVIR.

14         THE COURT:  ALL RIGHT.

15         MR. BOOKER:  AT PAGE 3 OF OUR OPENING BRIEF WE HAD

16    THE STRUCTURE OF SOFOSBUVIR.  AND ONE OF THE IMPORTANT FEATURES

17    OF THAT COMPOUND WE POINT OUT IS WHERE WE SHOW THIS 2 PRIME

18    POSITION, IT'S THAT RANGE STRUCTURE IN THE MIDDLE THERE, AND IT

19    HAS WHAT WE SHOW A METHYL GROUP UP AND A FLUORINE ATOM DOWN, A

20    DOWN POSITION.  AND THAT IS GOING TO BE AN ISSUE IN THIS CASE.

21         AND IT TURNS OUT THAT ACTUALLY MAKING THAT TYPE OF

22    STRUCTURE IS DIFFICULT, AND IT WAS FIRST DONE, TO OUR

23    KNOWLEDGE, BY A COMPANY CALLED PHARMASSET IN 2003.

24         NOW, GILEAD HAS SINCE ACQUIRED PHARMASSET.

25         NOW, THE MERCK PATENTS IN THIS CASE, THERE ARE TWO OF

```
1     THEM, THEY HAVE FILING DATES OF 2001 AND THE OTHER -- I BELIEVE

2     THE OTHER THEY'RE CLAIMING JANUARY 2002.

3          THEY HAVE ADMITTED IN THE BRIEFING HERE THAT THE INVENTORS

4     NEVER MADE OR NEVER TESTED ANY COMPOUNDS FOR THE CLAIMS THAT

5     ARE ISSUED IN THOSE PATENTS.

6          WE BELIEVE THE CLAIMS WERE AMENDED IN 2005 AFTER MERCK HAD

7     LEARNED INFORMATION FROM PHARMASSET AND AFTER THEY LEARNED

8     ABOUT THAT THESE TYPES OF COMPOUNDS THAT HAD THESE 2 PRIME

9     METHYL UP, FLOURINE DOWN STRUCTURE.

10          THE COURT:  AND I TAKE IT IT WAS BEFORE GILEAD HAD

11    ACQUIRED PHARMASSET?

12          MR. BOOKER:  YES, YOUR HONOR.  YES, YOUR HONOR.  AND

13    MERCK HAD AMENDED THEIR CLAIMS TO REALLY TARGET THAT TYPE OF

14    FEATURE.  AND OUR DISCOVERY RELATES TO THAT.  OUR DEFENSE IN

15    THIS CASE GOES TO A LACK OF ENABLEMENT AND LACK OF WRITTEN

16    DESCRIPTION AND DERIVATION, AND THAT IS WHAT OUR DISCOVERY

17    SEEKS TO SUPPORT.

18          THE COURT:  I TAKE IT THAT THAT INFORMATION EXCHANGE

19    BETWEEN PHARMASSET AND MERCK WAS UNDER SOME KIND OF NDA OR

20    CONFIDENTIALITY AGREEMENT?

21          MR. BOOKER:  IT WAS A COMBINATION OF INFORMATION

22    THAT WAS CONFIDENTIAL UNDER AN NDA AS WELL AS SOME PUBLICATION

23    THAT OCCURRED ABOUT THREE WEEKS BEFORE MERCK HAD AMENDED THEIR

24    PATENT CLAIMS.

25          THE COURT:  OKAY.
```

