STEPHEN S. RABINOWITZ
stephen.rabinowitz@hugheshubbard.com
JAMES W. DABNEY (Pro Hac Vice)
james.dabney@hugheshubbard.com
PATRICE P. JEAN (Pro Hac Vice)
patrice.jean@hugheshubbard.com
WANDA D. FRENCH-BROWN (Pro Hac Vice)
wanda.french-brown@hugheshubbard.com
MITCHELL EPNER (Pro Hac Vice)
mitchell.epner@hugheshubbard.com
DAVID E. LANSKY (Pro Hac Vice)
david.lansky@hugheshubbard.com
HUGHES HUBBARD & REED LLP
ONE BATTERY PARK PLAZA
NEW YORK, NY 10004
Telephone:     (212) 837-6000
Facsimile:     (212) 299-6807

JOSHUA H. LERNER (SBN 220755)
jlerner@durietangri.com
LAURA E. MILLER (SBN 271713)
lmiller@durietangri.com
Durie Tangri LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:     (415) 362-6666
Facsimile:     (415) 236-6300

[Counsel continued overleaf]

Attorneys for Defendant
MERCK & CO., INC. and Defendants and Counterclaimants
MERCK SHARP & DOHME CORP. and ISIS PHARMACEUTICALS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GILEAD SCIENCES, INC.,<br><br>　　　　Plaintiff and Counterdefendant,<br><br>　　v.<br><br>MERCK & CO., INC. (Defendant only), MERCK SHARP & DOHME CORP., and ISIS PHARMACEUTICALS, INC.<br><br>　　　　Defendants and Counterclaimants. | Case No. 5:13-cv-04057-BLF<br><br>**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL PLAINTIFF AND DR. SEEGER TO COMPLY WITH DISCOVERY REQUESTS AND SUBPOENA**<br><br>Date:　December 1, 2015<br>Time:　10:00 a.m.<br>Ctrm:　4, 5th Floor<br>Judge:　Honorable Paul S. Grewal |

1  RANDY C. EISENSMITH (Pro Hac Vice)
   randy.eisensmith@friedfrank.com
2  NAZ E. WEHRLI (Pro Hac Vice)
   naz.wehrli@friedfrank.com
3  FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
   ONE NEW YORK PLAZA
4  NEW YORK, NY 10004
   Telephone:    212-859-8000
5  Facsimile:    212-859-4000

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION ..................................................................................................................1

    A. THE INFORMATION REQUESTED IS RELEVANT TO PLAINTIFF'S LACK OF UTILITY, LACK OF ENABLEMENT AND LACK OF WRITTEN DESCRIPTION ARGUMENTS..................................................................................2

        1. Documents Produced in Response to Merck's MTC Demonstrate that there Are Major Discrepancies between Dr. Seeger's Testimony and Documents Recently Produced by Gilead and Dr. Schanazi ......................................................5

        2. The Discovery Sought Is Relevant to the Credibility of Dr. Seeger.........................7

    B. GILEAD HAS SELECTIVELY PRODUCED SOME DOCUMENTS IN RESPONSE TO MERCK'S REQUESTS FOR PRODUCTION & MOTION TO COMPEL AND SHOULD BE REQUIRED TO PRODUCE ALL RESPONSIVE DOCUMENTS ..............................................................................................................7

        1. Production of Documents in Another Case Does Not Satisfy Gilead's Obligation To Produce Responsive Documents in This Case ................................7

        2. Plaintiff's Production of Documents in Response to the Motion to Compel Demonstrates That It Has Continued to Pick and Choose Which Documents To Produce in This Case ......................................................................7

    C. MERCK HAS BEEN AND CONTINUES TO BE PREJUDICED BY GILEAD'S AND DR. SEEGER'S REFUSAL TO PRODUCE RESPONSIVE DOCUMENTS AND THINGS ......................................................................................10

II. AMENDED STATEMENT OF RELIEF REQUESTED..........................................................11

III. CONCLUSION..........................................................................................................................11

# TABLE OF AUTHORITIES

**CASES**                                                       **PAGE(S)**

*Wixon v. Wyndham Resort Development Corp.*,
   2009 WL 3075652 *5 (N.D. Cal. July 17, 2009).................................................................7

**STATUTES AND RULES**

Rule 45 ........................................................................................................................10

Defendants Merck & Co, Inc., Merck Sharp & Dohme Corp. and Isis Pharmaceuticals, Inc. (collectively, "Merck") respectfully submit this Reply Memorandum of Law in Support of Their Motion to Compel (ECF 161-1) (the "MTC").  For the reasons set forth below, the MTC should be granted.

