John M. Farrell (CA Bar No. #99649)
farrell@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Jonathan E. Singer (CA Bar No. #187908)
singer@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

Juanita R. Brooks (CA Bar No. #75934)
brooks@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN JOSE DIVISION)

| | |
|---|---|
| GILEAD SCIENCES, INC.,<br><br>    Plaintiff and Counterdefendant,<br><br>    v.<br><br>MERCK & CO, INC. (Defendant only), MERCK SHARP & DOHME CORP. and ISIS PHARMACEUTICALS, INC.,<br><br>    Defendants and Counterclaimants. | Case No. 5:13-cv-04057-BLF/PSG<br><br>**GILEAD'S [PROPOSED] INSTRUCTION NO. 32 RE DAMAGES-REASONABLE ROYALTY** |

### <u>DISPUTED INSTRUCTION NO. 32 RE DAMAGES – REASONABLE ROYALTY PROPOSED BY GILEAD</u>

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder

1  and the infringer taking place at the time when the infringing activity first began.  *In a prior*
2  *proceeding in this case, it was determined that the infringement began when Gilead launched its*
3  *Sovaldi® product onto the United States market on December 6, 2013*.  In considering the nature
4  of this negotiation, you must assume that the patent holder and the infringer would have acted
5  reasonably and would have entered into a license agreement.  You must also assume that both
6  parties believed the patent was valid and infringed.  Your role is to determine what the result of
7  that negotiation would have been.  The test for damages is what royalty would have resulted from
8  the hypothetical negotiation and not simply what either party would have preferred.

9      A royalty can be calculated in several different ways, and it is for you to determine which
10 way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty
11 is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you must
12 first determine the "base," that is, the product on which the infringer is to pay.  You then need to
13 multiply the revenue the defendant obtained from that base by the "rate" or percentage that you
14 find would have resulted from the hypothetical negotiation.  For example, if the patent covers a
15 nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.  If
16 the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty
17 would be $2, or the rate of 0.01 times the base revenue of $200.  By contrast, if you find the rate to
18 be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200.  These
19 numbers are only examples and are not intended to suggest the appropriate royalty rate.

20     If the patent covers only part of the product that the infringer sells, then the base would
21 normally be only that feature or component.  For example, if you find that for a $100 car, the
22 patented feature is the tires which sell for $5, the base revenue would be $5.  However, in a
23 circumstance in which the patented feature is the reason customers buy the whole product, the
24 base revenue could be the value of the whole product.

25     The ultimate combination of royalty base and royalty rate must reflect the value
26 attributable to the infringing features of the product, and no more. When the accused infringing

27
28

products have both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features.

Another way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for the life of the patent.

Authority:

N.D. Cal. Model Patent Jury Instr. B.5.7.  Gilead's proposed instruction is identical to the model instruction, with three exceptions.  First, it includes the additional language regarding the date of first infringement, which the Court added during the March 4, 2016 jury instruction conference. Second, it omits the instruction regarding a per-unit running royalty, which neither party is asserting is the appropriate form of damages. Third, it omits some of the optional language from the model that is not relevant to this case.