1
2
3              **UNITED STATES DISTRICT COURT**
4            **NORTHERN DISTRICT OF CALIFORNIA**
5                    **SAN JOSE DIVISION**
6
7   GILEAD SCIENCES, INC.,                    Case No.  13-cv-04057-BLF
              Plaintiff,
8
9        v.                                   **JURY INSTRUCTIONS**
10  MERCK & CO, INC., et al.,
              Defendants.
11
12
13
14  Dated: March 16, 2016
15                                   _____
16                                   BETH LABSON FREEMAN
                                     United States District Judge
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## <u>INSTRUCTION NO. 1 RE DUTY OF JURY</u>

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law. You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be. It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so. In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

### INSTRUCTION NO. 2 RE WHAT A PATENT IS AND HOW ONE IS OBTAINED

This case involves a dispute relating to two United States patents owned by Merck and Ionis—U.S. Patent Numbers 7,105,499 and 8,481,712. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). The process of obtaining a patent is called patent prosecution. A valid United States patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission. A violation of the patent owner's rights is called infringement. The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art." The examiner also will review prior art if it is submitted to the PTO by the applicant. Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art. However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country. The examiner

3

considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art. A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed." This writing from the patent examiner is called an "office action." If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims. This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent. The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all the information that will be presented to you. A person who has infringed a patent has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

## INSTRUCTION NO. 3 RE PATENTS AT ISSUE

I am holding up U.S. Patent No. 7,105,499, or the '499 patent, and U.S. Patent No. 8,481,712, or the '712 patent. These are the patents at issue in this case. Both patents have the same sections. On the front page of a patent, top-right column, there is the patent number and the "date of patent," which is the date the patent issued. The left column of the first page includes information about the patent, including the title, the names of the listed inventors, the companies the patent is assigned to, and information about when the patent application was filed.

Beginning at column 1 of the '499 patent and extending through column 136 is the patent specification, which is also referred to as the "written description" of the patent.

Beginning at column 137 of the patent are the claims. The claims are part of the patent that defines the claimed invention. The '499 patent has two claims, both relating to a method of treating Hepatitis C infection by administering certain classes of chemical compounds. The '712 patent has eleven claims, beginning at column 143, all of which relate to certain classes of chemical compounds.

5

## INSTRUCTION NO. 4 RE SUMMARY OF CONTENTIONS

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are Gilead Sciences ("Gilead" for short) and Merck & Co., Merck Sharp & Dohme Corp. and Isis Pharmaceuticals, now known as Ionis Pharmaceuticals (collectively, "Merck" for short). The case involves two United States patents, U.S. Patent Numbers 7,105,499 and 8,481,712. The patents were obtained by seven inventors, Stephen S. Carroll, David B. Olsen, Malcolm MacCoss, Balkrishen Bhat, Phillip Dan Cook, Anne B. Eldrup, and Thazha P. Prakash, who assigned, or transferred, the patents to Merck, the party asserting the patents in this case. For convenience, the parties and I will often refer to the patents as the "'499 patent" and the "'712 patent," based on the last three numbers of the patent. The '499 patent and '712 patent relate to a type of chemical compound called nucleosides, and to the use of nucleosides to treat the Hepatitis C virus.

Merck contends that Gilead's sales of its products Sovaldi® and Harvoni® infringe valid claims of the '499 and '712 patents. Those claims are claims 1 and 2 of the '499 patent, and claims 1, 2, 3, 5, 7, 9, 10 and 11 of the '712 patent. I will refer to these as the "Asserted Claims." Gilead contends that the Asserted Claims are invalid. Merck seeks damages for Gilead's infringement of the Asserted Claims. Gilead has the burden of proving that the Asserted Claims are invalid by clear and convincing evidence. Merck has the burden of proving the amount of any damages owed to it by a preponderance of the evidence.

Your job will be to decide whether Gilead has proven that each of the ten Asserted Claims of the '499 patent and '712 patent is invalid. It is not your job to decide the question of infringement. If you decide that any claim is not invalid, you will then need to decide the amount of any money damages to be awarded to Merck as compensation for Gilead's infringement.

Before you decide whether or not any or all of the claims are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have already determined the meaning of certain terms of the claims of the '499 patent and the

'712 patent.  The copy of these Preliminary Instructions that I provide to you will include a document

that sets forth those meanings. You are to apply my definitions of these terms throughout this case.

However, my interpretation of the language of the claims should not be taken as an indication that I

have a view regarding issues of invalidity.  Those issues are yours to decide.  I will provide you with

more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

## <u>INSTRUCTION NO. 5 RE BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE</u>

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## INSTRUCTION NO. 6 RE BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

## INSTRUCTION NO. 7 RE WHAT IS AND WHAT IS NOT EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits which are received into evidence; and

3.      any facts to which the lawyers have agreed.

