STEPHEN S. RABINOWITZ
stephen.rabinowitz@hugheshubbard.com
PATRICE P. JEAN (Pro Hac Vice)
patrice.jean@hugheshubbard.com
MITCHELL EPNER (Pro Hac Vice)
mitchell.epner@hugheshubbard.com
HUGHES HUBBARD & REED LLP
ONE BATTERY PARK PLAZA
NEW YORK, NY 10004
Telephone:    (212) 837-6000
Facsimile:    (212) 299-6807

Bruce Genderson (Pro Hac Vice)
bgenderson@wc.com
Jessamyn S. Berniker (Pro Hac Vice)
jberniker@wc.com
Stanley E. Fisher (Pro Hac Vice)
sfisher@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

[Counsel continued overleaf]

Attorneys for Defendant
MERCK & CO., INC. and Defendants and Counterclaimants
MERCK SHARP & DOHME CORP. and ISIS PHARMACEUTICALS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GILEAD SCIENCES, INC., <br><br> Plaintiff and Counterdefendant, <br><br> v. <br><br> MERCK & CO., INC. (Defendant only), MERCK SHARP & DOHME CORP., and ISIS PHARMACEUTICALS, INC. <br><br> Defendants and Counterclaimants. | Case No. 5:13-cv-04057-BLF <br><br> **JURY INSTRUCTIONS FOR DAMAGES TRIAL AS MODIFIED AT MARCH 18, 2016 CHARGE CONFERENCE** |

1  JOSHUA H. LERNER (SBN 220755)
   jlerner@durietangri.com
2  LAURA E. MILLER (SBN 271713)
   lmiller@durietangri.com
3  Durie Tangri LLP
   217 Leidesdorff Street
4  San Francisco, CA 94111
   Telephone:    (415) 362-6666
5  Facsimile:    (415) 236-6300

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INSTRUCTION NO. 31 RE DAMAGES**

You have previously found that Gilead did not prove that [claims __ of the '499] and [claims __ of the '712 patent] were invalid.  Shortly before this trial began, the parties agreed that if any of the asserted claims was not found to be invalid, then Gilead's sale of Sovaldi® and Harvoni® in the United states infringed [that claim] [those claims].  You must now determine the amount of damages to be awarded to Merck to compensate for that infringement.

The amount of those damages must be adequate to compensate Merck for the infringement, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish the infringer.

Merck has the burden to persuade you of the amount of damages by a preponderance of the evidence.  While Merck is not required to prove their damages with mathematical precision, it must prove its damages with reasonable certainty.  Merck is not entitled to damages that are remote or speculative.

In addition to the evidence presented in the damages phase of the trial, you may also consider evidence that was presented during the validity phase.

**INSTRUCTION NO. 32 RE BURDEN OF PROOF – PREPONDERANCE OF EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## INSTRUCTION NO. 33 RE REASONABLE ROYALTY

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began.

In a prior proceeding in this case, it was determined that the infringement began when Gilead launched its Sovaldi® product onto the United States market on December 6, 2013. In considering the nature of this negotiation, you must assume that Merck and Gilead would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then need to multiply the revenue Gilead obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

In this case, Merck has introduced evidence of other licenses. The royalty rate in one or more of those licenses may be considered if it helps to establish the value that is attributable to the patented invention as distinct from the value of other features of Gilead's products.

The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. When the accused infringing products have both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features.

You are only being asked to calculate damages to account for sales of Sovaldi® and Harvoni®

occurring up until December 31, 2015.  The Court will determine the amount of damages for sales occurring after December 31, 2015.

# INSTRUCTION NO. 34 RE REASONABLE ROYALTY- RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)     The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)     The opinion and testimony of qualified experts.

(15)     The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.