John M. Farrell (CA Bar No. #99649)
farrell@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Jonathan E. Singer (CA Bar No. #187908)
singer@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

Juanita R. Brooks (CA Bar No. #75934)
brooks@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Attorneys for Plaintiff
GILEAD SCIENCES, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**(SAN JOSE DIVISION)**

| | |
|---|---|
| GILEAD SCIENCES, INC., | Case No. 5:13-cv-04057-BLF/PSG |
| Plaintiff and Counterdefendant, | |
| v. | **GILEAD SCIENCE, INC.'S RESPONSE TO MERCK'S OBJECTION TO EVIDENCE RELATING TO THE '224 APPLICATION** |
| MERCK & CO, INC. (Defendant only), MERCK SHARP & DOHME CORP. and ISIS PHARMACEUTICALS, INC., | |
| Defendants and Counterclaimants. | |

1  The '224 Application and Dr. Durette's testimony about it are relevant to Gilead's unclean hands defense and should be admitted to support it. That defense centers on Dr. Durette's actions in wrongly obtaining the confidential structure of PSI-6130 when he knew he was conflicted from doing so, drafting new claims to cover PSI-6130 having obtained the idea from Pharmasset, and never telling the Patent Office in the course of prosecuting the '499 or '712 patent where that idea originated. Dr. Durette was untruthful about these events at trial, seeking to explain them away or justify them in various ways he did not at his deposition, including by stating that the '499 patent represented "important" work from the Merck/Isis collaboration, despite the fact that neither Merck nor Isis ever made or tested anything covered by the claims until months after the Clark application published. (Trial Tr. at 374:7-15, 404:14-19, (Durette); (Duffy Depo. Tr. (EX-2382) at 46:22-35; Trial Tr. at 1130:12-17 (Olsen); Bennett Depo. Tr. (EX-2381) at 124:6-21; ECF No. 300.)

Gilead could not possibly anticipate this trial testimony; indeed, the file history of the '224 Application tells a dramatically different story that demonstrates Dr. Durette (and Merck's) unclean hands in light of Dr. Durette's trial testimony. In that file history, when pressed by an examiner as to how the patent specification – the same one at issue here – demonstrated activity of 2' methyl, 2' fluoro compounds, Dr. Durette resorted to work done by Pharmasset, and not by Merck or Isis to justify the pending claims. When the examiner rejected this attempt, Dr. Durette was even given the opportunity by the examiner and his supervisor to present work from the collaboration in support of the pending claims. In direct contradiction to his trial testimony that the claims represented important work from the collaboration, Dr. Durette did not take that opportunity. Instead, he abandoned the '224 Application, and filed the application that became the '712 patent before a different examiner, never telling the '712 examiner about what had happened in the '224 Application.

This evidence is highly probative of Gilead's unclean hands defense, and Gilead is not required to anticipate what Dr. Durette's testimony would be at trial in advance of it happening in order to show unclean hands.

Each of Merck's additional arguments to preclude the '224 Application from admission at the bench trial on Gilead's equitable defenses falls flat.

First, as detailed in Gilead's separately filed response to Merck's objections to Gilead's bench trial evidence, the jury didn't decide any fact about Gilead's derivation or unclean hands defenses, so Gilead is not precluded from presenting evidence on them at the bench trial.

Second, the '224 Application is not part of a "new theory" of unclean hands. Gilead has all along tied its unclean hands defense to the manner in which Merck obtained its '499 and '712 patents. Gilead obtained discovery on Merck's patent prosecution activities, including the '224 Application, deposed Dr. Durette on that subject at length, and tied Dr. Durette's conduct in prosecuting the '224 Application with nefarious activity in its summary judgment brief. (ECF No. 164-4 at 5.) Merck even knew enough to make a motion in limine about it. (*See* ECF No. 222.) Merck has long been on notice that Gilead considered the '224 Application's prosecution to be informative of Merck's overall scheme in obtaining the '499 and '712—a scheme Gilead contends precludes Merck from collecting anything from Gilead due to unclean hands.

Third, Merck's assertion that Gilead's unclean hands defense is an unpled inequitable conduct defense is wrong, as explained above and in Gilead's concurrently submitted responsive evidentiary brief. However, if the Court determines that Gilead's allegation based on Dr. Durette's false trial testimony is more properly inequitable conduct, Gilead may seek to amend the complaint to conform to the evidence at trial as permitted by Fed. R. Civ. P. 15(b)

Fourth, Gilead has not waived the ability to introduce the '224 Application at the bench trial. Again, Gilead is not required to anticipate false trial testimony. The purpose of this evidence at the bench trial is to counter Dr. Durette's false testimony and tell a complete story about how Dr. Durette used Pharmasset's confidential information to secure patent rights, and that he knew the only way he could substantiate such claims was by resorting to Pharmasset's work, in contradiction to his testimony at trial. In other words, Dr. Durette knew that no one at Merck had conceived the 2' methyl up, 2' fluoro down nucleoside inventions, only Jeremy Clark did, but he persisted in obtaining claims nonetheless. *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d

1466, 1473 (Fed. Cir. 1997) ("Conception of a chemical compound "requires knowledge of both the specific chemical structure of the compound and an operative method of making it."). That Merck may not have the opportunity to present Dr. Durette's live testimony on the '224 Application is besides the point. Dr. Durette was questioned extensively about the '224 Application at his deposition and Merck had every opportunity to explore that with him during that deposition. While Dr. Durette is outside the Court's subpoena power and Gilead cannot compel his attendance, Merck clearly has the ability to do so, since Merck produced him at trial. Plus, Merck is speaking out of both sides of its mouth, at the same time arguing Gilead could not present the '224 Application to the jury because it is inadmissible, but that it nevertheless should have done so in order to avoid prejudice now. Merck cannot have it both ways. The evidence on the '224 Application is relevant to the unclean hands defense and should be heard.

Lastly, the issues raised in Merck's MIL No. 5 provide no basis for excluding the '224 Application from the bench trial. The '224 Application file history is not inadmissible hearsay. It qualifies as both an opposing party's statement and as a public record. (ECF No. 242 at 3-4.) In addition, Gilead has explained that the file history can be offered for reasons other than to prove the truth of the matter asserted. (*Id.* at 4.) Moreover, because this is a bench trial, Merck's reasons for seeking to preclude the '224 Application based on an alleged danger that it could confuse factual issues, or prejudice or overshadow other evidence, are unwarranted. The Court is serving as trier of fact over the asserted equitable defenses and is well positioned to listen to and weigh the evidence bearing in mind the appropriate evidentiary rules.

Dated: March 28, 2016    FISH & RICHARDSON P.C.

By: */s/ Elizabeth M. Flanagan*
Elizabeth M. Flanagan
Attorneys for Plaintiff
GILEAD SCIENCES, INC.