John M. Farrell (CA Bar No. #99649)
farrell@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Jonathan E. Singer (CA Bar No. #187908)
singer@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

Juanita R. Brooks (CA Bar No. #75934)
brooks@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Attorneys for Plaintiff
GILEAD SCIENCES, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**(SAN JOSE DIVISION)**

| | |
|---|---|
| GILEAD SCIENCES, INC., <br><br> Plaintiff and Counterdefendant, <br><br> v. <br><br> MERCK & CO, INC. (Defendant only), MERCK SHARP & DOHME CORP. and ISIS PHARMACEUTICALS, INC., <br><br> Defendants and Counterclaimants. | Case No. 5:13-cv-04057-BLF/PSG <br><br> **GILEAD SCIENCE, INC.'S RESPONSE TO MERCK'S OBJECTION TO GILEAD'S BENCH TRIAL EVIDENCE** |

I.  **GILEAD'S UNCLEAN HANDS DEFENSE IS NOT FORECLOSED BY THE JURY'S VERDICT[1]**

Dr. Philippe Durette's conduct in obtaining the structure of PSI-6130 from Pharmasset, securing the '499 patent for Merck, pursuing the application that ultimately became the '712 patent, and testifying in this case, was contrary to any standard of ethical norms and behavior. He first lied to Pharmasset about being within the firewall established for review of the structure of PSI-6130, then lied in his deposition about being on the phone call where he learned of the structure of PSI-6130, and then lied on the witness stand about his reasons for being on that phone call and his subsequent prosecution of the '499 patent.

Merck wrongly asserts that the jury's verdict prevents the Court from considering this misconduct in determining whether Merck may enforce the '499 and '712 patents against Gilead, Pharmasset's successor. But, of course, the jury did not decide any questions about Dr. Durette's conduct, which forms the core of Gilead's unclean hands defense. Here, the only issues the jury actually decided were those of written description and enablement. The jury did not decide the issues of derivation or prior invention. In fact, over Gilead's objection, the jury was barred from doing so due to the derivation and prior invention jury instructions, which instructed that "[i]f you find that Merck's patent application as filed described and enabled an asserted claim of the '499 or the '712 patent, you must also find that the claim is not invalid for derivation" (ECF No. 352 Instruction No. 25). Merck's evidentiary objection should be overruled based on this alone since the jury *cannot* have decided the issues of derivation and prior invention, and thus the Court cannot conclude that the jury made any findings on those issues at all.

For example, from the evidence, the Court is allowed to conclude that Dr. Durette never would have filed the claims but for him being on the March 17, 2004 call with Pharmasset. This is unclean hands. Similarly, the Court may conclude that, rather than remove himself from prosecution after being exposed to Pharmasset's confidential information, he undertook a course of conduct to patent the very compounds that Pharmasset told him it was working on, in

---

[1] The reason for Merck's filing is unclear; in fact, Merck states that it is "not seek[ing] to preclude introduction of this evidence" (*id.* at 1), except for the '224 application, which is the subject of a separate objection (*see* ECF No. 378) and a separate response from Gilead.

1  violation of any standard of good faith and fair dealing among companies.  This is unclean
2  hands.  Lastly, the Court can conclude that Dr. Durette lied on the witness stand (and at his
3  deposition) in order to hide his misconduct.  This is unclean hands, as well.

4  Merck cites no law for the proposition that there can be no unclean hands where a jury has determined that patent claims are not invalid for lack of written description and enablement.  Instead, Merck cites *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472-73 (1962), which merely clarifies that "any legal issues for which a trial by jury is timely and properly demanded be submitted to the jury."  Merck also cites *Cabinet Vision v. Cabnetware*, 129 F.3d 595, 600 (Fed. Cir. 1997) and *Shum v. Intel Corp.*, 499 F.3d 1272, 1279 (Fed. Cir. 2007), but those cases do not address this case, where the jury made no findings common to the verdict and unclean hands.

Moreover, and as will be argued at the JMOL stage, Gilead has maintained throughout this case that derivation is a separate defense from written description and enablement that "has to do with the origin of invention."  *Hedgewick v. Akers*, 497 F.2d 905, 907 (C.C.P.A. 1974); *see also Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993) ("A claim that a patentee derived an invention addresses originality—who invented the subject matter . . . .").  In order for Gilead to have prevailed on its derivation defense, a finding of lack of written description and enablement was not a condition precedent.  Indeed, derivation can exist even if Merck could establish that there was some written description support for the issued claims.  *See Leviton Mfg. Co. v. Univseral Security Instruments, Inc.*, 606 F.3d 1353, 1360 (Fed. Cir. 2010) ("It is not enough for Leviton to claim that the earlier application does in fact support the claims.  Neither an inventor nor his counsel may graft claims onto an earlier specification if those claims do not reflect what the inventor actually invented at the time of the earlier application."); *see also Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1233 (Fed. Cir. 1994) (Lourie, J., concurring) ("It is of course possible for an invention to be reduced to practice constructively, . . . in which case the reduction to practice clearly says nothing about the completeness of the conception.").

This is particularly so in the area of a chemical compounds, this case's subject matter.  A person of skill can draw a chemical compound and have no idea how to make it, or never make it

in fact.  The law thus requires that the conception of a chemical compound – or a method of treatment using a new compound – requires not just writing the compound down, but the possession of an operable method to make it.  *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997).  Merck conceded at trial that it did not make a single compound within the scope of the asserted claims until August, 2005, after Clark disclosed his method, nor did it make any nucleoside with  2' methyl fluoro moiety until the same time. (Duffy Depo. Tr. (EX-2382) at 46:22-35; Trial Tr. at 1130:12-17 (Olsen); Bennett Depo. Tr. (EX-2381) at 124:6-21.)  Instead, it derived its invention from Pharmasset.

Simply put, the jury made no factual findings that foreclose Gilead's unclean hands defense.  Gilead's defense rests in equity separate and apart from what the jury decided.

## II.     GILEAD'S DISCLOSED ITS UNCLEAN HANDS THEORY IN DISCOVERY

Merck wrongly asserts that Gilead did not disclose the unclean hands theory it will advance at the bench trial, but does not specify what evidence or theory it deems not previously disclosed.[2]  Gilead's interrogatory response states that its unclean hands defense arises "at least from" Merck's obtaining its patent rights by deriving the invention from Pharmasset's confidential disclosures, and cites 7 pages of its invalidity contentions that details the Merck-Pharmasset interactions that led Dr. Durette to draft new patent claims in light of those disclosures.  (ECF No. 218-2 at 10.)  Gilead's bench trial disclosures are consistent with this theory and the discovery Gilead obtained in the case and outlined in its pretrial disclosures.  Anything additional arises from Dr. Durette's various prevarications on the witness stand, which Gilead could not possibly anticipate.

Dated:  March 28, 2016                            FISH & RICHARDSON P.C.

By: */s/ Elizabeth M. Flanagan*
Elizabeth M. Flanagan

Attorneys for Plaintiff
GILEAD SCIENCES, INC.

---

[2] Merck's assertion that Gilead's defense is an unpled inequitable conduct defense is wrong, as explained above.  But if the Court determines that Gilead's allegation based on Dr. Durette's false trial testimony is more properly inequitable conduct, Gilead may seek to amend the complaint to conform to the evidence at trial as permitted by Fed. R. Civ. P. 15(b).