John M. Farrell (CA Bar No. #99649)
farrell@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone:  (650) 839-5070
Facsimile:  (650) 839-5071

Jonathan E. Singer (CA Bar No. #187908)
singer@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone:  (612) 335-5070
Facsimile:  (612) 288-9696

Juanita R. Brooks (CA Bar No. #75934)
brooks@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Attorneys for Plaintiff
GILEAD SCIENCES, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### (SAN JOSE DIVISION)

| | |
|---|---|
| GILEAD SCIENCES, INC.,<br><br>        Plaintiff and Counterdefendant,<br><br>        v.<br><br>MERCK & CO, INC. (Defendant only), MERCK SHARP & DOHME CORP. and ISIS PHARMACEUTICALS, INC.,<br><br>        Defendants and Counterclaimants. | Case No. 5:13-cv-04057-BLF/PSG<br><br>**GILEAD SCIENCES, INC.'S BRIEF REGARDING UNCLEAN HANDS LEGAL STANDARDS** |

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ........................................................................1

II.   MERCK'S UNCLEAN HANDS ..............................................2

III.  THE COURT SHOULD BAR MERCK'S CLAIMS FOR INFRINGEMENT FOR UNCLEAN HANDS........................................7

    A.    Unclean Hands Is a Long-Standing Doctrine That Empowers the Court to Bar a Litigant's Claim for Unconscionable Misconduct ................................7

    B.    Unclean Hands is Separate from Patent Validity and Inequitable Conduct ................................7

    C.    Merck's Misconduct Far Exceeds the Threshold for Unclean Hands ................................8

           i.    Dr. Durette's repeated false testimony, as well as Merck's sponsoring of it, is unconscionable misconduct demonstrating Merck's unclean hands ................................8

           ii.   Merck's improper use of Pharmasset's confidential information and violation of confidentiality and firewall agreements is unconscionable conduct demonstrating Merck's unclean hands ................................11

    D.    This Court Should Find that Merck's Unclean Hands Render the Patents-in-Suit Unenforceable against Gilead ................................13

IV.  CONCLUSION ................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Fed. Republic of Nigeria*,
219 F.3d 869 (9th Cir. 2000) ...................................................................................12

*Aptix Corp. v. Quickturn Design Sys., Inc.*,
269 F.3d 1369 (Fed. Cir. 2001)............................................................................8, 13

*Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.*,
792 F. Supp. 969 (S.D.N.Y. 1992), *aff'd*, 983 F.2d 1048 (2d. Cir. 1992) ................1, 9, 10, 13

*C.C.S. Commc'n Control, Inc. v. Sklar*,
No. 86 Civ. 7191, 1987 WL 12085 (S.D.N.Y. 1987) .........................................9, 14

*Clements Indus., Inc. v. A. Meyers & Sons Corp.*,
712 F. Supp. 317 (S.D.N.Y. 1989)..........................................................................11

*Dotson v. Bravo*,
202 F.R.D. 559 (N.D. Ill. 2001), *aff'd*, 321 F.3d 663 (7th Cir. 2003) ....................13

*Englebrick v. Worthington Indus., Inc.*,
629 F. App'x 564 (9th Cir. 2015) ............................................................................14

*Fed. Folding Wall Corp. v. Nat'l Folding Wall Corp.*,
340 F. Supp. 141 (S.D.N.Y. 1971).....................................................................12, 13

*FLIR Sys., Inc. v. Sierra Media, Inc.*,
965 F. Supp. 2d 1184 (D. Or. 2013) .......................................................................12

*Hazel-Atlas Glass Co. v. Hartford Empire Co.*,
322 U.S. 238 (1944)...................................................................................................7

*Heath v. City of Philadelphia*,
No. CIV. A. 95-3047, 1997 WL 560606 (E.D. Pa. Aug. 22, 1997) .......................15

*Keystone Driller Co. v. General Excavator Co.*,
290 U.S. 240 (1933).................................................................................7, 8, 13, 15

*Mas v. Coca-Cola Co.*,
163 F.2d 505 (4th Cir. 1947) ........................................................................ *passim*

*McCormick v. Cohn*,
 No. CV 90-0323 H, 1992 WL 687291 (S.D. Cal. July 31, 1992), *aff'd*, 17
 F.3d 395 (9th Cir. 1994) ..................................................................................................7, 14

*Metro Pub., Ltd. v. San Jose Mercury News, Inc.*,
 861 F. Supp. 870 (N.D. Cal. 1994) ..........................................................................8, 12, 13

*Mona v. Mona Elec. Group, Inc.*,
 934 A.2d 450 (Md. Ct. Spec. App. 2007) ................................................................9, 14, 15

*PacTool Int'l Ltd. V. Kett Tool Co., Inc.*,
 2011 WL 5335293 (W.D. Wa. Nov. 7, 2011) .......................................................................8

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach, Co.*,
 324 U.S. 806 (1945)....................................................................................................*passim*

*Radecki v. GlaxoSmithKline*,
 646 F. Supp. 2d 310 (D. Conn. 2009), *aff'd*, 375 F. App'x 46 (2d Cir. 2010) .......................13

*Rembrandt Vision Tech., L.P. v. Johnson & Johnson Vision Care, Inc.*,
 No. 2015-1079, 2016 WL 1376363 (Fed. Cir. Apr. 7, 2016) .............................................1, 15

*Saudi Basic Indus. Corp. v. ExxonMobil Corp.*,
 401 F. Supp. 2d 383 (D.N.J. 2005) ..........................................................................12, 13

