John M. Farrell (CA Bar No. #99649)
farrell@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone:  (650) 839-5070
Facsimile:  (650) 839-5071

Jonathan E. Singer (CA Bar No. #187908)
singer@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone:  (612) 335-5070
Facsimile:  (612) 288-9696

Juanita R. Brooks (CA Bar No. #75934)
brooks@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Attorneys for Plaintiff
GILEAD SCIENCES, INC.

*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**(SAN JOSE DIVISION)**

| | |
|---|---|
| GILEAD SCIENCES, INC., | Case No. 5:13-cv-04057-BLF/PSG |
| Plaintiff and Counterdefendant, | **GILEAD SCIENCES, INC.'S MOTION TO REOPEN THE RECORD TO FURTHER ADDRESS DR. DURETTE'S PERJURY OR STRIKE MERCK'S UNTIMELY ARGUMENT AND EVIDENCE DEFENDING THAT PERJURY** |
| v. | |
| MERCK & CO, INC. (Defendant only), MERCK SHARP & DOHME CORP. and ISIS PHARMACEUTICALS, INC., | |
| Defendants and Counterclaimants. | Date: April 29, 2016 |
| | Time: 3:30 P.M. |

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED ........ 1

II. STATEMENT OF THE FACTS ........ 3

III. ARGUMENT ........ 8

A. The Court Should Reopen the Bench Trial Record and Allow Additional Evidence that Responds to Merck's Belated Trial Evidence and Argument ........ 8

B. Alternatively, the Court Should Strike Merck's Untimely Arguments and Evidence from the Record ........ 10

IV. CONCLUSION ........ 11

i

GILEAD'S MOTION TO REOPEN AND/OR STRIKE
Case No. 5:13-cv-04057-BLF/PSG

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Caracci v. Brother Int'l Sewing Mach. Corp.*,
 222 F. Supp. 769 (E.D. La. 1963) ................................................................................................8

*Moore v. Greene*,
 431 F.2d 584 (9th Cir. 1970) .......................................................................................................9

*S.E.C. v. Rogers*,
 790 F.2d 1450 (9th Cir. 1986) .....................................................................................................8

**Other Authorities**

12 Moore's Federal Practice § 59.13 ................................................................................................8

Fed. R. Civ. P. Rule 26(e) ...............................................................................................................10

Fed. R. Civ. P. Rule 30(b)(6) ............................................................................................................5

Fed. R. Civ. P. Rule 30(e) ...........................................................................................................2, 10

Fed. R. Civ. P. Rule 37(c) ...........................................................................................................2, 10

1  PLEASE TAKE NOTICE THAT on April 29, 2016 at 3:30 P.M., or as soon thereafter as
2  counsel may be heard by the Honorable Beth Labson Freeman, United States District Court for
3  the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street,
4  San Jose, California 95113, Gilead will, and hereby does, move to reopen the trial record to
5  admit additional evidence that responds to Dr. Durette's perjured trial testimony and Merck's
6  untimely arguments defending it, or, in the alternative, to strike the perjured testimony and
7  arguments from the record.

## I.   INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

Merck presented a trial witness, Dr. Philippe Durette, who lied on a critical issue in this case.  Dr. Durette learned of the chemical structure of Gilead's PSI-6130 during a March 17, 2004 teleconference with Pharmasset (Gilead's predecessor), and he subsequently amended Merck's patent claims to direct them at a subset of compounds that included PSI-6130.  Those amendments are the basis for the '499 and '712 patent claims asserted by Merck in this suit.

Dr. Durette sought to conceal his misconduct by unequivocally testifying at deposition that he did not attend the meeting, never learned of PSI-6130's structure, and did not connect it to a subsequently published Pharmasset patent application.  But Dr. Durette apparently didn't realize that a Pharmasset employee, Alan Roemer, had taken contemporaneous notes of the meeting—notes that placed Dr. Durette on that call and showed that he learned PSI-6130's structure.  Gilead had produced those notes to Merck months before Dr. Durette's deposition, and Gilead used them at Mr. Roemer's deposition (only a couple weeks after Dr. Durette's).  Yet Merck did nothing during discovery to correct Dr. Durette's false testimony.  Instead, Merck presented a new story from Dr. Durette for the first time at trial based on more lies—that (1) he forgot about learning the structure of PSI-6130 because it was 11 years ago and he supposedly wasn't shown a document at deposition reflecting his attendance, but (2) it didn't matter, because he purposely waited to amend Merck's claims until he saw Pharmasset's patent application publicly reveal PSI-6130's structure.  Merck spun the new story even further at the bench trial, making new excuses for Dr. Durette's alleged lack of memory and using Pharmasset's published application to justify Dr. Durette's continued involvement in prosecution.

