1  BRUCE R. GENDERSON (Pro Hac Vice)
   bgenderson@wc.com
2  JESSAMYN S. BERNIKER (Pro Hac Vice)
   jberniker@wc.com
3  STANLEY E. FISHER (Pro Hac Vice)
   sfisher@wc.com
4  JESSICA BODGER RYDSTROM
   jrydstrom@wc.com
5  SANJIV P. LAUD (Pro Hac Vice)
   slaud@wc.com
6  JESSICA PALMER RYEN (Pro Hac Vice)
   jryen@wc.com
7  WILLIAMS & CONNOLLY LLP
   725 Twelfth Street, N.W.
8  Washington, D.C. 20005
   Telephone:  (202) 434-5000
9  Facsimile:  (202) 434-5029

10 STEPHEN S. RABINOWITZ
   stephen.rabinowitz@hugheshubbard.com
11 PATRICE P. JEAN (Pro Hac Vice)
   patrice.jean@hugheshubbard.com
12 MITCHELL EPNER (Pro Hac Vice)
   mitchell.epner@hugheshubbard.com
13 HUGHES HUBBARD & REED LLP
   ONE BATTERY PARK PLAZA
14 NEW YORK, NY 10004
   Telephone:    (212) 837-6000
15 Facsimile:    (212) 299-6807

16 [Counsel continued overleaf]

17 Attorneys for Defendant
   MERCK & CO., INC. and Defendants and Counterclaimants
18 MERCK SHARP & DOHME CORP. and ISIS PHARMACEUTICALS, INC.

19                    IN THE UNITED STATES DISTRICT COURT

20                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

21                              SAN JOSE DIVISION

| | |
|---|---|
| GILEAD SCIENCES, INC., | Case No. 5:13-cv-04057-BLF |
| Plaintiff and Counterdefendant, | **MERCK'S BRIEF IN OPPOSITION TO GILEAD'S MOTION FOR ATTORNEY FEES** |
| v. | |
| MERCK & CO., INC. (Defendant only), MERCK SHARP & DOHME CORP., and ISIS PHARMACEUTICALS, INC. | |
| Defendants and Counterclaimants. | |

1  JOSHUA H. LERNER (SBN 220755)
   jlerner@durietangri.com
2  LAURA E. MILLER (SBN 271713)
   lmiller@durietangri.com
3  Durie Tangri LLP
   217 Leidesdorff Street
4  San Francisco, CA 94111
   Telephone:   (415) 362-6666
5  Facsimile:   (415) 236-6300

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................1

    I.    The Court Should Defer Consideration Of Gilead's Motion Until After Appeal. .........................1

    II.    The Court Should Decline To Award Fees Under 35 U.S.C. § 285..............................................2

    III.    If The Court Awards Fees, It Should Limit Them. .......................................................................3

        A.    The Court Should Deny Fees For Claim Construction, Infringement, And Summary Judgment, On Which Gilead Did Not Prevail. ..................................................4

        B.    The Court Should Decline To Award Fees For Abandoned Defenses. ...............................5

    IV.    Gilead's Deficient Fee Request Does Not Allow Merck Or The Court To Assess The Reasonableness Of The Fees Requested. ......................................................................6

CONCLUSION................................................................................................................................8

# TABLE OF AUTHORITIES

## CASES

*AAT Bioquest, Inc. v. Tex. Fluorescence Labs., Inc.*,
   2015 WL 7708332 (N.D. Cal. Nov. 30, 2015) ............................................................. 1, 3

*Beckman Inst., Inc. v. LKB Produkter AB*,
   892 F.2d 1547 (Fed. Cir. 1989) .................................................................................... 4

*Central Soya Co. v. Geo. A. Hormel & Co.*,
   723 F.2d 1573 (Fed. Cir. 1983) .................................................................................... 4

*Codex Corp. v. Milgo Elec. Corp.*,
   541 F. Supp. 1198 (D. Mass. 1982) .............................................................................. 8

*Delta-X Corp. v. Baker Hughes Production Tools, Inc.*,
   984 F.2d 410 (Fed. Cir. 1993) ...................................................................................... 3

*Digital Reg of Texas, LLC v. Adobe Sys., Inc.*,
   2015 WL 1968388 (N.D. Cal. May 1, 2015) ................................................................ 4

*Fischer v. SJB-P.D. Inc.*,
   214 F.3d 1115 (9th Cir. 2000) ...................................................................................... 6

