John M. Farrell (CA Bar No. #99649)
farrell@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone:  (650) 839-5070
Facsimile:  (650) 839-5071

Jonathan E. Singer (CA Bar No. #187908)
singer@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone:  (612) 335-5070
Facsimile:  (612) 288-9696

Juanita R. Brooks (CA Bar No. #75934)
brooks@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Attorneys for Plaintiff
GILEAD SCIENCES, INC.

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### (SAN JOSE DIVISION)

| | |
|---|---|
| GILEAD SCIENCES, INC., | Case No. 5:13-cv-04057-BLF/NMC |
| Plaintiff and Counterdefendant, | **GILEAD SCIENCES, INC.'S OPENING BRIEF ON THE AMOUNT OF ITS REASONABLE ATTORNEYS' FEES** |
| v. | |
| MERCK & CO, INC. (Defendant only), MERCK SHARP & DOHME CORP. and ISIS PHARMACEUTICALS, INC., | Date:  TBD<br>Time:  TBD<br>Place:  Courtroom 3, 5th Floor<br>Before: Hon. Beth Labson Freeman |
| Defendants and Counterclaimants. | |

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION .................................................................................................1

II.  BACKGROUND ..................................................................................................1

  A.   This Court's Order on Fees.........................................................................1

  B.   The Amount of Gilead's Fees .....................................................................1

III. ARGUMENT ........................................................................................................2

  A.   The Hours in Gilead's Fee Request Are Reasonable ..................................3

  B.   Merck's Objections Are Unfounded, Contradict Clear
       Precedent, and Do Not Warrant a Reduction in the Reasonable
       Hours ..........................................................................................................4

    1.   Merck's Objections Based on Timekeepers and Tasks
         Are Arbitrary and Do Not Justify a Reduction in
         Gilead's Hours ...................................................................................5

      a.   Merck's Objection to the Number of Attorneys
           on this Case Is Unsubstantiated and Disregards
           the Magnitude of this Case .......................................................5

      b.   Merck's Requested Two-Thirds Reduction of
           Time Billed for Gilead's Document Review Is
           Unnecessary ..............................................................................7

      c.   Merck's Remaining Task-Based Objections Are
           Based on an Erroneous Characterization of the
           Work Performed..........................................................................8

      d.   Gilead's Hours Are Not Unreasonably "Top-
           Heavy" ......................................................................................9

    2.   Merck's Entry-Specific Objections Are Contrary to This
         Court's Precedent..............................................................................10

      a.   Gilead Has Not Engaged in Disfavored "Block
           Billing" and No Reduction of Fees Is
           Appropriate .............................................................................10

      b.   Gilead Is Entitled to Protect Its Privileged
           Information and No Reduction Should Be
           Imposed on the Basis of Gilead's Redactions............................12

     c.   The Entries Objected to by Merck as "Vague"
        are Sufficiently Specific for Merck to Assess
        Their Reasonableness.....................................................13

     d.   Gilead Should Be Reimbursed for the Work
        Described as "Clerical".................................................14

    3.    Gilead Should Be Awarded the Lodestar Amount ..................15

IV.   CONCLUSION.............................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arik v. Astrue*,
    2011 WL 1576711 (N.D. Cal. 2011) ...................................................................15

*Blum v. Stenson*,
    465 U.S. 886 (1984).......................................................................................5

*Board of Trustees v. Piedmont Lumber & Mill Company*,
    2016 WL 4446993 (N.D. Cal. Aug. 24, 2016) ...........................................4

*Bywaters v. U.S.*,
    670 F.3d 1221 (Fed. Cir. 2012)................................................................6, 9, 16

*Cataphora Inc. v. Parker*,
    848 F. Supp. 2d 1064 (N.D. Cal. 2012) ....................................................4

*City of Burlington v. Dague*,
    505 U.S. 557 (1992)....................................................................................2

*Democratic Party of Washington State v. Reed*,
    388 F.3d 1281 (9th Cir. 2004) ...................................................... *passim*

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).....................................................................................2

*Int'l Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal*,
    69 Cal. App. 4th 287 (1999) ......................................................................4

*Kalani v. Starbucks Corp.*,
    2016 WL 379623 (N.D. Cal. 2016) ...........................................................6, 8

*Kilopass Tech. v. Sidense Corp.*,
    82 F. Supp. 3d 1154, 1164-65 (N.D. Cal. 2015).........................................2, 16

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ...................................................................3, 10

*Perfect 10, Inc. v. Giganews, Inc.*,
    2015 WL 1746484 (C.D. Cal. 2015).........................................11, 12, 14, 15

*Secalt S.A. v. Wuxi Shenxi Const. Machinery Co., Ltd.*,
    668 F.3d 667 (9th Cir. 2012) .....................................................................12

*Stonebrae, L.P. v. Toll Bros., Inc.*,
 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) .................................................................. *passim*

*Swallow v. Toll Bros., Inc.*,
 2009 WL 513486 (N.D. Cal. Mar. 2, 2009) ....................................................................16

*Trustees of Const. Indus. and Laborers Health and Welfare Trust v. Redland Ins.
 Co.*,
 460 F.3d 1253 (9th Cir. 2006) ......................................................................................15

