**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| GILEAD SCIENCES, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MERCK & CO, INC., et al.,<br><br>　　　　　Defendants. | Case No. 13-cv-04057-BLF<br><br>**ORDER RE AMOUNT OF REASONABLE ATTORNEYS' FEES**<br><br>[Re: ECF 427] |

Gilead Sciences, Inc.'s ("Gilead") fees motion arises out of the unusual circumstance of Merck & Co., Merck Sharp and Dohme Corp. and Isis Pharmaceuticals, Inc.'s (collectively, "Merck") successful and significant jury verdict of $200 million for patent infringement having been set aside by this Court on a finding of unclean hands. Thereafter, the Court found the case to be exceptional under 35 U.S.C. § 285 and granted Gilead's motion for attorneys' fees. Currently pending before the Court are the parties' briefs regarding calculation of reasonable attorneys' fees.

Gilead requests a fee award based on its lodestar calculation. It seeks fees for its counsel Fish & Richardson P.C.'s ("Fish") 25,000 hours expended at hourly rates charged by its attorneys totaling $14,173,500. Gilead also requests payment of fees charged by Deloitte Review Services ("Deloitte") in the amount of $1,365,740. Gilead thus asks for a total fee award of $15,538,970.

Merck contends that the hours expended and the attorney staffing were unreasonable and that the lodestar amount should be significantly reduced. It also argues that Gilead is entitled to only the fees it incurred, which by operation of a contractual fee arrangement was capped at a lower amount for a significant portion of the case. Merck proposes a reduction of $3,360,952.46, or alternatively, a reduction of at least $4,100,773.19.

## I. BACKGROUND

The Court has provided a detailed factual background of this case in its order from June 6, 2016. *Gilead Scis., Inc. v. Merck & Co, Inc.*, Case No. 13-cv-04057-BLF, 2016 WL 3143943, at *1- 21 (N.D. Cal. June 6, 2016) (discussing history of this litigation).  Therefore, the Court limits its background discussion to certain procedural history and a description of the fee agreements at issue.

Gilead's Sovaldi® and Harvoni® are transformative drugs offering a near perfect cure for Hepatitis C (HCV) infection.  These drugs, which are orally-administered for 12 weeks, replaced the injection-based predecessor treatments that required 12 to 18 months of chemotherapy with modest cure rates of less than 25%.  Sofosbuvir is the active ingredient in Gilead's Sovaldi® and Harvoni®.  Merck asserted two of its patents, U.S. Patent No. 7,105,499 and U.S. Patent No. 8,481,712, that cover Sofosbuvir, against Gilead.  Merck Cross Compl.

At summary judgment, Gilead conceded that if Merck's patents were not invalid, it infringed them.  The Court granted summary judgment of infringement.  ECF 214.  This matter then proceeded to a jury trial on the issue of whether the patents asserted by Merck were invalid based on lack of written description and lack of enablement and on the issue of damages for infringement.  ECF 305, 306, 307, 324, 325, 327, 348, 349.  On March 22, 2016, the jury found the patents were not invalid, and on March 26, 2016, the jury awarded Merck $200 million in damages.  Verdict Phase 1, ECF 388; Verdict Phase 2, ECF 392.

Thereafter, the Court held a bench trial on Gilead's equitable defenses of unclean hands and waiver.  ECF 401.  During the bench trial, Gilead argued that Merck's unclean hands barred enforcement of the patents against it because Merck improperly obtained from Pharmasset, Gilead's predecessor-in-interest, the structure of PSI-6130, a chemical compound that eventually led to the development of Sofosbuvir and Merck's patent prosecuting attorney then drafted patent claims covering PSI-6130.  Merck then lied about its conduct during this proceeding.  Based on the evidence presented, the Court determined that Gilead had not proven its defense of waiver, *Gilead,* 2016 WL 3143943, at *23, but that based on Merck's numerous unconscionable acts, including lying, unethical business conduct, and litigation misconduct, the doctrine of unclean