1          MR. BOOKER:  SO THE FIRST ISSUE GOES TO OUR

2    DISCOVERY LOOKING AT THE INVENTOR'S POST-FILING EFFORTS AT

3    ACTUALLY MAKING COMPOUNDS FALL WITHIN THE PATENT CLAIMS.

4          SO LIKE I SAID, THEY'VE ALREADY ADMITTED THAT AS OF THE

5    FILING DATE THEY HADN'T DONE THAT.  WE ARE SEEKING DISCOVERY

6    AND OUR INTERROGATORIES 4, 5, AND 1 ASK FOR WHEN THE DEFENDANTS

7    HERE MADE ANY COMPOUNDS THAT FALL WITHIN THE CLAIMS, TESTED

8    THEM, AND THE CIRCUMSTANCES SURROUNDING THOSE EFFORTS.  AND

9    THAT INFORMATION GOES RIGHT TO OUR ENABLEMENT, WRITTEN

10   DESCRIPTION, AND DERIVATION DEFENSES.

11         THE COURT:  WELL, LET'S BREAK THAT DOWN A BIT, SHALL

12   WE?  I UNDERSTAND CONCEPTUALLY WHY POST-FILING ACTIVITY MIGHT

13   BE RELEVANT TO AN ENABLEMENT DEFENSE.  I GET THAT.  4.

14         RIGHT.  IF THEY WERE UNSUCCESSFUL, FOR EXAMPLE, IN

15   PRODUCING THE COMPOUND AS CLAIMED A YEAR OR TWO YEARS OR EVEN

16   FIVE YEARS AFTER THE FACT, ONE MIGHT REASONABLY SEE THAT AS

17   EVIDENCE THAT THEY DID NOT ENABLE THE PRODUCTION OF THE

18   COMPOUND AS OF THE DATE OF THE APPLICATION.  FAIR ENOUGH?

19         MR. BOOKER:  CORRECT, YOUR HONOR.

20         THE COURT:  OKAY.  BUT WHERE I'M STRUGGLING THOUGH

21   IS HOW IN THE WORLD DOES THAT RELATE TO A WRITTEN DESCRIPTION

22   DEFENSE WHICH LOOKS AT WHETHER OR NOT AS ORIGINALLY FILED THE

23   CLAIMS WERE IN THE POSSESSION OF THE INVENTOR?

24         MR. BOOKER:  YOUR HONOR, AND THE WRITTEN DESCRIPTION

25   IS JUDGED AS OF WHAT IS STATED IN THE PATENT.  AND MERCK WILL

1       COME IN AND SAY, OH, YEAH, WE'VE HAD POSSESSION OF THE CLAIMED

2       INVENTION, WE ACTUALLY HAD IT.  AND I THINK THAT GOES RIGHT TO

3       THAT.  IN FACT, IT GOES TO CREDIBILITY.  THEY COME TO TRIAL AND

4       THEY SAY THEY HAD POSSESSION OF THE CLAIMED INVENTION.

5              THE COURT:  OKAY.  SO WHAT YOU WANT TO SHOW IS

6       POSSESSION?  NO WAY.  YOU WERE WORKING ON THIS THING YEARS

7       AFTER THE FACT.  AND, IN FACT, 2007, 2009, MAYBE YOU'LL GET

8       LUCKY UNTIL 2011 OR 2013, YOU STILL DIDN'T HAVE IT.

9              MR. BOOKER:  THAT'S RIGHT, YOUR HONOR.

10             THE COURT:  IS THAT THE BASIC ARGUMENT?

11             MR. BOOKER:  YES, YOUR HONOR.  ALL RIGHT.  AND AS I

12      CAN COMMENT ALSO FOR DERIVATION, AGAIN, THIS IS UNIQUE IN THAT

13      ALTHOUGH THE PATENTS WERE FILED IN 2001, THE CLAIMS AT ISSUE

14      WERE AND CAME INTO EXISTENCE IN 2005 AFTER MERCK LEARNED THE

15      INFORMATION FROM PHARMASSET.  SO THAT'S WHY THEIR ACTIVITIES

16      DEFINITELY BETWEEN 2002 AND WHEN THEY AMENDED THOSE CLAIMS ARE

17      RELEVANT TO THAT DERIVATION DEFENSE.

18             THE COURT:  AND, OF COURSE, I'M NOT HERE TO DECIDE

19      ANYTHING OTHER THAN DISCOVERABILITY, RIGHT?  JUDGE FREEMAN WILL

20      MAKE THE CALL AS TO WHETHER OR NOT THESE ARE RELEVANT UNDER

21      401, AND THE JURY WILL ULTIMATELY MAKE THE CALL.  YEAH, I GET

22      IT.

23         ALL RIGHT.  DO YOU WANT TO TURN TO YOUR OTHER ISSUES AS

24      WELL?  WE CAN TAKE THEM IN ONE BIG BATCH, AND I'LL GIVE

25      MR. RABINOWITZ A CHANCE TO RESPOND.

1          MR. BOOKER:  AND THE OTHER ISSUE -- THE SECOND ISSUE

2     I WAS ALLUDING TO WAS --

3          THE COURT:  I'M TRYING TO APPROVE UPON THE MODEL

4     THAT I --

5          MR. BOOKER:  JUST TO BE QUICK.  IT'S REALLY THE

6     DEPOSITIONS AND DOCUMENTS.  WE HAVE REACHED AGREEMENT ON A

7     NUMBER OF DEPOSITION DATES.

8          THE COURT:  SO IT LOOKS LIKE FOR 30(B)(1) DEPONENTS,

9     WHICH ARE THE ONLY DEPONENTS PRESENTED IN THE MOTION, WE'RE

10     DOWN TO DR. ELDRUP; IS THAT CORRECT?

11          MR. BOOKER:  IT IS, AS TO THE DEPONENTS THAT WERE

12     PRESENT IN THE MOTION.

13          THE COURT:  OKAY.  SO WHAT IS THE ISSUE AS TO

14     ELDRUP?  YOU WANT A DEPOSITION?  YOU HAVEN'T GOTTEN ONE.  IS

15     THAT BASICALLY IT?

16          MR. BOOKER:  WELL, THAT'S THE ISSUE THERE, BUT I

17     WOULD WANT TO SAY THAT WE STILL, I THINK, HAVE AN ISSUE WITH

18     THE TIMING OF THESE DEPOSITIONS.  AND IF I CAN JUST MENTION

19     THAT FIRST.

20          THE COURT:  PLEASE.

21          MR. BOOKER:  SO WE HAVE MANY DATES NOW FOR MERCK.

22     WE HAVE ACCEPTED ALL OR MOST OF THOSE DATES.

23          OUR CONCERN, THOUGH, AS I ALLUDED TO, WAS WE'RE JUST NOW

24     RECEIVING THOUSANDS AND THOUSANDS OF DOCUMENTS.  I'M NOT SURE

25     IF WE CAN KEEP SOME OF THE DATES THAT WE HAVE ALREADY AGREED

1   TO.  WE MIGHT HAVE TO PUSH SOME OF THOSE DATES BACK IN LIGHT OF

2   JUST NOW RECEIVING IN THE PAST WEEK OR SO 70,000 OR SO PAGES OF