## I.  INTRODUCTION

The actions that Dr. Schinazi and Pharmasset (Gilead's subsidiary) took to develop and test compounds after they became aware of Merck's PCT publication in 2002 are relevant and important evidence to debunk Gilead's contentions that the patents-in-suit are invalid for lack practical utility, enablement, and written description.   Gilead and Dr. Seeger have refused to meet their production obligations and ask this Court to have Merck continue to guess about when and what compounds were sent to outside laboratories for testing in the HCV replicon assay—despite the admission by Gilead (through its expert, Dr. Seeger) that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇."[1]

Merck's MTC and the resulting opposition, responses and productions from Dr. Schinazi, Dr. Seeger and Gilead demonstrate the importance of the testing that Pharmasset and/or Dr. Schinazi commissioned from Dr. Seeger.  The additional documents that Gilead, Dr. Seeger and Dr. Schinazi produced in response to Merck's demands and motion to compel have already played an important role in the litigation.

Merck is being deprived of valuable evidence to demonstrate the falsity of Gilead's assertions of what could not or would not have been done by one of ordinary skill in the art as of the filing of the patents-in-suit by Gilead's refusal to produce evidence of what was actually being done by Pharmasset and Dr. Seeger in 2002 and 2003.  Merck is entitled to discover all of the facts related to Plaintiff's defenses so that it can have a clear understanding of what Dr. Shinazi, Dr. Seeger and Pharmasset actually did during the 2002 -2003 time period in its development of sofosbuvir—not just the parts that Gilead *wants* others to know.

---

[1] *See* Second Jean Decl. Ex. 37 (Seeger deposition testimony, Clark v. Storer USPTO Interference No. 105,981 (GILEAD08920340-502  at GILEAD08920464)).

A. **THE INFORMATION REQUESTED IS RELEVANT TO PLAINTIFF'S LACK OF UTILITY, LACK OF ENABLEMENT AND LACK OF WRITTEN DESCRIPTION ARGUMENTS**

As discussed in Merck's MTC, Gilead has asserted that the patents-in-suit are invalid for lack of enablement, lack of practical utility and lack of written description. Gilead's witnesses have admitted that they knew of Merck's patent disclosure and used it to guide their "research."[2] Dr. Seeger's testimony, along with supporting documentation from Pharmasset, shows that Dr. Seeger and Pharmasset were doing exactly what Dr. Seeger now opines, 13 years later, that a person of ordinary skill could not have done in 2002 and 2003. Plaintiff's contention that Merck has only made an *ipse dixit* assertion of relevance[3] is untrue.

Merck is entitled to discovery of all the facts related to Dr. Schinazi and Pharmasset's testing of compounds via Dr. Seeger during the 2002 -2003 time period in its development of sofosbuvir. This information may undercut Plaintiff's defenses of patent invalidity. Specifically, Merck is entitled to receive the documents and things related to Dr. Seeger's testing of compounds sent to him by either Dr. Schinazi or Pharmasset.

Gilead and Dr. Seeger's contention in their opposition brief that Merck "inaccurately and gratuitously attacks the character of Dr. Seeger" is demonstrably false. In its moving papers, Merck quoted Dr. Seeger's unequivocal testimony that he ***never*** performed any work for Pharmasset. (ECF 161-1 at 9-10). Merck then demonstrated that the documents produced by Gilead and Dr. Seeger provided direct evidence that the results of Dr. Seeger's testing of compounds in his replicon assay were reflected in Pharmasset's laboratory notebooks. (ECF 161-1 at 18). In their opposition, Gilead and Dr. Seeger implicitly contend that notwithstanding Pharmasset's use of Dr. Seeger's results, Dr. Seeger inaccurately ***believed*** that he did not work for Pharmasset because the materials that he received were not labeled as coming from Pharmasset:

> "Specifically, the letter accompanying the compounds sent to Dr. Seeger was on Emory letterhead – not Pharmasset letterhead – and omitted the PSI prefixes from the compound names. (Warden Decl. Ex. ___[sic].) Similarly, that letter expressly stated that the compounds were being provided for use in Dr. Seeger's experiments – and made no reference whatsoever to any Pharmasset experiments, or even to Pharmasset. (*Id.*)

---

[2] *See* Jean Decl. Ex. 30 at p. 306:17-309:2.
[3] See ECF 173 at 17.

> The Pharmasset lab notebook does not contradict that testimony; it shows only that the results of Dr. Seeger's testing were subsequently *provided*[4] to Pharmasset, not that the testing was done for Pharmasset. (Jean Decl. Ex. 29.) Moreover, there is no evidence that Dr. Seeger was even made aware that information related to his testing was ever provided to Pharmasset.

ECF 173 at 6 n. 9. Thus, Gilead and Dr. Seeger have hinged Dr. Seeger's credibility on the remarkable assertion that Dr. Seeger did not know that he was doing work for Pharmasset.

Gilead and Dr. Seeger's attempt to rescue Dr. Seeger's credibility does not withstand scrutiny. Directly contrary to Gilead and Dr. Seeger's representations to this Court, Dr. Seeger was ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ On October 22, 2002, Tony Whitaker, a scientist at Pharmasset, sent an e-mail to Dr. Schinazi and Lieven Stuyver (another Pharmasset scientist) in which he stated:

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Second Jean Decl. Ex. 44 (GILEAD08919970). On September 2, 2003, Dr. Schinazi sent an e-mail to Dr. Seeger that directly informed Dr. Seeger ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Second Jean Decl. Ex. 36 (GILEAD08919938 (emphasis added)). The next day, September 3, 2003, Dr. Seeger ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[4] Emphasis in original.



Second Jean Decl. Ex. 36 (GILEAD08919937-38 (emphasis added)).  That same day, Dr. Schinazi responded to Dr. Seeger and

Second Jean Decl. Ex. 36 (GILEAD08919937 (emphasis added)). Also on September 3, 2015, Dr. Seeger

Second Jean Decl. Ex. 36 (GILEAD08919937).

4
DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL
CASE NO. 5:13-CV-04057-BLF

Second Jean Decl. Ex. 36 (GILEAD08919937). The inescapable conclusion from these documents is that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that his deposition testimony to the contrary was false.

Even if Gilead and Dr. Seeger's cover story were not demonstrably false (which it is), Merck would still be entitled to the discovery. Pharmasset knew what tests Dr. Schinazi instructed Dr. Seeger to perform in 2002-03 and the identity of each compound sent to Dr. Seeger during that period. Dr. Schinazi and Pharmasset also knew the results obtained by Dr. Seeger. The testing that Dr. Schinazi and Pharmasset commissioned Dr. Seeger to perform provides direct evidence as to what one of skill was enabled to do, and supports Merck's position regarding the practical utility and adequate written description provided by Merck's PCT in 2002.

### 1. Documents Produced in Response to Merck's MTC Demonstrate that there Are Major Discrepancies between Dr. Seeger's Testimony and Documents Recently Produced by Gilead and Dr. Schanazi

Merck's MTC and subpoena to Dr. Schinazi requested the production of additional documents and things relating to the five Photographed Tubes sent from Dr. Schinazi to Dr. Seeger in 2002 and 2003.[5] In response, Dr. Schinazi produced a transmittal letter showing that six samples (not five, as depicted in the "Photographed Tubes" photograph) were sent to Dr. Seeger on October 30, 2002.[6] In addition, on October 29, 2015, counsel for Plaintiff notified Merck that more than just the five compounds contained in the original photograph of the "Photographed Tubes" had been sent to Dr. Seeger.[7] Plaintiff's counsel also sent updated photographs of the Photographed Tubes, which were now joined by an additional tube that was listed in the 2002 transmittal letter but never previously disclosed to Merck.[8] This transmittal letter also shows that the compounds sent to Dr. Seeger were not the "coded" compounds about which Dr. Seeger testified at his deposition. (*See* ECF 161-1 at 10).