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)      Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

(2)      Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4)      Anything you may see or hear when the court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## INSTRUCTION NO. 8 RE DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

## INSTRUCTION NO. 9 RE RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

## INSTRUCTION NO. 10 RE CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case and any bias or prejudice;

(5)    whether other evidence contradicted the witness's testimony;

(6)    the reasonableness of the witness's testimony in light of all the evidence; and

(7)    any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

## INSTRUCTION NO. 11 RE EXPERT OPINION

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

## INSTRUCTION NO. 12 RE DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

## <u>INSTRUCTION NO. 13 RE DEMONSTRATIVE EVIDENCE</u>

Certain charts and summaries not received in evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

## INSTRUCTION NO. 14 RE CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case. Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room, blog, Web site or other feature. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court. Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address. A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

## INSTRUCTION NO. 15 RE NO TRANSCRIPT AVAILABLE TO JURY

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given. If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

## INSTRUCTION NO. 16 RE TAKING NOTES

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note taking distract you. When you leave, your notes should be left in the courtroom. No one will read your notes. They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

## INSTRUCTION NO. 17 RE BENCH CONFERENCES AND RECESSES

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

## INSTRUCTION NO. 18 RE OUTLINE OF TRIAL

The trial will now begin. Presentation of the case will take place in two phases.  In the first phase, Gilead will present its case that the Asserted Claims are invalid.  If, at the conclusion of that phase, you decide that any of the Asserted Claims are not invalid then, in the second phase of the case, Merck and Ionis will present their case regarding the amount of money damages to be awarded to them.

In each phase of the case, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show.  The presentation of evidence will then begin. Witnesses will take the witness stand, and documents will be offered and admitted into evidence.

In the first phase, Gilead will present its evidence on its contention that the Asserted Claims are invalid. These witnesses will be questioned by Gilead's counsel in what is called direct examination. After the direct examination of a witness is completed, Merck and Ionis will have an opportunity to cross-examine the witness.  After Gilead has presented its witnesses, Merck and Ionis will call their witnesses, who will also be examined and cross-examined. Merck and Ionis will present their evidence that the Asserted Claims are not invalid.  Gilead may then return and respond to Merck's and Ionis's evidence regarding invalidity.

It is not disputed that if you find an Asserted Claim is not invalid, then use of Gilead's products Sovaldi® and Harvoni® infringes that claim, and that Gilead is responsible for inducing and contributing to this infringement.

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions. In other words, you should keep an open mind throughout the entire trial.

After the evidence has been presented, the attorneys will make closing arguments, and I will give you final instructions on the law. Closing arguments are not evidence. After the closing arguments and instructions, the case will go to you the jury for deliberations.

## INSTRUCTION NO 32: DEPOSITION TESTIMONY

During this trial you will hear deposition testimony from witnesses designated as corporate representatives.  Witnesses designated as corporate representatives testify on behalf of the corporation about information known to the corporation, and their testimony is considered to be the testimony of the corporation.

## SPECIAL INSTRUCTION NO. 40

In this case you may hear about patents other than Merck's that cover Gilead's products Solvadi and Harvoni. More than one patent can cover a product. The fact that Gilead has patents covering its products does not mean that any of the Asserted Claims of Merck's patents are invalid.

### INSTRUCTION NO. 19 RE DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence ~~and the arguments of~~ the ~~attorneys~~, it is my duty to instruct you as to the law of the case.

~~Each of you has received a copy of these~~ instructions ~~that you may take with you to~~ the jury room to consult during your deliberations.

*Copies of these will be provided in for you*

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

## INSTRUCTION NO. 20 RE INTERPRETATION OF CLAIMS

Before you decide whether the Asserted Claims are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describes the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of invalidity. The decisions regarding invalidity are yours to make.

| Claim Term | Court's Construction |
|---|---|
| in combination with | The term "in combination with" means "together with," whether given separately at different times during the course of therapy or concurrently in divided or single combination forms. |
| compound | a substance that consists of two or more chemical elements in union. |
| administering | providing a compound of the invention or a prodrug of a compound of the invention to the individual in need. |

3

## INSTRUCTION NO. 31: REMOVAL OF CLAIMS

Some of Gilead's claims you heard about in opening statements are no longer an issue in this case.   Do not speculate as to why these claims are no longer involved in the case.  You should not consider this during deliberations.

The Verdict Form sets out the claims remaining for you to resolve by your deliberations. Follow the instructions on the Verdict Form.