*TeleVideo Sys., Inc. v. Heidenthal*,
 826 F.2d 915 (9th Cir. 1987) ..............................................................................................14

*Therasense v. Becton, Dickinson & Co.*,
 649 F.3d 1276 (Fed. Cir. 2011)........................................................................................7, 8

*U.S. Ethernet Innovations, LLC v. Texas Instruments Inc.*,
 No. 6:11-CV-491, 2014 WL 4683252 (E.D. Tex. 2014)..........................................9, 13, 14

*Unilogic, Inc. v. Burroughs Corp.*,
 12 Cal. Rptr. 2d 741 (Ct. App. 1992)..............................................................................12, 14

*Worthington v. Anderson*,
 386 F.3d 1314 (10th Cir. 2004) .......................................................................................12, 14

*Wyle v. R.J. Reynolds Indus., Inc.*,
 709 F.2d 585 (9th Cir. 1983) ............................................................................................13

**Statutes and Other Authorities**

Cal. Bus. & Prof. Code § 6068(d)................................................................................................10

California Rules of Prof'l Conduct R. 5-200 ...............................................................................10

California Rules of Prof'l Conduct R. 5-200(B)..........................................................................10

Model Rules of Prof'l Conduct R. 3.3(a)..........................................................................10

## I.     INTRODUCTION

"Do you solemnly swear that the testimony you will give in this proceeding will be the truth, the whole truth and nothing but the truth?"

Upon this simple oath is arguably based our entire system of justice.  While much is made—and deservedly so—of institutions such as the common law, the independence of the judiciary and various provisions of our Constitution, at the end of the day, the administration of justice most commonly depends on people, either in trial or at deposition, raising their right hand, swearing the above oath, and taking it to heart.  Without it, testimony would cease to have meaning, and the validity of our legal proceedings would assuredly founder.

For these fundamental reasons, Courts have regularly barred relief to a litigant that solicits false testimony under the doctrine of unclean hands.   As the authorities demonstrate, lying under oath—by itself—is unconscionable misconduct that demonstrates unclean hands and bars recovery.  *See Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.*, 792 F. Supp. 969, 970 (S.D.N.Y. 1992), *aff'd*, 983 F.2d 1048 (2d. Cir. 1992) (false testimony in support of laches defense in trademark dispute found to be unclean hands); *see also Mas v. Coca-Cola Co.*, 163 F.2d 505, 508 (4th Cir. 1947) ("It is sufficient to bar relief that plaintiff has been guilty of unconscionable conduct directly related to the cause of action, such as the fabrication of testimony, the subornation of perjury or other like attempt to perpetrate a fraud upon the court or take an unconscionable advantage of his adversary.").  Indeed, just two weeks ago, the Federal Circuit ordered a new trial under Rule 60 where, months after trial, it came to light that the prevailing defendant's expert had lied on the stand, even assuming the defendant knew nothing about it.  *Rembrandt Vision Tech., L.P. v. Johnson & Johnson Vision Care, Inc.*, No. 2015-1079, 2016 WL 1376363, at *4-8 (Fed. Cir. Apr. 7, 2016).

Here, the situation is far worse.  In multiple proceedings in this Court, Merck sponsored the actions and testimony of its own attorney, Dr. Philippe Durette, who repeatedly lied under oath on Merck's behalf.  Dr. Durette lied at his deposition in an attempt to cover up Merck's improper dealings with Pharmasset that led to the patents-in-suit, and he lied at trial when he

1   recanted his deposition testimony and created a new set of excuses for Merck's misconduct.

2   Merck knew Dr. Durette lied at his deposition, it sponsored his new lies in this Court, and it

3   continues to defend his lies in this proceeding.  This misconduct far exceeds the threshold for

4   unclean hands and compels the Court to act, to show that lying by an attorney and sponsoring

5   false testimony will not be tolerated.  The Court should render the patents-in-suit unenforceable

6   against Gilead, as the authorities plainly allow.

7   **II.     MERCK'S UNCLEAN HANDS**

8          On May 8, 2015, retired Merck attorney Philippe Durette appeared for deposition in this

9   case.  As every witness in a court proceeding must, whether in deposition or at trial, he raised his

10  right hand, and swore the above oath to tell the whole truth and nothing but the truth.  He then

11  proceeded to lie, repeatedly, on Merck's behalf.

12         At his deposition, Dr. Durette gave unequivocal testimony that he did not participate in a

13  March 17, 2004, due diligence call with Pharmasset where Merck learned the confidential

14  structure of Pharmasset's lead nucleoside compound, PSI-6130.  (EX-2388 at 30:21-31:3, 37:2-

15  18, 38:1-8 (Durette).)  He also testified that he never learned the structure of PSI-6130 before

16  Pharmasset publicized it, and that it would have been inappropriate and wrong for him to do so

17  because "it would have tainted [his] judgment as to what claims to pursue in the Merck/Isis

18  collaboration."  (*Id*. at 31:4-10, 38:9-13, 38:21-24 (Durette).)  He even cited Merck's corporate

19  policy, which forbade Merck's patent prosecutors from participating in licensing discussions in

20  an area related to their prosecution work, as an additional reason why he never would have been

21  on the due diligence call with Pharmasset.  (*Id*. at 38:25-39:7 (Durette).)  All of this testimony

22  was false.  The Court knows this because Dr. Durette recanted his deposition testimony at trial

23  and told the jury a different story – that he "forgot" that he was on the phone call and he

24  "overconcluded" based on his memory.  (*See, e.g.*, Tr. at 344:18-345:7, 347:9-348:16 (Durette).)