1

1    Gilead respectfully asks the Court to reopen the record and admit additional deposition
2 testimony that refutes Dr. Durette's new set of lies.  For example, Dr. Durette's "lack of
3 memory" excuse is belied by his preparation for, and role at, his deposition.  Dr. Durette testified
4 at deposition that he spent 2 full days preparing for his deposition with Merck's lawyers, plus
5 another 8-10 hours preparing on his own.  He was also Merck's 30(b)(6) witness on the
6 prosecution of the '499 patent and the reasons for any claim amendments.  So Dr. Durette was
7 not simply a retiree who walked into the deposition without having thought of the issues for
8 years.  He had already studied his documents from the time, yet he was emphatic that he had not
9 attended the meeting, even when presented with documents that showed he definitely had
10 attended and even when given a chance to hedge his testimony based on the passage of time.
11 Likewise, Dr. Durette's deposition testimony flatly contradicts his suggestion at trial that it was
12 permissible for him to continue prosecuting the patents-in-suit.  Dr. Durette testified at
13 deposition that, if he had learned PSI-6130's structure from Pharmasset, then "I would have
14 given this to another attorney."  It is only now—after having been caught in a lie about not
15 knowing the structure—that he has changed his testimony.  The Court should thus assess his
16 conduct and candor based on a full record.

17    Alternatively, the Court should strike Merck's attempts to explain away the deposition
18 testimony (and Dr. Durette's trial testimony trying to explain it away) as untimely.  Gilead's
19 interrogatories seek a "complete" description of Merck's communications with Pharmasset about
20 PSI-6130 and its reasons for amending the claims, yet Merck's responses do not contain any of
21 the alleged facts in Dr. Durette's trial testimony or any of Merck's arguments at the bench trial
22 on those issues.  Merck should thus be precluded under Rule 37(c) from belatedly injecting those
23 theories into the case.  In addition, Dr. Durette's trial testimony amounted to a wholesale
24 rewriting of his deposition, well after the 30-day deadline in Rule 30(e) for correcting deposition
25 testimony.  This belated disclosure severely prejudiced Gilead's ability to respond and
26 demonstrate that Dr. Durette was lying yet again.  So Merck should either be barred from relying
27 on undisclosed theories or have the fate of its patents decided based on a full record that includes
28 all the deposition evidence that contradicts Dr. Durette's latest lies.

## II.   STATEMENT OF THE FACTS

Dr. Durette filed a Merck patent application in January 2002 with broad claims that included billions of nucleoside compounds. While that application was pending, Merck considered licensing Pharmasset's technology and conducted due diligence to determine whether (and how much) to bid. On March 17, 2004, representatives from Pharmasset and Merck held a teleconference, during which Pharmasset disclosed the chemical structure of its leading anti-HCV compound, PSI-6130, to representatives from Merck. (*See, e.g.*, Trial Tr. at 428:20-435:12; Ex. 2098.) Disclosure of the compound's structure was highly sensitive, so the parties limited disclosure by creating a "firewall" between a select set of Merck employees who would receive Pharmasset's confidential information and others who could not, because they might be in a position to misuse it later. (*Id*. at 434:1-435:12; Ex. 2098.) Merck assured Pharmasset that its representatives were within the firewall, knowing Pharmasset would rely on that assurance. (*Id*.) But that turned out to be false—Dr. Durette participated in the teleconference for Merck and learned PSI-6130's structure. (*Id*.) He subsequently went back to the Patent Office and tailored Merck's pending claims to PSI-6130's structure, leading to the two patents-in-suit (Nos. 7,105,499 and 8,481,712). Dr. Durette's conduct raises serious validity and enforceability issues, so both he and Merck have concocted a series of lies to escape them.