*Gardco Mfg., Inc. v. Herst Lighting Co.*,
   820 F.2d 1209 (Fed. Cir. 1987) ................................................................................. 2, 3

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................................. 6, 8

*ICON Health & Fitness, Inc. v. Octane Fitness, LLC*,
   576 F. App'x 1002 (Fed. Cir. 2014) ............................................................................. 2

*In re Farmers Ins. Exchange Claims Representatives Overtime Pay Litig.*,
   2009 WL 3834034 (D. Or. Nov. 13, 2009) .................................................................. 2

*Informatica Corp. v. Business Objects Data Integration Inc.*,
   489 F. Supp. 2d 1075 (N.D. Cal. 2007) ....................................................................... 3

*Kilopass Tech. Inc. v. Sidense Corp.*,
   82 F. Supp. 3d 1154 (N.D. Cal. 2015) ................................................................. 4, 6, 7

*Mhany Mgmt Inc. v. Incorporated Village of Garden City*,
   44 F. Supp. 3d 283 (E.D.N.Y. 2014) ........................................................................... 2

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014) ................................................................................................. 2

*Pastore v. Structure Guard Inc.*,
    57 F. App'x 862 (Fed. Cir. 2003) ...................................................................................7

*Phillip M. Adams & Associates, LLC v. Sony Electronics Inc.*,
    2011 WL 4499246 (D. Utah Sept. 27, 2011) ..................................................................3

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*,
    781 F.2d 198 (Fed. Cir. 1986) .........................................................................................2

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*,
    707 F. Supp. 2d 737 (N.D. Ohio 2010) ...........................................................................8

*Source Vagabond Sys., Inc. v. Hydrapak, Inc.*,
    2013 WL 136180 (S.D.N.Y. Jan. 11, 2013) ....................................................................7

*Stark v. PPM Am., Inc.*,
    354 F.3d 666 (7th Cir. 2004) ..........................................................................................7

*Synthon IP, Inc. v. Pfizer Inc.*,
    484 F. Supp. 2d 437 (E.D. Va. 2007) ..............................................................................8

*Watts v. United States*,
    1993 U.S. App. LEXIS 24955 (9th Cir. 1993) ................................................................8

*Yufa v. TSI Inc.*,
    2014 WL 4071902 (N.D. Cal. Aug. 14, 2014) ................................................................7

**OTHER AUTHORITIES**

35 U.S.C. § 285 ............................................................................................................... 1, 2, 3, 5

Fed. R. Civ. P. 54(d) ........................................................................................................... 1, 2, 4

**INTRODUCTION**

Defendants Merck & Co., Inc., Merck Sharp & Dohme Corp., and Ionis Pharmaceuticals, Inc. (f/k/a Isis Pharmaceuticals, Inc.) (collectively, "Merck") respectfully submit this brief in opposition to Plaintiff Gilead Sciences, Inc.'s ("Gilead") Motion for Attorney Fees, ECF No. 434. Merck respectfully disagrees with the Court's ruling on unclean hands and intends to appeal. Because Gilead's motion rests entirely on the Court's finding of unclean hands, without which Gilead would not be the prevailing party, Merck requests that the Court defer consideration of Gilead's fee motion until the appeal has concluded. Merck also reserves the right to contest whether the case is exceptional in the event that the Court's ruling on unclean hands is not affirmed on appeal.

If the Court is inclined to rule now, Gilead's motion should be denied. The Court should exercise its discretion to deny fees because Merck's loss of a $200 million jury verdict is more than "sufficient compensation, punishment, and deterrence" by itself. *AAT Bioquest, Inc. v. Tex. Fluorescence Labs., Inc.*, 2015 WL 7708332, at *16 (N.D. Cal. Nov. 30, 2015). If the Court grants fees, it should exercise its discretion to reduce Gilead's award from the $15.5 million sought. A reasonable fee in this case should not include fees that Gilead incurred litigating the issues of claim construction, infringement, and summary judgment, on which Gilead did not prevail, or fees incurred pursuing arguments that Gilead dropped without warning at trial. In addition, before awarding any fees, the Court should compel Gilead to produce to Merck a set of materials it has refused to produce to date: its flat fee agreement with Fish & Richardson reflecting how much Gilead actually paid, and daily time records reflecting the work performed by Fish & Richardson timekeepers. Until Gilead produces these materials, Merck and the Court are not in a position to assess whether the fees sought by Gilead are "reasonable," as the statute requires. 35 U.S.C. § 285.