*Willis v. City of Fresno*,
 2014 WL 3563310 (E.D. Cal. July 17, 2014) .............................................................11, 12

**Statutes**

35 U.S.C. 285 .....................................................................................................................1

## I.     INTRODUCTION

This is an exceptional case resulting from, in the Court's words, Merck's "egregious," "unconscionable," and "outrageous" conduct spanning a period of more than a decade.  As a result of that "pervasive pattern of misconduct" this Court previously held that "Gilead is entitled to relief from its hefty fee obligation incurred in this case."  And, indeed, Gilead's fee obligation was hefty—it was *reasonably* and *necessarily* hefty due to the unprecedented amount at risk in this case, its length and complexity, and the manner in which Merck litigated it.  In particular, Merck sought more than $2 billion in past damages alone.  Had the jury awarded Merck the amount it was seeking, it would have been the largest patent damages verdict in U.S. history.  Merck also sought billions more in future royalties.  Yet, in objections to Gilead's fees which Merck has now disclosed (attached to this brief), Merck seemingly faults Gilead for not treating this case like any run-of-the-mill infringement suit—accusing Gilead of working too many hours, staffing too many attorneys, and relying too heavily on senior attorneys.  Merck myopically focuses only on Gilead's bills (not all of which were even included in Gilead's fee request) while ignoring the context and details of the case that made those bills necessary.  Simply put, this was an exceptional case necessitating significant effort, and this Court should award Gilead the full amount of its fees.

## II.     BACKGROUND

### A.     This Court's Order on Fees

On June 6, 2016, this Court issued its order holding that "based on Merck's numerous unconscionable acts, including lying, unethical business conduct, and litigation misconduct, the doctrine of unclean hands barred Merck from asserting the '499 and '712 Patents against Gilead." (ECF No. 457 at 1.)  Thereafter, Gilead moved for an award of attorneys' fees pursuant to 35 U.S.C. 285, which this Court granted on August 11, 2016.  (ECF No. 434.)  This Court then instructed the parties to brief the amount of Gilead's reasonable fees.  (*Id.* at 4.)

### B.     The Amount of Gilead's Fees

Gilead has requested reimbursement for fees it incurred for only two entities: Fish &

Richardson (lead counsel) ("Fish") and Deloitte Review Services (document review) ("Deloitte").[1] The reasonable rates and hours for each were previously disclosed in Gilead's motion and in the declarations accompanying Gilead's motion.  (*See* ECF No. 434 at 9-10; ECF 439 Ex. A; ECF 436 Ex. C.)  Updated totals for Fish's reasonable hours, reflecting additional work[2] since the time of Gilead's motion and reflecting adjustments made during the meet and confer process are attached hereto.  (*See* Singer Decl. Ex. 1.)  As shown therein, the lodestar amount for work performed by Fish is $14,173,500.  (*Id.*)  The lodestar amount for work performed by Deloitte (which is unchanged) is $1,365,470, (ECF 436 Ex. C.), for a total of $15,538,970.

Before submitting this briefing, Gilead provided Merck with detailed billing records for its fees.  Gilead also provided Merck with a categorical breakdown of its fees, noting how much time was billed in each of more than 30 categories of work (e.g., "Written Discovery," "Summary Judgment," and "Trial").  (*See* ECF No. 452-1; Warden Decl. Ex. 2.)  Upon reviewing those records, and following the parties' meet and confer process, Merck provided Gilead with its objections to Gilead's fee request and identified the reductions Merck sought.  (*See* Warden Decl. Ex. 3.)  Merck's objections relate exclusively to the reasonableness of the hours billed by Fish.  (*Id.*)  Merck has not objected to the rate billed by Fish, or to the rate or hours billed by Deloitte.  (*Id.*)  Thus, this brief is confined to addressing the reasonableness of the hours billed by Fish.

## III.   ARGUMENT

In determining the amount of a reasonable fee award under any federal fee shifting statute, there is a "strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562-564 (1992) (internal quotations omitted). The lodestar is calculated by multiplying "a reasonable hourly rate" by "the number of hours reasonably expended on the litigation." *See Kilopass Tech. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1164-65 (N.D. Cal. 2015).

---

[1] Gilead incurred fees for other entities for which it is not seeking reimbursement.  For example, Gilead is not seeking reimbursement for fees paid to Gilead's experts.

[2] The additional work relates largely to Gilead's fees motion, and Exhibit 1 contains approximately 397 additional hours related to that work.  The parties are in agreement that Gilead should receive fees-on-fees in a percentage equal to the percentage of Gilead's requested fees that this Court awards Gilead for the underlying litigation.  (Warden Decl. Ex. 9.)  *See also Thompson v. Gomez*, 45 F.3d 1365 (9th Cir. 1995) (affirming district court's decision that "plaintiffs' [fees-on-fees], now and in the future, will be subject to a reduction in proportion to the amount actually awarded for merits work in the underlying action").