2

1  hands barred Merck from asserting the patents against Gilead, *id.* at *23-39.  Specifically, the
2  numerous unconscionable acts included lying to Pharmasset, misusing Pharmasset's confidential
3  information, breaching confidentiality and firewall agreements, and lying under oath at deposition
4  and trial.  The Court found that any one of these acts—lying, unethical business conduct, or
5  litigation misconduct—would be sufficient to invoke the doctrine of unclean hands; but together,
6  these acts unmistakably constitute egregious misconduct that equals or exceeds the misconduct
7  previously found by other courts to constitute unclean hands.  *Gilead*, 2016 WL 3143943, at *27.
8        On August 11, 2016, the Court deemed the case "exceptional," and found that an award of
9  reasonable attorneys' fees was warranted.  ECF 457.  The Court concluded that Gilead should not
10 be "liable for defending an action in which the record demonstrated egregious misconduct" by
11 Merck.  *Id.* at 4.  In reaching that holding, the Court noted that the purpose behind § 285 is more
12 than just to deter misconduct, but also to compensate defendants who are forced to incur
13 significant expenses in the defense of cases that never should have been brought in the first place.
14       Now before the Court is Gilead's request for an award of attorneys' fees.  Gilead requests a
15 lodestar award based on the hours it reasonably expended litigating this case.  Gilead offers
16 evidence showing from November 2013 to present, its counsel Fish & Richardson P.C. ("Fish")
17 billed Gilead in two ways.  Singer Decl., ECF 473.  Fish billed Gilead on an hourly basis from
18 November 11, 2013 to December 31, 2013 and April 1, 2016 through present.  For the intervening
19 period January 1, 2014 through March 31, 2016, Gilead entered into a fixed fee agreement with
20 Fish where the total amount of fees Gilead paid to Fish attributable to the fixed fee agreement was
21 $11,350,000.  Ex. B to Rydstrom Decl., ECF 487.  The total amount of fees Gilead paid to Fish for
22 work done from November 13, 2013 to June 30, 2016 was $12,463,422.35.  *Id.*  Gilead has
23 requested reimbursement for fees it incurred for two entities: Fish and Deloitte (document review).
24 Through June 30, 2016, Fish's fees based on its lodestar calculation totaled $13,890,070.  Ex. A to
25 Rydstrom Decl., ECF 477-1.  After updating the amount to reflect work since June 30, 2016,
26 including this fee motion, through September 30, 2016, Gilead seeks a total of $14,173,500.  Ex. 1
27 to Singer Decl., ECF 473-1.  The lodestar amount for work performed by Deloitte, which remains
28 unchanged, is $1,365,470.  Accordingly, Gilead seeks a total of $15,538,970.  Opening Br. 1-2,

3

ECF 472.

## II. LEGAL STANDARD

The award of attorney fees under 35 U.S.C. § 285 must be reasonable. The Supreme Court has said that "[t]he 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). There is thus "a 'strong presumption' that the lodestar represents the 'reasonable' fee." *Id.* (citation omitted). Ascertaining what constitutes a "reasonable" fee requires determining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Supreme Court "case law construing what is a 'reasonable' fee applies uniformly to all" federal fee shifting statutes that permit the award of reasonable fees. *Dague*, 505 U.S. at 562.

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), *amended on other grounds by* 808 F.2d 1373 (9th Cir.1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11); *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008) (holding that "to determine an award of attorneys' fees, a court in general should use the forum rate in the lodestar calculation").

In determining a reasonable amount of time spent, the Court should only award fees based on "the number of hours reasonably expended on the litigation" and exclude "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433-34. "There is no precise rule or formula for making these determinations." *Id.* at 436. "The court necessarily has discretion in making this equitable judgment." *Id.* at 437. Federal Circuit precedent controls the calculation of attorneys' fees in patent cases. *Bywaters v. United States*, 670 F.3d 1221, 1227-28 (Fed. Cir. 2012) ("we have consistently applied our law to claims for attorneys' fees under section 285 of the Patent Act because section 285 relates to an area of substantive law within our

exclusive jurisdiction"). However, district courts have "'considerable discretion' in determining the amount of reasonable attorney fees under § 285." *Homeland Housewares, LLC v. Sorensen Research*, 581 F. App'x 877, 881 (Fed. Cir. 2014) (internal citations omitted).

The party seeking fees bears the initial burden of establishing the hours expended litigating the case and must provide detailed time records documenting the tasks completed and the amount of time spent. *Hensley*, 461 U.S. at 434; *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. The district court may also exclude any hours that are excessive, redundant, or otherwise unnecessary. *Id*. at 434. However, the party seeking fees need not provide comprehensive documentation to prevail. *Id.* at 437.