3   DOCUMENTS.

4        WE WOULD LIKE TO HAVE THE ABILITY, IF WE NEED TO, TO TAKE

5   THE DEPOSITIONS BEYOND THE DISCOVERY PERIOD.  AND I THINK

6   MR. RABINOWITZ HAS AGREED TO THAT IN PRINCIPLE IN THE HALLWAY

7   THIS MORNING.

8             THE COURT:  WELL, ON THAT ISSUE I SHOULD TELL EACH

9   OF YOU THAT STRIKES ME AS A REASONABLE COMPROMISE THAT YOU HAVE

10  WORKED OUT IF, IN FACT, YOU HAVE REACHED AN AGREEMENT.

11       I WOULD SUGGEST THAT THE WAY TO PUT THAT INTO PRACTICE IS

12  TO PREPARE A STIPULATION FOR JUDGE FREEMAN'S SIGNATURE AS SHE'S

13  CONTROLLING HER OWN TRIAL SCHEDULE.  FOR WHAT IT'S WORTH AND

14  HERE ON THE RECORD, I WOULD THINK THAT IF YOU'VE REACHED A DEAL

15  IT MIGHT BE SOMETHING THAT SHE MIGHT BE INCLINED TO GRANT.  BUT

16  THAT'S HER CALL, AND I NEED TO RESPECT THAT, AND YOU NEED TO

17  PROCEED WITH THAT IN MIND.

18            MR. BOOKER:  YES, YOUR HONOR.  AND THAT'S REALLY ALL

19  I HAVE RIGHT NOW ON THE DEPOSITION ISSUE.

20            THE COURT:  OKAY.

21            MR. BOOKER:  THERE IS ONE THIRD ISSUE THAT WE

22  ALLUDED TO IN A FOOTNOTE IN OUR REPLY BRIEFING AND JUST BECAUSE

23  IT REALLY HAD NOT BEEN TEED UP AT THE TIME.  I WOULD LIKE TO

24  BRING IT TO YOUR ATTENTION BECAUSE IT MIGHT BE AN ISSUE IN

25  DEPOSITIONS THAT WE'LL BE CALLING YOU AGAIN IF WE'RE NOT

1       GETTING CERTAIN DISCOVERY.

2               THE COURT:  YOU'RE TALKING ABOUT FOOTNOTE 16?

3               MR. BOOKER:  UM, I THINK IT IS, YOUR HONOR.  THAT'S

4       CORRECT.

5               THE COURT:  OKAY.

6               MR. BOOKER:  AND THERE'S REALLY ONLY ONE SPECIFIC

7       ISSUE THAT I WOULD LIKE TO MENTION ABOUT THAT.  AND IT GOES TO

8       THE FOLLOWING:  ONE OF THE INTERROGATORIES HAD ASKED MERCK TO

9       IDENTIFY THEIR CURRENT TREATMENT PLANS FOR HCV, WHAT IS IN THE

10      PIPELINE THAT THEY'RE TRYING TO COMMERCIALIZE.  AND THEY HAVE

11      IDENTIFIED THEIR COMPOUNDS BY CODE NUMBER.  AND WITH THAT

12      INFORMATION WE HAVE NO IDEA WHAT THE STRUCTURE OF THE COMPOUNDS

13      ARE.

14          AND THERE'S ONE STRUCTURE IN PARTICULAR THAT WE HAVE

15      INTEREST IN AND THAT NUMBER IS MK 3682.  AND WE'VE ASKED MERCK

16      TO PROVIDE US THAT STRUCTURE.  WE WANT TO SEE IF THAT STRUCTURE

17      FALLS IN THEIR PATENT CLAIMS.

18              THE COURT:  SO I'VE GOT TO ASK YOU, IF ALL YOU'VE

19      GOT WERE, AMONG OTHER THINGS, A LISTING OF CODE NUMBERS, HOW

20      DID YOU PICK OUT MK 3682 AS THE COMPOUND OF INTEREST?

21              MR. BOOKER:  BECAUSE THAT'S A COMPOUND THAT MERCK

22      HAS RECENTLY BOUGHT FROM ANOTHER COMPANY IDENTICAL -- MERCK

23      BOUGHT THE WHOLE COMPANY.  BUT THEY GOT THAT COMPOUND FROM

24      IDENIX.  AND WE WANT TO SEE IF THAT'S NOW A COMPOUND THAT FALLS

25      WITHIN THE MERCK CLAIMS.  THAT IS GOING TO A LOT OF DAMAGES

1      ISSUES.  AND WE ALSO WANT TO SEE IF MERCK HAD TO ACTUALLY GO

2      OUT AND BUY THE COMPOUND THAT FALLS WITHIN THEIR CLAIMS BECAUSE

3      THEY WERE NOT ABLE TO MAKE ONE.

4             THE COURT:  OKAY.  ALL RIGHT.  ANYTHING ELSE,

5      MR. BOOKER?

6             MR. BOOKER:  NOT RIGHT NOW, YOUR HONOR.  THANK YOU.

7             THE COURT:  I'LL GIVE YOU A CHANCE FOR REBUTTAL.

8         MR. RABINOWITZ, GO AHEAD, SIR.

9             MR. RABINOWITZ:  YOUR HONOR, BEFORE I GET TO THE

10     MAIN EVENT, CERTAINLY WE'RE WILLING TO BE FLEXIBLE ABOUT

11     SCHEDULING OF DEPOSITIONS.  IN FACT, AT THE MARKMAN HEARING ON

12     THE 3RD OF THIS MONTH, JUDGE FREEMAN SUA SPONTE SAID THAT IN

13     LIGHT OF WHEN SHE EXPECTED TO ISSUE HER MARKMAN RULING, THE

14     PARTIES MIGHT WANT TO COME BACK TO HER AND HAVE SUGGESTIONS TO

15     THE SCHEDULE.  AND WE'VE BEEN TALKING ABOUT THAT IN PRINCIPLE,

16     AND WE'RE CERTAINLY WILLING TO BE FLEXIBLE ABOUT IT.  BUT

17     THAT'S THE SORT OF THING THAT I THINK IS DEALT WITH, AS YOU

18     SUGGESTED, BY AGREEMENT BETWEEN THE PARTIES AND NOT BY A

19     MOTION.

20         AND IN TERMS OF THE RESPONSES THAT WE GAVE TO THE RECENTLY

21     SERVED REQUESTS ABOUT THE DAMAGES RELATED ISSUES INCLUDING

22     TREATMENTS UNDER DEVELOPMENT, WE WILL CERTAINLY TAKE A LOOK AT

23     THAT AND MEET AND CONFER AND IF THEY BELIEVE THAT FURTHER

24     SUPPLEMENTATION IS NEEDED.  BUT THAT REALLY TRULY IS NOT THE

25     SUBJECT OF THIS MOTION.

1       YOUR HONOR, I THINK YOU HIT THE NAIL ON THE HEAD WHEN YOU

2   REFERRED TO AT LEAST WRITTEN DESCRIPTION AND DERIVATION AS

3   TURNING ON THE CONTENT OF THE APPLICATIONS FILED JANUARY 18TH,

4   2002.