In response to the revelation that Dr. Seeger had been sent more than the five original "Photographed Tubes" and that these tubes were not the "coded" compounds that Dr. Seeger was sent by

---

[5] *See* ECF 161-2.
[6] *See* Warden Decl., Ex. B (Schinazi letter to Seeger dated October 30, 2002).
[7] *See* Warden Decl., Ex. H (Warden letter to Jean dated October 29, 2015).
[8] *See* Id. at 4-5.

Dr. Schinazi, Merck again reviewed Plaintiff's production in an attempt to figure out the discrepancy between Dr. Seeger's testimony and the Schinazi, Seeger, and Gilead production of October 29, 2015. On November 5, 2015, counsel for Merck sent counsel for Plaintiff an email explaining that the transmittal letter and the pictures of the tubes did not appear to be related to the coded tubes that Dr. Seeger had described during his deposition testimony.[9] Merck's counsel also requested confirmation as to whether or not tubes that had a listing with a CS-code were the "coded" compounds sent to Dr. Seeger.[10]

Gilead and Dr. Seeger's counsel responded to this inquiry by stating that "[j]ust as not everything with a molecular weight of 259.2 is PSI-6130, not everything with the initials "CS" is Christoph Seeger" and stating that counsel for Merck should have been aware of recent testimony provided from a fact witness in a different case in the District of Delaware involving sofosbuvir (Idenix v. Gilead) in which Merck is not a party and which Idenix is represented by different counsel than Merck in this case.[11] The letter from counsel for Gilead quoted testimony from the fact witness deposition regarding CS compounds."  This letter and the testimony to which it refers, however, fails to identify the "coded" samples that Dr. Seeger testified on September 15, 2015 that he received in 2002-03.

Documents produced by Plaintiffs on October 14, 2015 (well after the close of fact discovery and two days before the close of expert discovery) also indicate that Dr. Seeger was sent additional compounds, beyond the six compounds depicted in the photos, for testing in the HCV replicon assay (GILEAD08919937-38).[12]  Merck does not know how many samples were sent to Dr. Seeger.  It may have been 10, it may have been dozens, or it may have been thousands.  Regardless of the number, Merck is entitled to discovery regarding (a) what compounds were sent to Dr. Seeger, (b) when they were sent, (c) how they were synthesized, (d) by whom, and (e) the results of the tests on the compounds provided by Dr. Seeger and (f) who received those results.

At a minimum, the information obtained to date directly negates testimony provided by Plaintiff's

---

[9] *See* Second Jean Decl., Ex. 39 (email from Patrice Jean to Joseph Warden dated November 5, 2015).
[10] *See Id.*
[11] *See* Second Jean Decl. Ex. 35 (letter from Joseph Warden to Patrice Jean dated November 6, 2015).
[12] *See* Second Jean Decl. Ex. 36 (GILEAD08919937-38).

experts regarding alleged lack of enablement of the patents-in-suit.

### 2. The Discovery Sought Is Relevant to the Credibility of Dr. Seeger.

In multiple instances, Dr. Seeger testified regarding his recollection of certain facts in this litigation, but documents produced by Gilead after Dr. Seeger's deposition directly contradict his testimony. For instance:

| Dr. Seeger's 9.15.2015 Testimony (Jean Decl. Ex. 8) | Documents and Information Produced after Deposition |
|---|---|
| Dr. Seeger took a picture of the 5 tubes that he was sent by Dr. Schinazi (Jean Decl. Ex. 1) | There were actually 6 tubes sent to Dr. Schinazi (Warden Decl. Ex. H) |
| The 5 tubes sent to Dr. Seeger from Dr. Schinazi were coded (Jean Decl. Ex. 8, 15:1-19:16) | The 6 tubes sent to Dr. Schanizi were not coded (Warden Decl. Ex. H) |
| Dr. Seeger never consulted or collaborated with anyone from Pharmasset (Jean Decl. Ex. 8, 11:14-19) | ■■■■■■■■■■■■■ (Second Jean Decl. Exs. 34 and 44.) |

Merck is entitled to sworn testimony from Dr. Seeger to resolve the discrepancies noted above.