## INSTRUCTION NO. 21 RE INVALIDITY – BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether Gilead has proven that the Asserted Claims are invalid. Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. Because each claim of an issued patent is presumed valid, to prove invalidity of any patent claim, Gilead must persuade you that it is highly probable that the claim is invalid.

## INSTRUCTION NO. 22 RE LEVEL OF ORDINARY SKILL

The claims of a patent are viewed from the perspective of a "person of ordinary skill in the art." In deciding what the level of ordinary skill in the relevant field is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

## INSTRUCTION NO. 23 RE WRITTEN DESCRIPTION REQUIREMENT

A patent claim is invalid if the patent does not contain an adequate written description of the claimed invention.  The purpose of this written description requirement is to demonstrate that the inventor was in possession of the claimed invention at the time the application for the patent was filed, even though the claims may have been changed or new claims added since that time.

The written description requirement is satisfied if a person of ordinary skill in the field reading the original patent application at the time it was filed would have recognized that the patent application described the invention as claimed, even though the description may not use the exact words found in the claim.  A requirement in a claim need not be specifically disclosed in the patent application as originally filed if a person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed.  The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application.

The patents in this case relate to chemical compounds and methods of using chemical compounds.  Patents can disclose chemical compounds as single compounds or as classes of compounds, for example, by using a general structural formula.

During prosecution of a patent application, an applicant is allowed to amend its claims so long as the inventors were in possession of the subject of the new claims.  This includes amendments to cover a competitor's product.

6

## INSTRUCTION NO. 24 RE ENABLEMENT

A patent claim is invalid if the patent at the time it was filed did not contain a description of the claimed invention that is sufficiently full and clear to enable a person of ordinary skill in the field at the time to make and use the full scope of the invention. This is known as the "enablement" requirement. The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to make and use the invention.

The patent is not required to disclose information that would be known to persons of skill in the art. The patent may be enabling even though it does not expressly state some information if a person of ordinary skill in the field could make and use the invention without having to do excessive experimentation. In determining whether excessive experimentation is required, you may consider the following factors:

the scope of the claimed invention;

the amount of guidance presented in the patent;

the amount of experimentation necessary;

the time and cost of any necessary experimentation;

how routine any necessary experimentation is in the field;

whether the patent discloses specific working examples of the claimed invention;

the nature and predictability of the field; and

the level of ordinary skill in the field.

The enablement requirement is met if the specification enables any mode of making and using the invention, provided that the full scope of the invention is enabled. The patent need not enable an optimized or commercially viable process or method of practicing the invention unless the claims specify that the invention is directed at an optimized or commercially viable process. Nor must the patent enable a person of skill in the art to obtain regulatory approval of the claimed invention, such as approval from the FDA to sell a pharmaceutical product.

The "how to use" prong of the enablement requirement further requires that the specification disclose a practical utility for the invention. In other words, the specification must disclose a practical use for the invention.

1    The question of whether a patent is enabling is judged as of the date the application for the patent

2   was first filed, in this case January 18, 2002.

## INSTRUCTION NO. 25 RE DERIVATION

A patent claim may be invalid for derivation.  To show derivation, the party challenging validity of the claim must show that the claimed invention, including all of its elements, was conceived by someone else before the patentee invented it, and that the other person's invention was communicated to the patentee.  The patentee's invention is complete when it is conceived and reduced to practice.  The filing of a patent application serves as a conception and reduction to practice of the claimed invention so long as the claimed invention is adequately described in the application.

If you find that Merck's patent application as filed described and enabled an asserted claim of the '499 patent or the '712 patent, you must also find that the claim is not invalid for derivation.

## INSTRUCTION NO. 26 RE PRIOR INVENTION

A patent claim is invalid if the invention defined by that claim was invented by another person in the United Stated before it was invented by the patent holder, and that other person did not abandon, suppress, or conceal the invention. The patentee's invention is complete when it is conceived and reduced to practice. The filing of a patent application serves as conception and reduction to practice of the claimed invention so long as the claimed invention is adequately described in the application.

If you find that Merck's patent application as filed described and enabled an asserted claim of the '499 patent or the '712 patent, you must also find that the claim is not invalid for prior invention.

## INSTRUCTION NO. 27 RE DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.

Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## INSTRUCTION NO. 28 RE CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet chat room, blog, website or other feature. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address. A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

## INSTRUCTION NO. 29 RE COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

13

## INSTRUCTION NO. 30 RE RETURN OF VERDICT

A verdict form has been prepared for you.  [Any explanation of the verdict form may be given at this time.] After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.