25         But Dr. Durette did not merely misremember at his deposition, as he and Merck now so

26  vociferously assert.  He was "sure" he was not involved in any discussion with Pharmasset,

27  "positive" that the structure of PSI-6130 was not revealed to him, and gave lengthy explanations

28

as to why he was so certain.  (EX-2388 at 30:21-31:10, 38:1-13, 28:21-39:7 (Durette).)  Even

when shown an internal Merck document demonstrating that Merck specifically chose him to be

on the March 2004 call to learn the structure of PSI-6130 (EX-153.0001), Dr. Durette persisted,

testifying: "I did not participate in any meeting of due diligence on March 17."  (EX-2388 at

37:2-18 (Durette).)  In light of all of this, the most logical inference—indeed, the only

inference—is that Dr. Durette, an attorney and an officer of the Court, repeatedly lied under oath

because he and Merck knew his presence on that phone call was wrong, and, together, they

decided to cover this up when they thought they could get away with it.  This is unconscionable

misconduct, and an affront to our entire judicial system.

Proving this point, at Dr. Durette's deposition, Merck was unaware that Pharmasset's

Alan Roemer had taken contemporaneous notes placing Dr. Durette on the March 2004 call.  (Tr.

at 379:19-381:2 (Durette).)  At some point before trial, Merck became aware of Mr. Roemer's

notes, and could no longer deny that Dr. Durette was on the call and learned the structure of PSI-

6130.  (*Id.*)  Although Dr. Durette was outside the subpoena power of this Court, and Gilead

could not force his attendance, Merck voluntarily brought Dr. Durette to trial, prepared him to

have a clearly rehearsed explanation for recanting his false deposition testimony, and elicited

new lies from Dr. Durette in an effort to explain away Merck's improper conduct towards

Pharmasset.  And although Merck knew what Dr. Durette's trial testimony would be and had an

obligation to correct his false deposition testimony, Merck provided no correction.  While Merck

dropped vague hints at the pretrial conference, Gilead had no actual notice that Dr. Durette

would recant his deposition testimony and tell a different story at trial until Merck's opening

statement, where Merck counsel stated for the first time that Merck did not dispute that Dr.

Durette was on the telephone call.  (Tr. at 137:5-8, 178:5-20.)

At trial, Dr. Durette took the stand and parroted the rehearsed excuses for his prior false

testimony, with soliloquies that were generally non-responsive to Gilead's questions.  (*See, e.g.*,

Tr. at 343:17-345:7, 360:16-362:4 (Durette).)  A memory nowhere to be found in May, 2015

suddenly appeared in January 2016 upon review of the same materials from May, 2015.  (Tr. at

386:6-21 (Durette).)  Actions that Dr. Durette unequivocally testified would have "tainted my judgment" at his deposition became a mere "potential conflict."  (*Cf.* EX-2388 at 38:9-13, 38:21-39:7 (Durette); Tr. at 350:15-24, 352:13-21 (Durette).)  And documented knowledge of PSI-6130's mechanism of action from a term sheet he reviewed before the March 2004 phone call vanished – in its place, a professed total ignorance as to how PSI-6130 worked before the March 2004 phone call.  (*Compare* EX-153.0001; EX-2394.0002; Tr. at 2497:18-2498:7 (Demain) *with* Tr. at 350:25-351:9, 360:16-361:13, 367:20-368:14 (Durette).)

These lies were compounded by extreme evasiveness on cross-examination.  Dr. Durette refused to answer Gilead's questions about why, after learning Pharmasset's confidential information, he amended Merck's patent claims to target compounds that Merck never made, used, or tested.  (*See, e.g.*, Tr. at 371:1-372:5, 374:7-375:3 (Durette).)  The Court was forced to interrupt Dr. Durette's repeated non-responsive answers, and instruct him to answer Gilead's questions.  (Tr. at 371:1-372:7, 373:16-374:5, 374:7-375:3, 376:2-377:2 (Durette).)  He still would not.  On direct examination, however, Merck elicited the blatant fiction that Dr. Durette narrowed the claims "to get an allowance on the subject matter that was ***most important to the collaboration*.**"  (Tr. at 404:14-19 (Durette) (emphasis added).)  It is beyond belief that subject matter Merck never made or tested until 2005 was "most important" to a collaboration that ended in 2003.  (ECF No. 300; EX-2382 at 46:22-25 (Duffy); EX-2381 at 124:6-21 (Bennett).)  Dr. Durette lied under oath, repeatedly, at trial.  Merck and Merck's counsel knew it and sponsored it.  This behavior is unconscionable.

Even after Dr. Durette's numerous lies at trial, Merck's counsel continued to defend, and indeed vouch for, his character.  (*See* Tr. at 178:17-20, 1723:18-1724:10 (describing Dr. Durette as "an honest person" to the jury).)  And Merck continues to sponsor Dr. Durette's false testimony now.  Despite the Court noting "significant evidence of lying in multiple locations between the parties and to the Court through a deposition and trial" (Tr. at 2544:21-25), that "I have pretty strong evidence that an attorney lied in many phases of this case and including before the Court" (Tr. at 2576:22-2577:3), that "I have taken offense by what I think is untruthful

statements by an attorney" (Tr. at 2609:8-9), and that "if [Dr. Durette] had simply made a mistake, he would not have also had a list as long as his arm of reasons why he could not have been on the call" (Tr. at 2603:11-16), Merck continues to argue that Dr. Durette was "honest" and simply "forgot" he attended the March 2004 call.  (*See, e.g.*, Tr. at 2469:20-2470:9, 2598:6-13, 2603:1-9.)  Merck's response to the overwhelming evidence of lying is shocking.