Dr. Durette's first tactic was to testify at his May 8, 2015 deposition that he never learned the chemical structure of PSI-6130 or participated in the March 17, 2004 call. (Ex. 2388 at 30:21-31:3, 37:2-18, 38:1-8.) Dr. Durette's deposition testimony was unequivocal:

> Q. In March of 2004 were you involved in any discussion with Pharmasset whereby you were told what the structure was for their 6130 compound?
>
> A. No.
>
> Q. You're sure of that?
>
> A. Yes.
>
> Q. How are you so sure 11 years later that you were never told what the structure was for the 6130 compound?
>
> A. The structure was not revealed to me by individuals at Merck or otherwise. I'm positive of that. I never saw a structure of the Pharmasset compounds until it was published later on in time.

3

(*Id*. at 30:21-31:10.)  Dr. Durette stuck to that testimony even after seeing a Merck email saying that he would attend the meeting and view the structure of PSI-6130:

> Q.  Exhibit 153, it reads as follows, "Please note that while Pharmasset has not yet permitted us to review the structure of PSI-6130, we will do so at a later stage (as a first step, Phil Durette will view the structure during a patent due diligence meeting on March 17)."  Do you see that?
>
> A.  Yes, I do.
>
> Q.  Does that refresh your recollection that you were going to view the structure of 6130 during a due diligence meeting on March 17th?
>
> A.  That was Pamela's evaluation of the time, but I never participated in a due diligence meeting on March 17 because the due diligence component of this particular deal was assigned to another attorney, so there was – I did not participate in any meeting of due diligence on March 17.

(*Id*. at 37:2-18; *see also* Ex. 153.)

But then, new evidence emerged, which Dr. Durette apparently hadn't been privy to when he testified at deposition.  One of the Pharmasset representatives on the call, Alan Roemer, took contemporaneous notes of the parties' conversation.  (Trial Tr. at 428:20-433:4; Ex. 2098.)  Gilead produced those notes in November 2014, months before Dr. Durette's deposition.  It is unclear when Merck's lawyers first discovered the notes, but it was certainly by May 24, 2015, because Gilead questioned Mr. Roemer extensively about them at his deposition.  (Oakes Decl., Ex. B at 224:12-241:13.)  The notes show that Dr. Durette attended the March 17, 2004 meeting and that Pharmasset disclosed the structure of PSI-6130 to him at the meeting.  (*Id*.)  Despite knowing of this evidence within a couple weeks after Dr. Durette's deposition, Merck took no steps to correct Dr. Durette's testimony, even though the same law firm that represents Merck (and was present at Mr. Roemer's deposition) also represented Dr. Durette.  (Ex. A at 7:16-19.)

Merck and Dr. Durette instead concocted a new story for trial.  Dr. Durette now claimed that he "was relying too much on my memory" at his deposition, that he had not had an opportunity to review documents to refresh himself because he "had been retired for 11 years," but that, after reviewing documents to prepare for trial, he realized he was present on the March 2004 call and learned the structure of PSI-6130.  (*See, e.g.*, Tr. at 343:17-345:7.)  Dr. Durette defended his decision to continue prosecuting the Merck patents-in-suit, asserting that his

4

1  judgment was unaffected by learning of PSI-6130's structure, because he waited until after
2  seeing Pharmasset's published patent application before amending Merck's claims.  (*Id*. at
3  388:23-391:9.)  Merck doubled down on that story during the bench trial while inventing new
4  facts about what Dr. Durette supposedly thought before attending the teleconference.  (*See, e.g.*,
5  *id.* at 2469:20-2470:9, 2590:13-20, 2598:6-13, 2603:1-9, 2605:6-12.)  Merck tried to excuse Dr.
6  Durette's alleged lack of memory at deposition by arguing he was shown an email that "just
7  invited him to the call" but did "not actually say he was on the call."  (Tr. at 2604:4-2605:4.)

8        But Merck's new arguments are belied by other parts of Dr. Durette's deposition
9  testimony that have not yet been admitted into the trial record.  Dr. Durette's claim that it was
10 "only after his deposition" that he had an opportunity to review documents is yet another lie.
11 (Trial Tr. at 344:1-7.)  Dr. Durette prepared extensively for his deposition; he testified that he
12 met with Merck's outside and in-house counsel for two full days and devoted an additional 8-10
13 hours of his own time reviewing materials.  (Oakes Decl., Ex. A at 10:19-11:11.)  He reviewed
14 numerous documents to prepare, although his lawyer did not let him identify which ones they
15 were.  (*Id*. at 13:5-15:11.)  He testified that the documents he reviewed did not change his
16 memory, (*id.*), which contradicts his trial testimony that reviewing those same documents did
17 refresh his memory.  (*See, e.g.*, Trial Tr. at 343:21-25.)  Dr. Durette's attempt to pass himself off
18 as an out-of-the-loop retired employee is also belied by the fact that he was Merck's Rule
19 30(b)(6) designee on the prosecution of the '499 patent and the reasons for amending the claims,
20 (Ex. A at 181:25-182:16), which obligated him to investigate and disclose ***all*** the company's
21 knowledge about those events at his deposition.