**ARGUMENT**

**I.   THE COURT SHOULD DEFER CONSIDERATION OF GILEAD'S MOTION UNTIL AFTER APPEAL.**

The Federal Rules of Civil Procedure give this Court substantial flexibility when it comes to procedures for considering an award of attorney fees. Rule 54 does not require the Court to decide Gilead's entitlement to fees, either in general or as to a specific sum, at the present juncture. To the

1

1  contrary, the rules permit the Court to defer consideration of all issues related to fees until Merck's
2  appeal has concluded: "If an appeal on the merits of the case is taken, the court may rule on the claim for
3  fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing . . . a new
4  period for filing after the appeal has been resolved." Fed. R. Civ. P. 54 advisory committee's note to
5  1993 amendment.

Deferring consideration of fees until after appeal is the best course of action here. As the Court is aware, Gilead is seeking an award of over $15.5 million, representing full fees for more than 25,000 hours of work by its lead counsel, Fish & Richardson, and partial fees for almost 75,000 hours of work by its contract attorneys at Deloitte. Assessing the reasonableness of this request will be a major undertaking, to say the least. For the reasons explained below in Part IV, the supporting documentation Gilead has submitted is insufficient to make such a determination. Deferring consideration until the appeal has concluded would spare the parties and the Court considerable effort in the event that the Court's ruling on unclean hands is not affirmed by the Federal Circuit. *See, e.g.*, *In re Farmers Ins. Exchange Claims Representatives Overtime Pay Litig.*, 2009 WL 3834034, at *3 (D. Or. Nov. 13, 2009) (finding that "the interests of judicial efficiency" weighed in favor of deferring consideration of fees until after appeal); *Mhany Mgmt. Inc. v. Incorporated Village of Garden City*, 44 F. Supp. 3d 283, 285-87 (E.D.N.Y. 2014) (finding "little, if any, prejudice" in deferring consideration of fees until after appeal).

## II.   THE COURT SHOULD DECLINE TO AWARD FEES UNDER 35 U.S.C. § 285.

If the Court decides to reach the issue at this point, it should exercise its discretion to deny fees. Section 285 provides that a district court "may award reasonable attorney fees to the prevailing party" in an exceptional case. 35 U.S.C. § 285. The statute does not require a district court to award fees, and the Federal Circuit has long upheld a district court's discretion to deny fees even in an exceptional case. *E.g.*, *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1215 (Fed. Cir. 1987) ("After the district court determines that a case is exceptional, there remains in every case its freedom to exercise its discretion 'informed by the court's familiarity with the matter in litigation and the interest of justice.'") (quoting *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986)). This discretion survived the Supreme Court's decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), which loosened the standards for determining whether a case is

1  "exceptional" under Section 285. *ICON Health & Fitness, Inc. v. Octane Fitness, LLC*, 576 F. App'x 1002, 1005 (Fed. Cir. 2014) (unpublished, per curiam); *AAT Bioquest*, 2015 WL 7708332, at *15. Because the trial court, "after presiding over the preparation and trial of the case, can best weigh the relevant considerations," *Delta-X Corp. v. Baker Hughes Production Tools, Inc.*, 984 F.2d 410, 414 (Fed. Cir. 1993), the decision whether or not to award fees remains within the discretion of the district court. *ICON Health & Fitness*, 576 F. App'x at 1005.

In cases analogous to this one, courts have denied fees because the judgment itself redressed the issues that formed the basis of the court's conclusion that the case was exceptional. In *Gardco Manufacturing*, for example, the district court denied fees even though it found the patents-in-suit unenforceable for inequitable conduct. 820 F.2d at 1215. The Federal Circuit affirmed, noting that "it has not been held that every case of proven inequitable conduct must result in an automatic fee award." *Id.* Similarly, in *Phillip M. Adams & Associates, LLC v. Sony Electronics Inc.*, 2011 WL 4499246, at *2 (D. Utah Sept. 27, 2011), the court denied fees for litigation misconduct because it had "already granted a sanction . . . in the form of a negative inference instruction to the jury." In *AAT Bioquest*, another court in this District denied an award of fees against a willful infringer, finding that enhanced damages were "sufficient compensation, punishment, and deterrence" by themselves. 2015 WL 7708332, at *16; *see also Informatica Corp. v. Bus. Objects Data Integration Inc.*, 489 F. Supp. 2d 1075, 1086 (N.D. Cal. 2007) (denying fees because they "would not further the dual purposes of Section 285" to deter bad conduct and prevent injustice).