1    In determining the reasonable hours, "[t]here is no precise rule or formula," and "[t]he court

2    necessarily has discretion in making this equitable judgment." *Hensley v. Eckerhart*, 461 U.S. 424,

3    433-37 (1983).  The Ninth Circuit has explained that "[b]y and large, the court should defer to the

4    winning lawyer's professional judgment as to how much time he was required to spend on the case;

5    after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of*

6    *Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).[3]  As discussed below, given the amount at stake

7    in this case, its complexity, and how it was litigated, the hours worked by Fish are reasonable on

8    their face, and there is no basis to second guess Gilead's and Fish's "professional judgment as to

9    how much time [] was required to spend on the case." *Id.*  Additionally Merck's objections to

10   Fish's fees are unfounded and are contradicted by the guidance of this Court and the Ninth Circuit.

**A.    The Hours in Gilead's Fee Request Are Reasonable**

12        In this case, Merck sought more than $2 billion in past damages, with the potential for many

13   more billions in future royalties.  Had the jury awarded Merck the amount it sought, it would have

14   been the largest patent damages award in U.S. history.  (*See* Warden Decl. Ex. 4 (listing ten largest

15   patent damages verdicts in U.S. history).)   Based on that unprecedented amount at risk, any

16   reasonable firm would be expected to devote hours far in excess of those worked in a run-of-the-

17   mill case.  That conclusion is supported by AIPLA's 2015 Report of the Economic Survey, which

18   reports that "there is a strong correlation between the amount at risk in a patent infringement action

19   and the overall attorney hours required to litigate the action." (Warden Decl. Ex. 5 at 46.)  AIPLA's

20   survey data shows that the cost of litigating a patent case generally falls within a range of 12 to 20

21   percent of the amount at risk in the case.  (*Id.* at 41.)  Thus, the median cost of litigating a case with

22   less than $10 million at stake is $2 million (20% or more of the amount at risk).  (*Id.*)  The median

23   cost of litigating a case with $10-$25 million at stake is $3.1 million (about 12%-20% of the amount

24   at risk).  (*Id.*)  The median cost of litigating a case with more than $25 million at stake is $5 million

25   (less than 20% of the amount at risk).  (*Id.*)  Unsurprisingly, AIPLA's report does not contain survey

26   data for cases with more than $2 billion at stake.  Nonetheless, that AIPLA's data shows fees

---

[3] Although *Moreno* was a contingency case, the same principal applies to a fixed fee case, such as this, where Fish's compensation would be the same regardless of the number of hours worked.

ranging between 12 and 20 percent of the total amount at risk indicates that Gilead's requested fee of *less than 1 percent* of the total amount at risk is eminently reasonable on its face.

The reasonableness of Gilead's requested fees is further supported by the complexity of this case. *See, e.g., Board of Trustees v. Piedmont Lumber & Mill Company*, 2016 WL 4446993, at *3 (N.D. Cal. Aug. 24, 2016) ("The Court finds that the number of hours was reasonable given . . . the complexity of the legal issues presented."). This case involved competing drug development by multiple pharmaceutical companies spanning over more than a decade. Document production totaled more than one million documents and seven million pages. The parties took more than forty fact and expert depositions and served eighteen expert reports by twelve experts. There were multiple rounds of motions to compel, extensive third party discovery, and jury and bench trials.

In addition to the hours necessary due to the inherent complexity of the case, the manner in which Merck conducted the litigation unnecessarily increased the hours needed. For example, Merck rebuffed Gilead's early efforts to streamline this litigation by rejecting Gilead's request to narrow the scope of Merck's broad RFPs and, instead, insisted that the requests be "given their broadest, commonly accepted meaning" and that if "Gilead ha[d] doubts as to whether something falls within the scope of the language, Gilead should include it." (*See* Warden Decl. Ex. 6 at 3.) It was those document requests that then led to Gilead's production of more than seven million pages, which document production effort was, by far, the biggest component of the hours worked by Fish in this case. (*See* Warden Decl. Ex. 2 at 2.) Merck "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by [Gilead] in response." *Cataphora Inc. v. Parker*, 848 F. Supp. 2d 1064, 1070 (N.D. Cal. 2012) (quoting *Int'l Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal*, 81 Cal. Rptr. 2d 456, 467 (Cal. Ct. App. 1999)).

For the reasons discussed above, the hours worked by Fish are reasonable and this Court should not make any reduction to that amount.

## B. Merck's Objections Are Unfounded, Contradict Clear Precedent, and Do Not Warrant a Reduction in the Reasonable Hours

Where, as here, Gilead has met its burden of "documenting the appropriate hours expended," the fee opponent (Merck) then "has the burden of submitting evidence challenging the

accuracy and reasonableness of the documented hours."  *Stonebrae, L.P. v. Toll Bros., Inc.*, 2011 WL 1334444, *7 (N.D. Cal. Apr. 7, 2011).  Although Merck has provided Gilead with an extensive list of written objections, those objections do not justify a reduction in the hours worked by Fish.

Merck provided its objections to Gilead in the form of a thirteen page summary letter, accompanied by 871 pages of specific objected-to billing entries, excerpts of which are attached hereto as Exhibit 3.[4]  Merck's letter further divides its objections into three broad categories: (1) "Objections and Proposed Reductions Based on the Tables of Hours by Timekeeper and Task"; (2) "Objections Based on Specific Billing Entries"; and (3) "Objections Based on the Amount of Fees Actually Paid."  Those objections, are addressed in turn.