## III.   DISCUSSION

Gilead seeks payment of $14,173,500 for Fish and $1,365,740 for work performed by Deloitte for a total of $15,538,970. Mot. 2. This total includes approximately 25,000 hours of work expended by Fish over 31 months. Singer Decl.; Ex. 1 to Singer Decl., ECF 473-1. Fish documents that 47 timekeepers were involved, including 15 principals/of counsel, 19 associates, and 10 paralegals, and other staff. Ex. 1 to Singer Decl. Fish further documents that the case involved motions for summary judgment, claim construction, discovery motions, motions in limine, an eight-day trial, post-trial motions, extensive bench trial briefs, and this fee motion. This case also involved invalidity and infringement contentions on two patents. Discovery in this case included production of over 7.5 million pages of documents, taking 20 fact depositions, defending 10 fact depositions, expert report preparation for four Gilead expert witnesses, responding to the expert reports of eight Merck expert witnesses, taking nine expert depositions and defending three expert depositions, and filing and responding to multiple motions to compel and other discovery disputes. ECF 452-1. Gilead faced a demand of more than $2 billion for damages and argues that the case was extraordinarily complex. Mot. 3.

Gilead has provided detailed billing records to support its fee request. Additionally at the Court's request, Gilead has provided two charts summarizing at a high level the hours expended by each timekeeper on the major tasks performed. ECF 474-1, 452-1. These charts provide the

1   Court with a bird's-eye view of the time expended and a depiction of the staging of the case that is
2   impossible to glean from chronological timesheets.
3         Merck does not dispute the reasonableness of the requested fees attributed to Deloitte's
4   work or the blended rate of $552.05 per hour for Fish's timekeepers. Resp. Br. 1-2, ECF 486.
5   Rather, Merck requests that the lodestar amount be reduced based on its two alternative
6   approaches. *Id.* at 2. First, based on an analysis of the Court's requested table of tasks performed,
7   Merck requests a reduction of 4,946 hours (19.7%) based on excessive hours and duplication of
8   efforts. *Id.* at 3-8. Further, Merck argues that the high ratio of senior to junior attorneys warrants
9   an additional 5.6% reduction of the remaining hours. *Id.* at 9. According to Merck, the first
10  approach supports a reduction of about $3.36 million. The second approach is based on analysis
11  of specific billing entries and proposes a reduction at least $4,100,733.19 in light of the various
12  deficiencies in the entries. *Id.* at 9-14. Lastly, Merck contends that this Court should not award an
13  amount beyond the fees Gilead actually incurred, which is $12,463,422. *Id.* at 14.
14        In addition, Merck directs its arguments to Fish's lodestar amount of $13,890,070,
15  excluding the additional amount incurred after June 30, 2016, stating that the parties have agreed
16  that the Court should first make an award based on Gilead's original request, and then apply the
17  same percentage reduction to Gilead's request for supplemental fees. Ex. F to Rydstrom Decl.,
18  ECF 477-4.

### A.    Reasonableness of the Hourly Rate

20        In establishing the reasonable hourly rate, the court may take into account: (1) the novelty
21  and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of
22  representation; and (4) the results obtained. *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454,
23  1464 (9th Cir. 1988).
24        Gilead seeks the blended rate of $552.05 per hour. Courts in this district have found
25  comparable rates reasonable in patent cases. *E.g.*, *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F.
26  Supp. 3d 1154, 1171 (N.D. Cal. 2015) (finding the rate of $830 per hour to be reasonable for
27  senior partners and rate of $345 per hour to be reasonable for junior associates); *Monolithic Power*
28  *Sys., Inc. v. O2 Micro Int'l Ltd.*, No. 08-04567-CW, 2012 WL 161212, at *3 (N.D. Cal. Jan. 17,

2012) (noting that the partners' median rate was $578 in 2008).

Merck does not dispute the blended rate of $552.05 per hour for Fish's timekeepers. Given the reputation of the law firm, the qualifications and responsibilities of these particular attorneys, the complexity of this case, the outstanding results obtained, the Court finds the blended hourly rate to be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11.