5       THE -- THERE ARE TWO -- JUST BY WAY OF SOME ADDITIONAL

6   BACKGROUND, THERE ARE TWO PATENTS.  THE ISSUE IS A DRUG THAT IS

7   MARKETED BY GILEAD CALLED SOFOSBUVIR, AND IT'S WHAT IS CALLED A

8   PRO DRUG BECAUSE AFTER BEING INGESTED IT CONVERTS TO THE ACTUAL

9   ACTIVE COMPOUND THAT DOES THE PATIENT GOOD AND IT ACTUALLY

10  CONVERTS TO ONE, TWO, THREE COMPOUNDS WHICH ARE CLAIMED OR USES

11  CLAIMED IN THE PATENT BEING ASSERTED HERE.

12      SO THE THEORY OF INFRINGEMENT IS INDUCED INFRINGEMENT, AND

13  IT'S THE PATIENTS WHO ACTUALLY IN THEIR BODIES MAKE AND USE THE

14  CLAIMED COMPOUNDS.  BUT WE'RE CERTAIN GILEAD IS LIABLE FOR

15  INDUCING THAT INFRINGEMENT BY SELLING A DRUG WHICH WHEN USED

16  ACCORDING TO THE DIRECTIONS IN THE LABEL WILL PREDICTIVELY

17  RESULT IN THE DIRECT INFRINGEMENT BY THE PATIENT OR THE

18  CAREGIVERS.

19          THE COURT:  I'M CURIOUS, AND I'M NOT SURE IT'S

20  DIRECTLY RELEVANT TO THE ISSUES BEFORE ME, ARE THE CLAIMS AT

21  ISSUE ALL METHOD CLAIMS, STRUCTURE CLAIMS?

22          MR. RABINOWITZ:  THAT'S EXACTLY WHAT I WAS SETTING

23  US UP TO DO.  SO THE TWO PATENTS IN SUIT, THE FIRST IS CALLED

24  THE '499 PATENT AND THAT HAS TWO CLAIMS EACH DIRECTED TO A

25  METHOD OF TREATMENT.  A METHOD OF TREATING HEPATITIS C VIRUS

1    INFECTION COMPRISING ADMINISTERING TO A MAMMAL IN NEED OF SUCH

2    TREATMENT A THERAPEUTIC EFFECTIVE AMOUNT OF A COMPOUND THAT IS

3    FURTHER DEFINED BY A STRUCTURAL FORMULA IN THE CLAIMS.  THAT'S

4    THE '499 PATENT.

5         FOR THE '712 PATENT THEY'RE DIRECTED TO CLASSES OF

6    COMPOUNDS, WHICH ARE DISCLOSED IN THE SPECIFICATION AS BEING

7    USED FOR THE TREATMENT OF HEPATITIS C VIRUS INFECTION.

8         SO THAT PROVIDES CONTEXT FOR THE WAY THAT WE RESPONDED TO

9    INTERROGATORY NUMBER 1.  AND INTERROG 1 VERY SPECIFICALLY ASKS

10   ABOUT THE PATENT, ABOUT MERCK, AND THE PATENT OWNER'S

11   CONTENTIONS ABOUT THE DATE OF INVENTION.

12        AND IT SAYS, DESCRIBE IN COMPLETE DETAIL THE FACTUAL AND

13   LEGAL BASIS AND SUPPORTING EVIDENCE FOR WHAT DEFENDANTS CONTEND

14   TO BE THE DATE OF THE INVENTION.  AND THEN THEY HAVE IN PARENS,

15   I.E., CONCEPTION, ACTUAL AND CONSTRUCTIVE REDUCTION TO PRACTICE

16   AND SO ON.

17        AND WE MADE IT CRYSTAL CLEAR THAT WE ARE RELYING SOLELY ON

18   CONSTRUCTIVE REDUCTION TO PRACTICE.

19             THE COURT:  WHICH IS THE EFFECTIVE FILING DATE?

20             MR. RABINOWITZ:  WHICH IS THE EFFECTIVE FILING DATE.

21   AND SO WE MENTIONED TWO DATES.  ONE IS THE FILING DATE OF THE

22   PROVISIONAL APPLICATION AND THE OTHER, JANUARY 18TH, 2002, IS

23   THE FILING DATE OF TWO NON-PROVISIONAL APPLICATIONS.  ONE WAS A

24   PCT WHICH -- WHOSE NATIONAL PHASE ISSUED AS THE '499 PATENT.

25   NO INTERVENING FILINGS AT ALL.

1      THE OTHER WAS A NORMAL U.S. NATIONAL FILING, WHICH BY A

2   SERIES OF CONS AND DIBS BUT NO CIP'S ISSUED AS THE '712 PATENT.

3   SO WE LIVE OR DIE BY THE SPECIFICATION AS FILED JANUARY 18TH,

4   2002.