### B. GILEAD HAS SELECTIVELY PRODUCED SOME DOCUMENTS IN RESPONSE TO MERCK'S REQUESTS FOR PRODUCTION & MOTION TO COMPEL AND SHOULD BE REQUIRED TO PRODUCE ALL RESPONSIVE DOCUMENTS

#### 1. Production of Documents in Another Case Does Not Satisfy Gilead's Obligation To Produce Responsive Documents in This Case

Plaintiff's opposition to Merck's MTC argues as if its obligation to produce documents in this case was discharged by the fact that Gilead produced documents in a Canadian litigation to which Merck's subsidiary Idenix, and not Merck, was a party.[13] This argument falls flat on its face. Documents must be produced in the case in which they are requested in order for a party's document production obligation to be fulfilled. Further, the argument that material may be otherwise available to the requesting party is "insufficient to defeat a discovery request." *See*, *Wixon v. Wyndham Resort Development Corp.*, 2009 WL 3075652 *5 (N.D. Cal. July 17, 2009).

#### 2. Plaintiff's Production of Documents in Response to the Motion to Compel

---

[13] *See* ECF 173 at 6-7, for example.

**Demonstrates That It Has Continued to Pick and Choose Which Documents To Produce in This Case**

In response to Merck's motion to compel, and after Gilead and Dr. Seeger repeatedly insisted that they had no additional documents or things responsive to the requests for production (to Gilead) or subpoena (to Dr. Seeger), Dr. Schinazi and/or Dr. Seeger have selectively produced additional documents that show that the original photograph of the "Photographed Tubes" was inaccurate in presenting five tubes, when there were (at least) six such tubes. Notably, all of the documents *suddenly produced* in response to Merck's motion to compel were responsive to one or more of Merck's Requests for Production Nos. 11, 21, 29, 38 and 41; Merck's September 28th letter requesting these erroneously withheld documents; Merck's subpoena to Dr. Seeger, and multiple emails and letters following up on these requests.

In fact, Gilead and Dr. Seeger admitted in its letter dated October 29, 2015, that it was only after receiving the MTC that "Dr. Seeger examined the Photographed Tubes to see whether the labels contained information that was not captured in the original photograph."[14] Merck's counsel's repeated requests[15] for complete pictures of the Photographed Tubes were ignored until Merck filed its MTC. Moreover, after Dr. Schinazi produced the transmittal letter for the Photographed Tubes in response to a subpoena and Merck's MTC, Dr. Seeger searched his laboratory and identified an additional, sixth Tube.[16]

This production proved that Gilead and Dr. Seeger's counsel's prior representations to Merck that there were no other documents and/or things that Gilead or Dr. Seeger could produce—stating that they had "produced everything that either Gilead or Dr. Seeger has located and, therefore, there is nothing more we can give you"—were false.[17]

Incredibly, now Plaintiff makes the argument that it did not produce tubes or samples in this case because it did not understand that Merck's request for production of documents **and things** from

---

[14] *See* Second Jean Decl. Ex. 38 at p. 4.

[15] *See, i.e.,* Jean Decl. Exs. 21B (letter Jean to Booker October 15 2015), 25 (letter Jean to Warden dated October 20, 2015), ECF 161-1.

[16] *See* Second Jean Dec. Ex. 38 at p. 4.

[17] *See* Jean Decl. Ex. 22 (October 16, 2015 email from Joseph Warden to Patrice Jean at 3:20 pm.)

Gilead[18]—and Merck's subpoena to Dr. Seeger that also requested documents **and things**[19]—covered the actual physical materials that were sent to Dr. Seeger by Dr. Schinazi. In Gilead's Opposition Brief in response to the Merck's MTC, Gilead states that:

> "[a]lthough the Photographed Tubes might literally be considered 'things identifying' the compounds sent to Dr. Seeger, Gilead and Dr. Seeger did not interpret it that way, and did not understand that Merck was seeking production of the physical tubes until receiving Merck's October 15, 2015." (ECF 173 at 11, fn. 33).