The lies Merck perpetrated in this case were not incidental—rather, they were directed to supporting Merck's validity arguments, concealing its misconduct in violating the firewall and confidentiality agreements between Merck and Pharmasset and misusing Pharmasset's confidential information to rewrite the '499 patent claims.  Dr. Durette was the only witness who could speak to those new claims—the inventors all denied involvement in them.  (*See, e.g.*, EX-2376 at 255:11-15 (Cook); EX-2377 at 100:11-17 (Bhat); EX-2378 at 55:24-56:6 (Eldrup); EX-2379 at 129:1-10 (Carroll); EX2380 at 213:18-21 (Olsen).)   As the Court is aware, Merck and Pharmasset discussed a collaboration to develop PSI-6130 in 2003-2004.  Those negotiations were subject to non-disclosure agreements (EX-2298, EX-1241), and information about the structure of PSI-6130 could only be disclosed to persons firewalled from Merck's internal HCV program. (EX-2302.0001-3; EX-47.0001.)  This firewall was created at Merck's suggestion, to make evaluating a possible collaboration more convenient for Merck.  (EX-2302.0003.)  The last thing a small company like Pharmasset would want to do is give up its "crown jewels," the structure of its only lead compound, to a competitor.  (EX-2400 at 166:19-168:2 (MacCoss).)  So, Merck suggested the firewall, and Pharmasset agreed to it.  (EX-2302.0001, .0003.)

Pharmasset had no independent way to verify the firewall and was thus, dependent on Merck for its implementation.  But, unbeknownst to Pharmasset, Dr. Durette was prosecuting patents on nucleosides from the Merck/Isis collaboration.  He knew that it would be wrong, and against Merck's policy, for him to learn the structure of PSI-6130.  (EX-2388 at 38:21-24, 38:25-39:7 (Durette).)  And he and Merck knew PSI-6130 was "in a related area" to the patents Dr. Durette was prosecuting based on information Pharmasset had provided before the March 2004 call.  (*See, e.g.*, EX-47.0001-2 (disclosing PSI-6130 structural information to Merck); EX-

2394.0002 (term sheet commented on by Merck and Dr. Durette stating PSI-6130 "is a chain terminator of HCV polymerase"); Tr. at 2497:18-2498:7 (Demain).)  Despite this, Merck arranged for Dr. Durette to "view the structure during a patent due diligence meeting on March 17." (EX-153.0001.)  Merck should not have put Dr. Durette on the March 2004 due diligence call, should not have violated the firewall, and should not have had its patent prosecutor learn information that, by his own admission, tainted his judgment regarding what claims to pursue.

Merck told Pharmasset none of this—instead, Merck's improper conduct continued on the March 2004 call with Pharmasset.  Before Pharmasset disclosed the structure of PSI-6130 on that call, Dr. Schinazi stated that it was a firewalled conversation.  (Tr. at 382:8-12 (Durette); EX-2098.0001 (RFS: "Firewall").)  Dr. Durette stayed silent; he did not tell Pharmasset that he was prosecuting the Merck/Isis patents, and thus was not under the firewall, and did not identify any issue until after Pharmasset began to provide structural information about PSI-6130.  (EX-2098.0002.)  After Pharmasset revealed the full structure, Dr. Durette overtly lied by misrepresenting that he was within the firewall, and thus, there was nothing for Pharmasset to worry about.  (EX-2098.0002 ("Full disclosure of the compound structure to Phil Durette and Doug Pon, both of whom were asked if they were firewalled; they both said that they were within the firewall."); Tr. at 434:1-20 (Roemer).)  Again, it bears emphasizing that Merck represented that people within that firewall would have nothing to do with Merck's internal HCV program.  (EX-2302.0003.)  But despite Dr. Durette being the furthest thing from firewalled, and Pharmasset's repeated inquiries (Tr. at 434:1-435:6 (Roemer)), he never told Pharmasset of his ongoing prosecution.  (Tr. at 435:7-12 (Roemer).)

After Dr. Durette's judgment was tainted (EX-2388 at 38:21-24, 38:25-39:7 (Durette)), Merck should have adhered to its obligations to Pharmasset and removed Dr. Durette from prosecution of the Merck/Isis patents, as he admitted at his deposition the policy at Merck required.  Instead, he continued prosecution, laid in wait for Pharmasset's patent application to publish, which he otherwise would not have flagged among the hundreds of applications published each day, and rewrote Merck's claims to target Pharmasset's compounds.  (EX-

156.0004.)  Later, he filed new patent applications to further target Pharmasset.  (EX-192.0002.)
And while Dr. Durette would not answer Gilead's questions at trial about why he amended the
claims, the reason is plain.  He knew from the confidential disclosures that PSI-6130 was
Pharmasset's "crown jewels," "of significant interest" to Merck and its value to Pharmasset was
"in excess of $100 million."  (EX-2400 at 166:19-168:2 (MacCoss); EX-153.0001.)