22       Dr. Durette's deposition also contradicts Merck's argument during the bench trial that Dr.
23 Durette did not remember seeing the structure of PSI-6130 because he shown an email merely
24 saying he was "invited" to the meeting.  (Tr. at 2605:1-4.)  Dr. Durette was also shown a second
25 email at his deposition from Mr. Roemer, which requested the destruction of any "notes from a
26 March 17, 2004 telephone conference regarding PSI-6130 patent due diligence with you ***and***
27 ***Phil Durette,***" and which Merck didn't mention at the bench trial.  (Ex. A at 168:5-12; Ex.
28 160.0002.)  Mr. Roemer's email didn't just raise the possibility that Durette was "invited" to the

5

1  meeting—it was an after-the-fact statement that he *had* been there.  Yet, Dr. Durette still
2  repeatedly denied either attending or seeing the structure of PSI-6130 even after being shown
3  Mr. Roemer's email:

> Q. Does that [email] refresh your recollection, sir, that, in fact, you did participate in a telephone call with Pharmasset people on March 17, 2004?
>
> A. No.
>
> \*\*\*
>
> Q. Now, is it your sworn testimony that . . . during a telephone call on March 17, 2004, you were not made aware of the structure of 6130 during that call?
>
> A. That's correct.
>
> Q. How do you know that didn't happen?  How do you remember that so well?
>
> A. Because I remember that I was not shown the structure of PSI-6130.
>
> Q. I'm not talking about shown it.
>
> A. Disclosed.
>
> Q. How do you know you weren't told it?
>
> A. I wasn't told it.
>
> Q. How do you remember it didn't happen 11 years later?
>
> A. Because I remember that.
>
> Q. You remember what?
>
> A. That the structure was not disclosed to me.
>
> Q. How do you remember that so clearly?
>
> A. Because I do.

(Ex. A at 168:13-169:18.)  So Dr. Durette's false deposition testimony wasn't a function of the events having "taken place 11 years ago" when he "did not have a recollection," as he claimed at trial.  (Trial Tr. at 344:5-7.)  It was just a lie.

What is more, Dr. Durette's deposition testimony about seeing Pharmasset's patent application contradicted his story at trial (and Merck's arguments at the bench trial) that seeing the application prompted him to amend the claims.  Dr. Durette testified at deposition that he had no memory of when he saw Pharmasset's published patent application, and that, in any event, he never associated that application with the structure of PSI-6130:

6

1  Q. Is it your sworn testimony that you never associated this chemical structure that's in Paragraph 0168 [of the Pharmasset application that published in 2005] with Pharmasset's 6130 compound?

\*\*\*

A. Correct, that is correct.

(Ex. A at 53:1-6; *see also id*. at 48:10-52:1, 65:14-67:24.)  He said the opposite at trial, testifying that seeing the Pharmasset application in 2005 caused him to think any obligations he had after seeing the confidential structure of PSI-6130 had terminated.  (Trial Tr. at 389:10-390:19.)  Merck embellished on this point during the bench trial, arguing that PSI-6130's structure was "front and center" in Pharmasset's patent application, so that the disclosure was equivalent to what Dr. Durette learned at the March 17, 2004 meeting.  (Trial Tr. at 2607:10-23.)  But Dr. Durette's deposition testimony did not place PSI-6130 "front and center" in Pharmasset's application—instead, he dismissed it as "one compound out of a plethora of compounds in the publication."  (Ex. A at 53:22-54:5.)