This Court should exercise its discretion to deny fees. Merck has already suffered a significant loss from the Court's finding of unclean hands. It has lost the benefit of a jury verdict that Gilead should pay $200 million in damages for infringing the '499 and '712 patents. By ruling for Gilead on unclean hands, the Court has stripped Merck of relief from Gilead's adjudged infringement of valid patents. This judgment is substantial compensation, punishment, and deterrence. An award of attorney fees would be excessive.

## III.    IF THE COURT AWARDS FEES, IT SHOULD LIMIT THEM.

Although for the reasons discussed above, the Court should deny fees altogether, there are at least two categories of fees that the Court should exercise its discretion to deny even if it awards fees: (1) fees

incurred by Gilead litigating claim construction, infringement, and summary judgment, on which Gilead did not prevail, and (2) fees incurred litigating "how-to-make" enablement, laches, estoppel, and indefiniteness, which Gilead abandoned without warning at trial. Should the Court conclude that such a limited award of fees is appropriate, Merck respectfully requests that the Court provide the parties an opportunity to seek agreement on what amount of the fees sought by Gilead should be excluded. If the parties disagree, this Court can order a hearing or refer the matter to a magistrate judge or special master for resolution. Fed. R. Civ. P. 54(d).

### A. The Court should deny fees for claim construction, infringement, and summary judgment, on which Gilead did not prevail.

As the Federal Circuit has noted, and as recent cases in the Northern District of California have reiterated, "the amount of fees awarded to the 'prevailing party' should bear some relation to the extent to which that party actually prevailed." *Beckman Inst., Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1554 (Fed. Cir. 1989); *Kilopass Tech. Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1166 (N.D. Cal. 2015); *Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, 2015 WL 1968388, at *2 (N.D. Cal. May 1, 2015). Here, Gilead did not prevail on claim construction, infringement, or summary judgment. To the contrary, the Court declined to adopt Gilead's proposed claim construction, ECF No. 140, eliminating the only basis for Gilead's claim that it did not infringe, *see* ECF No. 167, and leading Gilead to concede that it infringed the '499 and '712 patents, ECF No. 175. Gilead did not attempt to rebut the testimony of Merck's key witness on infringement, Professor Leslie Benet. *See* ECF No. 167 at 7. The Court denied Gilead's motion for summary judgment of invalidity based on lack of practical utility. ECF No. 214. Merck was successful in these aspects of the case, and the Court should account for that success when determining the appropriate measure of attorney fees.

The cases Gilead cites are not to the contrary. Indeed, none of those cases squarely addresses whether fees should be awarded for issues on which the prevailing party did not prevail or which the prevailing party abandoned without warning at trial. The court in *Kilopass* rejected the argument "that the Court should award 'fees only for work directly and reasonably flowing from the conduct that formed the basis for the Court's decision to find the case exceptional,'" because, the court noted, it had also found every one of the losing party's claims to be "'exceptionally meritless' and 'objectively baseless'"

and declined to limit fees. 82 F. Supp. 3d at 1166-67. *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983), addressed the unrelated question of whether "expenses" could be included in an award of attorney fees under Section 285.

### B.  The Court should decline to award fees for abandoned defenses.

The Court should also deny Gilead's request for fees related to the issues of "how-to-make" enablement, laches, estoppel, and indefiniteness. As with the issues of claim construction, infringement, and summary judgment discussed above, Gilead did not prevail with respect to these defenses. It would be particularly unreasonable to award Gilead fees associated with defenses on which it did not prevail and that it also forced Merck to litigate before dropping without warning at trial.

Gilead's claim that Merck's patents are invalid for failing to enable one of ordinary skill to "make" the invention was a major focus of discovery in this case. Gilead's main expert, Dr. Secrist, devoted twenty pages of his opening report to that theory. ECF No. 231-4 at 52-72. Gilead and Dr. Secrist contended that the lack of "how-to-make" enablement was demonstrated by, among other things, the lab notebooks of an Idenix chemist, Dr. Jean-Francois Griffon. *Id.* Merck went to considerable time and expense to rebut this theory, retaining Drs. Anthony Barrett, Alexander Clemens, and Brian Stoltz solely to address the issues of "how-to-make" enablement and Dr. Griffon's work.[1] These issues continued to be a major focus of the case throughout discovery and pre-trial motions, as Gilead moved to compel additional information regarding Dr. Clemens's work, ECF No. 156, and Merck moved *in limine* to exclude all evidence relating to Dr. Griffon, ECF No. 219. Despite pressing its argument through discovery disputes and motions *in limine* and describing it as a "key issue," ECF No. 156 at 6-7; ECF No. 212 at 2, 5, Gilead abandoned "how-to-make" enablement at trial, presenting no evidence on the subject, *see* Trial Tr. at 894:19-25. Gilead waited until the close of its case-in-chief to inform Merck and the Court of its decision, causing Merck to expend substantial time and effort preparing its own case on the issue and causing Dr. Stoltz to waste his time attending the trial of Gilead's case-in-chief. Declaration of Sanjiv P. Laud ("Laud Decl.") ¶ 5.