### 1.  Merck's Objections Based on Timekeepers and Tasks Are Arbitrary and Do Not Justify a Reduction in Gilead's Hours

Merck's first set of objections are based exclusively on the categorization of time provided by Gilead, without regard to any particular billing entry (*e.g.*, Merck seeks a 25% reduction to all time billed by any timekeeper related to "Summary Judgment").  Specifically, Merck identifies twelve categories of work in which it claims that the hours billed by Fish should be reduced,[5] but, as discussed below, provides virtually no substantive explanation supporting its requested reduction.

### a.  Merck's Objection to the Number of Attorneys on this Case Is Unsubstantiated and Disregards the Magnitude of this Case

Merck's primary task-based objection—which is repeated for all twelve objected-to categories and is the *only* objection for nine such categories—is the unsubstantiated assertion that an "unreasonably high number of timekeepers" billed time to the category.  (Warden Decl. Ex. 3 at 2-7.)  Merck provides no explanation for why it believes the number is "unreasonable", nor does Merck say what it believes a "reasonable" number would be.  (*Id.*)  In fact, all Merck appears to have done—without expressly saying so—is to identify any category with at least eight time

---

[4] For each of Merck's discrete sets of objections, the first 10 pages of objected-to entries are attached to this brief.  At the Court's request, Gilead can provide all 871 pages of objections.
[5] Those twelve categories are: Motions for Summary Judgment; Infringement/Invalidity Contentions; Claim Construction; Post-Trial Motions and Proceedings; Discovery – Case Management & Strategy; Document Review – Gilead Documents; Document Review – Merck/Isis Documents; Written Discovery; Third Party Discovery; Discovery Disputes & Strategy; Fact Depositions – Defended; and Fact Depositions – Taken.

keepers who billed more than 10 hours as having too many time keepers.  (*Id.*)  Merck's
identification of eight timekeepers as too many is arbitrary, and fails to recognize the magnitude and
complexity of this case as compared to other cases, as well as the enormity of the record Gilead was
required to consider (given Merck's above-described refusal to narrow the scope of its discovery
requests).  Equally arbitrary is Merck's request that this Court should reduce the hours worked in
each such category by 25 percent—an amount Merck seemingly picked at random and for which
Merck offers no explanation.  (*Id.*)  Where, as here, a fee opponent seeks a fee reduction based on
the mere assertion of excessiveness, the request should be denied.  *See Kalani v. Starbucks Corp.*,
2016 WL 379623, at *9 (N.D. Cal. Feb. 1, 2016) (rejecting a request to reduce fees where
"Defendant's contention that Plaintiff's fees for trial preparation and trial are excessive [was]
unsupported by identification of any particular unreasonable time entry").

      The arbitrariness of Merck's objection as it applies to a case of this scope is further
demonstrated by the cases Merck cites in its objection, all of which involve comparatively
miniscule amounts.  For example, in *Stonebrae*, 2011 WL 1334444, at *13 (N.D. Cal. 2011) the
court determined that it was inefficient for twenty-six attorneys to work on a case with less than $5
million was at stake.  Even then, the court imposed only a 5 percent reduction—not the 25 percent
reduction sought by Merck.  That the use of twenty-six attorneys warranted a 5 percent reduction in
a case with less than $5 million at stake says nothing about the appropriate level of staffing in a case
with more than $2 billion at stake.  *See, e.g.*, *Bywaters v. U.S.*, 670 F.3d 1221, 1231 (Fed. Cir. 2012)
("It is axiomatic that attorneys almost inevitably consider the amount involved in a particular case
when determining a reasonable number of hours to expend on any given issue or when allocating
personnel resources based upon the expertise or experience required.").

      Merck has not identified for Gilead a single decision in which a court imposed a reduction
of fees based on the number of attorneys working on a case of this scope—or even approaching
within two orders of magnitude of this scope.  Similarly, Merck has not even attempted to identify
for Gilead any specific facts or circumstances related to this case that would support the conclusion
that Gilead used too many attorneys here.  Gilead did not.  Gilead staffed this case in a manner
commensurate with the stakes.  This Court should, thus, disregard Merck's arbitrary objection.

### b.   Merck's Requested Two-Thirds Reduction of Time Billed for Gilead's Document Review Is Unnecessary

As Gilead previously informed the Court, Gilead is conservatively seeking reimbursement for only one-third of the time spent reviewing Gilead's documents for production. (*See, e.g.*, ECF No. 434 at 10.)  Although Gilead has agreed to this reduction, doing so was unnecessary and was overly conservative.  The Merck matter was the first of the three related cases to go through discovery.  All of the time spent reviewing and producing documents in this case was required for this case, and would have been necessary regardless of the fact that Gilead later produced those documents in other cases.  Nonetheless, in an effort to be conservative, Gilead has agreed to seek recovery for only one-third of that time.[6]