### B. Reasonableness of the Hours Expended

The Court now turns to the parties' evidence and arguments directed to the major tasks performed and will determine whether certain percentage reduction of hours by category would be appropriate. As the Ninth Circuit noted, there are two means by which a court may determine whether the number of hours is "reasonable." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). First, a court may conduct either an "hour-by-hour analysis of the fee request," and exclude those hours for which it would be unreasonable to compensate the prevailing party. *Id.* at 1203 (citing *Gates v. Deukmejian,* 987 F.2d 1392, 1399 (9th Cir. 1992)). Second, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application." *Id.* (citation omitted). The Ninth Circuit has held that it makes no difference in terms of the final amount to be awarded whether the court applies the percentage cut to the number of hours claimed, or to the lodestar figure. *Id.* Consistent with this principle, the Court proceeds to analyze whether an across-the-board percentage cut should be applied to any category.

#### i. Duplication of Effort and Unreasonable Number of Timekeepers

Gilead requests fees for the work of 47 timekeepers and Merck argues for a 25% reduction to account for duplication of effort. Merck asserts that it should not be responsible for hours spent in connection with motions for summary judgment because it was the prevailing party on these motions and Gilead did not substantively oppose Merck's motions. Resp. Br. 3-4. Alternatively, Merck contends that a 25% reduction should be applied to the hours devoted to motions for summary judgment. *Id.* at 4. With respect to many other categories, such as infringement and

7

invalidity contentions, claim construction, post-trial motions and proceedings, and discovery - case management and strategy, Merck argues that Gilead fails to justify the number of timekeepers and hours. *Id.* at 4-7. Merck then proposes a 25% reduction for each of those categories. *Id.* at 5. As for discovery – document review, Merck asserts that time spent on training, supervision, and quality control was not uniformly reduced to account for the related pending litigation and there is no reliable way of parsing the time attributed to this litigation based on Fish's inconsistent billing practices. *Id.* at 5-6. Lastly, with respect to defending fact depositions, Merck claims that Gilead refused Merck's request to break down the hours spent by deponent. *Id.* at 7.

Gilead responds that Merck's objection on the basis of duplication of efforts and unreasonable number of timekeepers is arbitrary and unsubstantiated, merely targeting categories with at least eight timekeepers who billed more than ten hours. Opening Br. 5-6. Gilead contends that Merck ignores the magnitude of case, in which Merck was seeking more than $2 billion in past damages and billions more in future royalties. *Id.* at 3, 6. Specifically, Gilead contends that Merck's proposed reductions fail to take into account the level of staffing necessary in this case as compared to a case with less than $5 million at stake. *Id.* at 6 (citing to *Bywater*, 670 F.3d at 1231). According to Gilead, Merck's assertion that "Discovery – Case Management and Strategy" should only be entitled to 7-10% of discovery-related expenses is also unsupported. *Id.* at 8. As to the amount spent on document review, Gilead claims that its requested amount has already been reduced by two-thirds because counsel was working on two other related cases. *Id.* at 7-8.

Once a determination that a case is "exceptional" has been made, 35 U.S.C. § 285 means to "make whole a party injured by an egregious abuse of the judicial process." *Mathis v. Spears*, 857 F.2d 749, 758 (Fed. Cir. 1988). Full fees may not be warranted only in the following circumstances: (1) when litigation misconduct is the sole basis for deeming a case "exceptional," and (2) cases where the injured party only partially prevails on the patent claims at issue. *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553-54 (Fed. Cir. 1989). Neither condition is present here, thus the Court finds that a full assessment of reasonable fees is appropriate, as discussed below.

      a. Motions for Summary Judgment

8

1  Gilead requests compensation for 420.2 hours in the category of "Summary Judgment Motions" and Merck proposes a 25% percent reduction in this category. With respect to Merck's objection relating to Gilead's lack of substantive opposition to Merck's motion for summary judgment, the Court first underscores that it has previously found that Merck's misconduct "infected this entire case." ECF 422 at 60-61. Merck's misconduct also required Gilead to expend significant effort analyzing the trial and discovery record to demonstrate Merck's inconsistent and false testimony. Reply 2. Gilead has also ultimately prevailed on every claim asserted by Merck so the exception in *Beckman* does not apply. In *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, the court found the patentee's extensive misconduct "severely affected every stage of the litigation that a full award of attorney fees was proper." 726 F.3d 1359, 1369 (Fed. Cir. 2013). Specifically, the court noted that the lower court found that the patentee's misconduct began even before the complaint was served, and took on many forms throughout the litigation. *Id.* Similarly here, the Court found that Merck's misconduct began pre-suit with its prosecuting patent attorney, affected the development of the claims in the patents-in-suit, and permeated throughout the litigation of the case. Further, the Federal Circuit has declined to require a level of granularity that traces attorneys' fees to specific acts of litigation misconduct, as Merck is proposing here. *Homeland Housewares*, 581 F. App'x at 881. Instead, it is the "totality of the circumstances" that justifies this Court's award of fees. *Id.*