5      IF THE SPECIFICATION BOTH DESCRIBES AND ENABLES THE NOW

6   CLAIMED SUBJECT MATTER AND THE CLAIMS WERE AMENDED IN

7   PROSECUTION, THEN -- AND IN THE KINGSTON VERSUS HOLLISTER, EVEN

8   IF THEY WERE AMENDED WITH PHARMASSET'S COMPOUND IN MIND, THE

9   FEDERAL CIRCUIT SAID THAT THERE'S NOTHING IMPROPER ABOUT THAT

10  IF IT'S DESCRIBED AND ENABLED.

11      IF IT'S NOT BOTH DESCRIBED AND ENABLED, THE CLAIM'S

12  INVALID FOR THAT REASON, LACK OF ENABLEMENT OR LACK OF

13  DESCRIPTION.

14          THE COURT:  SO HERE'S THE QUESTION I HAD REGARDING

15  THAT ISSUE OR THAT SET OF ISSUES, IT SEEMS TO ME WHETHER WE'RE

16  LOOKING AT ENABLEMENT OR WRITTEN DESCRIPTION, WE'RE THINKING

17  ABOUT WHAT ONE OF ORDINARY SKILL IN THE ART WOULD UNDERSTAND

18  READING THE FILE, READING THE, I SHOULD SAY, APPLICATION AS

19  ISSUED.

20      AND WHAT I'VE ALWAYS STRUGGLED WITH IS TO THE EXTENT TO

21  WHICH EXTRINSIC EVIDENCE OR EXTERNAL EVIDENCE IS MATERIAL TO

22  THE QUESTION OF WHAT THIS APPLICATION TAUGHT AS ISSUED, RIGHT,

23  THE SKILLED ARTISAN BRINGS HIS OR HER KNOWLEDGE OF EVERYTHING

24  THAT IS AVAILABLE IN THE FIELD FOR SURE, BUT AS TO EX POST

25  PRIVATE INFORMATION, THE SKILLED ARTISAN DOESN'T HAVE ACCESS TO

1    THAT INFORMATION SO HOW COULD IT INFLUENCE WHAT HE OR SHE

2    UNDERSTANDS WHEN READING THE APPLICATION?

3              MR. RABINOWITZ:  I THINK IT IS STRICTER FOR WRITTEN

4    DESCRIPTION THAN ENABLEMENT.  I'M REFERRING TO THE ARIAD CASE.

5              THE COURT:  THIS IS WHERE I'M GOING TO, TOO.

6              MR. RABINOWITZ:  I HAD THE MISFORTUNE TO ARGUE ARIAD

7    TO THE PANEL ACTUALLY AND WAS INVOLVED IN BRIEFING TO THE EN

8    BANC COURT.  AND ARIAD SAID IT THIS WAY, THE FORMULATION

9    USUALLY USED IS HAD POSSESSION.  BUT THAT'S MISLEADING AND

10   ARIAD SAYS THAT AT 1351 IN ARIAD AND THE COURT SAID, AND THIS

11   IS THE EN BANC FEDERAL CIRCUIT, THE COURT SAYS, "BUT THE

12   HALLMARK OF WRITTEN DESCRIPTION IS DISCLOSURE.  THUS," QUOTE

13   "'POSSESSION AS SHOWN IN THE DISCLOSURE,'" END QUOTE, "IS A

14   MORE COMPLETE FORMULATION."

15        AND THEN LATER IN THE CASE THE COURT MAKES TWO THINGS

16   CLEAR.  THIS IS AT PAGE 1352 OF THE ARIAD CASE, WHICH IS

17   598 FEDERAL 3D. 1336.  THE FEDERAL CIRCUIT IN EN BANC SAYS, "WE

18   HAVE MADE CLEAR THAT THE WRITTEN DESCRIPTION REQUIREMENT DOES

19   NOT DEMAND EITHER EXAMPLES OR ACTUAL REDUCTION TO PRACTICE.  A

20   CONSTRUCTIVE REDUCTION TO PRACTICE THAT IN A DEFINITE WAY

21   IDENTIFIES THE CLAIMED INVENTION CAN SATISFY THE WRITTEN

22   DESCRIPTION REQUIREMENT."

23        AND THEN LATER IMMEDIATELY AFTERWARDS IN THE SAME

24   PARAGRAPH IT SAYS, "CONVERSELY, WE HAVE REPEATEDLY STATED THAT

25   ACTUAL POSSESSION OR REDUCTION TO PRACTICE OUTSIDE OF THE

1    SPECIFICATION IS NOT ENOUGH.

2         "RATHER, AS STATED ABOVE, IT IS THE SPECIFICATION ITSELF

3    THAT MUST DEMONSTRATE THE POSSESSION."

4            THE COURT:  SO HERE'S MY QUESTION FOR YOU ON THAT

5    ISSUE, WHICH IS, MR. RABINOWITZ, WHICH IS I AGREE AND I THINK

6    THE CASE LAW IS EXPLICIT AS YOU RECITED THAT SUCH EVIDENCE IS

7    NOT ENOUGH.  BUT IS IT NOT STILL RELEVANT?

8            MR. RABINOWITZ:  YOUR HONOR, IF THE SPECIFICATION --

9    IF THE SPECIFICATION PROVIDES OBJECTIVE EVIDENCE FROM WHICH A

10   PERSON OF SKILL IN THE ART WOULD CONCLUDE THAT THE INVENTORS

11   WERE IN CONCEPTUAL POSSESSION OF THE SUBJECT MATTER NOW

12   CLAIMED, THEN THE WRITTEN DESCRIPTION REQUIREMENT IS SATISFIED.

13        EVEN IF THEY HAD MET -- NOW, WE HAVE SAID QUITE EXPRESSLY,

14   AND THIS IS IN RESPONSE TO INTERROGATORY 4, THAT THERE WAS NO