Plaintiff and Dr. Seeger's refusal to comply with the admitted literal meaning of the request for "documents and things" does not relieve them of their obligation to produce responsive documents and things in this litigation. Moreover, despite the fact that they admit that they ignored the literal meaning of Merck's request for documents and things in the subpoena, Gilead and Dr. Seeger still have not represented whether Dr. Seeger is in possession of any additional physical samples.

Dr. Seeger testified that there were other "coded" tubes that were sent to him by Dr. Schinazi. As noted above, counsel for Plaintiff's response to Merck's inquiry as to what the "coded" tubes were remains unanswered.[20] To date, no information has been produced to Merck regarding the "coded" tubes that Dr. Seeger testified about at his deposition.

Additionally, as set forth above, other documents recently produced by Plaintiff suggest that additional compounds were sent in September 2003 on behalf of Pharmasset to Dr. Seeger.[21] To date, Merck has not been provided any information regarding the tubes sent to Dr. Seeger on or about September 3, 2003.

---

[18] *See* Jean Decl. Ex. 7 (Definition #17 at p.4 ("As used herein, "thing" means each item, sample, specimen or tangible object")); (Request No. 11 at p. 9 (seeking "All documents *and things* . . .) (emphasis added)); (Request No. 21 at p. 11 (seeking "All documents *and things*, including tests, experiments or data. . .) (emphasis added)); (Request No. 29 at p. 12 (seeking "All documents *and things* concerning the work of any experts retained by Gilead . . .) (emphasis added)); (Request No. 38 at 13 (seeking "All documents *and things* . . .) (emphasis added); (Request No. 41 at 13 (seeking "All documents *and things* . . . ) (emphasis added).

[19] *See* Jean Decl. Ex. 7 (Definition #6 at p. 6 (""Thing" means any tangible object other than a Document"); (Request No. 4 at p. 9 (seeking "All documents *and things* identifying (1) any nucleoside analog compound sent to You by Dr. Schinazi and/or Pharmasset prior to January 13, 2005 . . . (3) the date(s) that those compounds were received . . . (5) any notes of any testing or analysis performed on or with any of those compounds, (6) any results from any of those tests/analyses and (6) [sic] any results reported to Dr. Schinazi and/or Pharmasset concerning any of those compounds").

[20] *See* Second Jean Decl. Ex. 35 (November 6, 2015 letter to P. Jean from J. Warden.)

[21] *See* Second Jean Decl. Ex. 34 (GILEAD08919937-38 and GILEAD08919940-41).

Gilead's argument that "[a]llowing inspection of the tubes (of dubious utility, given their age) would impose an unwelcome burden on Dr. Seeger and his employer, Fox Chase Cancer Center" is without merit. Had Gilead met its obligation to produce documents and things responsive to Merck's request, Merck would not be requesting this discovery from Dr. Seeger and Fox Chase.[22]

Merck requests that the Court order (a) Gilead/Pharmasset to comply with the Requests for Production and (b) Dr. Seeger to comply with the subpoena and produce information regarding all samples sent by Pharmasset and/or Dr. Schinazi to Dr. Seeger until 2005, so that Merck has all information, documents and things regarding the compounds and the testing of the compounds that Dr. Seeger performed at the request of Dr. Schinazi and/or Pharmasset.

### C. MERCK HAS BEEN AND CONTINUES TO BE PREJUDICED BY GILEAD'S AND DR. SEEGER'S REFUSAL TO PRODUCE RESPONSIVE DOCUMENTS AND THINGS

Gilead and Dr. Seeger clearly have—or knows who has— the documents and things responsive to Merck's requests for production and Rule 45 subpoenas to Emory[23], Fox Chase, and Dr. Schinazi.[24] They should not be allowed to play "hide the ball" with documents and things that are clearly relevant and important to the defenses that Gilead has interposed in this case. Merck has already been deprived of the opportunity to use this information in its Opposition to Gilead's Motion for Summary Judgment filed on November 12, 2015.[25] Merck has been forced to bring this MTC so that this Court will order Gilead and Dr. Seeger to produce the requested documents, information and things. Only through the intervention of this Court will the prejudice that has been inflicted on Merck during summary judgment briefing not extend to trial.