## III.   THE COURT SHOULD BAR MERCK'S CLAIMS FOR INFRINGEMENT FOR UNCLEAN HANDS

### A.  Unclean Hands Is a Long-Standing Doctrine That Empowers the Court to Bar a Litigant's Claim for Unconscionable Misconduct

Unclean hands exists precisely to address misconduct like Merck's in this case.  "[H]e
who comes into equity must come with clean hands."  *Precision Instrument Mfg. Co. v. Auto.
Maint. Mach, Co.*, 324 U.S. 806, 814 (1945).  "Whenever a party who, as actor seeks to set the
judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or
other equitable principle, in his prior conduct, then the doors of the court will be shut against him
in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award
him any remedy."  *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933).

Unclean hands will bar relief for unconscionable misconduct both before and during
litigation.  *Mas*, 163 F.2d at 508.  Wide discretion is available "in refusing to aid the unclean
litigant," and courts are "not bound by formula or restrained by any limitation."  *Precision*, 324
U.S. at 815.  Unclean hands does not require materiality.  *Therasense v. Becton, Dickinson &
Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011).  And while the misconduct must have an "immediate
and necessary relation" to the relief sought,  *Keystone*, 290 U.S. at 245, "[*a*]*ny* willful act
concerning the cause of action which rightfully can be said to transgress equitable standards of
conduct" is sufficient to invoke the doctrine.  *Precision*, 324 U.S. at 815 (emphasis added).

### B.  Unclean Hands is Separate from Patent Validity and Inequitable Conduct

Finding Merck has unclean hands does not affect the validity of the patents-in-suit, and is
not inconsistent with a jury's verdict of no invalidity.  *See Hazel-Atlas Glass Co. v. Hartford
Empire Co.*, 322 U.S. 238, 245 (1944); *McCormick v. Cohn*, No. CV 90-0323 H, 1992 WL

687291, at *8-9 (S.D. Cal. July 31, 1992), *aff'd*, 17 F.3d 395 (9th Cir. 1994).  While unclean

hands bars enforcement of a property right by the unclean litigant; it does not affect the validity

of the property right itself.  *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1375

(Fed. Cir. 2001) ("[T]he remedies for litigation misconduct bar the malfeasant who committed

the misconduct.  The property right itself remains independent of the conduct of the litigant.").

In this remedial sense, unclean hands differs from inequitable conduct, which renders a

patent permanently unenforceable.  *Therasense*, 649 F. 3d at 1287.  And while inequitable

conduct emerged from early unclean hands law, "the unclean hands doctrine remains available to

supply a remedy for egregious misconduct" in patent cases.  *Id.*  The difference between the two

factually is that inequitable conduct concerns only misconduct before the Patent Office, while

unclean hands is not so limited.  *See Aptix*, 269 F.3d at 1374-75 (affirming district court

dismissal of action for litigation misconduct); *PacTool Int'l Ltd. V. Kett Tool Co., Inc.*, 2011 WL

5335293 at *4 (W.D. Wa. Nov. 7, 2011) (discussing differences between the two defenses and

stating that misconduct before PTO may support unclean hands or inequitable conduct). In this

regard, the distinction between law and equity is not a concern for the application of unclean

hands. The unclean hands defense is broadly applicable to legal actions.  *Metro Pub., Ltd. v. San

Jose Mercury News, Inc.,* 861 F. Supp. 870, 880 (N.D. Cal. 1994) ("Several courts have applied

the equitable doctrine of unclean hands to bar actions for legal damages." (*citing Supermarket of

Homes v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1408 (9th Cir.1986)).

### C.  Merck's Misconduct Far Exceeds the Threshold for Unclean Hands

#### i.  Dr. Durette's repeated false testimony, as well as Merck's sponsoring of it, is unconscionable misconduct demonstrating Merck's unclean hands

False testimony and the sponsoring of it are classic examples of unclean hands that will

block a litigant's claim.  Indeed, the early cases on the doctrine in the patent context all had

elements of false testimony.  *See, e.g., Precision*, 324 U.S. at 819 (fraud and perjury before the

Patent Office constituted unclean hands); *Keystone*, 290 U.S. at 244 (bribery and false affidavit

constituted unclean hands)*; Mas*, 163 F.2d at 507-08 (perjured testimony and forged documents

1  demonstrated plaintiff's unclean hands).

2          As the Court observed, these cases do not set a floor for what constitutes unclean hands.

3  As the doctrine has been applied over the years, lying under oath, by itself, has featured

4  prominently in many unclean hands findings.[1]  *Aris-Isotoner* 792 F. Supp. at 970; *see also Mona*

5  *v. Mona Elec. Group, Inc.*, 934 A.2d 450, 476-78 (Md. Ct. Spec. App. 2007) (finding false

6  testimony constituted unclean hands); *C.C.S. Commc'n Control, Inc. v. Sklar*, No. 86 Civ. 7191,

7  1987 WL 12085, at *2-3 (S.D.N.Y. 1987) (perjury by plaintiff at court proceeding was unclean

8  hands and barred equitable remedy).  Such false testimony need not be criminal to find unclean

9  hands.  *Precision*, 324 U.S. at 817.

10         The *Aris-Isotoner* case is instructive regarding Merck's misconduct.  In that case, the

11  defendant's president gave testimony in one proceeding that directly contradicted his testimony

12  in a prior proceeding.  792 F. Supp. at 970.  The court found "no other conclusion can exist but

13  that [defendant's president] fabricated his testimony in either the instant proceedings or in the

14  original contempt proceedings."  *Id*.  The witness's "half-hearted" claim that he was "confused"

15  in the initial proceeding was "wholly inconsistent with [his] original, confident story"—akin to

16  Dr. Durette's confident explanation at his deposition, recanted at trial, about how he never

17  learned the structure of PSI-6130 from Pharmasset.  *Id*. at 970 n.2.  It was immaterial that the

18  witness's revised testimony might be truthful; "even assuming that only . . . [the] initial

19  testimony is false, a finding of Berkshire's unclean hands on an issue for which it has sought and

20  continues to seek equitable relief is sufficient to bar the prospect of such relief once unclean

21  hands are discovered."  *Id*. at 971.  On the basis of the fabricated testimony, the court dismissed

22  defendant's laches defense.  *Id*. at 972.