Dr. Durette also flip-flopped on whether the Pharmasset application caused him to amend the claims.  At deposition, Dr. Durette testified that Pharmasset's application "would have had ***no*** impact, even if I had seen that publication."  (*Id*. at 71:11-72:3.)  But, at trial, he insisted that the Pharmasset application ***did*** cause him to amend the claims because "there must have been a triggering event that led me to reexamine my docket and take a look at my '499 application which had been pending for about a year and a half."  (Trial Tr. at 390:23-391:9.)  Merck relied on that testimony repeatedly at the bench trial.  (*Id*. at 2470:12-18, 2529:13-2530:2.)

The clincher is Dr. Durette's about-face regarding his obligations after learning the confidential structure of PSI-6130.  At his deposition, when he was pretending he never learned of PSI-6130's confidential structure, Dr. Durette testified that, if he had attended the March 17, 2004 meeting, he would have given up prosecution of the Merck patents-in-suit:

Q. If you had learned of the 6130 structure or key structural features of 6130 in a telephone call in March 2004, according to Merck procedures and policies, what should you have done?

A. ***I would have given this to another attorney***.

(Ex. A at 201:23-202:16.)  But he changed his story yet again at trial, arguing that (1) whether he could continue to prosecute the patents "would have depended upon what I would do with the

7

information," (2) "it would only be a problem if I breached the terms of th[e] confidentiality agreement," and (3) he hadn't done so because he waited until Pharmasset's patent application with PSI-6130 published before amending the claims, at which point "my obligations under the confidentiality agreement had terminated."  (Trial Tr. at 351:10-352:3, 370:4-14.)

III.     ARGUMENT

    A.     **The Court Should Reopen the Bench Trial Record and Allow Additional Evidence that Responds to Merck's Belated Trial Evidence and Argument**

Gilead respectfully asks to reopen the record and admit the additional deposition testimony from Dr. Durette and Mr. Roemer discussed above (and attached as Exhibits A and B) to ensure the Court has a full picture of Merck's misconduct.  Courts have broad discretion to reopen the record before judgment.  *See, e.g.*, *S.E.C. v. Rogers*, 790 F.2d 1450, 1460-61 (9th Cir. 1986).  The court "should take into account . . . the character of the additional testimony and the effect of granting the motion.  The court should also consider the diligence of the moving party, and any possible prejudice to the other party."  *Rogers*, 790 F.2d at 1460.  There is no requirement that the additional evidence be newly discovered or previously unavailable.  *See* 12 Moore's Federal Practice § 59.13.  "A motion to reopen a bench trial is more likely to be granted than a motion to reopen a jury trial."  *Id*.  Granting such a motion permits the Court to "have all of the facts upon which it can render full justice on the merits."  *Caracci v. Brother Int'l Sewing Mach. Corp.*, 222 F. Supp. 769, 771 (E.D. La. 1963).

These considerations all support reopening the record here.  As demonstrated above, the additional testimony from Dr. Durette underscores that he lied under oath and refutes Merck's arguments during the bench trial that rely on (and embellish) his perjured testimony.  Moreover, Mr. Roemer's deposition shows that Merck had actual notice of Dr. Durette's lies within only a couple weeks after his deposition, yet did nothing to correct them.  The Court should protect the integrity of its proceedings by compiling a full record of the misconduct, especially since Merck's attempts to explain away Dr. Durette's perjury continue to evolve.

8

GILEAD'S MOTION TO REOPEN AND/OR STRIKE
Case No. 5:13-cv-04057-BLF/PSG

Gilead is diligent in moving to reopen the record.  When trial began, Gilead had no reason to think that Dr. Durette would repudiate almost every aspect of his deposition testimony.  Merck did nothing to correct Dr. Durette's testimony or disclose its new theories explaining Dr. Durette's malfeasance before trial.  Gilead's interrogatories had asked Merck to identify the reason for any claim amendments to the '499 patent and to describe "in complete detail" Merck's communications with Pharmasset or knowledge of PSI-6130:

> **INTERROGATORY NO. 3**.
> ***Describe in complete detail the reason(s) for any claim amendments*** or communications with the patent office examiner made during the prosecution of application 10/250,873, the application which issued as the '499 patent, ***including*** without limitation Defendants' July 9, 2003 claim amendment, ***Defendants' February 7, 2005 claim amendment***, and Defendants' April 18, 2005 telephone interview with the patent office examiner, identify any documents relating to these events, and identify the individuals most knowledgeable about these events.
>
> **INTERROGATORY NO. 7.**
> Describe in complete detail Defendants' communications with Pharmasset or knowledge of Pharmasset's nucleoside drug development efforts, including with respect to **PSI-6130**, PSI-7851, PSI-7977, PSI-7409, PSI-7410, and PSI-7411, and identify the individuals most knowledgeable about this subject.