---

[1] Dr. Mark Wentland also addressed these issues, although they were not the sole subject of his report.

The next week, Gilead abandoned its defenses of laches, estoppel, and indefiniteness without telling Merck until the day that pretrial briefing on those issues was originally due. Even then, counsel for Gilead only informed Merck and the Court that it was dropping those defenses after *Merck* raised the issue of Dr. Langer's limited availability to testify at the bench trial. Laud Decl. ¶ 6. The Court should exercise its discretion to decline to award Gilead fees for litigating these aspects of the case.

## IV.  GILEAD'S DEFICIENT FEE REQUEST DOES NOT ALLOW MERCK OR THE COURT TO ASSESS THE REASONABLENESS OF THE FEES REQUESTED.

The Court should not award any fees at this time, because Gilead's support for its fee request is deficient under the law. "The party seeking fees bears the initial burden of establishing the hours expended litigating the case and must provide detailed time records documenting the tasks completed and the amount of time spent." *Kilopass*, 82 F. Supp. 3d at 1169. The party seeking fees also bears the burden of establishing that the hourly rate requested is reasonable. *Id.* at 1170. On both counts, Gilead has failed to provide adequate documentation.

Gilead seeks attorney fees for over 25,000 hours of work by Fish & Richardson—a total of $14,161,803—but it has provided no way for Merck or the Court to evaluate whether those hours were "excessive, redundant, or otherwise unnecessary" or even to understand what specific tasks these hours correspond to. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 437 & n.12 (1983).[2] Instead, Gilead submitted a two-page chart, short, vague summaries of work by its attorneys over three years of litigation, and a boilerplate assurance that timekeeper entries were reviewed by lead counsel for Gilead, though most were never even submitted to Gilead due to the flat fee agreement. *See* Singer Decl. ¶¶ 8-9. This falls short of even the barest requirements in this Circuit, which at a minimum necessitate identifying how many hours were spent working on any given task. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000). The very case Gilead cites requires as much. *See Kilopass*, 82 F. Supp. 3d at 1170.

Given the lack of detailed billing records, Merck and the Court cannot assess the number of hours spent on each task or phase of the case by each attorney or the allocation of resources among Fish & Richardson's team. Many of these tasks were worked on by multiple attorneys; for example, no fewer

---

[2] This also makes it impossible to identify the amount of the particular fees Merck would ask the Court to exclude because they relate to the various issues discussed in Part III.

than seven attorneys were involved in preparing Dr. Secrist's testimony over the course of the litigation. *See* Singer Decl. Ex. B.  This Court cannot assess the reasonableness of Gilead's fees or its allocation of attorney resources without seeing detailed billing records.

It is particularly important to see detailed evidence of Fish & Richardson's fees in this case because Gilead has retained the same attorneys at Fish & Richardson to handle the Idenix litigation relating to Sovaldi® and Harvoni®, currently pending in the District of Delaware.  *See* Laud Decl. ¶ 2 & Ex. A.  Discovery concerning the two matters was so intertwined that, as Gilead admits, "[a]ll of the documents that were reviewed and produced in this case to Merck were also produced" in the Idenix case (as well as a third case involving Sovaldi® and Harvoni®).  Drobinski Decl. ¶ 19.  Absent detailed billing records, it is impossible to tell whether the time entries included by Gilead in its request for fees correspond exclusively to this case.  *See Pastore v. Structure Guard Inc.*, 57 F. App'x 862, 863-64 (Fed. Cir. 2003) (unpublished) (using billing records to segregate claims associated with two different patents, only one of which formed the basis of the fee award); *Yufa v. TSI Inc.*, 2014 WL 4071902, at *7-8 (N.D. Cal. Aug. 14, 2014) (reducing award for work relevant to multiple cases).