Although Gilead has agreed to split that document review time, Gilead does not agree with Merck that all time categorized as "Document Review – Gilead Documents" should be reduced by two-thirds, (Warden Decl. Ex. 3 at 4), for two reasons.  First, in addition to including time spent reviewing documents for responsiveness, that category includes a significant amount of substantive work related exclusively to the Merck case.  For example, that category includes time spent reviewing and responding to Merck's requests for production and ensuring that Gilead's search strategy would identify responsive documents.  (Warden Decl. at ¶ 10(a).)  It also includes time spent substantively reviewing the documents Gilead produced for issues specific to the Merck case. (*Id.*)

Second, with limited exceptions (discussed below), the time Gilead categorized as "Document Review – Gilead Documents" already reflects a two-thirds or more reduction of time related to reviewing Gilead's documents for production.  For example, the 3990.1 hours of time billed to that category already contain only one third of the hours billed by Ms. Hardin-Smith.  (*See* ECF No. 434, Ex. A; Singer Decl. ¶ 13.)  For the remaining timekeepers, beginning in January of 2015, time spent on document review was billed to a unique billing code (rather than being billed to the Merck case or any of the related cases), and only a portion of the fees billed to that code were later allocated to the Merck case.  (Singer Decl. at ¶ 11.)  In total, Gilead's fee request includes less

---

[6] Had Gilead sought all of its document review fees, it would include at least another $1 million in fees from Fish and $2.7 million from Deloitte, for a total of $3.7 million.

than one-third of the time billed to that code and, thus, no further reduction is appropriate.  (*Id.*)

 For time billed prior to early January of 2015, however, Gilead has identified 806.8 hours of time related to reviewing documents for responsiveness that was not previously divided.  (*See* Singer Decl. at ¶ 12.)   Gilead agrees to reduce this time by two-thirds, resulting in a reduction of 537.9 hours.  That reduction is already reflected in the lodestar figure identified *supra* Part II.B.

### c.   Merck's Remaining Task-Based Objections Are Based on an Erroneous Characterization of the Work Performed

Merck's objection that it was unreasonable for Gilead to spend roughly 15.6 percent of discovery-related time on tasks categorized as "Discovery – Case Management and Strategy" is misguided.  First, although Merck offers its view that "at most, it would be reasonable to bill 7-10% of the total hours spent on discovery to such general case management and strategy tasks," Merck offers no explanation for its assertion that 7-10 percent is reasonable, while 15.6 percent is not. (Warden Decl. Ex. 3 at 3-4.)  Merck does not identify any particular task or set of tasks in this category that it identifies as excessive or unnecessary.  (*Id.*)  Again, as noted above, a mere assertion that work was excessive, without substantive support, provides no basis for reducing an award.  *See Kalani*, 2016 WL 379623, at *9.  Second, as Gilead explained to Merck during the meet and confer process, this category includes all time spent by Gilead exploring its potential legal defenses, and determining which to ultimately assert.  (*See* Warden Decl. at ¶ 10(b).)  As the Ninth Circuit has recognized in the context of a fee award, "a lot of necessary research time is spent chasing after ghosts that may lurk in the forests of the U.S. Reports and the Federal Reporters." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004).  Given the magnitude of this case, and that it was one of Gilead's less-conventional defenses that ultimately led to its success, Gilead's time spent in this category is reasonable and should not be reduced.

Merck's additional objection that too many hours were worked by Fish in the category of "Fact Depositions – Defended" is based on an over-simplification of the work assigned to that category.  That category includes not only work spent preparing to defend those witnesses for whom Merck in fact noticed a deposition, but also all time spent interviewing and preparing any potential fact witnesses who might have knowledge relevant to the case or who Merck *could have*

1  noticed for deposition.  (*See* Warden Decl. at ¶ 10(c).)  Additionally, that category includes a large

2  amount of time spent not just preparing witnesses, but also identifying—from the many millions of

3  produced pages—those documents that might be used with a particular witness.  (*Id.*)  Given the

4  very large number of actual and potential witnesses and the very large number of produced

5  documents to consider, the time spent by Fish was reasonable and appropriate.

6  ### d.  Gilead's Hours Are Not Unreasonably "Top-Heavy"

7  In addition to the 25 percent reduction sought for the twelve categories described above,

8  Merck seeks an additional 5.6 percent reduction based on Merck's unsupported—and incorrect—

9  assertion that Fish employed an "unreasonable allocation of work between junior and senior

10  attorneys."  (Warden Decl. Ex. 3 at 8.)  Merck's unexplained assertion that "a reasonable fee in this

11  case should reflect at least a 2:1 allocation of hours between junior attorneys and senior attorneys,"

12  (*id.*), once again fails to take account of the magnitude and complexity of this case.  Whereas

13  certain work might reasonably be done by an associate in a case with $2 million at risk, that same

14  task reasonably falls to a partner in a case involving $2 billion.  *See, e.g., Bywaters*, 670 F.3d at

15  1231 ("It is axiomatic that attorneys almost inevitably consider the amount involved . . . when

16  allocating personnel resources based upon the expertise or experience required.").