As to Merck's objection to sixteen timekeepers billing to this category including ten who billed at least ten hours, the Court finds this objection and the supporting expert declaration to be conclusory. Resp. Br. 4; Pierce Decl. 9-10. Gilead has met its initial burden by producing time entries in support of the lodestar amount and Merck fails to explain why the particular numbers of timekeepers and hours billed are excessive. Accordingly, the Court finds that the across-the-board reduction proposed by Merck for motions for summary judgment is not justified. Moreover, barring any other reasons for reductions of hours, the Court is satisfied that devoting 420.2 hours to research, briefing, and arguing the motions for summary judgment is reasonable, regardless of the number of attorneys tasked to the project.

      b. Discovery – Document Review – Gilead Documents

Gilead requests compensation for 3,452.2 hours devoted to reviewing Gilead's documents for production and argues that the number of hours has already been reduced to account for the work done in two other related cases. Nonetheless, Merck argues that a two-thirds reduction still needs to be made because Fish's inconsistent billing practices preclude proper apportionment among the various pending cases. Resp. Br. 6. Independent from the two-thirds reduction, Merck also urges the Court to reduce the hours by 25% percent for duplication of efforts by excessive number of timekeepers and hours. *Id.* With respect to this category, the Court will not reduce the fees based on Merck's allegations that the hours were not properly reduced to one third to account for work done on related cases. Although Gilead might have adopted different practices for allocating the hours among the three related cases, this alone does not prove inaccuracies, unreasonableness, or inflation of the time spent. Ex. C to Rydstrom Decl., ECF 477-2 (explaining how hours were allocated among related cases). For those hours that were devoted exclusively to this case, there is also nothing improper in including all hours instead of one-third of those hours. Ex. D to Rydstrom Decl., ECF 477-3 (noting that "much of the time categorized as "Document Review – Gilead Docs" pertains to substantive work related exclusively to the Merck case (which should not be divided in thirds))." With regard to duplication of efforts, Merck's argument is conclusory and fails to demonstrate that the number of timekeepers and hours are excessive. Thus, the Court declines to reduce the amount by 25% or any lesser amount.

c. Discovery – Fact Depositions - Defended

Gilead requests compensation for 1,503.2 hours for defending fact depositions and Merck proposes a 25% percent reduction in this category. As to this category, the Court finds that the 25% reduction is warranted because by refusing to break down the hours spent by deponent, Gilead has not enabled Merck and this Court to evaluate the reasonableness of the hours. Ex. G to Rydstrom Decl. Gilead explains that the work on fact depositions often related to multiple witnesses so there was not an accurate way to sub-divide the work. *Id.*; Reply 2 n.2. However, a party seeking fees "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claim." *Norris v. Sysco Corp.*, 191 F.3d 1043, 1052 (9th Cir. 1999); *see also Minor v. Christie's, Inc.*, No. 08-05445-WHA, 2011 WL 902235, at *15 (N.D. Cal. Jan. 29,

2011) (reducing the amount by 25% to take into account possible excessive, duplicative, or irrelevant time because the record did not have enough information to determine whether the overall fee request for this project is reasonable). Accordingly, the Court applies a reduction of 25% or 375.8 hours. With a blended rate of $552.05 per hour, the reduced amount is about $207,460.39.

        d. Infringement and Invalidity Contentions; Claim Construction; Post-Trial Motions and Proceedings; Discovery – Case Management and Strategy; Discovery Document Review – Merck/Isis Documents; Discovery Written Discovery; Discovery – Third Party Discovery; Discovery – Discovery Dispute and Strategy; Discovery  Fact Depositions - Taken