15   MAKING OR TESTING OF ANY COMPOUND WITHIN THE SCOPE OF THE

16   CURRENT CLAIMS, THE ISSUED CLAIMS, PRIOR TO JANUARY 18TH, 2002.

17   WE'RE NOT HIDING THE BALL ABOUT THAT.

18        SO IF THE WRITTEN DESCRIPTION AS FILED ON THAT DATE, THE

19   APPLICATION IS FILED ON THAT DATE, DEMONSTRATES TO A PERSON OF

20   ORDINARY SKILL IN THE ART THAT THE INVENTORS HAD CONCEPTUAL

21   POSSESSION OF THE SUBJECT MATTER NOW CLAIMED, THEN IT DESCRIBES

22   THE INVENTIONS THAT ARE PROTECTED BY THESE PATENTS AND WHETHER

23   THE COMPANY MADE EXAMPLES OF THOSE COMPOUNDS BEFORE IT DIDN'T

24   PUT IT IN THE SPECIFICATION, WE ALREADY SAID THAT ISN'T THE

25   CASE, OR WHETHER IT MADE IT SUBSEQUENTLY CANNOT ADD FROM OR

1    DETRACT FROM THE WRITTEN DESCRIPTION.  IT'S AN OBJECTIVE TEST

2    AS JUDGED BY A PERSON OF SKILL IN THE ART FROM THE FOUR CORNERS

3    OF THE APPLICATION AS FILED ON THAT DATE.

4         THE COURT:  SUCH THAT A THIRD PARTY TO THIS DISPUTE,

5    FOR EXAMPLE, SHOULD BE ABLE TO GO ONLINE, PULL UP THE PATENT,

6    AND MAKE A BUSINESS JUDGMENT AS TO WHETHER OR NOT HE NEEDS TO

7    WORRY ABOUT THIS PATENT.  FOR EXAMPLE, IT MAY CONCLUDE THAT

8    LOOKING AT THE PATENT ITSELF IT IS NOT PROPERLY ENABLED OR THAT

9    THERE IS INSUFFICIENT DESCRIPTION TO SUPPORT THE CLAIMS AND ON

10   THAT BASIS MAY PROCEED TO OTHERWISE INFRINGE THE HECK OUT OF

11   IT; CORRECT?

12        MR. RABINOWITZ:  IF THEY DO A PROPER ANALYSIS, YES,

13   ABSOLUTELY.  AND THE QUESTION -- DERIVATION IS SIMPLY A RED

14   HERRING.  DERIVATION REQUIRES THAT THERE BE A COMMUNICATION TO

15   THE INVENTORS OF THE PATENT PRIOR TO THE INVENTION DATE.

16    AND THE INVENTION DATE, IF THE CLAIMS ARE NOT -- ARE BOTH

17   ENABLED AND DESCRIBED AS OF JANUARY 18TH, 2002.

18        THE COURT:  WHAT HAPPENS THREE OR FOUR YEARS LATER

19   IS IRRELEVANT?

20        MR. RABINOWITZ:  EXACTLY.  AND BY THE WAY, I THINK

21   IT'S JUST IMPORTANT TO NOTE THAT THERE WAS NO CLAIM AMENDMENT

22   OF WHICH GILEAD COMPLAINS PRIOR TO THE PUBLICATION OF THE

23   APPLICATION.

24    THERE WAS SOME PRIOR DISCLOSURE OF BUSINESS INFORMATION,

25   BUT THEY HAVE IDENTIFIED NO INFORMATION THAT MIGHT BE RELEVANT

1    TO THE CLAIM AMENDMENT THAT IT WAS NOT PUBLIC AS A RESULT OF

2    THE PUBLICATION OF THEIR OWN APPLICATION.  SO ATMOSPHERICALLY I

3    KNOW WHY IT IS SAID, BUT I JUST THINK THAT THAT NEEDS TO BE

4    ACKNOWLEDGED.

5         NOW, AS FOR ENABLEMENT THE SAME THING IS TRUE.  ENABLEMENT

6    IS TESTED AS -- BY VIRTUE OF THE CONTENT OF THE APPLICATION AS

7    FILED IN -- JANUARY 18TH, 2002, EXCEPT THAT UNLIKE WRITTEN

8    DESCRIPTION YOU DO TAKE ACCOUNT OF WHAT WAS KNOWN IN THE ART IN

9    ORDER TO MEASURE THE CAPACITY OF A PERSON OF ORDINARY SKILL AT

10   THAT TIME.

11        THERE IS -- WE THINK THAT THE PROPER RULE IS THAT YOU MAY

12   RELY ONLY ON PUBLICATION TO SHOW THE KNOWLEDGE IN THE ART, NOT

13   PRIVATE CONFIDENTIAL ACTIVITIES THAT WERE HAPPENING IN SECRET.

14        AND ALL OF THE CASES THAT HAVE BEEN CITED BY THE OTHER

15   SIDE IN THIS MOTION HAVE USED PUBLICATION TO SHOW THE STATE OF

16   THE ART.  IN FACT, IN THE CHIRON CORP. V. GENENTECH CASE, WHICH

17   WAS CITED BY GILEAD IN ITS REPLY BRIEF, IS ACTUALLY VERY

18   INSTRUCTIVE BECAUSE THE COURT LOOKED AT -- THIS WAS A RESULT OF

19   MULTIPLE FILINGS BY WAY OF CIP'S.

20        AND SO THE COURT -- THIS IS AT PAGE 1255 OF CHIRON VERSUS

21   GENENTECH -- FIRST LOOKED AT WHAT WAS KNOWN BY VIRTUE OF PUBLIC

22   DISCLOSURES IN THE ART AS OF THE FIRST FILING DATE AND THEY

23   SAID THIS BRAND DIDN'T EVEN EXIST, IT WASN'T KNOWN, THEREFORE,