Regarding the deposition of Dr. Secrist, in light of recent court filings in this case, Merck has

---

[22] Notably, Fox Chase has responded to the Rule 45 subpoena served by Merck by engaging the same counsel as Gilead (Fish & Richardson LLP) and refusing to either (a) participate in any meet-and-confer sessions, or (b) produce any responsive documents and things, unless ordered by the Court. *See* Second Jean Decl. Ex. 40. Accordingly, notwithstanding the fact that this MTC does not literally name Fox Chase, we respectfully request that the Court extend any order it issues to cover Fox Chase's production of the requested documents and things as well – so as to obviate the need for additional motion practice if Fox Chase (as opposed to Dr. Seeger or Gilead) has physical control of documents and things requested.

[23] *See* Second Jean Decl. Ex. 42 (Emory University's response to the Rule 45 subpoena).

[24] *See* Second Jean Decl. Ex. 43 (Dr. Schinazi's response to the Rule 45 subpoena).

[25] *See* ECF 178.

10
DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL
CASE NO. 5:13-CV-04057-BLF

determined that it will not seek to reschedule the deposition of Dr. Secrist.[26]

## II. AMENDED STATEMENT OF RELIEF REQUESTED

Merck respectfully requests that the Court order Gilead and Dr. Seeger to comply with the amended version of the relief requested below in light of the documents and information that has been produced since the deposition of Dr. Seeger on September 15, 2015:

1) Documents and photographs sufficient to identify all physical samples of nucleoside analogs sent to Dr. Seeger for testing, including the identity of the compounds sent for testing; when, where, how, and by whom they were made; all documents concerning the tests performed; the results obtained; and the recipients of such information.

2) Production for inspection of all physical samples that were sent to Dr. Seeger and photographs of all information contained on those physical samples; and, to the extent that no documents exist sufficient to identify what is contained in all physical samples, production of

3) a 30(b)(6) witness prepared to testify about (a) the names and structures of the compounds identified by the writing on all physical samples sent to Dr. Seeger, (b) the date(s) that any of the compounds were synthesized, (c) any person who synthesized any of the compounds sent to Dr. Seeger, (d) the method by which any of the compounds in any of the physical samples sent to Dr. Seeger was synthesized, (e) the date(s) that those compounds were sent to Dr. Seeger, (f) any testing or analysis done on or with any of those compounds, (g) any results from those tests or analyses; and (h) to the extent that any data, documents, and things were destroyed: when, where, why, and how those data, documents, and things were destroyed, and who destroyed them.

4) Merck requests the Court's permission to continue the deposition of Dr. Christoph Seeger out of time after the information requested above has been provided.

## III. CONCLUSION

As set forth above, Gilead's opposition to Merck's MTC is without basis. Accordingly, Merck respectfully requests that this Court grant this MTC and enter the requested order.

DATED: November 13, 2015        STEPHEN S. RABINOWITZ
                                JAMES W. DABNEY
                                PATRICE P. JEAN

---

[26] On the record before this Court, Gilead and Dr. Seeger's demand for costs is frivolous.

```
                              WANDA D. FRENCH-BROWN
                              MITCHELL EPNER
                              DAVID E. LANSKY
                              HUGHES HUBBARD & REED LLP

                              RANDY C. EISENSMITH
                              NAZ E. WEHRLI
                              FRIED, FRANK, HARRIS, SHRIVER
                                 & JACOBSON LLP

                              JOSHUA H. LERNER
                              LAURA E. MILLER
                              DURIE TANGRI LLP

                    By:       _____/s/ Patrice P. Jean_____
                              Attorneys for Defendant
                              MERCK & CO., INC. and
                              Defendants and Counterclaimants
                              MERCK SHARP & DOHME CORP. and ISIS
                              PHARMACEUTICALS, INC.
```

**CERTIFICATE OF SERVICE**

I certify that all counsel of record are being served on November 13, 2015 with a copy of this document via the Court's CM/ECF system.

*/s/ Patrice P. Jean*
PATRICE P. JEAN