23         In this case, Dr. Durette's deposition and trial testimony are irreconcilable.  As shown

24  above, he lied in both proceedings.  As in *Aris-Isotoner*, this Court must "lack complete

---

[1] Other types of litigation misconduct, such as attempted interference with an opposing party's
expert, are unclean hands, even if no harm resulted.  *See U.S. Ethernet Innovations, LLC v. Texas*
*Instruments Inc.*, No. 6:11-CV-491, 2014 WL 4683252, at *6 (E.D. Tex. 2014) (finding unclean
hands would apply where defendant's "unprofessional conduct . . . threatened, but fortunately
did not affect, the integrity of th[e] litigation").

1   confidence as to which—if either—of the two testimonies is correct." *Aris-Isotoner*, 792 F.

2   Supp. at 971.  "No court of equity ought to be required to listen to a man whose very presence

3   suggests danger to the administration of justice and whose past conduct affecting the matter in

4   litigation would cast doubt upon the ability of the court to ascertain from him the truth with

5   respect thereto." *Mas*, 163 F.2d at 511.  Dr. Durette's fabricated deposition testimony and his

6   false trial testimony, both of which Merck sponsored, are unconscionable acts that warrant a

7   finding of unclean hands.

8        To the extent there is any doubt that Merck sponsored all of this—and there should not

9   be—Merck eliminated it by repeatedly vouching for Dr. Durette's character to this Court and the

10  jury even in the face of overwhelming evidence of his serial falsehoods.  (*See, e.g.*, Tr. at 178:17-

11  20, 1723:18-1724:10; *see also id.* at 2469:20-2470:9, 2598:6-13, 2603:1-9; 2544:21-25, 2576:22-

12  2577:3, 2609:8-9.)  This vouching, which itself was improper, confirms Merck's ownership of

13  Dr. Durette's testimony, and its unclean hands.[2]

14       And, even assuming Merck did not know of Dr. Durette's false testimony at his

15  deposition—and the evidence shows that it should have known immediately or shortly after—

16  Merck undoubtedly became aware of Dr. Durette's false deposition testimony before trial, as it

17  prepared him to recant that testimony and tell the jury a different story at trial.  Merck thus had

18  an obligation to correct Dr. Durette's false deposition testimony and alert the Court and Gilead.

19  *See* California Rules of Prof'l Conduct R. 5-200; Cal. Bus. & Prof. Code § 6068(d); *cf.* Model

20  Rules of Prof'l Conduct R. 3.3(a) ("A lawyer shall not knowingly: . . . (3) offer evidence that the

21  lawyer knows to be false.  If a lawyer, the lawyer's client, or a witness called by the lawyer, has

22  offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take

23  reasonable remedial measures, including, if necessary, disclosure to the tribunal."); *id.* cmt.[1],

24  [2] ("[P]aragraph (a)(3) requires a lawyer to take reasonable remedial measures if the lawyer

25

26  [2] *See* California Rules of Prof'l Conduct R. 5-200(B) (an attorney "shall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law"); 5-200(E) (an attorney "shall not assert personal knowledge of the facts at issue, except when testifying as a witness").

27

28

comes to know that a client who is testifying in a deposition has offered evidence that is false.").

At trial, Dr. Durette testified that he allegedly began to remember the events surrounding the March 2004 phone call in January, 2016.  (Tr. at 386:6-15 (Durette).)  Instead of alerting the Court (and Gilead) of Dr. Durette's newfound "memory," as required by the ethical rules and statutes, Merck stayed silent, first trying to exclude the evidence through *in limine* practice, but when that failed, crafting Dr. Durette's excuse as a "failure of memory" to attempt to avoid impeachment by his prior false testimony. (Tr. at 344:18-346:19.)  This is further outrageous behavior that cannot stand without consequence.  Merck's claim should be barred for unclean hands because of Dr. Durette's lies, as well as Merck's complicity in them.

### ii. Merck's improper use of Pharmasset's confidential information and violation of confidentiality and firewall agreements is unconscionable conduct demonstrating Merck's unclean hands

Merck's violation of its confidentiality and firewall agreements with Pharmasset, and its use of Pharmasset's confidential information to draft claims covering Pharmasset's invention, also warrant a finding of unclean hands.  This is the unclean hands defense, unrelated to Merck's trial misconduct, that Gilead disclosed in discovery in great detail.  (ECF No. 231-25 at 5 (incorporating pages 3-9 of Gilead's invalidity contentions); ECF No. 218-3, Ex. 2 at 3-8.) While it was cast in terms of derivation, it demonstrates extensive unethical business conduct. Such misconduct is unclean hands.  In *Clements Indus., Inc. v. A. Meyers & Sons Corp.*, 712 F. Supp. 317, 328 (S.D.N.Y. 1989), the evidence demonstrated that plaintiff, through a manufacturer, attempted to extract confidential information from the defendant, not for legitimate commercial reasons, but to obtain defendant's trade secrets.  *Id.* at 328.  The court found "[t]his deceptive dealing fully supports [defendant's] contention that [plaintiff] has 'unclean hands'" and dismissed plaintiff's claims.  *Id.*  In this case, Merck sent Dr. Durette, its attorney prosecuting competing patents, to "view the structure during a patent due diligence meeting" (EX-153.0001); Dr. Durette lied to Pharmasset about being within the firewall; then Merck allowed Dr. Durette, with his tainted judgment, to continue prosecuting the related Merck/Isis patents-in-suit and to draft claims to target Pharmasset's inventions.  (*See* Section II.)