(*See* ECF No. 231-23, Appendix D-1 at 3; ECF No. 125-10, Ex. 9 at 3-4.)  Yet Merck's responses say nothing about the new narrative it has spun during the trial—*i.e.*, that the Pharmasset patent application supposedly triggered Dr. Durette to amend the claims or that Dr. Durette really did know about PSI-6130.  (*Id*.)  Nor do they say anything about Merck's evolving arguments during the bench trial regarding what Dr. Durette allegedly did not know before the March 17, 2004 meeting or the interpretation of Mr. Roemer's notes.  (Tr. at 2586:19-2587:24, 2588:12-2598:13.)  Merck itself acknowledged that some of its arguments were made for the first time at the bench trial.  (*Id*. at 2457:13-2458:11.)  Gilead is thus promptly presenting evidence that contradicts Merck's untimely attempts to reinvent the truth.

Merck will suffer no unfair prejudice from reopening the trial record.  Merck knew about, and participated in, Dr. Durette's deposition and trial preparation, and Gilead is only seeking to add limited parts to the record.  Merck was free to elicit whatever evidence it wanted to from Dr. Durette in light of his deposition testimony, and Gilead has no objection to Merck responding to the substance of this additional testimony.  The Court should thus decide this case on a full

record. *See Moore v. Greene*, 431 F.2d 584, 588 (9th Cir. 1970) (affirming district court's decision to allow additional evidence where there was no prejudice to opposing party).

### B. Alternatively, the Court Should Strike Merck's Untimely Arguments and Evidence from the Record

The discussion above demonstrates why the best course is to decide this case based on all the evidence. But, if the Court is not inclined to reopen the record, it should strike all Merck's arguments that seek to explain away Dr. Durette's deposition testimony as an innocent failure of memory, as well as Dr. Durette's trial testimony contradicting his deposition. None of this evidence or argument was disclosed during discovery. The Federal Rules impose a strict time limit for witnesses who want to change their deposition testimony—they get only 30 days to do so, and even then, they have to reserve the right at the deposition. *See* Fed. R. Civ. P. 30(e)(1). Witnesses do, to be sure, sometimes make minor corrections to prior testimony at trial. But, here, Dr. Durette's trial testimony and Merck's arguments about it at the bench trial are wholesale departures from what he said at deposition—the difference between night-and-day on multiple different issues critical to the outcome of the case. Merck should not be allowed such an end-run around Rule 30(e)(1). Fairness necessitates that Gilead be permitted to respond with all the relevant deposition excerpts.

Moreover, Merck's new arguments and Dr. Durette's changed testimony should be stricken under Rule 37(c). Gilead's Interrogatory Nos. 3 and 7, quoted above, asked Merck point blank to describe why it amended the '499 patent claims and to describe its communications with Pharmasset about PSI-6130 "in complete detail." Merck was under an ongoing obligation to supplement its responses to those Interrogatories under Rule 26(e), yet Merck's responses do not say word one about the story that Dr. Durette told at trial or that its lawyers argued at the bench trial. So the appropriate sanction under Rule 37(c) is that Merck "is not allowed to use that information or witness to supply evidence," because (1) there is no justification for the non-disclosure, and (2) permitting Merck to make new arguments without allowing Gilead the ability to respond to them with the full record would impose significant harm on both Gilead and the integrity of the proceedings.

## IV. CONCLUSION

For the reasons above, Gilead respectfully requests that the Court grant its motion.

Dated: April 22, 2016

FISH & RICHARDSON P.C.

By: */s/ John M. Farrell*
John M. Farrell

Attorneys for Plaintiff
GILEAD SCIENCES, INC.

*Additional counsel:*
Douglas E. McCann (*Pro Hac Vice*)
dmccann@fr.com
Gregory R. Booker (*Pro Hac Vice*)
booker@fr.com
Robert M. Oakes (*Pro Hac Vice*)
oakes@fr.com
Elizabeth Flanagan (*Pro Hac Vice*)
eflanagan@fr.com
Joseph B. Warden (*Pro Hac Vice*)
warden@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-5070
Facsimile:  (302) 652-0607