Furthermore, as the Singer Declaration indicates, Gilead paid Fish & Richardson under a fixed fee agreement for most of this litigation, and the hourly rates shown in Exhibit A to the Singer Declaration do not reflect the fees Gilead actually paid.  Singer Decl. ¶ 6.  The precedent is clear—as Gilead itself admits—that such fee agreements are a factor to be considered when determining whether the fees requested are reasonable.  ECF 434 at 8; *Kilopass*, 82 F. Supp. 3d at 1167-69.  Whether Gilead actually paid the fees it is seeking is a factor bearing on their reasonableness.  *See, e.g.*, *Stark v. PPM Am., Inc.*, 354 F.3d 666, 675 (7th Cir. 2004); *Source Vagabond Sys., Inc. v. Hydrapak, Inc.*, 2013 WL 136180, at *9 (S.D.N.Y. Jan. 11, 2013).  Gilead's motion suggests that it is seeking more fees from Merck than it actually paid Fish & Richardson.  *See* ECF No. 434 at 7 (noting that a court can grant a "higher lodestar amount" than a party actually paid).  But neither the motion nor the supporting papers disclose the extent of the possible overpayment Gilead seeks.  When Merck asked Gilead to produce its fee agreement with Fish & Richardson, Gilead refused, further preventing Merck and this Court from assessing the reasonableness of Gilead's requested fees.  Laud Decl. ¶ 3 & Ex. B.

1    Given that Gilead's fee request is not properly supported as required by law, this Court may deny
2    fees entirely on this basis, *see, e.g.*, *Watts v. United States*, 1993 U.S. App. LEXIS 24955, at *3 (9th Cir.
3    1993) (affirming complete denial of attorneys' fees), or apply a significant reduction to Gilead's
4    requested fee amount. *Hensley*, 461 U.S. at 433; *see also Saint-Gobain Autover USA, Inc. v. Xinyi Glass
5    N. Am., Inc.*, 707 F. Supp. 2d 737, 762-65 (N.D. Ohio 2010) (holding that monthly hourly total,
6    accompanied by summary of tasks, was insufficient documentation, and adopting a 50% reduction);
7    *Synthon IP, Inc. v. Pfizer Inc.*, 484 F. Supp. 2d 437, 444-45 & nn.8-10 (E.D. Va. 2007), *aff'd*, 281 F.
8    App'x 995 (Fed. Cir. 2008) (adopting a 20% reduction, in part due to inadequate documentation); *Codex
9    Corp. v. Milgo Elec. Corp.*, 541 F. Supp. 1198, 1205 (D. Mass. 1982) (adopting a 50% reduction).

10   In the alternative, the Court should require Gilead to supplement its filings to produce the
11   information necessary to allow Merck and this Court to assess the reasonableness of the request. The
12   Court should require Gilead to produce both its flat fee agreement with Fish & Richardson and Fish &
13   Richardson's full timekeeping records, and allow Merck to supplement its opposition after it has had a
14   reasonable period of time to review these materials. On the present record, Merck cannot evaluate the
15   reasonableness of the fees sought by Gilead, and cannot determine which of those fees are fairly
16   allocable to the issues Merck has raised above.

## CONCLUSION

18   For the foregoing reasons, Merck respectfully requests that the Court defer consideration of
19   Gilead's motion for attorney fees until after the appeal has concluded. In the alternative, if the Court is
20   inclined to act now, Merck respectfully requests the Court to deny Gilead's motion and award no fees.
21   At a minimum, the Court should deny Gilead fees incurred litigating claim construction, infringement,
22   and summary judgment, on which Gilead did not prevail, as well as fees incurred pursuing "how-to-
23   make" enablement, laches, estoppel, and indefiniteness, defenses that Gilead dropped without warning at
24   trial. If any fees are to be awarded, the Court should order Gilead to produce its fee agreement with Fish
25   & Richardson and a full set of time entries reflecting Fish & Richardson's work so that Merck and the
26   Court may assess whether the fees sought by Gilead are reasonable.

1 | Dated: July 19, 2016
2 | By: _____*/Bruce R. Genderson/*_____
　　　　　　　　　BRUCE R. GENDERSON

**CERTIFICATE OF SERVICE**

I certify that all counsel of record are being served on July 19, 2016 with a copy of this document via the Court's CM/ECF system.

                                         */Bruce R. Genderson/*
                                         BRUCE R. GENDERSON