17  Additionally, even in a far-less complex case, the precise argument made by Merck has been

18  rejected.  In *Stonebrae*, the fee opponent had asked for a reduction in fees because the "most

19  expensive three attorneys account for 41% of the time and 57% of the fees billed."  2011 WL

20  1334444, at *13.  Just like Merck, that fee opponent offered its own formula, asserting that the

21  lodestar should be based on senior partners billing no more than 30% of the time.  *Id.*  The court

22  rejected that argument, however, explaining that "there is no single formula or ratio for senior to

23  junior attorneys that must apply. . . . Use of more experienced attorneys for certain tasks can be

24  more efficient than deploying less senior attorneys."  *Id.*  The Ninth Circuit in *Moreno*, went even

25  further, holding that it was an *abuse of discretion* for a district court to reduce a fee award based on

26  its conclusion that certain work could have been performed by a "less skilled attorney, rather than

27  the lead counsel."  534 F.3d at 1114-15.  The court explained that a district court "may not attempt

28

to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests.  The difficulty and skill level of the work performed, and the result achieved—not whether it would have been cheaper to delegate the work to other attorneys—must drive the district court's decision."  *Id.* at 1115.  Here, due to the complexity of this case and the magnitude of the amount at risk, reasonable attorneys and clients would expect for a larger ratio of work to be performed by more senior, experienced attorneys.

Finally, Merck's suggestion that the ratio between senior and junior attorneys working on this case shows that Gilead did not efficiently delegate work to junior attorneys ignores that Gilead delegated almost all document review time to Deloitte.  When Deloitte's time is considered, the ratio between senior and junior attorneys is more than 4:1 in favor or junior attorneys.  Thus, this Court should reject Merck's argument for a formulaic reduction based on seniority.

### 2.   Merck's Entry-Specific Objections Are Contrary to This Court's Precedent

As an alternative basis for reducing Gilead's fees, Merck makes a separate set of objections based on the content of Gilead's specific billing entries.  Like its task-based objections, however, Merck's entry-specific objections do not warrant a reduction.  In fact, the majority of Merck's objections have previously been addressed, and rejected, by courts in this district and circuit.

#### a.   Gilead Has Not Engaged in Disfavored "Block Billing" and No Reduction of Fees Is Appropriate

Merck seeks a reduction of 25 percent on the basis of what it terms "block billing."  (*See* Warden Decl. Ex. 3 at 9.)  However, the Ninth Circuit and numerous other courts in this district and circuit have held that entries of the kind objected to by Merck as "block billing"—which are identified in Exhibit 3-B—do not warrant reducing a fee award.  The following are two example entries taken from the first page of Merck's objections:  "Research re case management conference statement; draft case management statement" – 4.9 hours; "Work on finalizing scheduling order; discussion re case technology" – 1.8 hours.  (Warden Decl. Ex. 3-B at 3.)  As exemplified in the preceding entries, each of the entries objected to by specifically identifies all tasks performed by the attorney.  Although the objected-to entries provide a single amount of time for each day, rather than breaking down the time for each task, courts in this district and circuit have found that approach to

be a common practice that does not warrant a reduction in the fee award.  For example, in *Stonebrae*, the court explained that "[b]lock-billing is a typical practice in this district, and blocked-bills have been found to provide a sufficient basis for calculating a fee award."  2011 WL 1334444, at *9.  The court then considered the following exemplar entry, for which only a single charge of $630 was recorded, and determined that entries of this type provided "sufficiently detailed information about each timekeeper's activities":  "Review and exchange e-mails with T. Kirkham regarding attorneys' fee motion, case status; prepare for meeting with R. Pearl (potential attorneys' fee expert witness), including outline of points to address."  *Id.*

Similarly, in *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015), the court held that no reduction for block billing was appropriate for entries that "include detailed descriptions of the various tasks counsel undertook," even if billed in a "time block of several hours."  *Id.* at *25.  Thus, the court found the following exemplar entry, for which 12.8 total hours was billed, to be "sufficient to evaluate the reasonableness of the [fee] request": "Review emails from and confer with A. Bridges, J. Golinveaux, T. Kearney regarding Perfect 10's preliminary injunction motion, DMCA notices, and motion to seal; confer with J. Golinveaux concerning discovery; draft email to client concerning preliminary injunction motions; review exhibits, pleadings, and DMCA notices; review and revise draft letters to Perfect 10."  *Id.* at *26.

Likewise, in *Willis v. City of Fresno*, 2014 WL 3563310 (E.D. Cal. July 17, 2014), although the court explained that block billing could be a basis for reducing fees, it defined "block billing" as entries in which no description whatsoever of the specific tasks is provided, such as the following: "7/14/09 (12.1 hours)" and "5/7/10 (16.0 hours)".  *Id.* at *19.  By contrast, the court explained that it had "no concerns" with entries "that include several tasks . . . presented in the aggregate"—such as those complained of by Merck.  *Id.* at *18.  Thus, the court held that there was nothing objectionable with the following exemplar entry, for which 4.3 total hours was billed: "Revise and finalize trial briefs; review and analysis of defendants' trial brief; draft and revise response to defendants' trial brief; draft and revise arguments in response to defendants' trial brief."  *Id.*

Every one of the so called "block billed" entries complained of by Merck are of the type described in the cases above, which courts have held do not justify a fee reduction.  Merck also has

not identified any way in which Gilead's entries inhibit Merck's ability to assess the reasonableness of Gilead's fees.  Accordingly, this Court should disregard Merck's "block billing" objection.