Gilead requests compensation for about 10,501 hours in the remaining categories combined. To each of these categories, Merck objects based on excessive number of timekeepers and their hours and correspondingly requests a 25% reduction in each category. However, the Court finds Merck's objections arbitrary and unsupported. A mere comparison between the numbers of timekeepers and hours in this case and those in other cases cited by Merck is not relevant if the amount at stake and the complexity of the cases are different. For example, in contrast to *Stonebrae, L.P. v. Toll Bros.*, where specific instances of redundancies and inefficiencies were identified when two firms were billing a significant number of hours for the same tasks, Merck has not supported its proposed reductions with specific examples as to why the hours were excessive. No. 08-0221-EMC, 2011 WL 1334444, at *13 (N.D. Cal. Apr. 7, 2011); *e.g.*, *Kalani v. Starbucks Corp.*, No. 13-00734-LHK, 2016 WL 379623, at *9 (N.D. Cal. Feb. 1, 2016) (noting that "Defendant's contention that Plaintiff's fees for trial preparation and trial are excessive are unsupported by identification of any particular unreasonable time entry").

        **ii.    Top-Heaviness: Ratio of Senior to Junior Attorneys**

Gilead contends that Merck's assertion that there should be 2:1 allocation of hours between junior attorneys and senior attorneys is unsubstantiated, especially given the magnitude and complexity of the case. Opening Br. 9-10 (citing *Stonebrae*, 2011 WL 1334444, at *13; *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008)).

Merck claims that work performed on this case was divided almost evenly between senior attorneys and junior attorneys. Resp. Br. 9; s*ee* Pierce Decl. 7-10., ECF 488 (stating that 2:1 is a

11

reasonable ratio). It argues that even in a complex case, not every task would require the attention of senior attorneys. Resp. Br. 9 (citing *Hernandez v. Taqueria El Grullense*, No. 12-03257-WHO, 2014 WL 2611214, at *3 (N.D. Cal. June 11, 2014)).

Although Merck has proffered 2:1 as the reasonable ratio of hours spent by associates to those spent by partners, the Court declines to adopt a single ratio across the board because the ratio can vary depending on the case and the task. The Court is also not persuaded that certain research or writing tasks, such as motions to compel, should be categorically delegated to junior attorneys, because the "[u]se of more experienced attorneys for certain tasks can be more efficient than deploying less senior attorneys." *Stonebrae*, 2011 WL 1334444, at *13. Nevertheless, Merck has pointed to one persuasive example where a partner was billing a substantial number of hours to what should be a routine and simple task – 515.3 of partner hours in "Document Review – Gilead Docs." Resp. Br. 9; s*ee* Pierce Decl. 31-33. While it is desirable for a senior attorney to draft document review protocols and to supervise document review, over 500 hours billed by a partner in this document review category is excessive. *Hernandez*, 2014 WL 2611214, at *2 (reducing hours spent because "highly skilled attorney billed excessive hours for routine and duplicative work"). Accordingly, the Court reduces 40% of the hours for that partner timekeeper in this category of "Document Review – Gilead Docs," a reduction of 206.12 hours. Multiplied by the agreed-upon blended rate of $552.05 per hour, the reduction is about $113,788.55.

### iii. Entry-Specific Objections

The Court now turns to objections Merck has raised with respect to specific entries. As a preliminary matter, a proper entry-specific objection would justify a further reduction and has been considered so as not to duplicate the reductions in various categories of major tasks made above pursuant to "duplication of effort and number of timekeepers" or "top-heaviness." Where the entry-specific objection is found to relate to an additional reason for reduction that is different than "duplication of effort and number of timekeepers" or "top-heaviness," the Court has made further reductions. Additionally, the Court has carefully reviewed the deductions made in these categories and expressly reduced the percentage deduction to eliminate any potential double counting of reduction in compensable hours.

The Court summarizes here Merck's entry-specific objections and Gilead's corresponding responses before addressing each in turn below.