24   IT DIDN'T HAVE TO BE DESCRIBED OR ENABLED AS OF THAT DATE

25   BECAUSE YOU DON'T HAVE TO DESCRIBE WHAT DOESN'T EXIST.

 1          THEN WHEN THEY LOOKED AT THE SECOND DATE, THEY SAID,

 2     HOWEVER, BY THAT STAGE IT WAS A NASCENT, IT WAS A NASCENT ART

 3     IN THE FIELD.

 4          THE COURT:  TRIGGERING A REQUIREMENT.

 5          MR. RABINOWITZ:  YES.  AND SO IT NEEDED TO BE

 6     REQUIRED.  HOWEVER, THERE WAS NOT A LOT OF KNOWLEDGE SO IT

 7     NEEDED A LOT OF DISCLOSURE TO SATISFY IT.

 8          NOW, AGAIN, THEY DID USE A POST-FILING DATE PUBLICATION

 9     REVIEWING THE HISTORY OF THE FIELD TO CONCLUDE THAT IT WAS

10     NASCENT AT THE TIME BUT THAT'S VERY DIFFERENT FROM RELYING ON

11     PRIVATE, CONFIDENTIAL, UNPUBLISHED SCIENTIFIC INVESTIGATIONS

12     THAT ARE GOING ON IN A COMPANY THAT ARE NOT BEING DISCLOSED.

13          BUT JUST TO SHOW HOW OVERBROAD THE INFORMATION IS THAT IS

14     BEING SOUGHT IN RESPONSE TO 4 AND 5, THERE IS ONLY ONE -- THE

15     CLAIMS THAT WE HAVE COVER A VARIETY OF STRUCTURES.  THEY

16     INCLUDE WHAT GILEAD REFERS TO AS THE METHYL UP, FLOURINE DOWN

17     CONFIGURATION WHICH GILEAD SAID WAS HARD TO MAKE.  BUT THEY

18     COVER OTHER THINGS WHICH GILEAD HAS NOT CONTENDED LOOKING BOTH

19     AT THEIR MOTION HERE AND THE INVALIDITY CONTENTIONS WERE

20     PARTICULARLY DIFFICULT FOR SYNTHETIC CHEMISTS TO MAKE.

21          TO TAKE THAT OFF THE TABLE WE REACHED AN AGREEMENT WITH

22     GILEAD.  WE DON'T THINK THAT WHAT MERCK WAS DOING PRIVATELY,

23     CONFIDENTIALLY BY WAY OF RESEARCH, IS RELEVANT TO WHAT PERSONS

24     OF ORDINARY SKILL IN THE ART KNEW AT THE TIME.

25          BUT JUST TO MAKE THAT GO AWAY, WE ACTUALLY REACHED AN

1    AGREEMENT, WHICH GILEAD HAS ACKNOWLEDGED THAT WE WOULD DISCLOSE

2    ATTEMPTS AND SUCCESSES TO MAKE THIS METHYL UP, FLOURINE DOWN

3    TYPE OF COMPOUND UP TO DECEMBER 31, 2006, BY WHICH TIME THEY

4    HAD ALREADY SUCCEEDED NINE TIMES.  AND WE THOUGHT THAT WAS A

5    PRETTY REASONABLE PROXY FOR ANYTHING THAT MIGHT EVEN ARGUABLY

6    BE RELEVANT AND IT WAS ACCEPTED.

7         SO WHAT WE'RE ARGUING -- AND I THINK THAT SHOULD INFORM

8    WHAT WE'RE BOUND TO ANSWER FOR THE INTERROG IN TERMS OF

9    ENABLEMENT.

10        BUT AS FOR THE REST, EVERY SINGLE COMPOUND WITHIN THE

11   SCOPE OF THE CLAIMS THAT WAS TESTED AFTER THE FILING DATE

12   INCLUDING, AS WE LEARNED IN OUR DISCUSSIONS, THINGS THAT FOR

13   THE '499 PATENT WHICH ISSUED IN 2006, THEY WANTED TO CONTINUE

14   AFTER THE ISSUE DATE FOR THE '712 PATENT, WHICH ISSUED

15   JULY 9TH, 2013, THEY WANTED IT TO CONTINUE AFTER THE ISSUE

16   DATE, AFTER THE DATE THAT THEY COMMENCED THIS DECLARATORY

17   JUDGMENT ACTION EVEN THIS VERY YEAR I THINK IT'S VASTLY

18   OVERBROAD.  IT'S NOT CONFINED TO THE STRUCTURE THAT IS

19   PARTICULARLY DIFFICULT, IN THEIR VIEW, TO MAKE.  IT'S NOT

20   CONFINED TO THE PERIOD FOR WHICH THEY HAVE AGREED WILL SUFFICE,

21   AND WE JUST DON'T THINK THAT IT'S RELEVANT TO ANY DEFENSE THAT

22   HAS BEEN PLEADED THAT IS COGNIZABLE UNDER THE FEDERAL CIRCUIT'S

23   JURISPRUDENCE.

24             THE COURT:  I THINK I HAVE IT.  THANK YOU, SIR.

25        MR. BOOKER, ANY REBUTTAL?

1      MR. BOOKER:  YES, YOUR HONOR.  I'LL START WITH, I

2   GUESS, THE VERY LAST POINT FIRST AND THE NOTION THAT OUR

3   REQUESTS ARE JUST OVERLY BROAD AS FAR AS EVIDENCE OF MERCK EVER

4   MAKING OR TESTING COMPOUNDS FALLING FROM THE CLAIMS.

5      AS FAR AS WE KNOW RIGHT NOW THAT HAS NEVER BEEN DONE BY

6   MERCK.  AND THE CLAIMS, IT COVERS A PRETTY LARGE NUMBER OF

7   COMPOUNDS.  THIS IS NOT THE CASE WHERE WE BELIEVE OR WE HAVE

8   EVER BEEN TOLD THAT THERE ARE HUNDREDS OF COMPOUNDS THAT THEY