And while the jury may have held that Dr. Durette's new claims were supported by the specification, the jury did not rule on why he made them.   Pharmasset had a right to have its competitor's patent attorney's judgment be untainted by the knowledge of what Pharmasset disclosed in that due diligence call; instead, Dr. Durette admitted his judgment was tainted, and his ever-changing and incredible explanations for the amendments prove it was.

Other types of unfair business dealings can be unclean hands.  *See, e.g.*, *Worthington v. Anderson*, 386 F.3d 1314, 1321-22 (10th Cir. 2004) (dismissal of plaintiff's trademark suit for unclean hands where plaintiff "threw economic obstacles in the way of" defendant's ability to comply with arbitration agreement); *Saudi Basic Indus. Corp. v. ExxonMobil Corp.*, 401 F. Supp. 2d 383, 395 (D.N.J. 2005) ("There is also caselaw to support application of the unclean hands doctrine when a business partner engages in acts of self-dealing."); *FLIR Sys., Inc. v. Sierra Media, Inc.*, 965 F. Supp. 2d 1184, 1197 (D. Or. 2013) ("FLIR's false advertising claim . . . is barred, in light of FLIR's false advertising on the same subject matter, by the doctrine of unclean hands."); *Unilogic, Inc. v. Burroughs Corp.*, 12 Cal. Rptr. 2d 741, 743-45 (Ct. App. 1992) (plaintiff's failure to return defendant's software and continued use of software after development agreement terminated was unclean hands); *Fed. Folding Wall Corp. v. Nat'l Folding Wall Corp.*, 340 F. Supp. 141, 146 (S.D.N.Y. 1971) (plaintiff breaching employment contract with defendant and inducing trademark owner to cancel license to defendant was unclean hands); *Metro Pub.*, 861 F. Supp. at 880 (plaintiff's deliberate attempt to create trademark confusion constituted unclean hands warranting summary judgment against plaintiff). Merck's misconduct in breaching firewall and confidentiality agreements, lying to Pharmasset, and misusing Pharmasset's confidential information is analogous to the misconduct found to constitute unclean hands in these cases.  In this regard, Merck's strained arguments at the bench trial that Pharmasset acted improperly are both untrue and immaterial; it is Merck's unclean hands, and Merck's alone, that matter.   *Precision*, 324 U.S. at 814 (unclean hands bars plaintiff's relief "however improper may have been the behavior of the defendant."); *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 877 (9th Cir. 2000) (affirming holding that plaintiff's

1 recovery was barred by unclean hands, even where defendants had "successfully defrauded

2 [plaintiff] of over five million dollars").

3      **D.  This Court Should Find that Merck's Unclean Hands Render the Patents-in-Suit Unenforceable against Gilead**

4

5      The appropriate remedy for Merck's extensive misconduct is to bar enforcement of the

6 patents-in-suit against Gilead.  "The principle that a perjurer should not be rewarded with a

7 judgment—even a judgment otherwise deserved—where there is discretion to deny it, has a long

8 and sensible tradition in the common law.  The 'unclean hands' doctrine closes the door of a

9 court of equity to one tainted with inequitableness or bad faith relative to the matter in which he

10 seeks relief . . . ."  *Radecki v. GlaxoSmithKline*, 646 F. Supp. 2d 310, 318 (D. Conn. 2009), *aff'd*,

11 375 F. App'x 46 (2d Cir. 2010); *Dotson v. Bravo,* 202 F.R.D. 559, 575 (N.D. Ill. 2001), *aff'd*,

12 321 F.3d 663 (7th Cir. 2003).  Courts have a wide range of discretion "in refusing to aid the

13 unclean litigant." *Precision*, 324 U.S. at 815.

14      Upon finding unclean hands, courts have regularly dismissed the claims or defenses

15 asserted by the unclean litigant.  *See, e.g.*, *Precision*, 324 U.S. at 816 (affirming dismissal of

16 lawsuit); *Keystone*, 290 U.S. at 244, 247 (same); *Aptix*, 269 F.3d at 1374 (affirming dismissal of

17 lawsuit based on plaintiff's unclean hands); *Mas*, 163 F. 2d at 511 (same); *Aris-Isotoner*, 792 F.

18 Supp. at 972 (dismissing defense for unclean hands); *Metro*, 861 F. Supp. at 880 (granting

19 summary judgment against plaintiff after finding unclean hands); *Saudi Basic*, 401 F. Supp. 2d at

20 398 (dismissing lawsuit based on plaintiff's unclean hands); *Fed. Folding Wall*, 340 F. Supp. at

21 145-46 (same); *U.S. Ethernet*, 2014 WL 4683252, at *6 (litigation misconduct barred defense).

22      This Court should also bar enforcement of the patents-in-suit against Gilead under its

23 inherent powers to punish misconduct during litigation, which are "necessarily vested in courts

24 to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

25 *Aptix*, 269 F.3d at 1378 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)); *see also Wyle*

26 *v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) ("[C]ourts have inherent power to

27 dismiss an action when a party has willfully deceived the court and engaged in conduct utterly

28

1  inconsistent with the orderly administration of justice."); *Englebrick v. Worthington Indus., Inc.*,

2  629 F. App'x 564, 566-67 (9th Cir. 2015) (affirming dismissal of plaintiffs' claims as sanction

3  for lying under oath); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 916 (9th Cir. 1987)

4  (affirming judgment against defendant as sanction for perjury).