### b. Gilead Is Entitled to Protect Its Privileged Information and No Reduction Should Be Imposed on the Basis of Gilead's Redactions

The Ninth Circuit has held that a prevailing party, such as Gilead, is entitled to redact its billing entries when seeking attorneys' fees.  *See, e.g.*, *Democratic Party of Wash. State*, 388 F.3d at 1286 (rejecting argument that fees should be denied due to redactions because a prevailing party, "like any other litigant, is entitled for good reason to considerable secrecy about what when on between client and counsel").  Similarly, courts in this district have rejected requests to reduce fees for redactions, as those redactions are "necessary to protect the attorney-client privilege while still affording the Court sufficient detail to determine the reasonableness of the hours requested").  *Perfect 10*, 2015 WL 1746484, at \*25.  Merck, nonetheless, has objected to the majority of Gilead's redacted entries and seeks a 50 percent reduction for all such entries.  (*See* Warden Decl. 3 at 11.)

In addition to disregarding the above-cited cases, Merck's request for a reduction is particularly inappropriate where, as here, Gilead has gone to great lengths to provide Merck with non-privileged descriptions of the redacted information.  Specifically, Gilead initially provided time-keeper entries that were redacted for attorney client privilege and work product information.  Those redactions included, for example, entries such as "Research case law re [REDACTED]." Notably, in *Democratic Party of Washington State*, the Ninth Circuit held that redactions of that nature are appropriate and do "not impair the ability of the court to judge whether the work was an appropriate basis for fees."  388 F.3d at 1286.  That court rejected the argument that it should not award fees for redacted entries such as "Research Supreme Court case law involving [REDACTED]."  388 F.3d at 1286.  Nonetheless, after receiving Gilead's originally redacted entries, Merck complained that the redactions inhibited its ability to assess the reasonableness of Gilead's fees.  (*See* Warden Decl. Ex. 7.)  In response, although it was Gilead's position that most of the originally redacted entries were sufficient for Merck and this Court to assess the reasonableness of the work, Gilead undertook considerable effort to provide Merck with additional non-privileged descriptions of the redacted entries.  Thus, for example, where an entry previously

stated "Research case law re [REDACTED]," Gilead provided a revised entry saying "Research case law re invalidity defense." (*See* Warden Decl. Ex. 8 at 2.) Gilead provided revisions for every single redacted entry complained of by Merck—totaling more than 1500 entries. (*Id.*)

Despite Gilead's revised entries being even more descriptive than what the Ninth Circuit has stated is necessary, Merck has now taken the position that ***not one*** of Gilead's more than 1500 revised entries are sufficient, and Merck seeks a 50 percent reduction for each of them. (*See* Warden Decl. Ex. 3 at 11.) Remarkably, Merck's position now is that, as a result of Gilead's efforts to provide more detailed descriptions as an aid to Merck, those entries are no longer "contemporaneous records of the work" and cannot be relied upon. (*Id.*) Thus, Merck has created a no-win situation: according to Merck, Gilead cannot recover for the originally redacted entries because they are not sufficiently specific; but, Gilead cannot recover for the more-specific revised entries because they are no longer "contemporaneous records." Merck's implicit argument is that Gilead must waive privilege and provide unredacted entries in order to obtain full recovery for those entries. But that position is contrary to clear law, and should be rejected. See *Democratic Party of Washington State*, 388 F.3d 1281 at 1286; *Perfect 10*, 2015 WL 1746484, at *2.

Notably, Merck has not identified any way in which Gilead's redacted entries have impaired Merck's ability to assess Gilead's fees. Indeed, Merck included redacted entries on nearly every one of its other lists of objections, demonstrating that the entries are sufficient for Merck to determine whether or not they are objectionable. This Court should reject entirely Merck's assertion that there should be a reduction of any sort on the basis of Gilead's legitimate redactions.

### c. The Entries Objected to by Merck as "Vague" are Sufficiently Specific for Merck to Assess Their Reasonableness

For Merck's next objection—that a number of Gilead's entries are too "vague"—Gilead is at a loss to understand why the majority are considered vague. Significantly, just as with the redacted entries described above, Merck has not identified any way in which the so-called "vague" entries have impaired its ability to assess Gilead's fees. The so-called "vague entries" are included on nearly all of Merck's other lists of objections, demonstrating that the entries are sufficiently specific for Merck to determine whether they are objectionable. For example, Merck objects to all entries

1    related to Gilead's document review quality control work as vague, (*see* Warden Decl. Ex. 3-C4)

2    despite having a separate substantive objection to all of Gilead's document review quality control

3    work as needing to be divided in thirds because it pertained to documents also produced in related

4    cases, (*see* Warden Decl. Ex. 3 at 4, 10; discussion *supra* Part III(B)(1)(b)).  It is apparent, therefore

5    that, Merck understands the nature of the work sufficiently to be able to object to it.