Merck first raises the objection to hours that are "blocked-billed," claiming that courts routinely apply a 10-30% reduction in fees for block-billed time. Resp. Br. 10 (citing *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007)). Merck also avers that Fish's block billing entries are not acceptable because descriptions such as "'work on 3rd party discovery,' 'research case tech issue,' and 'participate in call'" for a total of 8.4 hour, do not allow for a determination of how much time was spent on the individual task and whether the amount of time was reasonable. *Id.* Merck further claims that the vague descriptions, such as "work on case facts" or "work on case arguments" are vague, and when repeated many times, hinder its assessment of whether the time spent was reasonable. *Id.* at 11. Merck also objects to timekeeper entries that state "maintaining internal files and dockets" or "retrieving copies of documents," as clerical and administrative. *Id.* at 11-12. Next, Merck objects to attendance by multiple attorneys at depositions, which was not necessary. *Id.* at 12. Lastly, Merck argues that the redacted entries are insufficient to assess the reasonableness of the time spent. *Id.* at 13. According to Merck, even when the entries were rewritten after Merck raised this objection to Gilead, their vagueness and the lack of reliable contemporaneous billing entries still cast doubt on these entries. *Id.* at 13-14.

With respect to "block billing," Gilead argues that this does not warrant a reduction in fees because not only is this a common practice but its counsel's descriptions of the tasks are also specific. Opening Br. 10-11; Reply 5 (citing *Stonebrae*, 2011 WL 1334444, at *9). As to Merck's objections based on redactions of privileged information and vagueness of the entries, Gilead contends that those are not sufficient bases as long as Merck understands the nature of the work and can object to them. *Id.* at 12-14. Gilead further argues that many tasks Merck considered "clerical and administrative" were actually substantive work, such as "assign invalidity research to team." *Id.* at 14-15. Even if the entries reflect non-substantive work done by litigation support staff, Gilead contends that those are still entitled to compensation. *Id.* at 15 (citing *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-07098, 2015 WL 1746484, at *20 (C.D. Cal. Mar. 24, 2015)).

13

On Fish's block-billing, Merck has identified 12,066.78 hours in block-billed entries of more than one hour, corresponding to $6,520,564.20 in fees and seeks a 25% reduction of these fees. Resp. Br. 10. While block-billing is less than ideal in providing a complete record to assess reasonableness, adequate descriptions can still make it acceptable. Here, at least some of the descriptions in the block-billed entries reflect itemized statements of the specific tasks counsel undertook. Such detailed information about the timekeeper's activities can be sufficient for the purpose of evaluating whether the total block-billed hours were reasonable as a whole. *E.g.*, Pierce Decl. 11 (reciting descriptions from one of the block-billed entries: "Work on document production; Draft summary of issues re: search terms and custodian identification; Work on response to discovery letter from Merck; Work on search term and custodian identification; Meet re: third party subpoena and identification of people knowledgeable re:third party; Update case memo."); *see also Stonebrae*, 2011 WL 1334444, at *9 (finding the description sufficient to allow for block-billed entries); *Perfect 10*, 2015 WL 1746484, at *25 (same). Accordingly, the Court finds that those billing entries are sufficiently clear and do not warrant a reduction in fees.

With respect to vague descriptions of work, Merck has identified 1,493.2 hours corresponding to $938,500.10 in vague entries identified in Exhibits G and L-P to Pierce Declaration; and an additional 2,826.59 hours and $1,560,840.33 in fees that remain vague despite revision as set forth in Exhibit T to Pierce Declaration. Resp. Br. 11, 13. Merck seeks a reduction of about 50% for these entries. *Id.* The Court agrees that some of the descriptions remained vague and finds that a fee reduction is warranted. Descriptions such as "'work on case coordination,' 'work on case strategy issue,' 'work on case facts,' and 'work on case arguments,'" do not provide sufficient information for Merck or this Court to assess whether the hours spent were reasonable. Resp. Br. 11-13; s*ee Norris*, 191 F.3d at 1052. After reviewing the exhibits provided by Merck, the Court finds that about 40 percent of the hours identified in Exhibits G and L-P are vague. *See* Resp. Br. 11. Accordingly, the Court finds that as to the request of $938,500.10, a 40% reduction or $375,400 justified for vague entries. Exs. G, L-P to Pierce Decl. As to the requested $1,560,840.33 for vague rewritten entries, the Court finds that 35% of the hours in Exhibit T are attributed to entries that continue to be vague. As such, an additional 35% reduction or

14

$546,294.12 is warranted.  Resp. Br. 13; Ex. T to Pierce Decl.