9   HAVE MADE AND THIS IS JUST SO BURDENSOME.

10      WE'RE AT LEAST TRYING TO FIND ONE COMPOUND THAT THEY EVER

11   MADE THAT FALLS IN THE SCOPE OF THESE CLAIMS.  AND WE WOULD BE

12   WILLING, IF THEY HAVE EVIDENCE IN 2004, 2005, OF ACTUALLY DOING

13   THIS, TO LIMIT WHAT WE'RE ACTUALLY ASKING FOR.

14      BUT THUS FAR WE HAVE HEARD NO EVIDENCE THAT EVEN A SINGLE

15   COMPOUND HAS BEEN MADE.

16      GOING BACK TO THE ISSUE OF, I GUESS ALL THREE, ENABLEMENT,

17   DERIVATION, WRITTEN DESCRIPTION, AND THE USE OF EITHER

18   POST-FILING EVIDENCE OR EVIDENCE THAT IS INTERNAL WITH THE

19   COMPANY.

20      FOR ENABLEMENT THE LAW IS CLEAR, AND WE CITE SEVERAL CASES

21   IN OUR BRIEFING, THAT IT'S PERMISSIBLE, ACCEPTABLE, TO LOOK AT

22   POST-FILING EVIDENCE AS -- TO UNDERSTAND THE STATE OF THE ART

23   AT THE TIME OF THE FILING.  AND IT MAKES COMMON SENSE AS WELL.

24   IF IN 2006 ONE OF SKILL IN THE ART COULD NOT MAKE THE CLAIMED

25   INVENTION, THAT IS PERSUASIVE EVIDENCE THAT IN 2001 THOSE

```
1    PATENTS WERE NOT ENABLED.

2              THE COURT:  SURE.  FIVE YEARS LATER I'M STILL

3    BANGING MY HEAD AGAINST THE WALL.  THAT'S PROBABLY SOME

4    EVIDENCE THAT IT WASN'T YET IN A POSITION TO MAKE THE COMPOUND

5    BACK IN 2001.

6              MR. BOOKER:  CORRECT, YOUR HONOR.

7              THE COURT:  BUT WOULD YOU ALSO AGREE, MR. BOOKER,

8    THAT PART OF THE CHALLENGE THAT I HAVE ON TOP OF EVERYTHING

9    ELSE HERE IS THAT NONE OF THESE CASES THAT YOU'VE CITED OR,

10   FRANKLY, THE OTHER SIDE, LOOK AT THESE QUESTIONS IN THE CONTEXT

11   OF A MOTION TO COMPEL, RIGHT?

12        THE FEDERAL CIRCUIT RARELY WEIGHS IN ON THESE ISSUES IN

13   THE CONTEXT OF A DISCOVERY MOTION AND LOOKING AT THIS EITHER IN

14   THE CONTEXT OF A SUMMARY JUDGMENT ORDER OR POST VERDICT, DOES

15   THAT HAVE ANY SIGNIFICANCE HERE?

16             MR. BOOKER:  WELL, YES.  I MEAN, IT MAKES IT EVEN

17   MORE RELEVANT THAT ALL OF THIS STUFF IS AT LEAST DISCOVERABLE,

18   WHEN IT'S ADMISSIBLE, I THINK IT ALL IS, BUT THAT IS ANOTHER

19   QUESTION.  AND HOW MUCH WEIGHT YOU PUT ON IT IS ANOTHER

20   QUESTION.

21        BUT AS FAR AS ADMISSIBILITY AND DISCOVERY, IT'S CERTAINLY

22   ALL DISCOVERABLE.  I CAN PROCEED WITH WRITTEN DESCRIPTION AND

23   DERIVATION.

24             THE COURT:  I TAKE IT YOUR POINTS ARE SIMILAR?

25             MR. BOOKER:  IT IS, IT IS.  AND ONE THING TO NOTE
```

1    ABOUT DERIVATION, AND MR. RABINOWITZ HAD SAID, I THINK HE SAID,

2    IF THE PATENTS ARE ENABLED AND HAVE SUPPORT AS OF THE FILING

3    DATE, THEN WE DON'T GET THIS DERIVATION DEFENSE BECAUSE IT

4    COMES TOO LATE.

5         WELL, WE HAVE THREE ALTERNATIVE THEORIES OF INVALIDITY.

6    IT'S NOT ENABLED, NO WRITTEN DESCRIPTION, AND DERIVATION,

7    BECAUSE OF THE ACTIVITIES THAT OCCURRED BEFORE THEY AMENDED

8    THEIR CLAIMS.  WE'RE ALLOWED TO PURSUE ALL OF THESE THREE

9    THEORIES.  AND, AGAIN, FOR THE PURPOSES OF DISCOVERY THAT ALL

10   SHOULD BE ADMISSIBLE.

11        THE COURT:  ALL RIGHT.  I THINK I HAVE IT.  THANK

12   YOU, COUNSEL.  I'M GOING TO TAKE THIS MATTER UNDER SUBMISSION.

13   I WILL GET YOU AN ORDER AS QUICKLY AS I CAN.  I APPRECIATE YOUR

14   SCHEDULE IS GETTING SOMEWHAT COMPRESSED.  I APPRECIATE THE

15   ARGUMENTS THIS MORNING.  THANK YOU.

16        MR. BOOKER:  THANK YOU.

17        (COURT CONCLUDED AT 12:03 P.M.)

18

19

20

21

22

23

24

25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         _____
           IRENE RODRIGUEZ, CSR, CRR
           CERTIFICATE NUMBER 8076
17

18                    DATED:  APRIL 25, 2015
19

20

21

22

23

24

25