5       Alternatively, if the Court does not dismiss Merck's claims against Gilead, it should

6  vacate the jury's damages award and award no damages.  Courts should refuse "to allow a

7  plaintiff to recover damages when to do so would be highly inequitable."  *McCormick*, 1992 WL

8  687291, at *3.  Courts finding unclean hands have, as an alternative to dismissal, barred relief for

9  unclean litigants. *See, e.g.*, *McCormick*, 1992 WL 687291, at *5 (unclean hands barred plaintiffs'

10  recovery); *Worthington*, 386 F.3d at 1317, 1322 (plaintiff barred from receiving any form of

11  relief although it had established the necessary factors for trademark infringement); *Unilogic*, 12

12  Cal. Rptr. 2d at 617, 620-21 (affirming judgment of no damages based on plaintiff's unclean

13  hands); *Mona*, 934 A.2d at 477-79 (affirming judgment that plaintiff was precluded from all

14  damages arising from his wrongful conduct).  At an absolute minimum, the Court should bar

15  Merck from receiving the equitable remedy of ongoing royalties.  *U.S. Ethernet*, 2014 WL

16  4683252, at *6 ("Sitting in equity, the Court cannot countenance [defendant's] behavior—let

17  alone allow it to benefit from an equitable remedy."); *C.C.S.*, 1987 WL 12085, at *3.

18       The Court should also not hesitate to find both the '499 and '712 patents unenforceable

19  against Gilead since Merck's litigation misconduct has an immediate and necessary relation to

20  both.  Merck elicited extensive testimony from Dr. Durette that certain chemical structures were

21  included in Merck's original patent filings to persuade the jury that the asserted claims of both

22  the '499 and '712 patents had written description support, and were not derived.  (*See, e.g.*, Tr. at

23  391:10-404:5 (Durette).)  Merck's sponsorship of Dr. Durette's repeated lying under oath to

24  bolster the validity of both patents "impregnated [Merck's] entire cause of action" and justifies

25  dismissal of Merck's entire case.  *Precision*, 324 U.S. at 819.

26       Moreover, both patents arose out of Merck's and Dr. Durette's misconduct in learning the

27  structure of Pharmasset's lead compound, and drafting claims to target that compound.  Dr.

28

Durette drafted the claims that issued as the '499 patent to target Pharmasset.  (EX-156.0004.)
Dr. Durette also filed the '712 patent application and drafted its original claims—those claims
could not have been narrowed by Mr. Bergman after Dr. Durette's retirement, but for Dr.
Durette's misconduct.  (EX-192.0002-EX-192.0009.)  The "immediate and necessary relation"
between Merck's misconduct and its infringement claims bars enforcement of both patents
against Gilead.  *Keystone*, 290 U.S. at 245.

In this regard, the '499 and '712 patents cover the same subject matter, and Merck will
benefit from its misconduct if any asserted claim is enforced here.  A decision that Merck's
unclean hands were cleansed simply by filing a new patent application in the same family is no
remedy at all, and is contrary to the equitable principles underlying the doctrine.  *Keystone*, 290
U.S. at 245 (barring enforcement of related patents where they covered "parts of the same
machine" and "each supplements the other"); *see also Mona*, 934 A.2d at 478-79 (affirming
district's court ruling that plaintiff's lies were "directly related" to the entirety of his claims and
that permitting plaintiff to recover anything "would serve to condone his wrongful conduct").

If the Court declines to bar enforcement of the patents-in-suit or deny Merck relief, the
Court should grant Gilead a new trial on its invalidity defenses.  As the Federal Circuit just
reiterated, false testimony irretrievably taints a jury verdict, and requires a new trial, even where
a party is not complicit in the falsehoods.  *Rembrandt,* 2016 WL 1376363, at *4-8.  Courts have
considered new trials as a remedy for unclean hands, and one is certainly warranted here.  *See
Heath v. City of Philadelphia,* No. CIV. A. 95-3047, 1997 WL 560606, at *8 (E.D. Pa. Aug. 22,
1997) (discussing new trial as possible remedy for plaintiff's unclean hands).

## IV.    CONCLUSION

For the reasons set forth above, Gilead respectfully requests that the Court bar Merck
from enforcing the patents-in-suit against Gilead under the doctrine of unclean hands.

Dated:  April 22, 2016                          FISH & RICHARDSON P.C.

                                                By:  */s/ John M. Farrell*
                                                     John M. Farrell
                                                Attorneys for Plaintiff
                                                GILEAD SCIENCES, INC.

*Additional counsel:*

Douglas E. McCann (*Pro Hac Vice*)
dmccann@fr.com
Gregory R. Booker (*Pro Hac Vice*)
booker@fr.com
Robert M. Oakes (*Pro Hac Vice*)
oakes@fr.com
Elizabeth Flanagan (*Pro Hac Vice*)
eflanagan@fr.com
Joseph B. Warden  (*Pro Hac Vice*)
warden@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-5070
Facsimile:  (302) 652-0607

GILEAD SCIENCES INC.'S BRIEF REGARDING UNCLEAN HANDS LEGAL STANDARDS
Case No. 5:13-cv-04057-BLF/PSG