6         An examination of the other entries objected to as "vague" demonstrates their specificity.

7    For example, one large set of "vague" entries identified by Merck is any entry related to work on

8    the protective order, such as: "Work on draft of protective order," and "Work on letter addressing

9    remaining issues with protective order."  (*See* Warden Decl. Ex. 3-C3 at 4, 5.)  These entries all

10   relate to Gilead's work in drafting and negotiating the protective order in this case, and it is not

11   apparent how Gilead's entries could be more specific, or why they would need to be.  Similarly,

12   Merck has objected as "vague" to all entries related to working on scheduling, such as "Work on

13   case management schedule in preparation for Rule 26(f)," "work on discovery and case schedule for

14   case management conference," and "work on case schedule."  (*See id.* at Ex. 3-C5 at 2.)  Again, it is

15   not apparent what more specific information Merck thinks is necessary.

16        Other entries objected to by Merck as vague are, in reality, merely a rehashing of Merck's

17   objections to Gilead's redactions.  Specifically, Merck has objected to numerous entries such as

18   "Work on researching case strategy issue," "work on discovery strategy," "work on invalidity

19   analysis," and "work on memo re case facts."  (*See* Warden Decl. Exs. 3-C1, 3-C2, 3-C6, I.)  These

20   entries are those that were originally redacted, and for which Gilead provided revised non-

21   privileged descriptions.  As discussed above, the Ninth Circuit has held that Gilead, "like any other

22   litigant, is entitled for good reason to considerable secrecy about what went on between client and

23   counsel."  *Democratic Party of Wash. State*, 388 F.3d at 1286.  Thus, Merck is not entitled to any

24   more specific information regarding Gilead's privileged work.

25             **d.  Gilead Should Be Reimbursed for the Work Described as "Clerical"**

26        Merck's objection that certain tasks should be deducted entirely for being "clerical and

27   administrative," (Warden Decl. Ex. 3 at 10), is wrong for two reasons.  First, many of the tasks

Merck objects to as "clerical and administrative" are, in fact, substantive.  For example, Merck objects as "clerical and administrative" the following entry for Ms. Flanagan: "Assign invalidity research to team."  (Warden Decl. Ex. 3-D at 7.)  Assigning research is not a task that can be delegated to a clerk or administrative assistant, the way Merck seems to suggest.  It requires a legal understanding of the case and the issues that need to be researched.  Second, although Merck's objections also identify many entries for non-substantive work, that work was "performed by litigation support staff that directly support the substantive litigation," and, thus, is "compensable as part of an attorneys' fee award."  *Perfect 10*, 2015 WL 1746484, at *20.  Thus, this Court should disregard Merck's objections and should make no reduction for so-called "clerical" tasks. [7]

### 3.   Gilead Should Be Awarded the Lodestar Amount

Merck's final set of objections—that Gilead's fees should be capped by the amount of fees it actually paid, (*see* Warden Decl. Ex. 3 at 12)—is contrary to clear guidance from multiple courts that a fee arrangement does not cap a fee award but, rather, that the lodestar amount dictates the appropriate amount of the reward.  *See Bywaters*, 670 F.3d at 1232 (holding that a fee agreement "[does] not cap attorneys' fees" and "cannot be used to limit the recovery of attorneys' fees after determining the lodestar figure"); *Kilopass*, 82 F. Supp. 3d at 1168 n.6 (explaining that a private fee agreement "may not impose an automatic ceiling on the reasonable rate"); *Swallow v. Toll Bros., Inc.*, 2009 WL 513486, at *8 (N.D. Cal. Mar. 2, 2009) (rejecting argument that defendant "should not be required to pay more than Plaintiff would have been obligated to pay in legal fees").  For the reasons already discussed herein, the appropriate lodestar amount for work performed by Fish is $14,173,500.  The appropriate lodestar amount for work performed by Deloitte—to which Merck has made no objections—is $1,365,470, for a total of $15,538,970.[8]

## IV.   CONCLUSION

For the reasons discussed herein, Gilead respectfully requests that this Court award it fees in the amount of $15,538,970.

---

[7] Just as in its task-based objections, Merck seeks a reduction for entries for document review.  For the reasons discussed *supra* Part III(B)(1)(b), the reduction Merck seeks is not appropriate.
[8] As noted above, had Gilead sought reimbursement for all of the document review time necessarily undertaken for this case, the total lodestar amount would be more than $19.2 million.

Dated:  October 28, 2016

FISH & RICHARDSON P.C.

By:  */s/ Jonathan E. Singer*
　　　　Jonathan E. Singer
Attorneys for Plaintiff
GILEAD SCIENCES, INC.

*Additional counsel:*

Douglas E. McCann (*Pro Hac Vice*)
dmccann@fr.com
Gregory R. Booker (*Pro Hac Vice*)
booker@fr.com
Robert M. Oakes (*Pro Hac Vice*)
oakes@fr.com
Elizabeth Flanagan (*Pro Hac Vice*)
eflanagan@fr.com
Joseph B. Warden  (*Pro Hac Vice*)
warden@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-5070
Facsimile:  (302) 652-0607

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 28, 2016, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5-1(h)(1).


*/s/    Jonathan E. Singer*
Jonathan E. Singer