As to the category of billed entries to which Merck objects as clerical or administrative (about 685.01 hours corresponding to $184,967.92 in fees identified by Merck), Resp. Br. 11, the Court finds that some reductions are warranted.  *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (holding that when "clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors").  The Court recognizes that "work performed by litigation support staff that directly support the substantive litigation (as opposed to routine clerical work) is compensable as part of an attorneys' fee award."  *Perfect 10*, 2015 WL 1746484, at *20 (noting that hours spent by litigation support staff that handled electronic information management can justify award of fees).  A review of the record reveals that while certain billing entries reflect routine clerical matter, such as maintain files and dockets, others pertain to more substantive support, such as prepare for call relating to invalidity contentions.  Ex. Q to Pierce Decl., ECF 488-16; Ex. 3-D to Warden Decl., ECF 474-11; Resp. Br. 11-12.  After reviewing the exhibit showing all the entries for the clerical and administrative tasks, the Court finds that 30% of the hours are attributed to entries with descriptions of routine clerical matter.  As such, the Court finds that 30% reduction, or about $55,490, is proper for this category.

With respect to the category of hours attributed to two Fish attorneys attending the same deposition, the Court finds those hours appropriate and will not reduce those hours.  For certain key witnesses, it is reasonable to send two attorneys to a deposition, at least to ensure that the deposition operates fairly.  As also noted by Gilead, the hours identified by Merck that fall into this category, "143 hours out of the 1503 hours," constitute a small portion of the total hours, demonstrating that Fish was staffing efficiently.  Reply 7.

As to billing entries that were formerly redacted but were rewritten, the Court finds that as long as the rewritten entries provide sufficient information for Merck to assess their reasonableness, they are appropriate.  Resp. Br. 13; Exs. U, V to Pierce Decl.  Unlike *J & J Sports Prods., Inc. v. Duong*, and other cases Merck relied upon, these billing entries were not entirely reconstructed after services were rendered but were only rewritten to protect privileged information.  No. 13-02002-LHK, 2014 WL 1478498, at *3 (N.D. Cal. Apr. 14, 2014).  The basis

15

that the revision is not contemporaneous does not justify a reduction.

### C. Lodestar Award

Based on the foregoing analysis of reasonable hours expended, the Court finds that the requested fees should be reduced by $1,298,433.47. The total lodestar for Fish's work is $12,591,636.53 through June 30, 2016.

### D. Fixed Fee Agreement

Gilead argues that its attorneys' fees should not be capped by the amount it actually paid its counsel pursuant in part to a fixed fee agreement, which would total $12,463,422.35. Opening Br. 15. It contends that lodestar amount dictates the reasonable amount. *Id.* (citing *Bywaters v. United States*, 670 F.3d 1221, 1232 (Fed. Cir. 2012); *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1168 (N.D. Cal. 2015)).

According to Merck, the requested lodestar amount is $1.4 million more than the fees Gilead actually incurred. Unlike the cases where a contingency recovery persuaded counsel to take on a client who would otherwise have gone unrepresented, Merck argues that this case has a fee agreement negotiated by sophisticated parties and that the agreement is an important factor in determining reasonableness. Resp. 14.

While the Court is not persuaded that the fixed fee agreement should act as an automatic ceiling on the reasonable rate, the Court can take it into account to consider the amount involved to confirm whether the total number of hours expended is reasonable. *See Bywaters*, 670 F.3d at 1232; *Kilopass*, 82 F. Supp. 3d at 1167-79. Through June 30, 2016, Fish's requested lodestar fees total $13,890,070. The reductions set forth above provide a lodestar amount of $12,591,636.53 through June 30, 2016, which is about a 9.35% reduction from the requested amount. The amount of $12,591,636.53 is also comparable to the total paid amount of $12,463,422 (including the $11,350,000 paid pursuant to the fixed fee agreement and the hourly calculation for the periods before and after the fixed fee period). The Court thus finds the lodestar amount to be reasonable based on the amount at stake in this case, the complexity of the issues, and the results Fish has achieved for Gilead.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

Gilead is entitled to $12,591,636.53 for the work done by Fish through June 30, 2016.

Since the total amount of reductions is about 9.35% based on Fish's fees through June 30, 2016, the additional fees incurred after June 30, 2016, are subject to the same proportional reduction based on the parties' agreement.

Gilead is also entitled to fees of $1,365,470 for Deloitte's work.

Dated: July 14, 2017

_____
BETH LABSON FREEMAN
United States District Judge